IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ZIPWALL, LLC | ) | |
| | ) | Civil Action No.: 05-11852 REK |
| Plaintiff and Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FASTCAP, LLC | ) | |
| | ) | |
| Defendant and Counterclaimant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT
OF FASTCAP'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT AND/OR INVALIDITY OF
U.S. PATENT NOS. 6,209,615, 6,924,004 and 6,953,076**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.   Zipwall's Spring-Loaded Partition Mount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   B.   FastCap's Heavy-Duty Support Poles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.  Legal Standard For The Grant Of Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B.   Legal Standard For Determining Patent Infringement  . . . . . . . . . . . . . . . . . . . . . . . . 6

   C.   There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do
        Not Infringe The '615 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.    The '615 Patent Claims Require A "Compressive Mechanism" That Is
                    Missing From FastCap's Support Poles . . . . . . . . . . . . . . . . . . . . . . . 7

              a.    The '615 Patent Claim Language  . . . . . . . . . . . . . . . . . . . . . . . . . 7

              (b)   The '615 Patent Specification . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              (c)   Prosecution History Of The '615 Patent  . . . . . . . . . . . . . . . . . . . . 9

              (d)   FastCap's Accused 3rd Hand And Little Hand Products Do Not
                    Infringe The '615 Patent Claims Either Literally Or Under The Doctrine
                    Of Equivalents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   D.   There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do
        Not Infringe The '004 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              1.    The '004 Patent Claims Require "Compression Mechanisms", "Clamps" And
                    "Clips" That Are Entirely Missing From FastCap's Support Poles . . . . . . . . 11

              (a)   The '004 Patent Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

(b)    The '004 Patent Specification and Drawings . . . . . . . . . . . . . . . . . 12

(c)    The '004 Patent Prosecution History . . . . . . . . . . . . . . . . . . . . . . 13

(d)    FastCap's Accused 3rd Hand And Little Hand Products Do Not Infringe The '004 Patent Claims Either Literally Or Under The Doctrine Of Equivalents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.    There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do Not Infringe The '076 Patent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1.    The '076 Patent Claims Require Various Curtain "Coupling" Mechanisms Entirely Missing From FastCap's Accused Products

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

(a)    The '076 Patent Claim Language . . . . . . . . . . . . . . . . . . . . . . . . . 16

(b)    The '076 Patent Specification and Drawings . . . . . . . . . . . . . . . . . 16

(c)    The '076 Patent Prosecution History . . . . . . . . . . . . . . . . . . . . . . 17

(d)    FastCap's Accused 3rd Hand And Little Hand Products Do Not Infringe The '076 Patent Claims Either Literally Or Under The Doctrine Of Equivalents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

F.    There Is No Genuine Issue Of Material Fact That Claims 1-16, 64-72, 78-96, 86 And 91 Of The '076 Patent Are Invalid Pursuant To 35 U.S.C §112 . . . . . . . . . . . . . . 18

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby*
    477 U.S. 242, 248 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bai v. L & L Wings*
    160 F.3d 1350, 1353-54 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Celotex v. Catrett*
    477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Charles Greiner & Co. v. Mari-Med Mfg., Inc.*
    962 F.2d 1031, 1036 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dynacore Holdings  v. U.S. Philips*
    363 F.3d 1263 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Elkay Mfg. Co. v. Ebco Mfg. Co.*
    192 F.3d 973, 980 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 18

*Festo Corp. v. Shoketsu Kinzoku*
    535 U.S. 722, 739-41 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 14, 15, 18

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*
    339 U.S. 605, 610 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jeneric/Pentron, Inc., v. Dillon Co. Inc.*
    205 F.3d 1377, 1383 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kegel Co., Inc. v. AMF Bowling, Inc.*
    127 F.3d 1420, 1429, 44 USPQ2d 1123, 1129 (Fed. Cir.1977) . . . . . . . . . . . . . . . . . . 18

*Markman v. Westview*
    517 U.S. 370, 384-85 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sage Products, v. Devon*
    126 F.3d 1420 1432-33 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 15, 18

*Southwall Tech., Inc. v. Cardinal IG Co.*
    54 F.3d 1570, 1576 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Townsend v. Hitec*
    829 F.2nd 1086, 1089 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tronzo v. Biomet*
    156 F.3d 1154, 1160 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 15, 18

*Union Pacific Resources v. Chesapeake Energy Corp.*
    236 F.3d 684 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Vitronics v. Concenptronic*
    90 F.3rd 1576, 1582 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Warner-Jenkinson v. Hilton Davis Chemical*
    520 U.S. 17, 39-41 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11

## **Statutes**

28 U.S.C. §1295 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C §112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

35 USC § 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Manual of Patent Examining Procedure, §601.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I.    INTRODUCTION

The Court should enter summary judgment in this patent case finding Defendant FastCap LLC ("FastCap") has not infringed the patents-in-suit and that certain claims of the asserted patents are invalid.

Plaintiff ZipWall, LLC ("Zipwall") alleges FastCap's infringement of three patents that issued from continuation applications covering a spring-loaded partition mount and clip for installing plastic sheeting to create dust or paint barriers in construction zones.    The patents-in-suit include: U.S. Patent No. 6,209,615 ("the '615 patent"); U.S. Patent No. 6,924,004 ("the '004 patent"); and U.S. Patent No. 6,953,076 ("the '076 patent").

There is no genuine issue of material fact that FastCap's accused products are not spring-loaded curtain mounts with clips as recited in the claims of the patents-in-suit.  FastCap is therefore entitled to judgment of non-infringement as a matter of law.   FastCap also seeks summary judgment of invalidity of certain claims 1-16, 64-72, 78-96, 86 and 91, of the '076 patent,  pursuant to 35 U.S.C §112, for failing to point out and distinctly claim any "room partition" as recited in these claims.

## II.    BACKGROUND

### A.    Zipwall's Spring-Loaded Partition Mount

Plaintiff Zipwall sells spring-loaded partition mounts and clips to painters, carpenters, floor refinishers, etc.  The mounts and clips "hold common plastic sheeting between ceilings and floors to create a barrier to control the spread of job-site dust."  See, Declaration of Paul Akers filed herewith and incorporated herein, Exhibit A  (pages from Plaintiff's website).  According to Zipwall's website, the "spring exerts compressive pressure that holds the plastic sheeting in place at the floor and ceiling."

1

Id.  The spring action, which compresses approximately 2-3 inches, also serves to adjust the fit of the plastic sheeting.  Id.

### B.    FastCap's Heavy-Duty Support Poles

Defendant FastCap manufactures, markets and sells a line of innovative products to professional cabinet makers and serious wood workers.  See, Akers Dec., ¶3, <u>Exhibit B</u> (page from FastCap's website).  Two of FastCap's products, The 3rd Hand HD™ ("3rd Hand") and The Little Hand HD™ ("Little Hand") support poles, are the subject of Zipwall's infringement allegations in this case.

However, FastCap's accused 3rd Hand and Little Hand support poles are not spring-loaded curtain mounts and they are not covered by any claims of the patents-in-suit.  Akers Dec. ¶4.    Instead, FastCap's products were designed to "provide a support, brace, or clamp" to support a load of up to seventy pounds.  Id  FastCap's accused products do not have any compressive mechanism whatsoever.  Akers Dec. ¶5.  Instead, the length of the  accused products adjusts and locks into place to maintain fixed lengths, like an adjustable tire jack commonly used to support an automobile while changing tires.  Id.  To accomplish this, FastCap's accused products  employ two separate components as shown in the following illustration:

2



In the above illustration, the first component comprises the "ergonomic pump handle", "lifting tab" and "pump spring". Akers Dec., ¶6.   This component advances the galvanized extension rod to extend the length of the support pole.  Id. This is accomplished by squeezing the pump handle which, in turn, pushes up on the bottom of one side of the lifting tab.  Id.  This causes the lifting tab to lift at an angle and frictionally engage the galvanized extension rod.  Each squeeze of the pump handle extends the length of the rod approximately 3/8 of an inch.  Id.

As illustrated above, the second component of FastCap's support poles comprises a "release

3

tab" and "lower spring" that locks and releases the galvanized extension rod. Akers Dec., ¶7. As can

be seen in the above, the lower spring pushes the release tab down at an angle, thereby causing the

release tab to frictionally engage the extension rod and hold it in place. Id. The lock on the extension

rod is released by pushing up against the bottom of the release tab, which pushes up against the lower

spring. Id. This levels the angle of the release tab and disengages it from the extension rod, allowing the

rod to move freely. Id.

Previously, FastCap sold an accessory for its 3rd Hand and Little Hand products called a dust

barrier or "DB" clip. Akers Dec., ¶8. A photograph of FastCap's DB clip in relation to the "Top

3"x3" foot" of FastCap's support poles is set forth below:



As can be seen in this photograph, FastCap's DB clip had a single engagement member, or

"leg", extending along two sides of the clip. Id. This leg was adapted to slide onto the "Top 3"x3" foot"

4

portion of FastCap's support poles as shown above.  Id.  The DB clip in the above photograph includes

and adhesive label with written instructions stating "remove clip for better gripping" because the upper

surface of the clip was smooth.  Id.  In an abundance of caution, and notwithstanding the fact that

FastCap clearly does not infringe any claim of the patents-in-suit, FastCap stopped selling its DB clip

when it learned of Zipwall's Complaint.  Id.

## III.    DISCUSSION

### A.  Legal Standard For The Grant Of Summary Judgment

Summary judgment is appropriate under Fed. R. Civ. P. Rule 56(c) when the moving party

demonstrates there is no genuine issue of material fact and the evidence establishes the moving party is

entitled to judgment as a matter of law.  *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

The party opposing summary judgment cannot rest on mere allegations.  It must present actual evidence

that creates a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 248

(1986); see also, Fed. R. Civ. P. Rule 56(e).  As the Supreme Court explained:

> There is no issue for trial unless there is sufficient evidence favoring the
> non-moving party for a jury to return a verdict for that party ... if the
> evidence of the non-movant is merely colorable, ... or is not significantly
> probative summary judgment may be granted.  *Anderson v. Liberty
> Lobby,* 477 U.S. 242, 249 (1986).

Where the non-moving party fails to make a showing sufficient to establish the existence of an

essential element of that party's case, and on which that party bears the burden of proof at trial, then

there can be "no genuine issue of material fact," since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex

Corp. v. Catrett*, 477 U.S. at 322-23.  Summary judgment of non-infringement is regularly granted in

5

patent cases. *Dynacore Holdings  v. U.S. Philips* , 363 F.3d 1263 (Fed. Cir. 2004); *Townsend v*.

*Hitec*, 829 F.2nd 1086, 1089 (Fed. Cir. 1987) [1]

### B.    Legal Standard For Determining Patent Infringement

Determining patent infringement is a two-step process.  The first step is for

the Court to construe the scope and meaning of patent claims as a matter of law. *Markman v.*

*Westview*, 517 U.S. 370, 384-85 (1996).   To accomplish this, the Court must examine the "intrinsic

evidence", comprising the claim language, patent specification (i.e. written description and drawings)

and prosecution history. *Vitronics  v. Concenptronic,* 90 F.3rd 1576, 1582 (Fed. Cir. 1996);

*Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  The Court may

consider extrinsic evidence, such as dictionary definitions, to construe disputed  patent claim language.

However, where extrinsic evidence is inconsistent with the specification and file history, it should be

accorded no weight. *Vitronics*, 90 F.3d at 1577

Following the Court's construction of the claim language, the patentee has the burden to prove

infringement either literally or under the doctrine of equivalents.  Literal infringement requires "'that the

accused device contains every limitation in the asserted claims'", i.e. the properly construed claim reads

on the accused product exactly. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir.

1999) (One missing limitation avoids literal infringement).

To establish infringement under the doctrine of equivalents, the patentee has the burden to show

---

[1] Because this case involves claims of patent infringement the Court must look to the decisions
of the Court of Appeals for the Federal Circuit in deciding this motion for summary judgment. 28
U.S.C. §1295

that the differences between the elements of the patent claims and the accused product are

"insubstantial". *Warner-Jenkinson v. Hilton Davis Chemical*, 520 U.S. 17, 39-41 (1997)

("insubstantial differences" test determines infringement under the doctrine of equivalents). The

insubstantial differences test is applied on an element by element basis. Id.

The doctrine of prosecution history estoppel limits the doctrine of equivalents. *Festo Corp. v.

Shoketsu Kinzoku*, 535 U.S. 722, 739-41 (2002) (patentee's narrowing amendment presumptively

surrenders all equivalents restricting amended claim element to literal meaning); *Charles Greiner & Co.

v. Mari-Med Mfg., Inc.*, 962 F.2d 1031, 1036 (Fed. Cir. 1992). There is a further limit to the doctrine

of equivalents known as the "all elements" rule. Under the all elements rule, the equivalents doctrine

cannot be used to establish infringement where this effectively eliminates or "vitiates" a claim element.

*Tronzo v. Biomet*, 156 F.3d 1154, 1160 (Fed. Cir. 1998); *Sage Products, v. Devon*, 126 F.3d

1420 1432-33 (Fed. Cir. 1997).

Summary judgment of noninfringement is proper "when no genuine issue of material fact exists,

in particular, when no reasonable jury could find that every limitation recited in the properly construed

claim", or its equivalent, is "found in the accused device." *Bai v. L & L Wings*, 160 F.3d 1350, 1353-

54 (Fed. Cir. 1998).

### C.    There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do Not Infringe The '615 Patent

#### 1.    The '615 Patent Claims Require A "Compressive Mechanism" That Is Missing From FastCap's Support Poles

The '615 patent claims are directed to a curtain mount and mounting system

having a spring-loaded "compressive mechanism". Like Zipwall's product, the claimed compressive

7

mechanism compresses up to 2 or 3 inches to pin a curtain between a floor and ceiling.   As set forth

below, this interpretation of the claimed "compressive mechanism" is supported by the intrinsic

evidence of the claim language, specification and  prosecution history.

**(a)      The '615 Patent Claim Language**

The '615 patent has two independent claims, claims 1 and 19, and 28 dependent claims.  See,

Declaration of Michael Cronen filed herewith, <u>Exhibit A</u> ('615 patent ).  However, if independent

claims 1 and 19 are not infringed, then the dependent claims that depend therefrom are also not

infringed as a matter of law.  *Jeneric/Pentron, Inc., v. Dillon Co. Inc.,* 205 F.3d 1377, 1383 (Fed.

Cir. 2000).  The following discussion is therefore limited to the independent claims of the '615 patent.

Independent Claim 1 of the '615 patent recites in part:

> A mount attachable to an extension pole for installing a curtain
> comprising:
>> an interface at a proximal end of said mount adapted for
>> coupling the mount to an extension  pole;
>> **a compression mechanism** along a longitudinal axis of said
>> mount;
>> a head at a distal end of said mount having an upper first
>> engaging surface extending transverse to said
>> longitudinal axis, **said head and said interface**
>> **coupled to opposite ends of said compression**
>> **mechanism, said compression mechanism biased**
>> **to urge said head away from said interface ..."**
>> Cronen Dec. <u>Exhibit A</u> (615 patent) (Emphasis
>> added).

Similarly, independent claim 19  of the '615 patent recites, in part: "[a] mounting system for

installing a curtain", including a "pole" having "a foot" and "a head" with "a **compressive mechanism**

**between said foot and said head**; and a clip having a lower second engaging

8

surface adapted to substantially interface with said first engaging surface".  Id.

### (b)    The '615 Patent Specification

The '615 patent specification describes and shows the "compressive mechanism" of

independent claims 1 and 19 as "a spring under compression" such that "[t]he head is urged toward the

ceiling".  Cronen Dec. Exhibit A ('615 patent, col. 2, lines 29-30 and 34-36; col. 4, lines 17-19; col. 5,

lines 32-33).  The "fully extended curtain mount 24" and pole is "longer than the distance from the floor

34 to the ceiling 32".  Id. (col. 4, lines 20-24).  "For example, if the compression range of the spring is

2-3 inches, then the total length of the pole 22 and mount 24 can be made 2-3 inches longer than the

floor-to-ceiling 32 height, causing the spring to be compressed when the system is installed."  Id. (col.

4, lines 25-29)(emphasis added).   "The tension of the spring 50 must be high enough to support the

weight of the installed curtain", but also "low enough such that the head 28 of the curtain mount 24 does

not push through the ceiling during installation."  Id. (col. 5, lines 54-61) (emphasis added).  Fig. 3C of

the patent drawings shows the compressive force of the spring with the letter "F" and an upward arrow.

Id.

### (c)    Prosecution History Of The '615 Patent

The Patent Examiner rejected all of the original claims of the '615 patent application. Cronen

Dec. Exhibit B (Office Action Summary).  In response, the applicant amended the recited

"compression mechanism" of claim 1 as follows: "said compression mechanism when under

compression being biased to urge said head away from said interface."   Cronen Dec., Exhibit C

(Amendment After Final).  The applicant explained this amendment as follows:

"[I]n the present invention as claimed in amended Claim 1, the

9

'compression mechanism', when 'under compression', is 'biased to urge said head away from said interface'.  In this manner, the configuration of the present invention is outwardly biased in that the head and interface are biased by the compression mechanism to be urged away from each other, ..." .  Id ( pp. 4-5).

The Patent Examiner refused to enter this amendment.  Conen Dec. Exhibit D (Advisory Action).  Thereafter, the applicant and the Examiner held a telephone interview, summarized by the Examiner, in part. as follows: The examiner suggested adding the limitation, to independent claim 1, of the compression mechanism being biased to urge the head away from the interface,... .  Cronen Dec. Exhibit E (Interview Summary, Paper No. 15) (emphasis added).   The applicant responded with a third amendment to independent claim 1 as follows: **said compression mechanism** [when under compression being] **biased to urge said head away from said interface**;" Cronen Dec., Exhibit F (Supplemental Amendment After Final).

> (d)    **FastCap's Accused 3rd Hand And Little Hand Products Do Not Infringe The '615 Patent Claims Either Literally Or Under The Doctrine Of Equivalents**

FastCap's 3rd Hand and Little Hand products are not spring-loaded curtain mounts.  They are heavy duty support poles.   Their length adjusts and locks into place to support a load of up to seventy pounds.  They do not include any spring or other compressive mechanism biased to urge the head of the support poles toward the ceiling.   Akers Dec., ¶¶3-8.   Contrary to the '615 patent, FastCap's products are not adjusted to be longer than the distance between the floor and ceiling without causing damage to their surfaces.  If FastCap's accused support poles are adjusted to be 2-3 inches longer than a floor-to-ceiling height, as in the '615 patent, they would likely push through the ceiling during installation. Akers Dec., ¶10.  FastCap's 3rd Hand and Little Hand products therefore do not literally

infringe the '615 patent claims because they do not have a "compressive mechanism" with a force F generated by the compression of a spring biased to urge the poles against the ceiling.  Akers Dec., ¶ 11.

FastCap's accused products also do not infringe the '615 patent under the doctrine of equivalents as a matter of law.  This is because of the applicant's narrowing amendments to the "compression mechanism" element of the claims.  The law has long been clear that such claim amendments give rise to a complete bar to equivalency under the doctrine of prosecution history estoppel. .  *Warner-Jenkinson v. Hilton Davis*, 520 U.S. at pp. 39-41  Here,  the'615 patent claims were amended three times.  In fact, the claims were *not allowed by the Examiner until after the applicant amended the claim element to avoid the prior art* as follows: "**said compression mechanism biased to urge said head away from said interface**".  This narrowing amendment surrendered all equivalents to the claimed "compression mechanism", leaving only the literal meaning of the limitation, which is missing from FastCap's products as set forth above.  *Festo*,  535 U.S. at pp. 739-41

Moreover, since the "compressive mechanism" element  is entirely absent from FastCap's products, the "all elements" rule is a further bar to Zipwall's infringement allegations under the doctrine of equivalents.  *Tronzo,*156 F.3d at p.1160; *Sage,*126 F.3d at pp.1424-25.

Finally, even assuming, *arguendo*, that the "compression mechanism" of the '615 patent is entitle to any range of equivalents, which it is not, then there can be no infringement by equivalents because the differences between the lifting, lock and release elements of FastCap's support poles are substantially different than the 2-3 inch, spring-loaded "compression mechanism" element of the '615

11

patent claims. *Warner-Jenkinson v. Hilton Davis*, 520 U.S. at pp. 30-31. FastCap's fixed-length

support poles do not function in substantially the same way or achieve the substantially the same result

as the "compression mechanism" of the claimed curtain mount. *Graver Tank & Mfg. Co. v. Linde*

*Air Products Co.*, 339 U.S. 605, 610 (1950). Indeed, unlike the claimed invention, FastCap's

support poles would likely push through a ceiling if extended 2-3 inches longer than a floor-to-ceiling

distance.

> **D.    There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do Not Infringe The '004 Patent**
>
> **1.    The '004 Patent Claims Require "Compression Mechanisms", "Clamps" And "Clips" That Are Entirely Missing From FastCap's Support Poles**

The claims of the '004 patent are directed to an attachable mount and mounting system for

installing a curtain using a specific "clamp" and "clip" and, in the case of independent claims 1, 17 and

45, the same "compressive mechanism" discussed above in connection with the '615 patent. See,

Cronen Dec., <u>Exhibit G</u> ('004 patent). The intrinsic evidence of the '004 patent's claim language,

specification and prosecution history, as well as the reasons why FastCap does not infringe the '004

patent, are discussed below.

> **(a)    The '004 Patent Claims**

The '004 patent has 61 claims, including independent claims 1, 17, 35, and 45. Independent

claims 1, 17 and 45 of the'004 patent recite a "mounting system" and an attachable "mount" for

installing a curtain. Each of these claims requires the same spring-loaded "compression mechanism"

discussed above in connection with the claims of the '615 patent. In addition, claims 1, 17 and 45

recite a "pivotally coupled" "clamp" for coupling the curtain Id. Independent claim 35 recites a "clip" for coupling the sheet material to the head of a pole having " a plurality of legs extending transverse to the second engaging surface of the clip to removably secure the clip to the head, the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head." Id.

### (b)    The '004 Patent Specification and Drawings

The '004 patent issued on a continuation application that includes the '615 patent as a parent application.  The '004 patent therefore covers the same subject matter as the '615 patent.  See, Manual of Patent Examining Procedure, §601.01(a) (Continuation applications "must disclose and claim only subject matter disclosed" in their parent applications). Indeed, the written description and drawings of the '004 patent and the '615 patent are identical.

In addition to a "compressive mechanism", independent claims 1, 17 and 45 of the '004 recite a "pivotally coupled" "clamp" which is shown in Fig 8B of the '004 patent.  Cronen Dec., Exhibit G ('004 patent).  The "clip" of claim 35,  having a "plurality of legs extending about at least one side surface, is shown in Fig. 4B of the '004 patent.  As can be seen in Fig 4B, the "clip" of claim 35 has a two "legs 65" on one side and what appears to be at least one leg on the other side of "curtain clip 64". Id.

### (c)    The '004 Patent Prosecution History

The original '004  patent application included 43 claims.  These were all rejected by the Patent Examiner.  See, Cronen Dec., Exhibit H  (Office Action dated February 10, 2003).  In response, the applicant amended the original claims, added fifteen new claims, and submitted arguments to

overcome the rejection.  See, Cronen Dec., Exhibit I (Amendment A dated July 18, 2003).  In a

subsequent Office Action, the Patent Examiner rejected both the original and newly-submitted claims.

Cronen Dec., Exhibit J  (Office Action dated November 4, 2003).

The applicant thereafter submitted amended claims to further define the perpendicular clamp

arm and the plurality of legs of clip.   Cronen Dec., Exhibit L (Preliminary Amendment).  The applicant

the claims to define a "clamp ... including an engagement arm that engages an exterior side surface of

the head".  Id.  (p. 10:7-8, 23-24). The Patent Examiner once again rejected all of the  pending claims

as unpatentable over certain prior art patents.

In response,  the applicant submitted an "Amendment C" further narrowing the definition of the

recited "clamp" and "clip"  Cronen Dec., Exhibit M (Amendment C, p.2).  Significantly, the applicant

amended the "clip" element of independent 35 as follows: "the plurality of legs extending about at least

one side surface and a portion of a lower surface of the head when the clip is engaged with the head."

Id.  (p. 7:20-22)

> **(d)    FastCap's Accused 3rd Hand And Little Hand Products Do Not
> Infringe The '004 Patent Claims Either Literally Or Under The
> Doctrine Of Equivalents**

As set forth above, FastCap's 3rd Hand and Little Hand products are heavy duty support poles

adjustable to fixed lengths.  They do not have the "compression  mechanism" recited in claims 1, 17

and 45 of the '004 patent.  FastCap's accused products also do not have the recited  "clamp" of claims

1, 17 and 45, that includes "an engagement arm that engages an exterior side surface of the head to

secure a curtain the side surface of the head at an engagement location that is lower than a top portion

of the head, the clamp being pivotably coupled to the mount such that the engagement arm pivots

14

between a secure position and an open position".

Regarding the "clip" of independent claim 35, FastCap previously marketed a DB Clip accessory for its support poles; however, as shown above, <u>FastCap's former DB clip did not include a</u> <u>"plurality of legs extending about at least one side surface</u> ... of the head when the clip is engaged with the head" as recited in claim 35. Instead, FastCap's former DB clip had a single leg extending about two sides, the clip being adapted to slide onto the "Top 3" x 3" foot" of FastCap's accused support poles.

FastCap's accused products do not literally infringe independent claims 1,17, 35and 45 of the '004 patent because the products do not contain every limitation in these claims, i.e. the properly construed claims do not read on FastCap's products exactly. *Elkay v. Ebco*, 192 F.3d at p. 980. FastCap's accused products also do not infringe the '004 patent under the doctrine of equivalents. Like the '615 patent discussed above, the doctrine of prosecution history estoppel precludes Zipwall from asserting FastCap's infringement of the '004 patent under the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku,* 535 U.S. at pp. 539-41.

As set forth above, the claims of the '004 patent were amended three times. Independent claims 1, 17 and 45 issued only after a third amendment limited the structure of the "clamp" to "<u>being</u> <u>pivotably coupled to the head such that the engagement arm pivots between a secure position and an</u> <u>open position."</u> Cronen Dec., <u>Exhibit M</u> (Amendment C). This pivotable clamp is clearly missing from FastCap's products. Similarly, claim 35 was amended three times to narrow the recited "clip" to having "<u>plurality of legs extending about at least one side surface and a portion of a lower surface of the</u> <u>head when the clip is engaged with the head."</u> Id. (p. 7:20-22)

15

Because of these amendments, Zipwall is precluded under the doctrine of prosecution history estoppel from asserting any range of equivalents to "clamp" and "clip" couplers of the '004 patent claims. *Festo Corp. v. Shoketsu Kinzoku,* 535 U.S. at pp. 539-41. Zipwall is similarly precluded from asserting any range of equivalents to the recited "compression mechanism" of claims 1, 17 1nd 45 of the '004 patent because of the amendments and arguments made during prosecution of the parent '615 patent application, as discussed above.

And again, this is not a case involving the substitution of an element of a patented invention. The recited "clamp", "clip" and "compression mechanism" elements of the '004 patent claims are entirely missing from FastCap's accused 3rd Hand and Little Hand support poles. Therefore, the "all elements" rule is a further bar to any allegation that FastCap infringes the '004 patent under the doctrine of equivalents. *Tronzo v. Biomet*, 156 F.3d at p. 1160*; Sage Products v. Devon*, 126 F.3d at pp. 1424-25.

### E.    There Is No Genuine Issue Of Material Fact That FastCap's Accused Products Do Not Infringe The '076 Patent

#### 1.    The '076 Patent Claims Require Various Curtain "Coupling" Mechanisms  Entirely Missing From FastCap's Accused Products

The '076 patent claims are directed to methods and systems for installing or  mounting curtains using specific coupling mechanisms to attach curtains to curtain mounts.   The '076 patent's claim language, specification and  prosecution history, as well as the reasons why FastCap does not infringe the '076 patent, are discussed below.

##### (a)    The '076 Patent Claim Language

The '076 patent has 96 claims, including independent claims 1, 17, 29, 40, 51, 63, 64, 73, 78,

86, and 91.  Claim 1 of the '076 patent recites a partition mount that couples a curtain  "at a **hinged joint** such that the mechanism is pivotable with respect to the elongated portion ..." Cronen Dec., Exhibit N ('076 patent).  Independent claims 17, 40, 51, 63,73 of the '076 patent recite a structure for coupling the "head" and "clip" having  "multiple protrusions" that mate with corresponding "multiple retention apertures" to secure the "curtain between the clip and head".  Id.  Independent claims 29, 40, and 63 recite  a "clip" with "a high-friction material applied to an upper surface thereof to prevent slipping when engaging a room surface."  Id.  Claim 78 recites a "clip" having "a high-friction upper surface [that] ... directly engages the ceiling."  Id.  Claims 1, 64, 78, 86 and 91 recite "method[s] of installing a curtain to form a room partition between a floor and a ceiling using a partition mount ...".  Id.

### (b)    The '076 Patent Specification and Drawings

The "hinged joint"coupling mechanism of independent claim 1, this is shown as "hinge 99" in Fig. 8C of the '004 patent.  The "clips" of independent claims 17, 40, 51, 63,73, 86, having "multiple protrusions that mate with corresponding retention apertures", as well as the "high-friction material" of independent claims 29, 40, and 63, and the "high-friction upper surface" of claim 78, are shown in  Fig 9B of the '076 patent.  Id.

### (c)    The '076 Patent Prosecution History

The original '076 patent application sought 82 claims.  All of these were initially rejected by the Patent Examiner.  See, Cronen Dec., Exhibit O   (Office Action dated October 13, 2004).  In response, the applicant amended independent claim 1 of the '076 patent as follows: "coupling [[the]] a curtain to the mechanism on the second end ,the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated

portion". Cronen Dec. <u>Exhibit P</u> (Amendment A, p.2:8-10). The applicant also amended various

"clip" claims as indicated by the underlined portion of the following: "<u>one of the clip and head including</u>

<u>multiple protrusions that mate with multiple retention apertures on the other of the clip and head to</u>

<u>secure a portion of the curtain between the clip and head</u>." Id. (Amendment A, p.11:1-10 ). Various

claims were also amended to include the following: "<u>The clip including a pad of high-friction material</u>

<u>applied to an upper surface thereof to prevent slipping when engaging a room surface.</u>" Id. (p.7:2-

6:16).

      **(d)    FastCap's Accused 3rd Hand And Little Hand Products Do Not Infringe The '076 Patent Claims Either Literally Or Under The Doctrine Of Equivalents**

As set forth above, FastCap's 3rd Hand and Little Hand products are heavy duty support

poles that are adjustable to fixed lengths. The accused products do not infringe the claims of the '076

patent because they do not have any of the curtain "coupling mechanism[s]" recited in the '076 patent

claims. For example, FastCap's accused products do not have a "pivotable", "hinged joint"as recited

in independent claim 1 of the '076 patent. They also do not include any "coupling mechanism" having

"multiple protrusions that mate with corresponding retention apertures at an interior portion thereof" as

recited in independent claims 17, 40, 51, 63,73, 86, or the "high-friction material" and "high friction

upper surface" of the curtain coupler/clip recited in independent Claims 29, 40, 63 and 78.

Therefore, FastCap's 3rd Hand and Little Hand products do not literally infringe any of the

independent claims of the '076 patent because the products do not contain every limitation in these

claims, i.e. the properly construed claims do not read on FastCap's products exactly. *Elkay v. Ebco*,

192 F.3d at p. 980 .

18

FastCap's accused products also do not infringe the '076 patent under the doctrine of equivalents. As set forth above, the claims of the '076 patent were amended with respect to the specific curtain couplers recited in the claims to include elements that are missing from FastCap's products. Because of these amendments, the doctrine of prosecution history estoppel precludes Zipwall from asserting any range of equivalents to the specific "clamp" and "clip" curtain couplers recited of the '076 patent claims, leaving only the literal meaning of these limitations, which are not present in FastCap's products. *Festo v. Shoketsu Kinzoku*, 535 U.S. at pp. 739-41. Because the pivoting clamp and multi-legged clip of the '076 patent claims are entirely absent from FastCap's accused products, the "all elements" rule is a further bar to Zipwall's allegation that FastCap infringes the '076 patent under the doctrine of equivalents. *Tronzo v. Biomet*, 156 F.3d at p. 1160; *Sage Products. v. Devon*, 126 F.3d at pp. 1424-25.

**F.    There Is No Genuine Issue Of Material Fact That Claims 1-16, 64-72, 78-96, 86 And 91 Of The '076 Patent Are Invalid Pursuant To 35 U.S.C §112**

Patents are presumed valid. 35 USC § 282. To overcome the statutory presumption of validity, an alleged infringer bears the burden of proving patent invalidity by "clear and convincing" evidence. *Kegel Co., Inc. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1429, 44 USPQ2d 1123, 1129 (Fed. Cir.1977). Pursuant to 35 U.S.C. §112, ¶2, however, patent claims may be held invalid for failing to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." See, *Union Pacific Resources v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir. 2000). The question of patent invalidity is a question of law for the Court to decide. Id.

In the present case, claims 1-16, 64-72, 78-96, 86 and 91 of the '076 patent are clearly invalid

for indefiniteness under 35 U.S.C. §112, ¶2.   Each of these claims, recites "a method of installing a curtain to form a room partition between a floor and ceiling using a partition mount".   However, the claim language does not include elements necessary to construct such a "room partition".   Indeed, if a partition is defined as something that divides or separates, as it is commonly understood, then these claims fail to point and distinctly claim this subject matter.   Indeed, it would be impossible for any person skilled in the art to construct a room partition using a single "mount" as recited in these claims. Therefore, the Court should hold these patent claims invalid for indefiniteness. *Union Pacific Resources v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir. 2000).

**IV.     CONCLUSION**

For the foregoing reasons the Court should grant summary judgment that FastCap has not infringed the patents-in-suit and that claims 1-16, 64-72, 78-96, 86 and 91, of the '076 patent are invalid for indefiniteness pursuant to 35 U.S.C §112.

**REQUEST FOR ORAL ARGUMENT**

FastCap hereby respectfully requests the opportunity to present oral argument in connection with the present motion for summary judgment.

Respectfully submitted,

Dated: July 16, 2006                    By:  /s/ Michael James Cronen
                                             Michael James Cronen

20

Harris Zimmerman, Cal. Bar No. 22653
Michael James Cronen, Cal. Bar No. 131087
ZIMMERMAN & CRONEN, LLP
1330 Broadway, Suite 710
Oakland CA 94612
Telephone:510.465.0828
Facsimile:510.465.2041
E-mail: mcronen@zimpatent.com


Sarah Cooleybeck (BBO#631161)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone:617.832.1000
Facsimile:617.832.7000
E-mail: scooleybeck@foleyhoag.com

Attorneys for Defendant and Counterclaimant,
FastCap, LLC

21

## **CERTIFICATE OF SERVICE**

I hereby certify that a true a correct copy of the foregoing was served upon counsel listed below by electronically filing with the court on July 17, 2006:

Matthew Lowrie, Esq.
Aaron W. Moore, Esq.
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street, 11th Fl.
Cambridge, MA 02142

Dated: July 17, 2006                                      /s/ Jennifer L. Lynx

22