IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ZIPWALL, LLC | ) | Civil Action No.: 05-11852 REK |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | **STATEMENT OF UNDISPUTED** |
| | ) | **MATERIAL FACTS IN SUPPORT OF** |
| | ) | **FASTCAP'S MOTION FOR SUMMARY** |
| v. | ) | **JUDGMENT OF NON-** |
| | ) | **INFRINGEMENT AND/OR** |
| | ) | **INVALIDITY OF U.S. PATENT NOS.** |
| FASTCAP, LLC | ) | **6,209,615, 6,924,004 and 6,953,076** |
| | ) | |
| Defendant and Counterclaimant. | ) | **(Local Rule 56.1)** |
| | ) | |

Pursuant to Local Rule 56.1, defendant and counterclaimant FastCap LLC ("FastCap")

hereby submits its statement of material facts of record as to which there is no genuine issue to be tried

as follows:

1. Plaintiff ZipWall, LLC ("Zipwall") alleges FastCap's infringement of three patents that

issued from continuation applications covering a spring-loaded partition mount and clip for installing

plastic sheeting to create dust or paint barriers in construction zones.   The patents-in-suit include: U.S.

Patent No. 6,209,615 ("the '615 patent"); U.S. Patent No. 6,924,004 ("the '004 patent"); and U.S.

Patent No. 6,953,076 ("the '076 patent").   See, Declaration of Michael Cronen filed herewith and

incorporated herein, Exhibit A ('615 patent ); Exhibit G  ("the '004 patent"); and Exhibit N ("the '076

patent")

    2.  Plaintiff Zipwall sells spring-loaded partition mounts and clips to painters, carpenters, floor

refinishers, etc.  The mounts and clips "hold common plastic sheeting between ceilings and floors to

create a barrier to control the spread of job-site dust."  <u>See</u>, Declaration of Paul Akers filed herewith

and incorporated herein, <u>Exhibit A</u>  (pages from Plaintiff's website).  According to Zipwall's website,

the "spring exerts compressive pressure that holds the plastic sheeting in place at the floor and ceiling."

Id.  The spring action, which compresses approximately 2-3 inches, also serves to adjust the fit of the

plastic sheeting.  Users "simply compress the spring mechanism and tuck the plastic sheeting at the head

or foot of the poles."  Id.  Once in place, the spring is "released to load pin the sheeting in place for a

tight fit top to bottom."  Id.

    3.  Defendant FastCap manufactures, markets and sells a line of innovative products to

professional cabinet makers and serious wood workers.  See, Akers Dec., ¶3, <u>Exhibit B</u> (page from

FastCap's website).  Two of FastCap's products, The 3rd Hand HD™ ("3rd Hand") and The Little

Hand HD™ ("Little Hand") support poles, are the subject of Zipwall's infringement allegations in this

case. Id.

    4.  FastCap's 3rd Hand and Little Hand support poles are not spring-loaded curtain mounts.

Akers Dec. ¶4 Instead, FastCap's products were designed to "provide a support, brace, or clamp" to

support a load of up to seventy pounds.  Id.  For example, the 3rd Hand and Little Hand are used to

"secure wood trim or crown molding in place for nailing" and to "apply pressure to glued flooring

material while it dries."  Id. They are also used "to hold drywall in place overhead or, when mounted

horizontally, they may be used as a load stabilizer to prevent material from shifting in transport."  Id.

5.  FastCap's 3rd Hand and Little Hand support poles do not have any compressive

mechanism whatsoever.  Akers Dec.  ¶5.  Instead, the length of the  accused products adjusts and locks

into place to maintain fixed lengths, like an adjustable tire jack commonly used to support an automobile

while changing tires.  Id.  To accomplish this, FastCap's accused products  employ two separate

components as                                                                                              shown in the

following illustration:



6.  In the above illustration, the first component comprises the "ergonomic pump handle", "lifting tab" and "pump spring".  Akers Dec., ¶6.   This component advances the galvanized extension rod to extend the length of the support pole.  Id. This is accomplished by squeezing the pump handle which, in turn, pushes up on the bottom of one side of the lifting tab.  Id.  This causes the lifting tab to lift at an angle and frictionally engage the galvanized extension rod.  Each squeeze of the pump handle extends the length of the rod approximately 3/8 of an inch.  Id.

7.  As illustrated above, the second component of FastCap's support poles comprises a "release tab" and "lower spring" that locks and releases the galvanized extension rod.  Akers Dec., ¶7.  As can be seen in the above, the lower spring pushes the release tab down at an angle, thereby causing the release tab to frictionally engage the extension rod and hold it in place.  Id.  The lock on the extension rod is released by pushing up against the bottom of the release tab, which pushes up against the lower spring.  Id.  This levels the angle of the release tab and disengages it from the extension rod, allowing the rod to move freely.  Id.

8.  Previously, FastCap sold an accessory for its 3rd Hand and Little Hand products called a dust barrier or "DB" clip.  Akers Dec., ¶8.  A photograph of FastCap's DB clip in relation to the  "Top 3"x3" foot" of FastCap's support poles is set forth on the next page as follows:

4



As can be seen in this photograph, FastCap's DB clip had a single engagement member, or "leg",

extending along two sides of the clip.  Id. This leg was adapted to slide onto the "Top 3"x3" foot"

portion of FastCap's support poles as shown above.  Id.  The DB clip in the above photograph includes

and adhesive label with written instructions stating "remove clip for better gripping" because the upper

surface of the clip was smooth.  Id.

     9.  The '615 patent was the first  to issue of the three patents in-suit.[1]  It issued on April 3,

_____

    [1]  The patents-in-suit are all part of a family of continuation applications that include application
No. 10/865,174, now the '076 patent,  which is a continuation of application No. 10/301,233,  now

2001.  See, Document 3-1 (Amended Complaint, p.1:15).  ZipWall contacted FastCap several years

ago alleging FastCap's infringement of the '615 patent.  Akers Dec. ¶9.  Upon examination and study,

however, FastCap determined its products clearly do not infringe the '615 patent.  FastCap

communicated its non-infringement determination to Zipwall several years ago and Zipwall dropped its

infringement allegations at that time.  Id.

    10.  The '004 patent issued recently, on September 13, 2005.  The same day the '004 patent

issued, Zipwall filed its Complaint in this case.    The '004 patent was the only patent alleged in Zipwall's

original Complaint.  See, Document 1-1 (Complaint).

    11.  The '076 patent issued on October 11, 2005, approximately one month after Zipwall filed

its Complaint.  The same day the '076 patent issued, Zipwall filed its Amended Complaint alleging

infringement of the '076 patent.  See, Document 3-1 (Amended Complaint, p.1:16).  Zipwall added the

'615 patent to its Amended Complaint. Compare, Document 1-1 (Complaint) and Document 3-1

(Amended Complaint).

    12.  The claims of the '615 patent are directed to a curtain mount and mounting system having a

spring-loaded "compressive mechanism" within the curtain mount.  The '615 patent has two independent

claims, claims 1 and 19, and 28 dependent claims.  See, Cronen Dec., Exhibit A ('615 patent ).

    13.  Independent Claim 1 of the '615 patent recites:

_____

the '004 patent, which is a continuation of application No. 09/884,337, now U.S. Patent No.
6,508,295, which is a continuation of application No. 09/613,645, now U.S. Patent No. 6,321,823,
which is a continuation of application No. 09/302,122, now the '615 patent, which is a continuation of
application No. 08/740,372, now U.S. Patent No. 5,924,469.

A mount attachable to an extension pole for installing a curtain comprising:

> an interface at a proximal end of said mount adapted for coupling the mount to an extension pole;
>
> **a compression mechanism** along a longitudinal axis of said mount;
>
> a head at a distal end of said mount having an upper first engaging surface extending transverse to said longitudinal axis, **said head and said interface coupled to opposite ends of said compression mechanism, said compression mechanism biased to urge said head away from said interface;**
>
> a clip having a lower second engaging surface adapted to substantially interface with said engaging surface, and an upper surface; and
>
> a retaining member for removable securing the first and second engaging surfaces, such that when in an engaged position, the first and second engaging surfaces substantially interface, and such that when in a disengaged position, the first and second engaging surfaces separate."

Cronen Dec. Exhibit A (615 patent) (Emphasis added).

14. Independent claim 19 of the '615 patent recites:

> A mounting system for installing a curtain comprising:
>
> a pole having proximal and distal end, said pole having a longitudinal axis;
>
> a foot coupled to said proximal end of said pole;
>
> a head having an upper first engaging surface extending transverse to said longitudinal axis, said head coupled to said distal end of said pole;
>
> a **compressive mechanism between said foot and said head**; and
>
> a clip having a lower second engaging surface adapted to substantially interface with said first engaging surface, and an upper surface; and
>
> a retaining member for removably securing the first and second engaging surfaces, such that when in an engaged

7

position, the first and second engaging surfaces
substantially interface, and such that when in a
disengaged position, the first and second engaging
surfaces separate.

Id.  (615 patent) (emphasis added).

15.  The '615 patent specification, i.e. the written description and drawings, describe and show
the "compressive mechanism" of independent claims 1 and 19 as "a spring under compression between
an inner wall of the mount and the head" such that "[t]he head is urged toward the ceiling by said
compressive mechanism". Cronen Dec. Exhibit A ('615 patent, col. 2, lines 29-30 and 34-36).   The
specification also states that "the combined length of the pole and mount is slightly longer than the
distance between the floor and ceiling."   Id. ( col. 2, Line 64 through col. 3, line 1).   This allows "the
mount and pole" to be "compressed between the floor and ceiling ... [and] [t]his compressive force
operates to urge the head toward the ceiling."  Id. (col. 3, lines 4-6).

16.  The Detailed Description of Preferred Embodiments also supports this construction of the
"compressive mechanism" element of claims 1 and 19.  In the preferred embodiment , "[e]ach curtain
mount includes a compression mechanism, for example a spring, which operates to urge the head 28
against the ceiling 32, thereby securing the curtain 30." Id.  ('615 patent, col. 4, lines 17-19).  The
claimed compressive mechanism also "provides longitudinal stability" to the mount.  Id.  (col. 5, lines
32-33).

17.  The written description goes on to describe the claimed invention as comprising a
combined "pole" and "mount" where the length of the "fully extended curtain mount 24" and pole is
"longer than the distance from the floor 34 to the ceiling 32". Cronen Dec. Exhibit A ('615 patent, col.

8

4, lines 20-24).  As stated in the patent, "[f]or example, if the compression range of the spring is 2-3

inches, then the total length of the pole 22 and mount 24 can be made <u>2-3 inches longer than the floor-</u>

<u>to-ceiling 32 height</u>, causing the spring to be compressed when the system is installed."  Id. (col. 4, lines

25-29)(emphasis added).   Therefore, "[t]he tension of the spring 50 must be high enough to support

the weight of the installed curtain", but also "<u>low enough such that the head 28 of the curtain mount 24</u>

<u>does not push through the ceiling during installation</u>."  Id. (col. 5, lines 54-61) (emphasis added).

    18.  The compressive mechanism of the '615 patent is clearly shown in the patent drawings.

For example, Fig. 3C shows "a force F generated by the compression of the spring operating on the

plunger 46" that "urges the head 28 against the ceiling 32" and this "longitudinal compression of the

spring acts outwardly to secure the curtain 30 against the ceiling 32."  Cronen Dec. <u>Exhibit A</u> ('615

patent at col. 6, lines 10-16); See also, Fig. 4C (compressive force of the mechanism is identified by

the letter  "F" and an upward arrow).

    19.  The Patent Examiner rejected all of the original claims of the '615 patent application.

Cronen Dec. <u>Exhibit B</u> (Office Action Summary dated June 23, 1999).  In response to this rejection,

the applicant amended independent claim 1 to narrow the definition of the recited  "compression

mechanism" as follows: "<u>said compression mechanism when under compression being biased to urge</u>

<u>said head away from said interface</u>."  <u>Cronen Dec.</u>, Exhibit C (Amendment After Final (Paper 13)

dated 2-3-2000) (emphasis added).  The applicant explained this amendment as follows:

> [I]n the present invention as claimed in amended Claim 1, the
> "compression mechanism", when "under compression", is "biased to
> urge said head away from said interface".  In this manner, the
> configuration of the present invention is outwardly biased in that the head
> and interface are biased by the compression mechanism to be urged

9

away from each other, ... . <u>Id</u> (Amendment After Final dated 2-3-2000,
pp. 4-5).

20.  Despite the above amendment and argument, the Patent Examiner refused to enter the

proposed amendment.  Conen Dec. <u>Exhibit D</u> (Advisory Action, Part of Paper No. 14).

21.  Thereafter, the applicant telephoned the Examiner and they held a telephone interview,

summarized by the Examiner as follows::

> Discussed the differences between the instant invention, best shown in
> Fig's 3 and 4, and Cunningham, Du Boff, and Kindl [prior art patents].
> <u>The examiner suggested adding the limitation, to independent claim 1,</u>
> <u>of the compression mechanism being biased to urge the head away</u>
> <u>from the interface</u>, and to elaborate on the dynamics of the compression
> mechanism of Cunningham ... .  Cronen Dec. <u>Exhibit E</u> (Interview
> Summary, Paper No. 15) (emphasis added).

22.  The applicant responded with a third amendment to independent claim 1, as indicated by

the following underlined portion of the amended claim:

> 1.      (Three times amended) A mount attachable to an
>         extension pole for installing a curtain comprising: ...
> a compression mechanism along a longitudinal axis of said
>         mount;
> a head at a distal end of said mount having an upper first
>         engaging surface extending transverse to said
>         longitudinal axis, said head and said interface coupled
>         to opposite ends of said compression mechanism, **said**
>         **compression mechanism** [when under compression
>         being] **biased to urge said head away from said**
>         **interface** ;"

> See, Cronen Dec., <u>Exhibit F</u> (Supplemental Amendment After Final (In
> Response To Advisory Action), Paper No. 18) (Emphasis added).

23.  FastCap's 3rd Hand and Little Hand products are not spring-loaded curtain mounts as

claimed in the '615 patent. They are heavy duty support poles. Their length adjusts and locks into place to support a load of up to seventy pounds. They do not include any spring or other compressive mechanism that is biased to urge the head of the support poles toward the ceiling as claimed and described in the '615 patent. Akers Dec., ¶¶3-8.

24. FastCap's accused support poles are not to be adjusted to be longer than the distance between the floor and ceiling without causing damage to their surfaces. For example, if FastCap's accused support poles are adjusted to be "<u>2-3 inches longer than the floor-to-ceiling 32 height</u>", as in the '615 patent, then, unlike the claimed invention, FastCap's support poles they would likely "<u>push through the ceiling during installation</u>." Id. ('615 patent, Col. 4, lines 25-29 (emphasis added). Akers Dec., ¶ 10.

25. FastCap's 3rd Hand and Little Hand products do not have a "compressive mechanism" with "a force F generated by the compression of [a] spring" that is "biased to urge" the head of the poles against the ceiling. Akers Dec., ¶ 11. Indeed, FastCap's support poles would likely push through a ceiling if extended 2-3 inches longer than the distance between a floor and ceiling. Id.

26. The claims of the '004 patent are directed to an attachable mount and mounting system for installing a curtain using a specific "clamp" and "clip" and, in the case of independent claims 1, 17 and 45, the same "compressive mechanism" discussed above in connection with the '615 patent. See, Cronen Dec., <u>Exhibit G</u> ('004 patent).

27. The '004 patent has 61 claims, including independent claims 1, 17, 35, and 45.

28. Independent claims 1, 17 and 45 of the'004 patent recite a "mounting system" and an attachable "mount" for installing a curtain.

11

29. Independent claims 1, 17 and 45 of the '004 patent each recite the same spring-loaded "compression mechanism" discussed above in connection with the claims of the '615 patent.

30. Independent claims 1, 17 and 45 of the '004 patent recite a "clamp" for coupling the curtain that includes:

> an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotally coupled to the head such that the engagement arm pivots between a secure position and an open position. Cronen Dec., <u>Exhibit G</u>.

31. Independent claim 35 of the '004 patent recites a "mounting system for installing a sheet of material" that includes a "clip" for coupling the sheet material to the head of a pole. The recited "clip" of claim 35 has **"**a lower second engaging surface that removably engages the upper first engaging surface of the head for mounting a sheet of material therebetween, <u>and a plurality of legs extending transverse to the second engaging surface of the clip</u> to removably secure the clip to the head, <u>the plurality of legs extending about at least one side surface</u> and a portion of a lower surface of the head when the clip is engaged with the head." Cronen Dec., <u>Exhibit G</u> ('004 patent) (emphasis added).

32. The '004 patent issued on a continuation application that includes the '615 patent as a parent application.

33. The written description and drawings of the '004 patent and the '615 patent are identical.

34. Independent claims 1, 17 and 45 of the '004 recite a "clamp ... that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotally coupled to

the head such that the engagement arm pivots between a secure position and an open position."

Cronen Dec. Exhibit G.

35.  Fig 8B of the '004 patent drawings shows the "clamp" of independent claims 1, 17 and 45.

36.  Independent claim 35 of the '004 patent recites "[a] mounting system for installing a sheet of material" including an "adjustment mechanism" and a "clip" for coupling a curtain to the head of the mount.  The recited "clip" of claim 35 requires a "plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head."

37.  The  "clip mount embodiment" of independent claim 35 is illustrated in Fig. 4B of the '004 patent drawings.

38.  As shown in Fig 4B of the '004 patent drawings,  the "clip" of claim 35 has a "plurality of legs extending about at least one side surface" i.e. the drawing shows two "legs 65" on one side and what appears to be at least one leg on the other side of "curtain clip 64". Cronen Dec., Exhibit G  ('004 patent, Col. 6, lines 36-40).

39.  The Description of the Preferred Embodiment states that the "curtain clip 64 having legs 65 is adapted to snap onto the head 28" and "clip legs 65 include tabs 67 which snap around the bottom face of the head 28 providing a secure fit." . Cronen Dec., Exhibit G  ('004 patent, Col. 6, lines 36-40).

40.  The original '004  patent application included 43 claims.  These were all rejected by the Patent Examiner.  See, Cronen Dec., Exhibit H  (Office Action dated February 10, 2003).

41.  In response, the applicant amended the original claims, added fifteen new claims, and

submitted arguments to overcome the rejection.  See, Cronen Dec., <u>Exhibit I</u> (Amendment A dated

July 18, 2003).

42.  In a subsequent Office Action, the Patent Examiner rejected both the original and newly-

submitted claims.   Cronen Dec., <u>Exhibit J</u>  (Office Action dated November 4, 2003).

43.  After a telephone interview between the applicant and the Patent Examiner on April 27,

2004, the Examiner issued an Interview Summary stating:

> Discussed adding language to independent claims 1 and 22 further
> defining the clamp engagement arm extending outwardly or
> perpendicularly from a side surface of the head or from the direction of
> the compression mechanism: to independent claim 44 further defining
> the clip's lower surface as "removably engaging" the upper surface of
> the head; and cancelling claims 53-58, to thereby possibly place the
> application into condition for allowance."

> Cronen Dec., <u>Exhibit K</u> (Interview Summary dated April 27, 2004).

44.  The applicant thereafter submitted amended claims to further define the perpendicular

clamp arm and the plurality of legs of clip.   Cronen Dec., <u>Exhibit L</u> (Preliminary Amendment dated

June 21, 2004).  The applicant "amended independent claims 1 and 22" to define a "clamp ... including

an engagement arm that engages an <u>exterior side surface</u> of the head".  Id.  (Preliminary Amendment, p.

10:7-8, 23-24) (Emphasis in original).

45.  The Patent Examiner once again rejected all of the  pending claims as unpatentable over

certain prior art patents.

46.  In response,  the applicant submitted an "Amendment C" with further amendments to the

claims and arguments.  Specifically, the applicant amended independent claims 1 and 22 to narrow the

definition of the recited "<u>clamp</u>" as <u>"being pivotably coupled to the head such that the engagement arm</u>

pivots between a secure position and an open position." Cronen Dec., <u>Exhibit M</u> (Amendment C

dated November 12, 2004, pp.2:13-14; 5:2-3) (emphasis in original).

47.  The applicant also amended independent claim 44 (now claim 35) as follows: "<u>the plurality</u>

<u>of legs extending about at least one side surface and a portion of a lower surface of the head when the</u>

<u>clip is engaged with the head</u>."  Id.   (Amendment C, p. 7:20-22) (emphasis in original).  In support of

this amendment, the applicant argued that the prior art cited by the Patent Examiner  "fails to teach or

suggest 'a clip having ... a plurality of legs extending transverse to the second engaging surface of the

clip to removably secure the clip to the head, the plurality of legs extending about at least one side

surface and a portion of a lower surface of the head when the clip is engaged with the head'".  Id.

(Amendment C, p.14:11-19).

48.  The '004 patent thereafter issued on September 13, 2005.

49.  FastCap's 3rd Hand and Little Hand products do not have the "compression  mechanism"

recited in claims 1, 17 and 45 of the '004 patent.  Akers Dec, ¶10.

50.      FastCap's 3rd Hand and Little Hand products also do not have the recited  "clamp" of

claims 1, 17 and 45, that includes "an engagement arm that engages an exterior side surface of the head

to secure a curtain the side surface of the head at an engagement location that is lower than a top

portion of the head, the clamp being pivotably coupled to the mount such that the engagement arm

pivots between a secure position and an open position".  Akers Dec, ¶6.

51.  Regarding the "clip" of independent claim 35, FastCap previously marketed a DB Clip

accessory for its support poles; however, as shown above, <u>FastCap's former DB clip did not include a</u>

<u>"plurality of legs extending about at least one side surface </u> ... of the head when the clip is engaged with

15

the head" as recited in claim 35.  Instead, FastCap's former DB clip had a single leg extending about

two sides, the clip being adapted to slide onto the "Top 3" x 3" foot" of FastCap's accused support

poles.

52.  The '076 patent claims are directed to methods and systems for installing or  mounting

curtains using specific coupling mechanisms for attaching curtains to curtain mounts.  The '076 patent

has 96 claims, including independent claims 1, 17, 29, 40, 51, 63, 64, 73, 78, 86, and 91.  Cronen

Dec., <u>Exhibit N</u> ('076 patent).

53.  Claim 1 of the '076 patent recites:

> 1.  A method of installing a curtain to form a room partition between a
> floor and ceiling using a partition mount having an elongated portion, a
> first end, and a second end, the second end having a mechanism to
> couple to the curtain, the method comprising:
>> coupling a curtain to the mechanism on the second end, the
>> mechanism at the second end interfacing with the
>> elongated portion <u>at a **hinged joint** such that the
>> mechanism is pivotable with respect to the elongated
>> portion;</u> and
>> mounting the partition mount such that a portion of the first end
>> of the partition mount engages the floor and a portion of
>> the mechanism that couples the curtain at the second
>> end of the partition mount directly engages the ceiling.

> Cronen Dec., <u>Exhibit N</u> ('076 patent)

54.  Independent claims 17, 40, 51, 63,73 of the '076 patent recite "curtain mounting"

system[s]" and independent claim 86 thereof recites "[a] method of installing a curtain to form a room

barrier". Cronen Dec., <u>Exhibit N</u> ('076 patent). **Each** of these claims is limited to a structure for

coupling the "head" and "clip" that includes "multiple protrusions" that mate with corresponding

"multiple retention apertures"  to secure the "curtain between the clip and head".  Id.

16

55.  The coupling mechanism of independent claims 29, 40, and 63 of the '076 patent includes a "clip" with "a high-friction material applied to an upper surface thereof to prevent slipping when engaging a room surface."  Id.  Claim 78 recites a method in which the head, or "first end", of the "partition mount engages the floor" and "a mechanism" on a "second end" of the partition mount includes "a high-friction upper surface [that] ... directly engages the ceiling."       56.  Independent Claims 1, 64, 78, 86 and 91 of the '076 patent claims all recite "method[s] of installing a curtain to form a room partition between a floor and a ceiling using a partition mount".  Cronen Dec., <u>Exhibit N</u> ('076 patent).

57.  The '076 patent issued from a continuation application covering the same subject matter as the '615 and '004 patents.  Indeed, the written description and drawings of all three patents-in-suit are identical.

58.  The "hinged joint"coupling mechanism of independent claim 1 is shown as "hinge 99" in Fig. 8C of the '076 patent.

59.  The "clip" of independent claims 17, 40, 51, 63,73, 86, having "multiple protrusions that mate with corresponding retention apertures", as well as the "high-friction material" of independent claims 29, 40, and 63, and the "high-friction upper surface" of claim 78, are shown in  Fig 9B of the '076 patent.  Cronen Dec., <u>Exhibit N</u> ('076 patent).

60.  The original '076 patent application sought 82 claims.  All of these were initially rejected by the Patent Examiner.  See, Cronen Dec., <u>Exhibit O</u>  (Office Action dated October 13, 2004).

61.  The applicant amended independent claim 1 of the '076 patent as indicated by the following underlined text: "coupling [[the]] <u>a</u> curtain to the mechanism on the second end <u>,the</u>

17

<u>mechanism at the second end interfacing with the elongated portion at a hinged joint such that the</u>

<u>mechanism is pivotable with respect to the elongated portion</u>".  Cronen Dec. <u>Exhibit P</u> ("Amendment

A",  p.2:8-10).

62.  The applicant also amended various "clip" claims of the '076 patent as indicated by the

underlined portion of the following: "One of the clip and head including <u>a body and</u> multiple protrusions

<u>extending from the body</u> at an interior portion thereof that mate with multiple corresponding retention

apertures on the other of the clip and head <u>at an interior portion thereof</u> ... ."  Id.  (Amendment A,

pp.4:12-16 ).

63.  Other claims were similarly amended to recite: "<u>one of the clip and head including multiple</u>

<u>protrusions that mate with multiple retention apertures on the other of the clip and head to secure a</u>

<u>portion of the curtain between the clip and head</u>."  Id.  (Amendment A, p.11:1-10 ).

64.  Various claims were also amended to include the following: "<u>The clip including a pad of</u>

<u>high-friction material applied to an upper surface thereof to prevent slipping when engaging a room</u>

<u>surface.</u> "  Id.  (Amendment A, pp.7:2-6:16).

65.  In addition to amending the claims as set forth above, the applicant added 18 new claims

to the application, identified as claims 83-101.   (Amendment A, pp.14:1-17:6).  All of the newly

added claims were for methods "of installing a

curtain to form a room partition between a floor and a ceiling using a partition mount".  Id.

66.  The Examiner issued a Notice of Allowability of the '076 patent claims without any

comment regarding the applicant's amendments or the newly added "room partition" claims.

67.  FastCap's accused 3rd Hand and Little Hand support poles  do not infringe the claims of

18

the '076 patent because they do not have any of the curtain "coupling mechanism[s]" recited in the '076 patent claims.

68.  FastCap's 3rd Hand and Little Hand support poles do not have a "pivotable", "hinged joint", coupling mechanism as recited in independent claim 1 of the '076 patent.

69.  FastCap's 3rd Hand and Little Hand support poles do not include any "coupling mechanism" having "multiple protrusions that mate with corresponding retention apertures at an interior portion thereof" as recited in independent claims 17, 40, 51, 63,73, 86.

70.  FastCap's 3rd Hand and Little Hand support poles do not have the "high-friction material" and "high friction upper surface" of the curtain coupler/clip recited in independent Claims 29, 40, 63 and 78 of the '076 patent.

71.  The DB clip previously sold by FastCap did not have any "high-friction material" or "high friction upper surface" whatsoever.  In fact, as set forth above, the DB Clip included a printed label with written instructions to "remove clip for better gripping" because the upper surface of the clip was smooth.  Akers Dec. ¶8.

72.  The pivoting clamp and the multi-legged, snap-on clipof the '076 patent claims are entirely absent from FastCap's accused products.

Respectfully submitted,

Dated: July 15, 2006                By:  /s/ Michael James Cronen
                                          Michael James Cronen

                                     Harris Zimmerman, Cal. Bar No. 22653
                                     Michael James Cronen, Cal. Bar No. 131087
                                     ZIMMERMAN & CRONEN LLP
                                     1330 Broadway, Suite 710

19

Oakland CA 94612
Telephone:510.465.0828
Facsimile:510.465.2041
E-mail: mcronen@zimpatent.com

Sarah Cooleybeck (BBO#631161)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone:617.832.1000
Facsimile:617.832.7000
E-mail: scooleybeck@foleyhoag.com

Attorneys for FastCap, LLC

20

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that a true a correct copy of the foregoing was served upon counsel listed below by electronically filing with the court on July 17, 2006:

       Matthew Lowrie, Esq.
       Aaron W. Moore, Esq.
       Lowrie, Lando & Anastasi, LLP
       Riverfront Office Park
       One Main Street, 11th Fl.
       Cambridge, MA 02142

Dated: July 17, 2006                                 <u>/s/ Jennifer L. Lynx</u>