IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ZIPWALL, LLC                                    )
                                                )          Civil Action No.: 05-11852 REK
            Plaintiff and Counterclaim Defendant,  )
                                                )     **DECLARATION OF MICHAEL**
                                                )     **CRONEN IN SUPPORT OF**
v.                                              )     **FASTCAP'S MOTION FOR**
                                                )     **SUMMARY JUDGMENT OF**
                                                )     **NON-INFRINGEMENT AND/OR**
FASTCAP, LLC                                    )     **INVALIDITY OF PLAINTIFF'S**
                                                )     **ALLEGED U.S. PATENT NOS.**
            Defendant and Counterclaimant.       )     **6,209,615, 6,924,004 and 6,953,076**
                                                )

I, Michael Cronen declare as follows:

    1.  I am a partner in the firm Zimmerman & Cronen, LLP, counsel for Defendant

and counterclaimant FastCap, LLC.

    2.  Attached hereto as Exhibit A  is a true and correct copy of U.S. Patent No. 6,209,615

("the '615 patent").

    3.  Attached hereto as Exhibit B is a true and correct copy of an "Office Action

Summary" dated June 23, 1999, issued by the United States Patent and Trademark Office

("PTO") in connection with the '615 patent application.

    4.  Attached hereto as Exhibit C is a true and correct copy of an "Amendment After

1

Final" (Paper 13), dated 2-3-2000, filed in the PTO in connection with the '615 patent application.

5. Attached hereto as <u>Exhibit D</u> is a true and correct copy of an "Advisory Action", Part of Paper No. 14, mailed on February 17, 2000, by the PTO in connection with the '615 patent application.

6. Attached hereto as <u>Exhibit E</u> is a true and correct copy of an "Interview Summary", Paper No. 15, Mailed on March 1, 2000, by the PTO in connection with the '615 patent application.

7. Attached hereto as <u>Exhibit F</u> is a true and correct copy of "Supplemental Amendment After Final (In Response To Advisory Action)", Paper No. 18, dated February 29, 2000, and filed in the PTO in connection with the '615 patent application.

8. Attached hereto as <u>Exhibit G</u> is a true and correct copy of U.S. Patent No. 6,924,004 ("the '004 patent")

9. Attached hereto as <u>Exhibit H</u> is a true and correct copy of an "Office Action Summary" and "Detailed Action" dated February 10, 2003, issued by the PTO in connection with the '004 patent application.

10. Attached hereto as <u>Exhibit I</u> is a true and correct copy of an "Amendment A" dated July 18, 2003, filed in the PTO in connection with the '004 patent application.

11. Attached hereto as <u>Exhibit J</u> is a true and correct copy of an "Office Action Summary" and "Detailed Action" dated November 4, 2003, issued by the PTO in connection with the '004 patent application.

12. Attached hereto as <u>Exhibit K</u> is a true and correct copy of an "Interview Summary",

2

dated April 27, 2004, issued by the PTO in connection with the '004 patent application.

13.  Attached hereto as <u>Exhibit L</u> is a true and correct copy of a "Preliminary Amendment", dated June 21, 2004, filed in the PTO in connection with the '004 patent application.

14.  Attached hereto as <u>Exhibit M</u> is a true and correct copy of an "Amendment C", dated November 12, 2004, filed in the PTO in connection with the '004 patent application.

15.  Attached hereto as <u>Exhibit N</u> is a true and correct copy of U.S. Patent No. 6,953,076 ("the '076 patent).

16.  Attached hereto as <u>Exhibit O</u> is a true and correct copy of an "Office Action Summary" and "Detailed Action", dated October 13, 2004, issued by the PTO in connection with the '076 patent application.

17.  Attached hereto as <u>Exhibit P</u> is a true and correct copy of an "Amendment A" dated March 14, 2005, filed in the PTO in connection with the '076 patent application.

18.  I have personal knowledge of the foregoing and could and would testify competently thereto if called upon as a witness.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of July, 2006 at Oakland, California.

Michael Cronen

US006209615B1

(12) **United States Patent**
Whittemore

(10) Patent No.: **US 6,209,615 B1**
(45) Date of Patent: ***Apr. 3, 2001**

(54) **PARTITION MOUNT**

(75) Inventor: **Jeffrey Whittemore**, Arlington, MA (US)

(73) Assignee: **Zipwall, LLC**, Cambridge, MA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/302,122**

(22) Filed: **Apr. 29, 1999**

**Related U.S. Application Data**

(63) Continuation of application No. 08/740,372, filed on Oct. 29, 1996, now Pat. No. 5,924,469.

(51) Int. Cl.[7] .................................. **A47H 13/00**
(52) U.S. Cl. ..................... **160/368.1**; 160/350; 160/351; 160/402; 24/92; 24/563; 248/200.1
(58) Field of Search .................................... 160/350, 351, 160/368.1, 330, 338, 329, 379, 380, 399, 402; 248/200.1, 354.1; 403/109.4, 109.5, 326, 329; 24/92, 113 R, 113 MP, 114, 459, 563, 570

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 827,000 | 7/1906 | Dinsmore | 160/402 |
| 2,219,169 | 10/1940 | Alter | 248/200.1 X |
| 2,474,158 | 6/1949 | Neeley | 160/402 |
| 2,816,769 | 12/1957 | Noble | 248/354.1 X |
| 2,903,227 | 9/1959 | De Kalb Key | 248/200.1 |
| 2,942,829 | 6/1960 | Stiffel | 248/200.1 X |
| 3,072,784 | 1/1963 | Mann | 248/200.1 X |
| 3,247,558 * | 4/1966 | Kaufman | 24/563 X |
| 3,327,310 | 6/1967 | Bethune et al. | 248/200.1 X |
| 3,333,808 | 8/1967 | Du Boff | 248/200.1 X |

| | | | |
|---|---|---|---|
| 3,350,120 | 10/1967 | Hinrichs | 248/200.1 X |
| 3,529,860 | 9/1970 | Jelley | 160/402 |
| 3,592,434 | 7/1971 | Murray | 248/200.1 X |
| 3,767,253 | 10/1973 | Kluetsch | 296/24 R |
| 3,792,510 | 2/1974 | Evett | 248/243 |
| 3,822,850 | 7/1974 | Elias | 248/200.1 X |
| 3,952,877 | 4/1976 | Kindl | 248/200.1 X |
| 4,139,101 | 2/1979 | Towfigh | 211/86 |
| 4,396,325 | 8/1983 | Joice-Cavanagh | 410/129 |
| 4,502,256 * | 3/1985 | Hahn | 24/459 X |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| 29605222 U | 6/1979 | (FR) . |
| 2411282 | 7/1979 | (FR) . |

OTHER PUBLICATIONS

"Quickprop," Brochure by Protecta Screen LTD, Aug. 1996.

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Samuels, Gauthier & Stevens, LLP

(57) **ABSTRACT**

In a spring-loaded curtain mount, the mount includes a pole interface at a proximal end, a compressive mechanism, and a head at a distal end. The pole interface is adapted to receive the end of a standard length adjustable pole or a painter's pole. The compression mechanism is disposed between the proximal end of the mount and the head. The mount includes a coupling device adapted to receive a portion of a curtain. During installation, the curtain mount is coupled to the end of an extension pole and the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. At ground level, a portion of the curtain is attached to the head of the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between the floor and the ceiling. This compressive force operates to urge the head toward the ceiling, securing the mount in place.

**30 Claims, 12 Drawing Sheets**



**US 6,209,615 B1**
Page 2

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,536,924 | * | 8/1985 | Willoughby | 24/563 X |
| 4,645,473 | | 2/1987 | Mochizuki | 403/314 X |
| 4,662,034 | * | 5/1987 | Cunningham | 24/92 X |
| 4,708,189 | | 11/1987 | Ward | 160/351 |
| 4,770,086 | | 9/1988 | Gabster | 98/50 |
| 4,794,974 | | 1/1989 | Melino | 160/330 |
| 4,874,028 | | 10/1989 | Lynch et al. | 160/332 |
| 4,969,241 | * | 11/1990 | Griffin | 24/92 X |
| 5,038,889 | | 8/1991 | Jankowski | 182/129 |
| 5,056,753 | | 10/1991 | Lunau et al. | 248/200.1 X |
| 5,129,774 | | 7/1992 | Balseiro et al. | 248/354.1 X |
| 5,308,280 | | 5/1994 | Dotson | 454/170 |
| 5,345,989 | | 9/1994 | Brophy | 160/354 |
| 5,375,303 | * | 12/1994 | Shenier | 24/92 X |
| 5,384,938 | * | 1/1995 | Frederick | 24/563 X |
| 5,388,283 | * | 2/1995 | Garnett | 24/563 X |
| 5,524,693 | | 6/1996 | Hamilton | 160/243 |
| 5,649,780 | * | 7/1997 | Schall | 403/109 |
| 5,884,424 | * | 3/1999 | Smith | 160/402 X |
| 5,897,085 | * | 4/1999 | Cronin | 248/200.1 |
| 5,940,942 | * | 8/1999 | Fong | 24/459 |

* cited by examiner



FIG. 1A



FIG. 5A



FIG. 5B



FIG. 1B



FIG. 1C



FIG. 2



FIG. 3A

FIG. 3B

FIG. 3C



FIG. 4B

FIG. 4C

FIG. 4A



FIG. 6



FIG. 7A

FIG. 7B



**FIG. 7C**



**FIG. 7D**



FIG. 7E



FIG. 7F



FIG. 8C

FIG. 8B

FIG. 8A



FIG. 9B

FIG. 9A

FIG. 9C

US 6,209,615 B1

1

# PARTITION MOUNT

## RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 08/740,372, filed Oct. 29, 1996 now U.S. Pat. No. 5,924,469.

## BACKGROUND OF THE INVENTION

Partition systems are often employed to separate portions of a building or room. Partitions serve as a barrier to dust, noise, light, odors, and the like. In construction zones, partitions are useful for protecting a clean area from a work area, for example, protecting an area where furniture and rugs are temporarily stored from an area where wood floors are being refinished.

Workers at construction sites often use rudimentary techniques for installing partitions. Some simply nail, screw, or staple the curtain or partition material to the floor, ceiling, and abutting walls, resulting in damage to their surfaces. Others tape or otherwise adhere a curtain or plastic sheet to the walls and ceilings. The tape usually fails to stick, but if it does stick, as the tape is removed, paint usually pulls off with the tape or adhesive is left behind.

Others employ more clever techniques for constructing partitions. U.S. Pat. No. 4,794,974 discloses a curtain wall having spring-loaded extendable support legs which support header elements aligned along the ceiling. A curtain is mounted to the header elements with fasteners along the length of each header element. This design suffers from several limitations. The support poles, header elements, fasteners, and curtain all comprise dedicated hardware, increasing manufacturing costs. Particularly, the curtain must be designed to accommodate the fasteners. In addition, installation appears to be awkward and time consuming due to the multitude of fasteners and the system appears to be top-heavy during installation.

U.S. Pat. No. 4,708,189 discloses a spring-loaded curtain support having a plurality of support units extending from the floor to the ceiling. Each support unit includes a stackable extension member, a telescoping section, a lower batten, and an upper batten. The lower and upper battens extend along the floor and ceiling respectively and interlock so as to provide a continuous batten along the floor and ceiling. A curtain is designed to loop around the upper batten and accommodate the extension poles. This design again requires dedicated hardware, including a curtain which is designed specifically to accept a particular upper batten size and shape and a particular extension pole. The structure is bulky and appears tedious to install.

U.S. Pat. No. 5,308,280 discloses a coal mine ventilation curtain support. An adjustable extension pole is erected between the floor and ceiling of a mine. A curtain support member compresses between the extension pole resting on the floor, and the ceiling such that the compressive force urges the support member against the ceiling, thereby securing a curtain in place against the ceiling. Although this design accommodates any type of curtain material, it again suffers from the limitation of requiring dedicated hardware as the support member is designed for a particular extension pole. In addition, installation appears challenging in rooms with tall ceilings as the curtain is installed after the mount is raised and installed. Following installation of the support member, an installer must climb up to the ceiling and pull back a leg of the support member, insert a curtain and snap the support member back into the ceiling. In a home construction project, the snapping action may damage the

2

ceiling. In addition, for ceilings higher than the reach of the installer, this design may prove to be challenging to install. This design presents the further unfortunate possibility that the installer could jam his fingers between the support member and ceiling.

## SUMMARY OF THE INVENTION

The present invention is directed to a partition mount apparatus and method which overcome the limitations of the prior art. The inventive method and apparatus are applicable to use in construction zones in preventing contaminants such as dust and paint from entering clean areas in a home or office. The invention may also be used as a temporary visual, odor, or sound barrier, depending on the curtain material employed. The present invention offers the advantages of accommodating standard extension poles, for example, painters poles, with standard threads, and is compatible with a variety of commercially-available curtain or drape materials, for example plastic, cloth, or the like. The invention is a "clean" system designed to be installed and removed without damaging or otherwise marking the ceiling, floor or walls in the construction zone. Assembly is easy and fast and can be accomplished by a single individual. In a preferred method for assembling the partition of the present invention, the curtain mounts and curtain are first assembled on the floor and raised to the ceiling permitting safe installation in rooms with high ceilings, for example cathedral ceilings.

One embodiment of the invention comprises a spring-loaded mount including a hole at a proximal end, a compression mechanism, and a head at a distal end. The hole is adapted to receive the end of a standard length-adjustable pole or painters pole. In a preferred embodiment, the compressive mechanism comprises a spring under compression between an inner wall of the mount and the head. The head is urged toward the ceiling by the compressive mechanism, providing longitudinal rigidity to the installed mount. The head preferably interfaces with the mount at a swivel joint so that the mount can be installed at a range of orientations relative to the ceiling.

The head preferably includes a coupling device, for example, a Velcro™ hook and loop fastener strip, a hook, or a clip, adapted to receive a portion of a curtain. In a first preferred embodiment of the invention, the face of the head includes a sheet of Velcro™ hooks which mates with a sheet of Velcro™ loops attached to the curtain. On the side of the curtain opposite the Velcro™ loops, a high-friction material provides friction between the mount and the ceiling, so that the curtain is less likely to slide relative to the ceiling thereby providing lateral rigidity. In a second preferred embodiment of the invention, a removable clip couples the curtain to the head. The clip is adapted to receive a section of curtain material and snap on or otherwise secure to the head. High friction material attached to the back of the clip provides lateral rigidity as described above.

In alternative embodiments, the curtain mount may be adapted to receive poles without threads, or may include a pin for interfacing with a corresponding hole in a pole. Furthermore, the elements of the curtain mount may be distributed along the pole. The extension poles do not necessarily need to be adjustable in situations where the ceiling size is standard or predetermined.

In the inventive method of the present invention, a spring-loaded curtain mount is coupled to the end of a standard adjustable pole, and the length of the pole is adjusted such that the combined length of the pole and mount is slightly

3

longer than the distance between the floor and ceiling. A portion of the curtain is attached to the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between and the floor and ceiling. This compressive force operates to urge the head toward the ceiling. The same compressive force operating through the high friction material on the head or curtain provides lateral rigidity for the system.

The mount is free-standing and therefore does not require additional "destructive" mounting means, for example nailing or taping. Instead, the mount is installed and removed without permanent damage to the ceiling or floor.

By placing several mounts between the ceiling and floor, across a room or portions thereof, the room can be partitioned to protect furniture and the like during construction of other portions of the room. The curtain can also be installed along the ceiling and/or floor for constructing a tunnel or booth. The shape of the partition is variable depending on the respective spatial positions of the mounts.

BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other objects, features and advantages of the invention will be apparent from the following more particular description of preferred embodiments and the drawings in which like reference characters refer to the same parts throughout the different views. The drawings are not necessarily to scale, emphasis instead being placed upon illustrating the principals of the invention.

FIGS. 1A, 1B, and 1C illustrate installed partition configurations in accordance with the present invention.

FIG. 2 illustrates the primary components of two preferred embodiments of the present invention.

FIG. 3A is a cutaway side view of a curtain mount having a Velcro™-mount configuration in accordance with the present invention.

FIG. 3B is a perspective view of the head of the curtain mount of FIG. 3A interfacing with an appropriately configured curtain in accordance with the present invention.

FIG. 3C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 3A in accordance with the present invention.

FIG. 4A is a cutaway side view of a curtain mount having a clip-mount configuration in accordance with the present invention.

FIG. 4B is a perspective view of the interaction of the clip and head of the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 4C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 5A is a perspective view of the head of a curtain mount including an extension loop in accordance with the present invention.

FIG. 5B is a side view of a clamped interface between the curtain mount body and an extension pole in accordance with the present invention.

FIG. 6 illustrates a curtain installation using various preferred and alternative embodiments of the present invention.

FIG. 7A–FIG. 7F illustrate an installation procedure in accordance with the present invention.

FIG. 8A–FIG. 8C are perspective views of alternative embodiments for coupling the curtain to the head.

FIG. 9A–FIG. 9C are perspective views of an alternative embodiment of a curtain mount in accordance with the

4

present invention illustrating an alternative curtain coupler, an alternative pole interface, and an alternative compression mechanism.

DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

FIG. 1A illustrates an installed partition extending from the floor 34 to the ceiling 32 of a room between opposed walls 36A, 36B. Three curtain mounts 24 in accordance with the present invention are mounted on extension poles 22. A foot 26 at the bottom of each extension pole interfaces with the floor and a head 28 at the top of each curtain mount interfaces with the ceiling 32. The contact or interface points of the foot and head preferably are covered with a soft friction material such as rubber to provide lateral rigidity of the system and to prevent marking of the ceiling and floor.

Each curtain mount includes a compression mechanism, for example a spring, which operates to urge the head 28 against the ceiling 32, thereby securing the curtain 30. The extension poles 22 are preferably adjustable such that before installation of the curtain 30, the pole length in combination with the fully extended curtain mount 24 can be made slightly larger than the distance from the floor 34 to the ceiling 32 at the point at which the curtain mount is to be installed. For example, if the compression range of the spring is 2–3 inches, then the total length of the pole 22 and mount 24 can be made 2–3 inches longer than the floor-to-ceiling 32 height, causing the spring to be compressed when the system is installed. Alternatively, non-adjustable standard poles such as painters poles sized for particular predetermined ceiling heights may be employed.

FIG. 1B illustrates the present invention installed to partition a portion of a room extending between adjacent walls 36B, 36C. In this illustration, the curtain 30 is installed to protect furniture 38 from dust and debris during painting or other construction in the open portion of the room.

FIG. 1C illustrates the present invention configured as a tunnel or booth. In this installation, the curtain 30 extends along the ceiling 32 between mounts 24A, 24B, 24C, and 24D, protecting the ceiling 32 from activity in the tunnel. The curtain 30 can be tucked under feet 26A–26D to secure the curtain to the floor 34. The curtain 30 may also be installed between the feet 26A–26D on the floor to provide an enclosed tunnel. The sides of the tunnel may be formed by a single continuous curtain 30 or multiple curtains 30, the edges of each held in place and raised by the mounts 24A–24D. This configuration is particularly well suited to serve as an asbestos removal tunnel or paint booth.

Note that for purposes of the present invention, the term "curtain" is defined to include any flexible material suited for partitioning, for example cloth sheets and drapes, or plastic tarps.

FIG. 2 illustrates two preferred curtain mount embodiments. In a first Velcro™-mount embodiment 21A, an extension pole 22A having a foot 26A, for example a rubber foot 26 is coupled to a first curtain mount 24A. The curtain mount 24A is spring-loaded as described above and as will be described in further detail below.

The curtain mount includes a head 28A. The head is preferably of sufficient surface area to accommodate curtain materials of a variety of strengths and weights. For example, if the head area is too small, the head may punch through a weaker curtain material when weighted by the curtain. In a preferred embodiment of the invention, a head size of approximately 5" by 2.5" was found to be sufficient to handle most curtain materials. The head 28A includes a strip

US 6,209,615 B1

5

of Velcro™ loops or hooks attached thereto. The Velcro™ strip 40 on the head 28A mates with a corresponding Velcro™ strip 42 attached to a portion of the curtain 30. A strip of friction material 44 is attached to the face of the curtain 30 opposite that of the Velcro™ strip 42. In this manner, an installer can first mate the Velcro™ strips 42,40 of the curtain 30 and curtain mount 24A respectively and then raise the extension pole 22A and mount 24A such that the high friction material 44 interfaces with the ceiling. As the spring in the curtain mount 24A compresses, that compressive force operates outwardly through the head 28A, Velcro™ strips 40,42, curtain 30, and high friction material 44 against the ceiling, thereby securing the curtain 30 in place against the ceiling. A universal joint 56A at the head 28A allows for installation of a variety of angles. This allows for installation of the curtain mount of the present invention in rooms having pitched ceilings, for example cathedral ceilings.

In a second curtain mount embodiment 24B hereinafter referred to as a clip-mount, a curtain clip 64 is adapted to accept a portion 30A of a curtain 30. In a first embodiment, the clip 64 includes legs 65 adapted to snap over the body of the head 28B, thereby securing the clip 64 and curtain 30 to the head 28B. In a second embodiment, the clip 64 includes pins 112 (see FIG. 9A) which slide and lock in corresponding holes 110 in the head 28B. The top portion of the clip 64 preferably includes high friction material 44 as described above. In the clip-mount embodiment, an installer at floor level clips a portion of the curtain onto the head 28B of the curtain mount 24B and raises the curtain 30 to the ceiling using extension pole 22B. The high friction material 44 at the head 28B in combination with the rubber foot 26 provide lateral rigidity to the system, and the compressed spring in the curtain mount 24B provides longitudinal rigidity to the installed system. The clip embodiment of the curtain mount 24B offers the advantage of accepting any portion of any flexible curtain 30 material, offering an advantage over the Velcro™-mount embodiment 24A which can be coupled only to those portions of a curtain 30 having Velcro™ strips 42 previously installed thereon.

FIG. 3A is a cutaway side view of a Velcro™-mount embodiment of a curtain mount 24 in accordance with the present invention. The curtain mount 24 includes a body 48, a spring 50, a plunger 46, a head 28, and a hole 60 for receiving the end of an extension pole 22. The hole 60 includes internal threads 52 for mating with corresponding external threads 54 formed on the extension pole 22. The thread may comprise ¾ Acme thread, standard in the industry for painter's poles and other standard extension poles. This permits the curtain mount 24 to be compatible with commercially-available poles. When the extension pole 22 is inserted to a predetermined distance into the hole 60, a thread stopper 58 prevents the pole 22 from being inserted further.

A spring 50 rests in the body 48 of the curtain mount 24 between the rigid thread stopper 58 and the plunger 46. The spring is preferably extendable over a range of lengths, for example four inches, to accommodate extension poles of a range of lengths. The tension of the spring 50 must be high enough to support the weight of the installed curtain and low enough such that the head 28 of the curtain mount 24 does not push through the ceiling during installation. The plunger 46 and head 28 preferably interface at a universal joint 56 such that the curtain mount can be installed at a variety of angles relative to the ceiling. Velcro™ loops 40 are coupled to the outer face of the head 28. Preferred methods for coupling Velcro™ loops to the head 28 include self-adhesive Velcro™ strips and/or stapling.

6

The perspective view of FIG. 3B illustrates the head 28 and Velcro™ loops 40 coupled thereto. The Velcro™ loops 40 interface with Velcro™ hooks 42 stapled or otherwise adhered to a portion of the curtain 30. Friction material, approximately slightly larger in area than the surface area of the head 28 is disposed on the opposite face of the curtain. When the Velcro™ hooks 42 are mated to the Velcro™ loops 40, the curtain 30 is secured to the end of the curtain mount 24 and can be raised to the ceiling as shown in FIG. 3C.

In FIG. 3C, a force F generated by the compression of the spring operating on the plunger 46 urges the head 28 against the ceiling 32. The force transfers through the loops 40, the hooks 42, the curtain 30, and the high friction material 44, and operates on the ceiling 32. In this manner, the longitudinal compression of the spring acts outwardly to secure the curtain 30 against the ceiling 32.

FIG. 4A illustrates the clip-mount embodiment of the present invention. A curtain mount 24 includes a body 48 having a hole 60 for receiving an end of an extension pole 22, a plunger 62, a spring 50, and a fixed head 28. Note that the extension pole 22 of this embodiment is a standard thread-less pole and the hole 60 is adapted to receive the pole. In this embodiment, the pole 22 is slidable relative to the body 48 of the curtain mount 24, and communicates with the plunger 62 to compress the spring 50 against the spring stopper 51. The head 28 is longitudinally fixed, relative to the body 48. A universal joint 56 as shown in FIG. 3A may optionally be employed to couple the head 28 to the body 48 for reasons described above. A curtain clip 64 having legs 65 is adapted to snap onto the head 28, thereby clamping an inserted curtain therebetween. The clip legs 65 include tabs 67 which snap around the bottom face of the head 28 providing a secure fit. High friction material 44 is disposed on the top face of the clip 64 for interfacing with the ceiling, thereby providing lateral rigidity to the system as described above. Note that the clip design given above is merely illustrative of various clip designs which may be employed in accordance with the present invention.

FIG. 4B illustrates the relative positions of the head 28, curtain 30, and clip 64 during installation. An advantage of the clip-mount embodiment over the Velcro™-mount embodiment is that the clip-mount can be secured to any portion of a curtain or sheet available to the installer. This may include a center portion of the curtain 30 or a corner portion of the curtain 30 as shown in FIG. 4B. In contrast, the Velcro™-mount embodiment requires the curtain to have portions of Velcro™ attached to the curtain at predetermined locations.

FIG. 4C illustrates a curtain 30 installed against the ceiling 32 using the clip-mount. Before the curtain is raised, the clip 64 and curtain 30 are snapped and secured to the head 28. After raising the curtain against the ceiling 32, compression in the spring of the curtain mount generates a force F which operates through the head 28, curtain 30, clip 64, and high friction material 44 against the ceiling 32. The compressive force F of the spring and high friction material provide longitudinal and lateral rigidity to the system as described above.

FIG. 5A is a perspective view of the head 28 of a curtain mount having an extension loop 66. The extension loop 66 is attached to the head 28, universal joint 56, plunger 46 (shown in FIG. 5A), body 48, or other portion of the curtain mount. Following installation of the curtain, the extension loop 66 allows one to reposition the head 28 relative to the ceiling without moving the extension pole. This is especially helpful for fine-tuning the adjustment of the curtain mount

7                                                                  8

position, for example where the curtain exhibits sag between two installed curtain mounts, without having to move the entire pole. Operation of the extension loop is explained below with reference to FIGS. 7D–7F. The extension loop 66 may comprise string, a chain, or rod for tugging on the head.

FIG. 5B illustrates an alternative interface between an extension pole 22 and body 48 of a curtain mount. In this example, the body 48 of the curtain mount includes a hole 60 for receiving the end of an extension pole 22. The rim of the hole 60 includes fingers 74 which are tapered outward slightly. The fingers 74 include an external thread 72 adapted for interfacing with an internal thread on a corresponding clamp nut 70. After a pole 22 is inserted in the hole 60, the clamp 70 is slid into position and tightened around the fingers 74. The taper in the fingers 74 produces a snug fit as the clamp 70 is tightened. In this manner, the curtain mount can accommodate extension poles 22 of a variety of widths.

FIG. 6 illustrates an installed curtain 30 using preferred and alternative embodiments of the present invention. The right mount 82 employs a curtain mount 24 as described above. The curtain mount 24A is coupled to a standard extension pole 22 having a foot 26 at its lower end for interfacing with the floor 34. The curtain mount includes a spring 50 in compression between the head 28 and the extension pole 22. The head 28 is coupled to the plunger of the curtain mount 24 at a swivel joint 56 accommodating installation at an angle other than perpendicular to the ceiling as shown in FIG. 6.

The center mount 80 of FIG. 6 includes the various components of a preferred embodiment of the invention described above. However, in this example the components are distributed along the length of the mount. This embodiment includes a head 28 as described above, a swivel joint 56, an extension loop 66 and an adjustable pole 90A, 90B. The pole is adjustable at a clamp 84 and is spring-loaded at spring 50. Operation of this mount is similar to those mounts described above.

Left mount 78 of FIG. 6 illustrates an alternative embodiment of the present invention. The left mount again includes the preferred components of the present invention including a head 28, extension loop 66, adjustable pole 76, curtain mount 24, spring 50, universal joint 56, and foot 26. However in this example, the curtain mount 24 is coupled to the lower end of the pole in position near the floor. The head 28 of the mount is attached directly to the opposite end of the pole and interfaces with the curtain 30 at the ceiling 32 as shown in FIG. 6 and as described above. The pole in this example employs a rotational adjustment mechanism. Also note that in the illustration of FIG. 6, a corner of the curtain 30 is held under the foot 26 of center mount 80 to provide additional tension and rigidity to the curtain.

FIGS. 7A–7F illustrate a method for installing a curtain in accordance with the present invention. In FIG. 7A, an installer 86 decides which portion of the room to partition. The installer 86 selects a curtain 30 of appropriate size and attaches a curtain mount 24 to an extension pole 22 as shown. The combined length of the curtain mount 24 and pole 22 is sized to be slightly larger than the floor 34 to ceiling 32 distance, as described above.

In FIG. 7B, the installer 86 mounts the curtain 30 to the head of the curtain mount 24 before raising the curtain 30. The curtain is secured to the mount by either the Velcro™-mount or clip-mount style securing mechanisms as described above.

In FIG. 7C, the curtain 30 is raised to the ceiling 32 using the extension pole 22 and curtain mount 24. The pole 22 is

positioned appropriately and the installer 86 pushes the pole 22 against the ceiling 32 to compress the spring in the curtain mount 24.

In FIG. 7D, the first mount 92 is shown in position with the head of the curtain mount urging the curtain 30 against the ceiling 32. In this installation, the installer 86 also decided to tuck a lower portion of the curtain 30 under the foot 26 to add tension to the curtain and secure the curtain to the floor. Following this, in FIG. 7D, the installer 86 has coupled a second portion of the curtain 30 to a second mount 94 and is in the process of raising the second mount 94 into position a few feet from the first mount 92.

After positioning the second mount 94 as shown in FIG. 7E, the installer 86 noticed that a sag 88 is present in the curtain 30 between the first 92 and second 94 mounts which is undesirable for the installer's project. An extension loop 66 is coupled to the head of the curtain mount 24, thereby allowing the installer 86 to fine-tune the position of the second mount 94 relative to the first mount 92 to eliminate the sag 88 in the curtain 30.

The resulting installation is shown in FIG. 7F. It can be seen that the sag 88 exhibited in FIG. 7E has been eliminated in FIG. 7F by increasing the distance between the first mount 92 and the second mount 94, thereby tensioning the curtain 30 between the two mounts. Additional mounts may be added as described above resulting in partition configurations as shown in FIGS. 1A–1C.

FIGS. 8A–8C illustrate alternative coupler embodiments for coupling the curtain 30 to the head 28. In FIG. 8A, a hook 95 is installed on a side of the head 28. The hook 95 interfaces with a grommet 96 or other opening in the curtain 30 for supporting the curtain during and following installation. In FIG. 8B, a spring-biased clamp 97 secures the curtain 30 in its jaws. In FIG. 8C, the head 28 is formed in two sections which interface at a hinge 99. The sections join at jaws 98 to clamp the curtain 30, thereby securing it to the head 28. In the embodiments shown in FIGS. 8A–8C, the curtain 30, when installed, is not urged against the ceiling by the top face of the head 28. Instead, the curtain hangs from the side of the head 28.

A distinct advantage of the present invention over the prior art is its ability to interface with and utilize curtains, poles, and extension rods which are available off the shelf. Preferred curtain materials depend on the application and include cloth or canvas sheets, plastic sheets, and reinforced plastic tarps. Standard poles include extension poles, painter's poles, telescoping poles, and window washing poles. High friction materials include silicone, rubber, and non-skid material for carpeting. Compression mechanisms include springs, pneumatic devices and hydraulic devices.

More curtain mounts may be used for installations requiring heavier curtain materials or for installations which require the partition to be substantially air-tight, for example, asbestos removal and lead paint removal applications.

The present invention is also applicable for creating temporary private areas using standard sheets and blankets for curtains. This would be particularly useful in emergency shelters or in crowded hospitals.

While this invention has been particularly shown and described with references to preferred embodiments thereof, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention as defined by the appended claims.

An example of an alternative embodiment of the curtain mount is illustrated in FIGS. 9A, 9B and 9C. This curtain

US 6,209,615 B1

9 10

mount embodiment includes a hydraulic or pneumatic device **107** serving as a compression mechanism. A proximal end of the mount includes a pole interface comprising a pin **102** which mates with a corresponding hole **104** on the extension pole **22**. The head **106** is mounted on the plunger **46** as shown.

The head **106** includes at least one hole **110** adapted to interface with and receive at least one corresponding pin **112** located on a clip plate **108**. The pins **112** and a portion of a curtain **30** together insert into the holes **110**, and slide and lock in place in the keyhole slots **111** shown in FIG. 9B. A knob **113** at the end of each pin **112** prevents a mounted plate **108** from releasing from the head **106**.

FIG. 9C illustrates the resulting installed configuration of the curtain mount of FIGS. 9A and 9B. A portion of the curtain **30** wraps around the pins **112** and is secured in holes **110**. The outward force of the hydraulic plunger urges the curtain **30** toward the ceiling **32** as described above.

What is claimed is:

1. A mount attachable to an extension pole for installing a curtain comprising:

   an interface at a proximal end of said mount adapted for coupling the mount to an extension pole;

   a compression mechanism along a longitudinal axis of said mount;

   a head at a distal end of said mount having an upper first engaging surface extending transverse to said longitudinal axis, said head and said interface coupled to opposite ends of said compression mechanism, said compression mechanism biased to urge said head away from said interface;

   a clip having a lower second engaging surface adapted to substantially interface with said first engaging surface, and an upper surface; and

   a retaining member for removably securing the first and second engaging surfaces, such that when in an engaged position, the first and second engaging surfaces substantially interface, and such that when in a disengaged position, the first and second engaging surfaces separate.

2. The mount of claim **1** further comprising a friction material applied to the upper surface of the clip.

3. The mount of claim **1** further comprising a universal joint between said head and said compression mechanism.

4. The mount of claim **1** wherein said interface comprises a hole having an internal thread.

5. The mount of claim **4** wherein said thread comprises ¾ inch diameter thread.

6. The mount of claim **1** wherein the interface comprises a hole having a rim comprising tapered fingers having an external thread formed thereon; and further comprising a clamp nut having internal threads adapted to interface with said external thread.

7. The mount of claim **1** further comprising an extension loop coupled to the head.

8. The mount of claim **1** wherein the compression mechanism comprises a spring.

9. The mount of claim **1** further comprising a length adjustable extension pole adapted to mate with the mount interface.

10. The mount of claim **1** wherein the interface comprises a hole.

11. The mount of claim **1** wherein the interface comprises a pin.

12. The mount of claim **1** wherein the retaining member comprises a pin extending from one of the first and second engaging surfaces, and further comprising a keyhole and slot adapted for mating with the pin formed in the other of the first and second engaging surfaces such that the pin is insertable into the keyhole and slideable along said slot, for removably securing the first and second engaging surfaces.

13. The mount of claim **12** further comprising a knob on the end of the pin preventing release of the clip from the head when the pin is positioned in the slot.

14. The mount of claim **1** wherein the first and second engaging surfaces are substantially planar.

15. The mount of claim **1** wherein the retaining member comprises a plurality of legs extending from one of the clip and head, the legs including tabs which removably engage the other of the clip and head.

16. The mount of claim **15** wherein the legs extend from the clip and removably engage the head.

17. The mount of claim **1** further comprising a hinge rotatably coupling said clip and said head.

18. The mount of claim **1** wherein the upper surface of the clip is substantially planar.

19. A mounting system for installing a curtain comprising:

   a pole having proximal and distal ends, said pole having a longitudinal axis;

   a foot coupled to said proximal end of said pole;

   a head having an upper first engaging surface extending transverse to said longitudinal axis, said head coupled to said distal end of said pole;

   a compressive mechanism between said foot and said head; and

   a clip having a lower second engaging surface adapted to substantially interface with said first engaging surface, and an upper surface; and

   a retaining member for removably securing the first and second engaging surfaces, such that when in an engaged position, the first and second engaging surfaces substantially interface, and such that when in a disengaged position, the first and second engaging surfaces separate.

20. The mounting system of claim **19** further comprising a universal joint between said head and said pole.

21. The mounting system of claim **19** wherein said pole is adjustable in length.

22. The mounting system of claim **19** wherein the retaining member comprises a pin extending from one of the first and second engaging surfaces, and further comprising a keyhole and slot adapted for mating with the pin formed in the other of the first and second engaging surfaces such that the pin is insertable into the keyhole and slideable along said slot, for removably securing the first and second engaging surfaces, and further comprising a knob on the end of the pin preventing release of the clip from the head when the pin is positioned in the slot.

23. The mount of claim **19** further comprising a friction material applied to the upper surface of the clip.

24. The mount of claim **19** further comprising an extension loop coupled to the head.

25. The mount of claim **19** wherein the compressive mechanism comprises a spring.

26. The mount of claim **19** wherein the first and second engaging surfaces are substantially planar.

27. The mount of claim **19** wherein the retaining member comprises a plurality of legs extending from one of the clip and head, the legs including tabs which removably engage the other of the clip and head.

28. The mount of claim **27** wherein the legs extend from the clip and removably engage the head.

29. The mount of claim **19** further comprising a hinge rotatably coupling said clip and said head.

30. The mount of claim **19** wherein the upper surface of the clip is substantially planar.

* * * * *

| | Application No.<br>09/302,122 | Applicant(s)<br>Whittemore | |
|---|---|---|---|
| **Office Action Summary** | Examiner<br>    Bruce A. Lev | Group Art Unit<br>3634 | |

☒ Responsive to communication(s) filed on _Apr 29, 1999_                                    .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ *3* _____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-38_____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-38_____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is   ☐approved   ☐disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All   ☐ Some*   ☐None   of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____ .

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____ *1* _____

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

ZW000041

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

Art Unit: 3634

## DETAILED ACTION

### *Election/Restrictions*

1.    This application contains claims directed to more than one species of the generic

invention. These species are deemed to lack unity of invention because they are not so linked as

to form a single general inventive concept under PCT Rule 13.1.

The species are as follows:

The coupler for removably securing a curtain comprising:

I.)   mating hooks and loops, Figures 2, 3A-3C;

II.) knobs and slots, Figures 9A-9C;

III.) a clip, Figures 4A-4C;

Applicant is required, in reply to this action, to elect a single species to which the claims

shall be restricted if no generic claim is finally held to be allowable. The reply must also identify

the claims readable on the elected species, including any claims subsequently added. An argument

that a claim is allowable or that all claims are generic is considered non-responsive unless

accompanied by an election.

Upon the allowance of a generic claim, applicant will be entitled to consideration of claims

to additional species which are written in dependent form or otherwise include all the limitations

of an allowed generic claim as provided by 37 CFR 1.141. If claims are added after the election,

applicant must indicate which are readable upon the elected species. MPEP § 809.02(a).

ZW000042

Application/Control Number: 09/302,122                                              Page 3

Art Unit: 3634

2.      The claims are deemed to correspond to the species listed above in the following manner:

Group I : Claims 2, 3, 19, and 25, drawn to mating **hooks and loops**;

Group II: Claims 16, 17, 23, 37, and 38, drawn to **knobs and slots**;

Group III: Claims 4,5, 20, and 26, drawn to a **clip**;

The following claim(s) are generic: **1, 18, and 24**

3.      The species listed above do not relate to a single general inventive concept under PCT

Rule 13.1 because, under PCT Rule 13.2, the species lack the same or corresponding special

technical features for the following reasons:

4.      During a telephone conversation with Mr. Anthony P. Onello, Jr. on June 23, 1999, a

provisional election was made without traverse to prosecute the invention of Group III, claims 4,

5, 20, and 26.  Affirmation of this election must be made by applicant in replying to this Office

action. **Claims 2, 3, 16, 17, 19, 25, 37, and 38 are withdrawn** from further consideration by the

examiner, 37 CFR 1.142(b), as being drawn to a non-elected invention.

### *Double Patenting*

5.      Claims 1, 6, 18, and 24 are provisionally rejected under the judicially created doctrine of

double patenting over claims 27-29 of copending Application No. 08/740,372.  This is a

provisional double patenting rejection since the conflicting claims have not yet been patented.

ZW000043

Application/Control Number: 09/302,122                                                    Page 4

Art Unit: 3634

The subject matter claimed in the instant application is fully disclosed in the referenced

copending application and would be covered by any patent granted on that copending application

since the referenced copending application and the instant application are claiming common

subject matter, as follows:

As concerns claims 1 and 6, application No. 08/740,372 sets forth a mount comprising an

interface at a proximal end adapted for coupling an extension pole; a compression mechanism; a

head at a distal end; and a coupler adapted to be attached to the head comprising means for

removably securing a portion of a curtain between the head and the coupler.

threads for tightening upon the fingers to secure the pole in the hole.

As concerns claim 18, application No. 08/740,372 sets forth a mounting system

comprising a pole; a foot; a head; a compressive mechanism; and a coupler adapted to be attached

to the head comprising means for removably securing a portion of a curtain between the head and

the coupler.

As concerns claim 24, application No. 08/740,372 sets forth the mount, as advanced

above, including the coupler having an inner surface for securing a curtain and an outer surface

for urging against a ceiling.

Furthermore, there is no apparent reason why applicant would be prevented from

presenting claims corresponding to those of the instant application in the other copending

application. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP

§ 804.

ZW000044

Application/Control Number: 09/302,122                                                        Page 5

Art Unit: 3634

## *Claim Rejections - 35 USC § 112*

6.        Claims 1, 4-15, 21, 24, and 26-36 are rejected under 35 U.S.C. 112, second paragraph, as

being indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

As concerns claims 1, 5-7, 21, 24, 27, and 28, there is an inconsistency between the

language in the preamble and certain portions in the body of the claim, thereby making the scope

of the claim unclear.  The applicant is required to clarify if the claim is intended to be drawn to

merely the "mount" or to the combination of the "mount", the "curtain", and the "ceiling", and to

make the language in the claim consistent with the intent.  For example, the preambles state, "A

mount", however, in claim 1, lines 12-13 state, "the curtain...is *supported by* said coupler and said

head is urged *toward* said ceiling"; and claim 24, lines 10-12 state, "pole *erected between* a floor

and a ceiling, the curtain...is *supported by* said coupler...urged against the ceiling" which indicates

the claims as being drawn to a combination of the "mount", the "curtain", and the "ceiling".

Therefore, the applicant is required to clarify what the claims are intended to be drawn to, i.e.

either the "mount" alone or in combination with the "curtain" and the "ceiling", and to present the

claims with the language which is consistent with the invention.

As concerns claim 27, the phrases "the outer surface", in lines 1-2, and "the clip", in line 2,

lack antecedent basis and are therefore vague and indefinite.

As concerns claim 28, the phrase "said curtain mount", in line 2, lacks antecedent basis

and is therefore vague and indefinite.

ZW000045

Application/Control Number: 09/302,122                                                    Page 6

Art Unit: 3634

## *Claim Rejections - 35 USC § 102*

7.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

8.      Claims 1, 4-8, 12-15, 18, 20-22, 24, 26, 28, 29, and 33-36 are rejected under 35

U.S.C. 102(b) as being anticipated by Stiffel 2,942,829.

As concerns claims 1 and 6, Stiffel sets forth a mount (inclusive of members 10, 38,

42, 46, 49, and 50) comprising an interface (inclusive of reduced portion 30 and shoulder 31) at a

proximal end adapted for coupling an extension pole; a compression mechanism 49; a head 39 at a

distal end; and a coupler 52 adapted to be attached to the head comprising means for removably

securing (inclusive of member 60) a portion of a curtain between the head and the coupler.

As concerns claims 4, 5, 20, and 26, Stiffel sets forth the use of a clip (viewed as inclusive

of member 62) capable of securing a curtain.

As concerns claims 7, 21, and 28, Stiffel sets forth a universal joint (viewed as the

articulating coupling between the head 39 and members 52 and 56) coupled to the head in a

variety of angles.

As concerns claims 8 and 29, Stiffel sets forth an interface (between members 16 and 20)

comprising a hole (in member 16) having an internal thread adapted to receive an extension

pole 20 having corresponding mating thread. The applicant should note that member 12 can be

**ZW000046**

Application/Control Number: 09/302,122                                          Page 7

Art Unit: 3634

considered as part of the mount, and member 20 as an extension pole, wherein member 16

becomes the interface.

As concerns claims 12 and 33, Stiffel sets forth the compression mechanism having a

spring 49.

As concerns claims 13, 14, 22, 34, and 35, Stiffel sets forth an adjustable extension

pole 12, viewed as linearly and angularly adjustable, adapted to mate with the mount interface.

As concerns claims 15 and 36, Stiffel sets forth the interface as a pin, viewed as the

'necked down' portion, adapted to interface with a hole in the extension pole.

As concerns claim 18, Stiffel sets forth a mounting system comprising a pole (inclusive of

members 10, 11, 12, 38); a foot 22 coupled to the proximal end of the pole; a head 39 coupled to

the distal end of the pole; a compressive mechanism 49 between the foot and the head; and a

coupler 52 adapted to be attached to the head comprising means for removably securing (inclusive

of member 60) a portion of a curtain between the head and the coupler.

As concerns claim 24, Stiffel sets forth the mount, as advanced above, including the

coupler having an inner surface (viewed as inclusive of the contacting surfaces of members 52

and 60) for securing a curtain and an outer surface (viewed as inclusive of the upper rim portion

of member 52 and the upper external contact surface of member 60) for urging against a ceiling.

ZW000047

Application/Control Number: 09/302,122                                    Page 8

Art Unit: 3634

### *Claim Rejections - 35 USC § 103*

9.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

10.     Claims 9 and 30 are rejected under 35 U.S.C. 103(a) as being unpatentable over Stiffel.

Stiffel sets forth the invention except for the threads comprising 3/4 ACME thread.

However, the applicant has disclosed in the specification on page 10 lines 11-12 that 3/4 ACME

thread is known in the art.  Therefore, it would have been obvious to one of ordinary skill in the

art at the time the invention was made, to modify the threads of Stiffel by forming the threads

as 3/4 ACME threads, as taught by the existing art, in order to have the curtain mount adaptable

to be used with existing extension poles.

11.     Claims 10 and 31 are rejected under 35 U.S.C. 103(a) as being unpatentable over Stiffel in

view of Mochizuki 4,645,473.

As concerns claim 10 Stiffel sets forth the invention except for the interface hole having a

rim comprising tapered fingers with external thread; and a clamp nut with internal threads adapted

to interface with the external threads for securing the extension pole.  However, **Mochizuki**

**teaches** an interface configuration incorporating an interface hole having a rim comprising tapered

ZW000048

Application/Control Number: 09/302,122                                              Page 9

Art Unit: 3634

fingers with external thread; and a clamp nut with internal threads adapted to interface with the

external threads. Therefore, it would have been obvious to one of ordinary skill in the art at the

time the invention was made, to modify the interface rim of Stiffel by incorporating tapered

fingers with external thread; and a clamp nut with internal threads adapted to interface with the

external threads, as taught by Mochizuki, in order to more securely releasably attach an extension

pole.


12.      Claims 11 and 32 are rejected under 35 U.S.C. 103(a) as being unpatentable over Stiffel in

view of Murray 3,592,434.

         Stiffel sets forth the invention except for the extension loop mounted to the head.

However, **Murray teaches** a mount incorporating an extension loop mounted to the head.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention

was made, to modify the mount of Stiffel by incorporating an extension loop mounted to the head,

as taught by Murray, in order to more easily manipulate and compress the compression member

when engaging and disengaging the mount.

ZW000049

Application/Control Number: 09/302,122                                    Page 10

Art Unit: 3634

## *Conclusion*

13.    The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

The following references disclose couplers comprising a clip for releasably attaching sheet-

type material:

| | | |
|---|---|---|
| 3,247,558 | Kaufman | 24/563x |
| 4,502,256 | Hahn | 24/459x |
| 4,536,924 | Willoughby | 24/563x |
| 5,384,938 | Frederick | 24/563x |
| 5,388,283 | Garnett | 24/563x |
| 5,884,424 | Smith | 160/402x |

The following reference discloses a mounting system incorporating telescoping members;

compression means; a head; an interface; means for removably securing; friction material; and a

coupler:

| | | |
|---|---|---|
| 5,897,085 | Cronin | 248/200.1 |

The following reference discloses an interface between poles incorporating tapered fingers

and a clamp nut:

| | | |
|---|---|---|
| 5,649,780 | Schall | 403/109 |

ZW000050

Application/Control Number: 09/302,122                                    Page 11

Art Unit: 3634

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Bruce A. Lev whose telephone number is (703) 308-7470.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-2168.

June 23, 1999

*Bruce A. Lev*

*Patent Examiner*

*Group 3600*

ZW000051

# INFORMATION DISCLOSURE CITATION
*(Use several sheets if necessary)*

ATTY DOCKET NO.
WWFO-01

SERIAL NO

Jeffrey P. Whittemore

| FILING | GROUP |
|---|---|
| Herewith | not assigned |

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AY | 4,874,028 | 10/17/1989 | Lynch et al. | 160 | 332 | |
| | AZ | 5,038,889 | 08/13/1991 | Jankowski | 182 | 129 | |
| | BA | 5,056,753 | 10/1991 | Lunau et al. | 248 | 200.1x | |
| | BB | 5,129,774 | 07/14/1992 | Balseiro et al. | 248 | 354.1x | |
| | BC | 5,308,280 | 05/03/1994 | Dotson | 454 | 170 | |
| | BD | 5,524,693 | 06/11/1996 | Hamilton | 160 | 243 | |
| | BE | 5,345,989 | 09/13/1994 | Brophy | 160 | 354 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

## OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

ZW000052

| EXAMINER | DATE CONSIDERED |
|---|---|
| | 6/23/99 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Copyright 1994-97 LegalStar    PO9C/REV03    Patent and Trademark Office * U.S. DEPARTMENT OF COMMERCE

PAGE 3    OF 3

| | | | Application No. 09/302,122 | Applicant(s) Whittemore | | |
|---|---|---|---|---|---|---|
| **Notice of References Cited** | | | Examiner Bruce A. Lev | | Group Art Unit 3634 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|
| A | 3,247,558 | 4/26/1966 | Kaufman | 24 | 563x |
| B | 4,502,256 | 3/5/1985 | Hahn | 24 | 459x |
| C | 4,536,924 | 8/27/1985 | Willoughby | 24 | 563x |
| D | 5,384,938 | 1/31/1995 | Frederick | 24 | 563x |
| E | 5,388,283 | 2/14/1995 | Garnett | 24 | 563x |
| F | 5,649,780 | 7/22/1997 | Schall | 403 | 109 |
| G | 5,884,424 | 3/23/1999 | Smith | 160 | 402x |
| H | 5,897,085 | 4/27/1999 | Cronin | 248 | 200.1 |
| I | | | | | |
| J | | | | | |
| K | | | | | |
| L | | | | | |
| M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

**NON-PATENT DOCUMENTS**

| | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|
| U | | |
| V | | |
| W | | |
| X | | |

ZW000053

PATENT
Attorney Docket No.: ZIP.5245CON

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s): | Jeffrey P. Whittemore | Examiner: | Lev, Bruce |
| Serial Number: | 09/302,122 | Art Unit: | 3634 |
| Filing Date: | April 29, 1999 | | |
| Title: | Partition Mount | | |

### CERTIFICATE OF FACSIMILE TRANSMISSION

I hereby certify that this correspondence is being transmitted to the Assistant Commissioner for Patents, Washington DC 20231, via facsimile transmission, Attn. Examiner B. Lev, Group Art Unit 3634, at 703-305-3597.

2-3-00
_____
Date

Amy E. Lockhart

Assistant Commissioner For Patents
Washington, D.C. 20231

### AMENDMENT AFTER FINAL

Sir:

The following is in response to the Final Office Action dated November 11, 1999, and is filed within the shortened statutory period of three months. Please amend the application as follows:

In the Claims

Please withdraw claims 16, 17, and 42 from consideration in view of the election of species of Group III claims as indicated in Paper No. 3.

Please amend Claims 1, 40, and 48 as follows:

**ZW000074**

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 2

1.    (Twice Amended)  A mount attachable to an extension pole for installing a curtain
comprising:

an interface at a proximal end of said mount adapted for coupling the mount to an
extension pole;

a compression mechanism along a longitudinal axis of said mount;

a head at a distal end of said mount having an upper first engaging surface
extending transverse to said longitudinal axis, said head and said interface coupled to
opposite ends of said compression mechanism, said compression mechanism when under
compression being biased to urge said head away from said interface;

a clip having a lower second engaging surface adapted to substantially interface
with said first engaging surface, and an upper surface; and

a retaining member for removably securing the first and second engaging surfaces,
such that when in an engaged position, the first and second engaging surfaces substantially
interface, and such that when in a disengaged position, the first and second engaging
surfaces separate.

40    (Amended)  The mount of Claim 1 wherein the retaining member comprises a plurality of
legs extending from one of the clip [or] and head, the legs including tabs which removably
engage the other of the clip [or] and head.

48.    (Amended)  The mount of Claim 18 wherein the retaining member comprises a plurality of
legs extending from one of the clip [or] and head, the legs including tabs which removably
engage the other of the clip [or] and head.

**ZW000075**

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 5

to Cunningham, wherein the release tab is urged toward the housing by the spring. The amended claim language is clearly supported in the specification as filed (see, for example, page 9, lines 15-19).

For the reasons given, it is respectfully submitted that amended Claim 1 is not anticipated by Cunningham. It is therefore requested that Claim 1 be passed to allowance. With regard to rejected dependent claims 5, 12, 14, 15, 39-41, and 43, it is respectfully submitted that independent Claim 1, from which they depend, is allowable and therefore any dependent claims should inherit its allowability.

Closing Remarks

In summary, it is believed that all claims are condition for allowance, and such allowance is respectfully requested. In the event that prosecution of this case may be expedited by a telephone conference, the Examiner is invited to call the undersigned at the number given below.

Respectfully submitted,

Date: February 3, 2000

225 Franklin Street
Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180 x148
Facsimile: (617) 426-2275

Anthony P. Onello, Jr.
Registration Number 38,572
Attorney for Applicant

K:\Zipwall\5245con\Resp2finaloa.wpd

-5-

**ZW000076**

| | Application No. | App_ ..ant(s) | |
|---|---|---|---|
| ***Advisory Action*** | 09/302,122 | | Whittemore |
| | Examiner | Group Art Unit | |
| | Bruce A. Lev | 3634 | |

THE PERIOD FOR RESPONSE: [check only a) or b)]

   a) ☒ expires _____3_____ months from the mailing date of the final rejection.

   b) ☐ expires either three months from the mailing date of the final rejection, or on the mailing date of this Advisory Action, whichever is later. In no event, however, will the statutory period for the response expire later than six months from the date of the final rejection.

   Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition, and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due two months from the date of the Notice of Appeal filed on _____ (or within any period for response set forth above, whichever is later). See 37 CFR 1.191(d) and 37 CFR 1.192(a).

Applicant's response to the final rejection, filed on __Nov 10, 1999__ has been considered with the following effect, but is NOT deemed to place the application in condition for allowance:

☒ The proposed amendment(s):

   ☐ will be entered upon filing of a Notice of Appeal and an Appeal Brief.

   ☒ will not be entered because:

      ☒ they raise new issues that would require further consideration and/or search. (See note below).[1]

      ☐ they raise the issue of new matter. (See note below).

      ☒ they are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

      ☐ they present additional claims without cancelling a corresponding number of finally rejected claims.

   NOTE: _Non-elected claims 16, 17, and 42 must be cancelled. Furthermore, the additional claim language "said_ _compression mechanism when under compression being biased to urge said head (cont. in 'other')_

☒ Applicant's response has overcome the following rejection(s): _Section 112 rejections of claims 40 and 48._

☐ Newly proposed or amended claims _____ would be allowable if submitted in a separate, timely filed amendment cancelling the non-allowable claims.

☐ The affidavit, exhibit or request for reconsideration has been considered but does NOT place the application in condition for allowance because:

☐ The affidavit or exhibit will NOT be considered because it is not directed SOLELY to issues which were newly raised by the Examiner in the final rejection.

☒ For purposes of Appeal, the status of the claims is as follows (see attached written explanation, if any):

   Claims allowed: _7-11, 13, 18, 21, 22, 45-47, and 51_

   Claims objected to: _48 and 49_

   Claims rejected: _1, 5, 12, 14, 15, 39-41, 43, and 44_

☐ The proposed drawing correction filed on _____ ☐has ☐has not been approved by the Examiner.

☐ Note the attached Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☒ Other _away from said interface", i.e., claim 1, lines 8-9, is improper since the compression mechanism appears to urge the head away from the interface when not under compression, and toward the head when under compression._

Daniel P Stodola

Daniel P. Stodola
Supervisory Patent Examiner
G...up 3600



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/302,122 | 04/29/99 | WHITTEMORE | J | WWFC-01CN |

PM82/0217

ANTHONY P ONELLO JR
SAMUELS, GAUTHIER & STEVENS
225 FRANKLIN STREET
SUITE 3300
BOSTON MA 02110

| | EXAMINER |
|---|---|
| LEV, B | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3634 | 14 |

DATE MAILED:

02/17/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

| *Interview Summary* | Application No. 09/302,122 | Applic...(s) | Whittemore | |
|---|---|---|---|---|
| | Examiner Bruce A. Lev | | Group Art Unit 3634 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Bruce A. Lev*

(2) *Mr. Tony P. O'nello, Jr.*

(3) _____

(4) _____

Date of Interview _____ *Feb 29, 2000* _____

Type:  ☒ Telephonic  ☐ Personal (copy is given to  ☐ applicant  ☐ applicant's representative).

Exhibit shown or demonstration conducted:  ☐ Yes  ☒ No. If yes, brief description:

Agreement  ☒ was reached.  ☐ was not reached.

Claim(s) discussed: *1*

Identification of prior art discussed:
*Cunnigham, Du Boff, Kindl*

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Discussed the differences between the instant invention, best shown in Fig's 3 and 4, and Cunnigham, Du Boff, and Kindl. The examiner suggested adding the limitation, to independent claim 1, of the compression mechanism being biased to urge the head away from the interface, and to elaborate on the dynamics of the compression mechanism of Cunnigham. Further, the examiner requested clarification of the differences pertaining to Du Boff and Kindle.*

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendents which would render the claims allowable is available, a summary thereof must be attached.)

1.  ☒  It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2.  ☐  Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Bruce A. Lev
Patent Examiner

Examiner Note: You must sign and stamp this form unless it is an attachment to a signed Office action.

UNITED STATI   DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/302,122 | 04/29/99 | WHITTEMORE | J | WWI-9-01CN |

PM02/0301

ANTHONY P ONELLO JR
SAMUELS, GAUTHIER & STEVENS
225 FRANKLIN STREET
SUITE 3300
BOSTON MA 02110

| EXAMINER |
|---|
| LEV, B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3654 | 15 |

DATE MAILED:   03/01/00

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/95)

PATENT
Attorney Docket No.: ZIP.5245CON

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s): | Jeffrey P. Whittemore | Examiner: | Lev, Bruce |
| Serial Number: | 09/302,122 | Art Unit: | 3634 |
| Filing Date: | April 29, 1999 | | |
| Title: | Partition Mount | | |

---

### CERTIFICATE OF FACSIMILE TRANSMISSION

I hereby certify that this correspondence is being transmitted to the Assistant Commissioner for Patents, Washington DC 20231, via facsimile transmission, Attn. Examiner B. Lev, Group Art Unit 3634, at 703-305-3597.

2-29-00
Date

Amy E. Lockhart

---

Assistant Commissioner For Patents
Washington, D.C. 20231

### SUPPLEMENTAL AMENDMENT AFTER FINAL
### (IN RESPONSE TO ADVISORY ACTION)

Sir:

The following is in response to the Advisory Action dated February 17, 2000, corresponding to the Amendment After Final dated February 3, 2000, filed in response to the Final Office Action dated November 11, 1999. A petition for a one-month extension of the time period in which to respond is filed concurrently herewith. Please amend the application as follows:

In the Claims

Please withdraw claims 16, 17, and 42 from consideration in view of the election of species of Group III claims as indicated in Paper No. 3.

Please amend Claims 1, 40, and 48 as follows:

**ZW000065**

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 2

1.      (Three times amended) A mount attachable to an extension pole for installing a curtain
comprising:

an interface at a proximal end of said mount adapted for coupling the mount to an
extension pole;

a compression mechanism along a longitudinal axis of said mount;

a head at a distal end of said mount having an upper first engaging surface
extending transverse to said longitudinal axis, said head and said interface coupled to
opposite ends of said compression mechanism, said compression mechanism [when under
compression being] biased to urge said head away from said interface;

a clip having a lower second engaging surface adapted to substantially interface
with said first engaging surface, and an upper surface; and

a retaining member for removably securing the first and second engaging surfaces,
such that when in an engaged position, the first and second engaging surfaces substantially
interface, and such that when in a disengaged position, the first and second engaging
surfaces separate.

40      (Amended) The mount of Claim 1 wherein the retaining member comprises a plurality of
legs extending from one of the clip [or] and head, the legs including tabs which removably
engage the other of the clip [or] and head.

48.     (Amended) The mount of Claim 18 wherein the retaining member comprises a plurality of
legs extending from one of the clip [or] and head, the legs including tabs which removably
engage the other of the clip [or] and head.

ZW000066

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 3

## REMARKS

The Applicant and his attorney appreciate the telephone interview granted by Examiner Lev on February 29, 2000. It is believed that this Supplemental Amendment After Final, filed in response to the Advisory Action dated February 17, 2000, sufficiently addresses issues outstanding in the Office Action and Advisory Action, and discussed during the telephone interview, so as to place the application in condition for allowance.

During the telephone interview, the Advisory Action of February 17, 2000 was discussed for the purpose of clarifying a discrepancy in claim language interpretation, in particular, the language of the amendment to Claim 1 submitted in the earlier-filed Amendment After Final of February 3, 2000. Accordingly, Claim 1 is amended above to cure this discrepancy. Specifically, the phrase "when under compression" is deleted from Claim 1 to remove a possible misinterpretation of the claim language. During the telephone interview, it was agreed that removal of this phrase served to clarify the meaning of the claim amendment, and further served to distinguish the claim over Cunningham (discussed below). Accordingly, entry of the amendment, and allowance of Claim 1 and associated dependent claims, are respectfully requested.

During the interview, it was requested that the Applicant resubmit an updated Supplemental Amendment After Final, incorporating the earlier-filed amendments and remarks of the Amendment After Final submitted February 3, 2000. Accordingly, the earlier-filed amendments are reproduced above, and the earlier-filed remarks are reproduced below, in updated form.

Claims 1, 5, 7-18, 21-23 and 39-51 remain pending in the application. Claims 16, 17, and 42 are withdrawn from consideration above and Claims 1, 40 and 48 are amended above. No new matter is added by the claim amendments. Entry is respectfully requested.

**ZW000067**

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 4

With regard to Claims 16, 17, 23, 42, and 50, Applicant notes that the earlier Office Action of June 28, 1999 (Paper No. 3) states that Claims 1 and 18 are generic, and therefore "upon the allowance of a generic claim, Applicant will be entitled to consideration of claims to additional species which are written in dependent form or otherwise include all the limitations of an allowed generic claim as provided by 37 C.F.R. §1.141". It is therefore respectfully requested that since generic Claim 18 is now allowed, that Claims 23 and 50 be considered and likewise allowed. If generic Claim 1 becomes allowed, then it is respectfully requested that dependent species claims 16, 17, and 42 be considered and likewise passed to allowance.

It is noted with appreciation that the Office Action indicates at page 4, paragraph 4, that Claims 7-11, 13, 18, 21, 22, 45-47, and 51 are allowed.

Claims 40, 41, 48, and 49 stand rejected under 35 U.S.C. §112, second paragraph. Claims 40 and 48 are amended above to replace "or" with "and", as suggested in the Office Action. Claims 41 and 49 are respectively dependent on claims 40 and 48. Entry of the amendments and removal of the rejections are respectfully requested.

Claim 44 stands rejected under 35 U.S.C. §102(b) as being anticipated by Cunningham (U.S. Patent No. 4,662,034). This rejection is believed to be in error, as Claim 44 is dependent on allowed Claim 18, and therefore should inherit its allowability. Such allowance is respectfully requested.

Claims 1, 5, 12, 14, 15, 39-41, and 43 stand rejected under 35 U.S.C. §102(b) as being anticipated by Cunningham (U.S. Patent No. 4,662,034).

ZW000068

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 5

Cunningham is directed to a snap-on button resembling some of the features claimed in Claim 1 of the present invention. The Cunningham embodiment as shown in Fig. 2 includes a spring-loaded release tab 26a, which, when pulled, operates to release the snap-on button 14 from its housing 20.

During the telephone interview, Applicant's attorney pointed out to Examiner Lev that the Cunningham spring operates to urge the release tab 26 and housing 20 closer together (see FIG. 3 of Cunningham). In the Final Office Action, and during the telephone interview, the Examiner analogized the Cunningham tab 26 to the "interface" of Claim 1 of the present invention, the Cunningham spring 28 to the "compression mechanism" of Claim 1, and the Cunningham housing 20 to the "head" of Claim 1. Assuming this, then it is apparent that the spring 28 of the Cunningham configuration, when compressed (see FIG. 4 of Cunningham), is biased to urge the release tab 26 toward the housing 20, so as to return the release tab 26 to a rest position adjacent the housing 20.

In contrast, in the present invention as claimed by amended Claim 1, the "compression mechanism" is "biased to urge said head away from said interface". In this manner, the configuration of the present invention is outwardly biased in that the head and interface are biased by the compression mechanism to be urged away from each other, as opposed to Cunningham, wherein the release tab is urged toward the housing by the spring. The amended claim language is clearly supported in the specification as filed (see, for example, page 9, lines 15-19).

For the reasons given, it is respectfully submitted that amended Claim 1 is not anticipated by Cunningham. It is therefore requested that Claim 1 be passed to allowance. With regard to rejected dependent claims 5, 12, 14, 15, 39-41, and 43, it is respectfully submitted that independent Claim 1, from which they depend, is allowable and therefore any dependent claims should inherit its allowability.

ZW000069

Attorney Docket No.:ZIP.5245CON
U.S.S.N. 09/302,122
Page 6

During the telephone interview, after considering newly-amended Claim 1, Examiner Lev reviewed the prior art of record and pointed out that the Kindl (U.S. 3,952,877) and Duboff (U.S. 3,333,808) references (of record in the application) appear to include outwardly-urged compression mechanisms. In response, Applicant respectfully submits that while this may be true, neither Kindl nor Duboff include "a head ... having an upper first engaging surface extending transverse to said longitudinal axis" in combination with "a clip having a lower second engaging surface adapted to substantially interface with said first engaging surface, and an upper surface" and "a retaining member for removably securing the first and second engaging surfaces", as claimed in Claim 1. Accordingly, it is submitted that Kindl and Duboff fail to teach or suggest the present invention as claimed by Claim 1.

Should further clarification become necessary during review of the newly-filed Supplemental Amendment After Final, the Examiner is encouraged to contact Applicant's attorney by telephone for resolution.

### Closing Remarks

In summary, it is believed that all claims are condition for allowance, and such allowance is respectfully requested. In the event that prosecution of this case may be expedited by a telephone conference, the Examiner is invited to call the undersigned at the number given below.

Respectfully submitted,

Date: February 29, 2000

225 Franklin Street
Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180 x148
Facsimile: (617) 426-2275

Anthony P. Onello, Jr.
Registration Number 38,572
Attorney for Applicant

K:\Zipwall\5245con\Resp2finaloa2.wpd

**ZW000070**

## Samuels, Gauthier & Stevens LLP

225 Franklin Street, Suite 3300
Boston, MA 02110

Telephone: (617) 426-9180
Facsimile: (617) 426-2275

| | | | |
|---|---|---|---|
| **To:** | U.S. Patent & Trademark Office | **Date:** | February 29, 2000 |
| | **Examiner Bruce Lev** | | |
| | **Art Unit 3634** | | |
| **Fax #:** | 1-703-305-3597 | **Pages:** | 10 including this cover sheet |
| **From:** | Anthony P. Onello, Jr. | | |

**Subject:** Applicant(s):    Jeffrey P. Whittemore
         Serial No.:    09/302,122
         Filing Date:    April 29, 1999
         Title:    PARTITION MOUNT

         Our Reference:    ZIP.5245CON

COMMENTS:

### PLEASE DELIVER TO EXAMINER BRUCE LEV AT ART UNIT 3634

K:\Zipwall\5245con\ptofax2.wpd

This telecopy is attorney-client privileged and contains confidential information intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly prohibited. If you have received this telecopy in error, please notify us immediately and return the original transmission to us by mail without making a copy.

ZW000071

SGS                    Fax:6174262275

** Transmit Conf.Report **

P. 1                                                      Feb 29 2000  16:24

| Telephone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 17033053597 | NORMAL | 29,16:21 | 2'38" | 10 | * O K | |

## Samuels, Gauthier & Stevens LLP

225 Franklin Street, Suite 3300
Boston, MA 02110

Telephone: (617) 426-9180
Facsimile: (617) 426-2275

**To:**      U.S. Patent & Trademark Office    **Date:**    February 29, 2000
             **Examiner Bruce Lev**
             **Art Unit 3634**

**Fax #:**   1-703-305-3597                     **Pages:**   10 including this cover sheet

**From:**    Anthony P. Onello, Jr.

**Subject:**  Applicant(s):       Jeffrey P. Whittemore
              Serial No.:         09/302,122
              Filing Date:        April 29, 1999
              Title:              PARTITION MOUNT

              Our Reference:      ZIP.5245CON

COMMENTS:

### PLEASE DELIVER TO EXAMINER <u>BRUCE LEV</u> AT ART UNIT 3634

**ZW000072**

US006942004B2

(12) **United States Patent**   (10) Patent No.:  **US 6,942,004 B2**

Whittemore   (45) Date of Patent:   *Sep. 13, 2005

---

(54) **PARTITION MOUNT**

(75) Inventor:  **Jeffrey P. Whittemore**, Arlington, MA (US)

(73) Assignee:  **Zipwall, LLC**, Arlington, MA (US)

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/301,233**

(22) Filed:  **Nov. 21, 2002**

(65)  **Prior Publication Data**

US 2003/0070773 A1 Apr. 17, 2003

**Related U.S. Application Data**

(63) Continuation of application No. 09/884,337, filed on Jun. 19, 2001, now Pat. No. 6,508,295, which is a continuation of application No. 09/613,645, filed on Jul. 11, 2000, now Pat. No. 6,321,823, which is a continuation of application No. 09/302,122, filed on Apr. 29, 1999, now Pat. No. 6,209,615, which is a continuation of application No. 08/740,372, filed on Oct. 29, 1996, now Pat. No. 5,924,629.

(51) Int. Cl.[7] ............................................... A47H 13/00

(52) U.S. Cl. ................... 160/368.1; 160/351; 160/402; 248/200.1; 24/113 MP

(58) Field of Search ............................. 160/368.1, 350, 160/351, 379, 330, 380, 399, 402; 248/200.1; 403/326, 329; 24/92, 113 MP, 113 R, 114

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| ,827,000 A | 7/1906 | Dinsmore | |
| 1,766,324 A | 6/1930 | Berner | |
| 2,219,169 A | 10/1940 | Alter | ............................. 248/1 |
| 2,232,194 A | 2/1941 | Zogby | ........................ 156/33 |
| 2,474,158 A | 6/1949 | Neely | ........................ 155/180 |
| 2,816,769 A | 12/1957 | Noble | .......................... 279/83 |
| 2,903,227 A | 9/1959 | de Kalb Key | .............. 248/356 |
| 2,942,829 A | * 6/1960 | Stiffel | .................. 160/368.1 X |
| 3,072,784 A | 1/1963 | Mann | .......................... 240/81 |
| 3,090,826 A | 5/1963 | Cochran | .................... 174/158 |
| 3,118,363 A | 1/1964 | Burgess, Jr. | |
| 3,247,558 A | 4/1966 | Kaufman | ...................... 24/81 |
| 3,322,381 A | 5/1967 | Bubb | .......................... 248/121 |
| 3,327,310 A | 6/1967 | Bethune et al. | ............. 343/702 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 3918516 | 6/1989 | .......... E04G/25/04 |
| DE | 04420849 A | * 6/1994 | ........ 160/368.1 X |
| DE | 29605222 | 7/1996 | .......... E04G/25/08 |
| FR | 2411282 | 6/1979 | ............. E04B/2/74 |
| GB | 1042086 | 9/1966 | |
| GB | 2156894 | * 10/1985 | .......... 160/368.1 X |
| WO | WO 86/03538 | 6/1986 | ............. E04G/1/26 |
| WO | WO91/09556 | 7/1991 | ............. A47G/5/00 |
| WO | WO 91/09556 | * 7/1991 | ......... 160/168.1 X |

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Mills & Onello LLP

(57)  **ABSTRACT**

In a spring-loaded curtain mount, the mount includes a pole interface at a proximal end, a compressive mechanism, and a head at a distal end. The pole interface is adapted to receive the end of a standard length adjustable pole or a painter's pole. The compression mechanism is disposed between the proximal end of the mount and the head. The mount includes a coupling device adapted to receive a portion of a curtain. During installation, the curtain mount is coupled to the end of an extension pole and the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. At ground level, a portion of the curtain is attached to the head of the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between the floor and the ceiling. This compressive force operates to urge the head toward the ceiling, securing the mount in place.

**61 Claims, 12 Drawing Sheets**





US 6,942,004 B2

Page 2

## U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,333,808 A | | 8/1967 | Du Boff | 248/354 |
| 3,350,120 A | | 10/1967 | Hinrichs | 287/58 |
| 3,529,860 A | | 9/1970 | Jelley | 287/189.36 |
| 3,592,434 A | | 7/1971 | Murray | 248/480 |
| 3,604,397 A | * | 9/1971 | Salerno | 119/29 |
| 3,608,991 A | * | 9/1971 | Wade | 312/345 |
| 3,713,643 A | * | 1/1973 | Gerstenberger | 270/61 R |
| 3,767,253 A | | 10/1973 | Kluetsch | 296/24 R |
| 3,792,510 A | | 2/1974 | Evett | 24/243 |
| 3,822,850 A | | 7/1974 | Elias | 248/354 S |
| 3,858,988 A | | 1/1975 | Cohen | |
| 3,861,663 A | * | 1/1975 | Strickland | 269/26 |
| 3,952,877 A | | 4/1976 | Kindl | 211/105.5 |
| 3,956,784 A | * | 5/1976 | Vargas | 5/362 |
| 3,972,272 A | | 8/1976 | Bagby | 98/50 |
| 3,994,463 A | | 11/1976 | Baker | |
| 4,078,756 A | | 3/1978 | Cross | 248/226.4 |
| 4,087,006 A | | 5/1978 | Schill | 211/86 |
| 4,111,217 A | * | 9/1978 | Victor | 135/15 |
| 4,127,911 A | | 12/1978 | Cupp et al. | |
| 4,139,101 A | * | 2/1979 | Towfigh | 211/86 |
| 4,277,863 A | | 7/1981 | Faneuf | 24/3 |
| 4,379,654 A | | 4/1983 | Rovelli | 405/53 |
| 4,396,325 A | | 8/1983 | Joice-Cavanagh | 410/129 |
| 4,488,651 A | | 12/1984 | Bishop | 211/105.6 |
| 4,502,256 A | | 3/1985 | Hahn | 52/63 |
| 4,536,924 A | | 8/1985 | Willoughby | 24/487 |
| 4,576,354 A | * | 3/1986 | Blessing, Sr. | 248/354.5 |
| 4,592,797 A | * | 6/1986 | Carlson | 156/574 |
| 4,645,473 A | | 2/1987 | Mochizuki | 464/79 |
| 4,662,034 A | | 5/1987 | Cunningham | 24/90 |
| 4,708,189 A | | 11/1987 | Ward | 160/351 |
| 4,715,089 A | | 12/1987 | Schema | 16/115 |
| 4,717,107 A | * | 1/1988 | Servadio | 248/353 |
| 4,770,086 A | * | 9/1988 | Gabster | 98/50 |
| 4,794,974 A | * | 1/1989 | Melino | 160/330 |
| 4,824,302 A | | 4/1989 | Schultheis et al. | 410/151 |
| 4,852,844 A | * | 8/1989 | Villaveces | 248/314 |
| 4,874,028 A | | 10/1989 | Lynch et al. | 160/332 |
| 4,885,876 A | | 12/1989 | Henke | 51/393 |
| 4,907,835 A | | 3/1990 | Salters | 296/1.1 |
| 4,912,814 A | * | 4/1990 | McKenzie | 24/115 H |
| 4,928,916 A | | 5/1990 | Molloy | |
| 4,969,241 A | | 11/1990 | Griffin | 24/113 |
| 5,038,889 A | | 8/1991 | Jankowski | 182/129 |
| 5,040,915 A | * | 8/1991 | Stuart et al. | 403/322 |
| 5,056,753 A | | 10/1991 | Lunau et al. | 248/542 |
| 5,078,348 A | * | 1/1992 | Babitchenko | 248/124 |
| 5,116,012 A | * | 5/1992 | Offenhauer et al. | 248/452 |
| 5,129,774 A | | 7/1992 | Balseiro et al. | 414/11 |
| 5,131,781 A | | 7/1992 | Klein | |
| 5,170,974 A | | 12/1992 | Ruggiero | 248/251 |
| 5,240,058 A | * | 8/1993 | Ward | 160/123 |
| 5,287,614 A | * | 2/1994 | Ehrlich | 29/450 |
| 5,299,773 A | * | 4/1994 | Bertrand | 248/514 |
| 5,301,915 A | * | 4/1994 | Bahniuk et al. | 248/452 |
| 5,308,280 A | | 5/1994 | Dotson | 454/170 |
| 5,331,706 A | | 7/1994 | Graham | |
| 5,345,989 A | | 9/1994 | Brophy | 160/354 |
| 5,375,303 A | | 12/1994 | Shenier | 24/163 |
| 5,379,491 A | * | 1/1995 | Solo | 24/3 R |
| 5,384,938 A | | 1/1995 | Frederick | 24/306 |
| 5,388,283 A | | 2/1995 | Garnett | 4/503 |
| 5,404,602 A | | 4/1995 | Kondo | 5/504.1 |
| 5,469,607 A | | 11/1995 | Henningsson et al. | 24/716 |
| 5,497,537 A | * | 3/1996 | Robinson et al. | 24/716 |
| 5,524,693 A | | 6/1996 | Hamilton | 160/243 |
| 5,529,326 A | * | 6/1996 | Hwang | 280/220 |
| 5,536,229 A | | 7/1996 | Albergo | 482/148 |
| 5,542,209 A | | 8/1996 | Sheu | 47/44 |
| 5,555,607 A | | 9/1996 | Parveris | 24/129 R |
| 5,558,501 A | * | 9/1996 | Wang et al. | 416/244 |
| 5,584,456 A | | 12/1996 | Stephens | 248/214 |
| 5,640,826 A | * | 6/1997 | Hurilla, Jr. | 52/749.14 |
| 5,645,272 A | * | 7/1997 | Brennan, Sr. | 269/68 |
| 5,649,780 A | | 7/1997 | Schall | 403/109 |
| 5,666,702 A | | 9/1997 | Ming-Chieh | 24/510 |
| 5,673,741 A | | 10/1997 | Cairns | 160/330 |
| 5,707,032 A | | 1/1998 | Ehrlich | 248/205.3 |
| 5,715,620 A | | 2/1998 | Walker | 40/591 |
| 5,722,691 A | * | 3/1998 | Patel | 281/42 |
| 5,803,653 A | | 9/1998 | Zuffetti | 403/363 |
| 5,884,424 A | | 3/1999 | Smith | 40/610 |
| 5,897,085 A | | 4/1999 | Cronin | 248/200.1 |
| 5,924,469 A | | 7/1999 | Whittemore | 160/368.1 |
| 5,937,488 A | | 8/1999 | Geiger | 24/339 |
| 5,940,942 A | | 8/1999 | Fong | 24/459 |
| 5,941,434 A | | 8/1999 | Green | 224/250 |
| 5,941,586 A | * | 8/1999 | Fann | 294/19.1 |
| 5,944,464 A | | 8/1999 | Cole, Jr. | |
| 5,979,110 A | | 11/1999 | Tai | 47/41.01 |
| 6,067,691 A | * | 5/2000 | Feltman | 24/295 |
| 6,082,945 A | | 7/2000 | Jeffries et al. | |
| 6,152,434 A | | 11/2000 | Gluck | 269/6 |
| 6,164,605 A | | 12/2000 | Drake et al. | 248/74.3 |
| 6,170,112 B1 | | 1/2001 | Mayfield et al. | |
| 6,209,615 B1 | | 4/2001 | Whittemore | 160/368.1 |
| 6,378,175 B1 | | 4/2002 | Vanderpan | 24/336 |
| 6,467,741 B1 | * | 10/2002 | Shih | 248/200.1 |
| 6,474,609 B1 | * | 11/2002 | Pinard | 248/303 |
| 6,508,295 B2 | * | 1/2003 | Whittemore | 160/368.1 |
| 6,523,231 B1 | | 2/2003 | Lassiter | 24/339 |
| 2001/0029640 A1 | * | 10/2001 | Cassar | 15/144.1 |
| 2003/0154588 A1 | * | 8/2003 | Blacket et al. | 29/456 |

* cited by examiner



FIG. 1A



FIG. 5A              FIG. 5B



FIG. 1B



FIG. 1C



FIG 2



FIG. 3A

FIG. 3B

FIG. 3C



FIG. 4B

FIG. 4C

FIG. 4A



FIG. 6



FIG. 7A

FIG. 7B



FIG. 7C



FIG. 7D



FIG. 7E



FIG. 7F



FIG. 8C

FIG. 8B

FIG. 8A



FIG. 9B

FIG. 9A          FIG. 9C

1

# PARTITION MOUNT

## RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 09/884,337, filed Jun. 19, 2001, now U.S. Pat. 6,508, 295, which is a continuation of U.S. application Ser. No. 09/613,645, filed Jul. 11, 2000, now U.S. Pat. No. 6,321,825, which is a continuation of U.S. application Ser. No. 09/302, 122, filed Apr. 29, 1999, now U.S. Pat. No. 6,209,615, which is a continuation of U.S. application Ser. No. 08/740,372, filed Oct. 29, 1996, now U.S. Pat. No. 5,924,629, the contents of the applications being incorporated herein by reference.

## BACKGROUND OF THE INVENTION

Partition systems are often employed to separate portions of a building or room. Partitions serve as a barrier to dust, noise, light, odors, and the like. In construction zones, partitions are useful for protecting a clean area from a work area, for example, protecting an area where furniture and rugs are temporarily stored from an area where wood floors are being refinished.

Workers at construction sites often use rudimentary techniques for installing partitions. Some simply nail, screw, or staple the curtain or partition material to the floor, ceiling, and abutting walls, resulting in damage to their surfaces. Others tape or otherwise adhere a curtain or plastic sheet to the walls and ceilings. The tape usually fails to stick, but if it does stick, as the tape is removed, paint usually pulls off with the tape or adhesive is left behind.

Others employ more clever techniques for constructing partitions. U.S. Pat. No. 4,794,974 discloses a curtain wall having spring-loaded extendable support legs which support header elements aligned along the ceiling. A curtain is mounted to the header elements with fasteners along the length of each header element. This design suffers from several limitations. The support poles, header elements, fasteners, and curtain all comprise dedicated hardware, increasing manufacturing costs. Particularly, the curtain must be designed to accommodate the fasteners. In addition, installation appears to be awkward and time consuming due to the multitude of fasteners and the system appears to be top-heavy during installation.

U.S. Pat. No. 4,708,189 discloses a spring-loaded curtain support having a plurality of support units extending from the floor to the ceiling. Each support unit includes a stackable extension member, a telescoping section, a lower batten, and an upper batten. The lower and upper battens extend along the floor and ceiling respectively and interlock so as to provide a continuous batten along the floor and ceiling. A curtain is designed to loop around the upper batten and accommodate the extension poles. This design again requires dedicated hardware, including a curtain which is designed specifically to accept a particular upper batten size and shape and a particular extension pole. The structure is bulky and appears tedious to install.

U.S. Pat. No. 5,308,280 discloses a coal mine ventilation curtain support. An adjustable extension pole is erected between the floor and ceiling of a mine. A curtain support member compresses between the extension pole resting on the floor, and the ceiling such that the compressive force urges the support member against the ceiling, thereby securing a curtain in place against the ceiling. Although this design accommodates any type of curtain material, it also suffers from the limitation of requiring dedicated hardware as the support member is designed for a particular extension

2

pole. In addition, installation appears challenging in rooms with tall ceilings as the curtain is installed after the mount is raised and installed. Following installation of the support member, an installer must climb up to the ceiling and pull back a leg of the support member, insert a curtain and snap the support member back into the ceiling. In a home construction project, the snapping action may damage the ceiling. In addition, for ceilings higher than the reach of the installer, this design may prove to be challenging to install. This design presents the further unfortunate possibility that the installer could jam his fingers between the support member and ceiling.

## SUMMARY OF THE INVENTION

The present invention is directed to a partition mount apparatus and method which overcome the limitations of the prior art. The inventive method and apparatus are applicable to use in construction zones in preventing contaminants such as dust and paint from entering clean areas in a home or office. The invention may also be used as a temporary visual, odor, or sound barrier, depending on the curtain material employed. The present invention offers the advantages of accommodating standard extension poles, for example, painters poles, with standard threads, and is compatible with a variety of commercially-available curtain or drape materials, for example plastic, cloth, or the like. The invention is a "clean" system designed to be installed and removed without damaging or otherwise marking the ceiling, floor or walls in the construction zone. Assembly is easy and fast and can be accomplished by a single individual. In a preferred method for assembling the partition of the present invention, the curtain mounts and curtain are first assembled on the floor and then raised to the ceiling permitting safe installation in rooms with high ceilings, for example cathedral ceilings.

One embodiment of the invention comprises a spring-loaded mount including a hole at a proximal end, a compression mechanism, and a head at a distal end. The hole is adapted to receive the end of a standard length-adjustable pole or painters pole. In a preferred embodiment, the compressive mechanism comprises a spring under compression between an inner wall of the mount and the head. The head is urged toward the ceiling by the compressive mechanism, providing longitudinal rigidity to the installed mount. The head preferably interfaces with the mount at a swivel joint so that the mount can be installed at a range of orientations relative to the ceiling.

The head preferably includes a coupling device, for example, a Velcro™ hook and loop fastener strip, a hook, or a clip, adapted to receive a portion of a curtain. In a first preferred embodiment of the invention, the face of the head includes a sheet of Velcro™ hooks which mates with a sheet of Velcro™ loops attached to the curtain. On the side of the curtain opposite the Velcro™ loops, a high-friction material provides friction between the mount and the ceiling, so that the curtain is less likely to slide relative to the ceiling thereby providing lateral rigidity. In a second preferred embodiment of the invention, a removable clip couples the curtain to the head. The clip is adapted to receive a section of curtain material and snap on or otherwise secure to the head. High friction material attached to the back of the clip provides lateral rigidity as described above.

In alternative embodiments, the curtain mount may be adapted to receive poles without threads, or may include a pin for interfacing with a corresponding hole in a pole. Furthermore, the elements of the curtain mount may be

US 6,942,004 B2

3

distributed along the pole. The extension poles do not necessarily need to be adjustable in situations where the ceiling size is standard or predetermined.

In the inventive method of the present invention, a spring-loaded curtain mount is coupled to the end of a standard adjustable pole, and the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. A portion of the curtain is attached to the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between and the floor and ceiling. This compressive force operates to urge the head toward the ceiling. The same compressive force operating through the high friction material on the head or curtain provides lateral rigidity for the system.

The mount is free-standing and therefore does not require additional "destructive" mounting means, for example nailing or taping. Instead, the mount is installed and removed without permanent damage to the ceiling or floor.

By placing several mounts between the ceiling and floor, across a room or portions thereof, the room can be partitioned to protect furniture and the like during construction of other portions of the room. The curtain can also be installed along the ceiling and/or floor for constructing a tunnel or booth. The shape of the partition is variable depending on the respective spatial positions of the mounts.

### BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other objects, features and advantages of the invention will be apparent from the following more particular description of preferred embodiments and the drawings in which like reference characters refer to the same parts throughout the different views. The drawings are not necessarily to scale, emphasis instead being placed upon illustrating the principals of the invention.

FIGS. 1A, 1B, and 1C illustrate installed partition configurations in accordance with the present invention.

FIG. 2 illustrates the primary components of two preferred embodiments of the present invention.

FIG. 3A is a cutaway side view of a curtain mount having a Velcro™-mount configuration in accordance with the present invention.

FIG. 3B is a perspective view of the head of the curtain mount of FIG. 3A interfacing with an appropriately configured curtain in accordance with the present invention.

FIG. 3C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 3A in accordance with the present invention.

FIG. 4A is a cutaway side view of a curtain mount having a clip-mount configuration in accordance with the present invention.

FIG. 4B is a perspective view of the interaction of the clip and head of the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 4C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 5A is a perspective view of the head of a curtain mount including an extension loop in accordance with the present invention.

FIG. 5B is a side view of a clamped interface between the curtain mount body and an extension pole in accordance with the present invention.

FIG. 6 illustrates a curtain installation using various preferred and alternative embodiments of the present invention.

4

FIG. 7A–FIG. 7F illustrate an installation procedure in accordance with the present invention.

FIG. 8A–FIG. 8C are perspective views of alternative embodiments for coupling the curtain to the head.

FIG. 9A–FIG. 9C are perspective views of an alternative embodiment of a curtain mount in accordance with the present invention illustrating an alternative curtain coupler, an alternative pole interface, and an alternative compression mechanism.

### DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

FIG. 1A illustrates an installed partition extending from the floor 34 to the ceiling 32 of a room between opposed walls 36A, 36B. Three curtain mounts 24 in accordance with the present invention are mounted on extension poles 22. A foot 26 at the bottom of each extension pole interfaces with the floor and a head 28 at the top of each curtain mount interfaces with the ceiling 32. The contact or interface points of the foot and head preferably are covered with a soft friction material such as rubber to provide lateral rigidity of the system and to prevent marking of the ceiling and floor.

Each curtain mount includes a compression mechanism, for example a spring, which operates to urge the head 28 against the ceiling 32, thereby securing the curtain 30. The extension poles 22 are preferably adjustable such that before installation of the curtain 30, the pole length in combination with the fully extended curtain mount 24 can be made slightly larger than the distance from the floor 34 to the ceiling 32 at the point at which the curtain mount is to be installed. For example, if the compression range of the spring is 2–3 inches, then the total length of the pole 22 and mount 24 can be made 2–3 inches longer than the floor-to-ceiling 32 height, causing the spring to be compressed when the system is installed. Alternatively, non-adjustable standard poles such as painters poles sized for particular predetermined ceiling heights may be employed.

FIG. 1B illustrates the present invention installed to partition a portion of a room extending between adjacent walls 36B,36C. In this illustration, the curtain 30 is installed to protect furniture 38 from dust and debris during painting or other construction in the open portion of the room.

FIG. 1C illustrates the present invention configured as a tunnel or booth. In this installation, the curtain 30 extends along the ceiling 32 between mounts 24A, 24B, 24C, and 24D, protecting the ceiling 32 from activity in the tunnel. The curtain 30 can be tucked under feet 26A–26D to secure the curtain to the floor 34. The curtain 30 may also be installed between the feet 26A–26D on the floor to provide an enclosed tunnel. The sides of the tunnel may be formed by a single continuous curtain 30 or multiple curtains 30, the edges of each held in place and raised by the mounts 24A–24D. This configuration is particularly well suited to serve as an asbestos removal tunnel or paint booth.

Note that for purposes of the present invention, the term "curtain" is defined to include any flexible material suited for partitioning, for example cloth sheets and drapes, or plastic tarps.

FIG. 2 illustrates two preferred curtain mount embodiments. In a first Velcro™-mount embodiment 21A, an extension pole 22A having a foot 26A, for example a rubber foot 26 is coupled to a first curtain mount 24A. The curtain mount 24A is spring-loaded as described above and as will be described in further detail below.

The curtain mount includes a head 28A. The head is preferably of sufficient surface area to accommodate curtain

5                                                    6

materials of a variety of strengths and weights. For example, if the head area is too small, the head may punch through a weaker curtain material when weighted by the curtain. In a preferred embodiment of the invention, a head size of approximately 5" by 2.5" was found to be sufficient to handle most curtain materials. The head 28A includes a strip of Velcro™ loops or hooks attached thereto. The Velcro™ strip 40 on the head 28A mates with a corresponding Velcro™ strip 42 attached to a portion of the curtain 30. A strip of friction material 44 is attached to the face of the curtain 30 opposite that of the Velcro™ strip 42. In this manner, an installer can first mate the Velcro™ strips 42,40 of the curtain 30 and curtain mount 24A respectively and then raise the extension pole 22A and mount 24A such that the high friction material 44 interfaces with the ceiling. As the spring in the curtain mount 24A compresses, that compressive force operates outwardly through the head 28A, Velcro™ strips 40,42, curtain 30, and high friction material 44 against the ceiling, thereby securing the curtain 30 in place against the ceiling. A universal joint 56A at the head 28A allows for installation of a variety of angles. This allows for installation of the curtain mount of the present invention in rooms having pitched ceilings, for example cathedral ceilings.

In a second curtain mount embodiment 24B hereinafter referred to as a clip-mount, a curtain clip 64 is adapted to accept a portion 30A of a curtain 30. In a first embodiment, the clip 64 includes legs 65 adapted to snap over the body of the head 28B, thereby securing the clip 64 and curtain 30 to the head 28B. In a second embodiment, the clip 64 includes pins 112 (see FIG. 9A) which slide and lock in corresponding holes 110 in the head 28B. The top portion of the clip 64 preferably includes high friction material 44 as described above. In the clip-mount embodiment, an installer at floor level clips a portion of the curtain onto the head 28B of the curtain mount 24B and raises the curtain 30 to the ceiling using extension pole 22B. The high friction material 44 at the head 28B in combination with the rubber foot 26 provide lateral rigidity to the system, and the compressed spring in the curtain mount 24B provides longitudinal rigidity to the installed system. The clip embodiment of the curtain mount 24B offers the advantage of accepting any portion of any flexible curtain 30 material, offering an advantage over the Velcro™-mount embodiment 24A which can be coupled only to those portions of a curtain 30 having Velcro™ strips 42 previously installed thereon.

FIG. 3A is a cutaway side view of a Velcro™-mount embodiment of a curtain mount 24 in accordance with the present invention. The curtain mount 24 includes a body 48, a spring 50, a plunger 46, a head 28, and a hole 60 for receiving the end of an extension pole 22. The hole 60 includes internal threads 52 for mating with corresponding external threads 54 formed on the extension pole 22. The thread may comprise ¾ Acme thread, standard in the industry for painter's poles and other standard extension poles. This permits the curtain mount 24 to be compatible with commercially-available poles. When the extension pole 22 is inserted to a predetermined distance into the hole 60, a thread stopper 58 prevents the pole 22 from being inserted further.

A spring 50 rests in the body 48 of the curtain mount 24 between the rigid thread stopper 58 and the plunger 46. The spring is preferably extendable over a range of lengths, for example four inches, to accommodate extension poles of a range of lengths. The tension of the spring 50 must be high enough to support the weight of the installed curtain and low enough such that the head 28 of the curtain mount 24 does

not push through the ceiling during installation. The plunger 46 and head 28 preferably interface at a universal joint 56 such that the curtain mount can be installed at a variety of angles relative to the ceiling. Velcro™ loops 40 are coupled to the outer face of the head 28. Preferred methods for coupling Velcro™ loops to the head 28 include self-adhesive Velcro™ strips and/or stapling.

The perspective view of FIG. 3B illustrates the head 28 and Velcro™ loops 40 coupled thereto. The Velcro™ loops 40 interface with Velcro™ hooks 42 stapled or otherwise adhered to a portion of the curtain 30. Friction material, approximately slightly larger in area than the surface area of the head 28 is disposed on the opposite face of the curtain. When the Velcro™ hooks 42 are mated to the Velcro™ loops 40, the curtain 30 is secured to the end of the curtain mount 24 and can be raised to the ceiling as shown in FIG. 3C.

In FIG. 3C, a force F generated by the compression of the spring operating on the plunger 46 urges the head 28 against the ceiling 32. The force transfers through the loops 40, the hooks 42, the curtain 30, and the high friction material 44, and operates on the ceiling 32. In this manner, the longitudinal compression of the spring acts outwardly to secure the curtain 30 against the ceiling 32.

FIG. 4A illustrates the clip-mount embodiment of the present invention. A curtain mount 24 includes a body 48 having a hole 60 for receiving an end of an extension pole 22, a plunger 62, a spring 50, and a fixed head 28. Note that the extension pole 22 of this embodiment is a standard thread-less pole and the hole 60 is adapted to receive the pole. In this embodiment, the pole 22 is slidable relative to the body 48 of the curtain mount 24, and communicates with the plunger 62 to compress the spring 50 against the spring stopper 51. The head 28 is longitudinally fixed, relative to the body 48. A universal joint 56 as shown in FIG. 3A may optionally be employed to couple the head 28 to the body 48 for reasons described above. A curtain clip 64 having legs 65 is adapted to snap onto the head 28, thereby clamping an inserted curtain therebetween. The clip legs 65 include tabs 67 which snap around the bottom face of the head 28 providing a secure fit. High friction material 44 is disposed on the top face of the clip 64 for interfacing with the ceiling, thereby providing lateral rigidity to the system as described above. Note that the clip design given above is merely illustrative of various clip designs which may be employed in accordance with the present invention.

FIG. 4B illustrates the relative positions of the head 28, curtain 30, and clip 64 during installation. An advantage of the clip-mount embodiment over the Velcro™-mount embodiment is that the clip-mount can be secured to any portion of a curtain or sheet available to the installer. This may include a center portion of the curtain 30 or a corner portion of the curtain 30 as shown in FIG. 4B. In contrast, the Velcro™-mount embodiment requires the curtain to have portions of Velcro™ attached to the curtain at predetermined locations.

FIG. 4C illustrates a curtain 30 installed against the ceiling 32 using the clip-mount. Before the curtain is raised, the clip 64 and curtain 30 are snapped and secured to the head 28. After raising the curtain against the ceiling 32, compression in the spring of the curtain mount generates a force F which operates through the head 28, curtain 30, clip 64, and high friction material 44 against the ceiling 32. The compressive force F of the spring and high friction material provide longitudinal and lateral rigidity to the system as described above.

FIG. 5A is a perspective view of the head 28 of a curtain mount having an extension loop 66. The extension loop 66

US 6,942,004 B2

7

is attached to the head 28, universal joint 56, plunger 46 (shown in FIG. 5A), body 48, or other portion of the curtain mount. Following installation of the curtain, the extension loop 66 allows one to reposition the head 28 relative to the ceiling without moving the extension pole. This is especially helpful for fine-tuning the adjustment of the curtain mount position, for example where the curtain exhibits sag between two installed curtain mounts, without having to move the entire pole. Operation of the extension loop is explained below with reference to FIGS. 7D–7F. The extension loop 66 may comprise string, a chain, or rod for tugging on the head.

FIG. 5B illustrates an alternative interface between an extension pole 22 and body 48 of a curtain mount. In this example, the body 48 of the curtain mount includes a hole 60 for receiving the end of an extension pole 22. The rim of the hole 60 includes fingers 74 which are tapered outward slightly. The fingers 74 include an external thread 72 adapted for interfacing with an internal thread on a corresponding clamp nut 70. After a pole 22 is inserted in the hole 60, the clamp 70 is slid into position and tightened around the fingers 74. The taper in the fingers 74 produces a snug fit as the clamp 70 is tightened. In this manner, the curtain mount can accommodate extension poles 22 of a variety of widths.

FIG. 6 illustrates an installed curtain 30 using preferred and alternative embodiments of the present invention. The right mount 82 employs a curtain mount 24 as described above. The curtain mount 24A is coupled to a standard extension pole 22 having a foot 26 at its lower end for interfacing with the floor 34. The curtain mount includes a spring 50 in compression between the head 28 and the extension pole 22. The head 28 is coupled to the plunger of the curtain mount 24 at a swivel joint 56 accommodating installation at an angle other than perpendicular to the ceiling as shown in FIG. 6.

The center mount 80 of FIG. 6 includes the various components of a preferred embodiment of the invention described above. However, in this example the components are distributed along the length of the mount. This embodiment includes a head 28 as described above, a swivel joint 56, an extension loop 66 and an adjustable pole 90A, 90B. The pole is adjustable at a clamp 84 and is spring-loaded at spring 50. Operation of this mount is similar to those mounts described above.

Left mount 78 of FIG. 6 illustrates an alternative embodiment of the present invention. The left mount again includes the preferred components of the present invention including a head 28, extension loop 66, adjustable pole 76, curtain mount 24, spring 50, universal joint 56, and foot 26. However in this example, the curtain mount 24 is coupled to the lower end of the pole in position near the floor. The head 28 of the mount is attached directly to the opposite end of the pole and interfaces with the curtain 30 at the ceiling 32 as shown in FIG. 6 and as described above. The pole in this example employs a rotational adjustment mechanism. Also note that in the illustration of FIG. 6, a corner of the curtain 30 is held under the foot 26 of center mount 80 to provide additional tension and rigidity to the curtain.

FIGS. 7A–7F illustrate a method for installing a curtain in accordance with the present invention. In FIG. 7A, an installer 86 decides which portion of the room to partition. The installer 86 selects a curtain 30 of appropriate size and attaches a curtain mount 24 to an extension pole 22 as shown. The combined length of the curtain mount 24 and pole 22 is sized to be slightly larger than the floor 34 to ceiling 32 distance, as described above.

8

In FIG. 7B, the installer 86 mounts the curtain 30 to the head of the curtain mount 24 before raising the curtain 30. The curtain is secured to the mount by either the Velcro™-mount or clip-mount style securing mechanisms as described above.

In FIG. 7C, the curtain 30 is raised to the ceiling 32 using the extension pole 22 and curtain mount 24. The pole 22 is positioned appropriately and the installer 86 pushes the pole 22 against the ceiling 32 to compress the spring in the curtain mount 24.

In FIG. 7D, the first mount 92 is shown in position with the head of the curtain mount urging the curtain 30 against the ceiling 32. In this installation, the installer 86 also decided to tuck a lower portion of the curtain 30 under the foot 26 to add tension to the curtain and secure the curtain to the floor. Following this, in FIG. 7D, the installer 86 has coupled a second portion of the curtain 30 to a second mount 94 and is in the process of raising the second mount 94 into position a few feet from the first mount 92.

After positioning the second mount 94 as shown in FIG. 7E, the installer 86 noticed that a sag 88 is present in the curtain 30 between the first 92 and second 94 mounts which is undesirable for the installer's project. An extension loop 66 is coupled to the head of the curtain mount 24, thereby allowing the installer 86 to fine-tune the position of the second mount 94 relative to the first mount 92 to eliminate the sag 88 in the curtain 30.

The resulting installation is shown in FIG. 7F. It can be seen that the sag 88 exhibited in FIG. 7E has been eliminated in FIG. 7F by increasing the distance between the first mount 92 and the second mount 94, thereby tensioning the curtain 30 between the two mounts. Additional mounts may be added as described above resulting in partition configurations as shown in FIGS. 1A–1C.

FIGS. 8A–8C illustrate alternative coupler embodiments for coupling the curtain 30 to the head 28. In FIG. 8A, a hook 95 is installed on a side of the head 28. The hook 95 interfaces with a grommet 96 or other opening in the curtain 30 for supporting the curtain during and following installation. In FIG. 8B, a spring-biased clamp 97 secures the curtain 30 in its jaws. In FIG. 8C, the head 28 is formed in two sections which interface at a hinge 99. The sections join at jaws 98 to clamp the curtain 30, thereby securing it to the head 28. In the embodiments shown in FIGS. 8A–8C, the curtain 30, when installed, is not urged against the ceiling by the top face of the head 28. Instead, the curtain hangs from the side of the head 28.

A distinct advantage of the present invention over the prior art is its ability to interface with and utilize curtains, poles, and extension rods which are available off the shelf. Preferred curtain materials depend on the application and include cloth or canvas sheets, plastic sheets, and reinforced plastic tarps. Standard poles include extension poles, painter's poles, telescoping poles, and window washing poles. High friction materials include silicone, rubber, and non-skid material for carpeting. Compression mechanisms include springs, pneumatic devices and hydraulic devices.

More curtain mounts may be used for installations requiring heavier curtain materials or for installations which require the partition to be substantially air-tight, for example, asbestos removal and lead paint removal applications.

The present invention is also applicable for creating temporary private areas using standard sheets and blankets for curtains. This would be particularly useful in emergency shelters or in crowded hospitals.

US 6,942,004 B2

9

10

While this invention has been particularly shown and described with references to preferred embodiments thereof, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention as defined by the appended claims.

An example of an alternative embodiment of the curtain mount is illustrated in FIGS. 9A, 9B and 9C. This curtain mount embodiment includes a hydraulic or pneumatic device **107** serving as a compression mechanism. A proximal end of the mount includes a pole interface comprising a pin **102** which mates with a corresponding hole **104** on the extension pole **22**. The head **106** is mounted to the plunger **46** as shown.

The head **106** includes at least one hole **110** adapted to interface with and receive at least one corresponding pin **112** located on a clip plate **108**. The pins **112** and a portion of a curtain **30** together insert into the holes **110**, and slide and lock in place in the keyhole slots **111** shown in FIG. 9B. A knob **113** at the end of each pin **112** prevents a mounted plate **108** from releasing from the head **106**.

FIG. 9C illustrates the resulting installed configuration of the curtain mount of FIGS. 9A and 9B. A portion of the curtain **30** wraps around the pins **112** and is secured in holes **110**. The outward force of the hydraulic plunger urges the curtain **30** toward the ceiling **32** as described above.

I claim:

1. A mounting system for installing a curtain comprising:
  a pole having first and second ends;
  a foot at a first end of the pole;
  a head at a second end of the pole;
  a compression mechanism between the foot and head; and
  a clamp including an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the head such that the engagement arm pivots between a secure position and an open position.

2. The mounting system of claim 1 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

3. The mounting system of claim 1 wherein the engagement arm is further adapted to secure a curtain against the top portion of the head.

4. The mounting system of claim 1 wherein the engagement arm operates under force to urge the curtain against the head.

5. The mounting system of claim 1 wherein the clamp is removably coupled to the head.

6. The mounting system of claim 1 further comprising an interface between the pole and the head.

7. The mounting system of claim 1 further comprising a universal joint between the pole and the head.

8. The mounting system of claim 1 wherein the head comprises a high-friction material.

9. The mounting system of claim 8 wherein the high-friction material comprises rubber.

10. The mounting system of claim 1 wherein the pole comprises an adjustable-length pole.

11. The mounting system of claim 1 wherein the clamp is biased by a spring to urge the engagement arm against the head.

12. The mounting system of claim 11 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

13. The mounting system of claim 12 wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

14. The mounting system of claim 1 wherein the engagement arm is urged against the head in the secure position and wherein the engagement arm is separated from the head in the open position.

15. The mounting system of claim 1 wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

16. The mounting system of claim 1 wherein the compression mechanism is configured to urge the head away from the foot.

17. A mount attachable to an extension pole for installing a curtain comprising:
  an interface at a proximal end of the mount adapted for coupling the mount to an extension pole;
  a compression mechanism along a longitudinal axis of the mount;
  a head at a distal end of the mount, the compression mechanism operable to urge the head away from the interface; and
  a clamp including an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the mount such that the engagement arm pivots between a secure position and an open position.

18. The mount of claim 17 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

19. The mount of claim 17 wherein the engagement arm is further adapted to secure a curtain against the top portion of the head.

20. The mount of claim 17 wherein the engagement arm operates under force to urge the curtain against the head.

21. The mount of claim 17 wherein the clamp is removably coupled to the head.

22. The mount of claim 17 wherein the clamp is pivotably coupled to the mount proximal to the head.

23. The mount of claim 17 wherein the interface comprises a hole having an internal thread.

24. The mount of claim 17 wherein the interface comprises a hole adapted to mate with a pin on the extension pole in a slip-fit relationship.

25. The mount of claim 17 wherein the interface comprises a pin adapted to mate with a hole on the extension pole in a slip-fit relationship.

26. The mount of claim 17 further comprising a universal joint between the interface and the head.

27. The mount of claim 17 wherein the head comprises a high-friction material.

28. The mount of claim 27 wherein the high-friction material comprises rubber.

29. The mount of claim 17 adapted to be secured to an adjustable-length extension pole at the interface.

30. The mount of claim 17 wherein the clamp is biased by a spring to urge the engagement arm against the head.

31. The mount of claim 30 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

US 6,942,004 B2

**11**

32. The mount of claim **31** wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

33. The mount of claim **17** wherein the engagement arm is urged against the head in the secure position, and wherein the engagement arm is separated from the head in the open position.

34. The mount of claim **17** wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

35. A mounting system for installing a sheet of material comprising:

a pole having first and second ends;

foot at a first end of the pole;

a head at a second end of the pole, the head having an upper first engaging surface;

an adjustment mechanism between the foot and head for adjusting the length of the pole therebetween; and

a clip having a lower second engaging surface that removably engages the upper first engaging surface of the head for mounting a sheet of material therebetween, and a plurality of legs extending transverse to the second engaging surface of the clip to removably secure the clip to the head, the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head.

36. The mounting system of clam **35** wherein the legs include tabs which extend about the portion of the lower surface of the head.

37. The mounting system of claim **35** wherein the head extends transverse to a longitudinal axis of the pole.

38. The mounting system of claim **35** wherein the first and second engaging surfaces are substantially planar.

39. The mounting system of claim **35** further comprising a compression mechanism between the foot and the head.

40. The mounting system of claim **39** wherein the compression mechanism comprises a spring.

41. The mounting system of claim **35** wherein the legs are elastically deformable and snap about at least one side surface of the head.

42. The mounting system of claim **35** wherein the legs are configured such that the clip is slidable relative to the head.

43. The mounting system of claim **35** wherein the clip and head are rectangular in shape.

44. The mounting system of claim **35** further comprising high-friction material applied to an upper surface of the clip.

45. A mounting system for installing a curtain comprising:

a pole having first and second ends;

a foot at a first end of the pole;

a head at a second end of the pole;

a compression mechanism between the foot and head; and

**12**

a clamp including an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the mounting system such that the engagement arm pivots between a secure position and an open position.

46. The mounting system of claim **45** wherein the clamp is pivotably coupled to the mounting system proximal to the head.

47. The mounting system of claim **45** wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

48. The mounting system of claim **45** wherein the engagement arm is further adapted to secure a curtain against the top portion of the head.

49. The mounting system of claim **45** wherein the engagement arm operates under force to urge the curtain against the head.

50. The mounting system of claim **45** wherein the clamp is removably coupled to the pole.

51. The mounting system of claim **45** further comprising an interface between the pole and the head.

52. The mounting system of claim **45** further comprising a universal joint between the pole and the head.

53. The mounting system of claim **45** wherein the head comprises a high-friction material.

54. The mounting system of claim **53** wherein the high-friction material comprises rubber.

55. The mounting system of claim **45** wherein the pole comprises an adjustable-length pole.

56. The mounting system of claim **45** wherein the clamp is biased by a spring to urge the engagement arm against the head.

57. The mounting system of claim **56** wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

58. The mounting system of claim **57** wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

59. The mounting system of claim **45** wherein the engagement arm is urged against the head in the secure position and wherein the engagement arm is separated from the head in the open position.

60. The mounting system of claim **45** wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

61. The mounting system of claim **45** wherein the compression mechanism is configured to urge the head away from the foot.

\*    \*    \*    \*    \*

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/301,233 | Whittemore |
| | Examiner | Art Unit |
| | Bruce A. Lev | 3634 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE ____3____ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *Nov 21, 2002* _____ .

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) *1-43* _____ is/are pending in the application.

    4a) Of the above, claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-43* _____ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☒ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are a) ☐ accepted or  b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved  b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

## Priority under 35 U.S.C. §§ 119 and 120

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

ZW000232

## Attachment(s)

1) ☒ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s). _____

4) ☐ Interview Summary (PTO-413) Paper No(s). _____

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____

BRUCE A. LEV
PRIMARY EXAMINER

Application/Control Number: 10/301,233                                                Page 2

Art Unit: 3634

# DETAILED ACTION

## *Specification*

1.      The disclosure is objected to because of the following informalities:

The phrase "now P.N. 6,508,295" should appear on page 1, line 5.

## *Claim Rejections - 35 USC § 112*

2.      Claims 2, 3, 18, 20, 23, 24, 37, and 43 are rejected under 35 U.S.C. 112, second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject

matter which applicant regards as the invention.

As concerns claims 2, 3, 18, 20, 23, 24, and 43, there is an inconsistency between the

language in the preamble and certain portions in the body of the claims, thereby making the scope

of the claims unclear.  For example, the preamble clearly indicates that the subcombination of a

"mounting system" is being claimed with the functional recitation of the "mounting system" being

used "for installing a curtain".  However, the body of the claim positively recites the "curtain",

e.g., "*secures* the curtain" (claim 2), which indicates the claims as being drawn to a combination

of the "mounting system" and the "curtain".  Therefore, the applicant is required to clarify what

the claims are intended to be drawn to, i.e., either the "mounting system" alone or in combination

with the "curtain", and to present the claims with the language which is consistent with the

ZW000233

invention. The applicant should note that "*adapted to be*" language may be appropriate if claiming the "mounting system" alone (i.e., "adapted to be secured to").

As concerns claim 37, there is an inconsistency between the language in the preamble and certain portions in the body of the claims, thereby making the scope of the claims unclear. For example, the preamble clearly indicates that the subcombination of a "mount" is being claimed with the functional recitation of the "mount" being "attachable to a pole". However, the body of the claim positively recites the "pole", e.g., "*further comprising an...pole*", which indicates the claims as being drawn to a combination of the "mount" and the "pole". Therefore, the applicant is required to clarify what the claims are intended to be drawn to, i.e., either the "mount" alone or in combination with the "pole", and to present the claims with the language which is consistent with the invention. The applicant should note that "*adapted to be*" language may be appropriate if claiming the "mount" alone (i.e., "adapted to be secured to").

## *Double Patenting*

3.      The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686

ZW000234

Application/Control Number: 10/301,233                                    Page 4

Art Unit: 3634

F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA

1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321© may be used to

overcome an actual or provisional rejection based on a nonstatutory double patenting ground

provided the conflicting application or patent is shown to be commonly owned with this

application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal

disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

4.    Claims 1-43 are rejected under the judicially created doctrine of double patenting over

claims 1-9 of U. S. Patent No. 6,508,295 since the claims, if allowed, would improperly extend

the "right to exclude" already granted in the patent.

The subject matter claimed in the instant application is fully disclosed in the patent and is

covered by the patent since the patent and the application are claiming common subject matter.

Furthermore, there is no apparent reason why applicant was prevented from presenting

claims corresponding to those of the instant application during prosecution of the application

which matured into a patent. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

See also MPEP § 804.

ZW000235

Application/Control Number: 10/301,233

Art Unit: 3634

## *Claim Rejections - 35 USC § 103*

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
> section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
> such that the subject matter as a whole would have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
> manner in which the invention was made.

6.      Claims 1-30 and 34-43 are rejected under 35 U.S.C. 103(a) as being unpatentable over

*Stiffel 2,942,829* in view of *Servadio 4,717,107.*

As concerns claims 1-4, Stiffel sets forth a mounting system comprising a pole (inclusive

of members 10-12 and 38); a foot 22; a head (inclusive of members 39, 50 60, 62, and 64); and a

compression mechanism 49 between the foot and the head. **What Stiffel does not set forth** is the

head having a spring-biased clamp rotatably coupled to the head on an outer side portion and

including an engagement arm biased by a spring. However, **Servadio teaches** the use of a spring-

biased clamp 4 rotatably coupled (via member 7) to a head (viewed as the distal end of member 3)

and including an engagement arm 5 biased by a spring 8. Therefore, it would have been obvious

to one of ordinary skill in the art at the time the invention was made to modify the head of Stiffel

by including a spring-biased clamp rotatably coupled to the an outer side portion of the head and

including an engagement arm biased by a spring, as taught by Servadio, in order to provide

releasable engagement means upon the head for attaching sheet members to the mount when in

use.

ZW000236

Art Unit: 3634

7.    Claims 31-33 are rejected under 35 U.S.C. 103(a) as being unpatentable over *Stiffel* in view of *Servadio* further in view of *Brown WO 91/09556.*

Stiffel in view of Servadio set forth the mount, as advanced above, except for the interface incorporating a hole and pin. However, **Brown teaches** the use of a hole 26 and pin interface upon a pole and sheet mounting system. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the mount of Stiffel in view of Servadio by including an interface incorporating a hole and pin, as taught by Brown, in order to more easily and conveniently couple the mount to an extension pole.

## *Conclusion*

Any comments considered necessary by applicant must be submitted no later than the payment of the Issue Fee and, to avoid processing delays, should preferably **accompany** the Issue Fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Bruce A. Lev whose telephone number is (703) 308-7470.

ZW000237

Application/Control Number: 10/301,233

Art Unit: 3634

Any inquiry of a general nature or relating to the status of this application should be
directed to the Group receptionist whose telephone number is (703) 308-2168.

February 10, 2003

*Bruce A. Lev*

*Primary Examiner*

*Group 3600*

ZW000239

PATENT

Attorney Docket No.: ZIP-0001CON4.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant(s):     Jeffrey P. Whittemore          Examiner: Lev, B.
Serial No.:       10/301,233                     Group Art Unit: 3634
Filing Date:      November 21, 2002
Title:            Partition Mount

---

CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited with the United States Post Office as First Class Mail in an envelope
addressed to the Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

7-18-03
Date

Vanessa Marakas

---

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## AMENDMENT A

Sir:

The following is in response to the Office Action dated February 18, 2003. Please amend
the application as follows.

In the specification:

Please amend the paragraph at page 1, lines 4-11 as follows:

(Amended) This application is a continuation of United States Application Serial
Number 09/884,337, filed June 19, 2001, now United States Patent No. 6,508,295, which
is a continuation of United States Application Serial Number 09/613,645, filed July 11,
2000, now United States Patent No. 6,321,823, which is a continuation of United States
Application Serial Number 09/302,122, filed April 29, 1999, now United States Patent
Number 6,209,615, which is a continuation of United States Application Serial Number
08/740,372, filed October 29, 1996, now United States Patent Number 5,924,629, the
contents of the applications being incorporated herein by reference.

- 1 -

PTO/SB/26 (05-03)
Approved for use through 4/30/2003. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A PRIOR PATENT | Docket Number (Optional) ZIP-0001CON4 |
|---|---|

In re Application of:    Jeffrey P. Whittemore

Application No.:    10/301,233

Filed:    November 21, 2002

For:    PARTITION MOUNT

The owner*, __ZIPWALL, LLC__ , of __100__ percent interest in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application, which would extend beyond the expiration date of the full statutory term defined in 35 U.S.C. 154 and 173, as presently shortened by any terminal disclaimer, of prior Patent No. _6,508,295_____. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term as defined in 35 U.S.C. 154 and 173 of the prior patent, as presently shortened by any terminal disclaimer, in the event that it later: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as presently shortened by any terminal disclaimer.

Check either box 1 or 2 below, if appropriate.

1. ☐    For submissions on behalf of an organization (e.g., corporation, partnership, university, government agency, etc.), the undersigned is empowered to act on behalf of the organization.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

2. ☒    The undersigned is an attorney or agent of record.

_Signature_    July 18, 2003
Signature    Date

Anthony P. Onello, Jr. Reg No. 38,572
Typed or printed name

(617) 994-4900
Telephone Number

☒    Terminal disclaimer fee under 37 CFR 1.20(d) included.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner). Form PTO/SB/96 may be used for making this certification. See MEPP § 324.

This collection of information is required by 37 CFR 1.321. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

ZW000377

PATENT
Attorney Docket No.: ZIP-0001CON4-

In the claims:

Please cancel claims 18 and 41.

Please amend claims 2, 3, 20, 23, 24, and 43 as follows. The entire claim set as now pending is reproduced below, for the convenience of the Examiner.

1.    A mounting system for installing a curtain comprising:

a pole having first and second ends;

a foot at a first end of the pole;

a head at a second end of the pole;

a compression mechanism between the foot and head; and

a clamp including an engagement arm that engages an exterior surface of the head for securing a curtain to the head.

2.    (Amended) The mounting system of claim 1 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

3.    (Amended) The mounting system of claim 1 wherein the engagement arm is adapted to secure a curtain against a top portion of the head.

4.    The mounting system of claim 1 wherein the engagement arm operates under force to urge the curtain against the head.

5.    The mounting system of claim 1 wherein the clamp is removably coupled to the head.

6.    The mounting system of claim 1 wherein the clamp is rotatably coupled to the head.

7.    The mounting system of claim 1 wherein the clamp is slidably coupled to the head.

- 2 -

PATENT
Attorney Docket No.: ZIP-0001CON4

8.    The mounting system of claim 1 wherein the clamp is rotatably coupled to the pole proximal to the head.

9.    The mounting system of claim 1 wherein the clamp is slidably coupled to the pole proximal to the head.

10.    The mounting system of claim 1 further comprising an interface between the pole and the head.

11.    The mounting system of claim 1 further comprising a universal joint between the pole and the head.

12.    The mounting system of claim 1 wherein the head comprises a high-friction material.

13.    The mounting system of claim 12 wherein the high-friction material comprises rubber.

14.    The mounting system of claim 1 wherein the pole comprises an adjustable-length pole.

15.    The mounting system of claim 1 wherein the clamp is biased by a spring to urge the engagement arm against the head.

16.    The mounting system of claim 15 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

17.    The mounting system of claim 15 wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

- 3 -

**ZW000379**

PATENT
Attorney Docket No.: ZIP-0001CON4

18.    Canceled

19.    The mounting system of claim 1 wherein the engagement arm is urged against the head in a secure position, and wherein the engagement arm is separated from the head in an open position.

20.    (Amended) The mounting system of claim 19 wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

21.    The mounting system of claim 1 wherein the compression mechanism is configured to urge the head away from the foot.

22    A mount attachable to an extension pole for installing a curtain comprising:

        an interface at a proximal end of the mount adapted for coupling the mount to an extension pole;

        a compression mechanism along a longitudinal axis of the mount;

        a head at a distal end of the mount, the compression mechanism operable to urge the head away from the interface; and

        a clamp including an engagement arm that engages an exterior surface of the head for securing a curtain to the head.

23.    (Amended) The mount of claim 22 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

- 4 -

ZW000380

PATENT
Attorney Docket No.: ZIP-0001CON4.

24.    (Amended) The mount of claim 22 wherein the engagement arm is adapted to secure a
curtain against a top portion of the head.

25.    The mount of claim 22 wherein the engagement arm operates under force to urge the
curtain against the head.

26.    The mount of claim 22 wherein the clamp is removably coupled to the head.

27.    The mount of claim 22 wherein the clamp is rotatably coupled to the head.

28.    The mount of claim 22 wherein the clamp is slidably coupled to the head.

29.    The mount of claim 22 wherein the clamp is rotatably coupled to the mount proximal to
the head.

30.    The mount of claim 22  wherein the clamp is slidably coupled to the mount proximal to
the head.

31.    The mount of claim 22 wherein the interface comprises a hole having an internal thread.

32.    The mount of claim 22 wherein the interface comprises a hole adapted to mate with a pin
on the extension pole in a slip-fit relationship.

33.    The mount of claim 22 wherein the interface comprises a pin adapted to mate with a hole
on the extension pole in a slip-fit relationship.

34.    The mount of claim 22 further comprising a universal joint between the interface and the
head.

- 5 -

ZW000381

PATENT
Attorney Docket No.: ZIP-0001CON4.

35.   The mount of claim 22 wherein the head comprises a high-friction material.

36.   The mount of claim 35 wherein the high-friction material comprises rubber.

37.   The mount of claim 22 further comprising an adjustable-length extension pole.

38.   The mount of claim 22 wherein the clamp is biased by a spring to urge the engagement arm against the head.

39.   The mount of claim 38 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

40.   The mount of claim 38 wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

41.   Canceled

42.   The mount of claim 22 wherein the engagement arm is urged against the head in a secure position, and wherein the engagement arm is separated from the head in an open position.

43.   (Amended) The mount of claim 42 wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a  curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

- 6 -

**ZW000382**

PATENT
Attorney Docket No.: ZIP-0001CON4

Please add the following new claims 44-58:

44.    (New) A mounting system for installing a sheet of material comprising:

a pole having first and second ends;

a foot at a first end of the pole;

a head at a second end of the pole, the head having an upper first engaging surface;

an adjustment mechanism between the foot and head for adjusting the length of the pole therebetween; and

a clip having a lower second engaging surface that interfaces with the upper first engaging surface of the head for mounting a sheet of material therebetween, a plurality of legs extending transverse to the second engaging surface of the clip for removably securing the clip to the head.

45.    (New) The mounting system of claim 44 wherein the legs include tabs which removably engage a side and lower surface of the head.

46.    (New) The mounting system of claim 44 wherein the head extends transverse to a longitudinal axis of the pole

47.    (New) The mounting system of claim 44 wherein the first and second engaging surfaces are substantially planar.

48.    (New) The mounting system of claim 44 further comprising a compression mechanism between the foot and the head.

49.    (New) The mounting system of claim 48 wherein the compression mechanism comprises a spring.

- 7 -

**ZW000383**

PATENT
Attorney Docket No.: ZIP-0001CON4

57.    (New) The clip of claim 54 wherein the body and head are rectangular in shape.

58.    (New) The clip of claim 54 further comprising high-friction material applied to an upper
surface of the clip body.

ZW000384

PATENT
Attorney Docket No.: ZIP-0001CON4

## REMARKS

Claims 1-43 are pending in the present application. Claims 2, 3, 20, 23, 24, and 43 are amended above. Claims 18 and 41 are canceled above. Claims 44-58 are added above. No new matter is added by the claim amendments or new claims. In particular, support for new claims 44-58 can be found in the specification as filed at least at FIGs. 2 and 4A-4C, and page 8, line 21 - page 9, line 2 and page 10, line 15 - page 11, line 17. Entry and allowance are respectfully requested.

Attached hereto is a marked-up version of the changes made to the claims by the current Amendment. The attached page is captioned "**Version with Markings to Show Changes Made**".

The specification stands objected to for an informality. The specification is amended above in a manner that is consistent with the suggestion made in the Office Action. Entry of the amendment and removal of the objection are respectfully requested.

Claims 2, 3, 18, 20, 23, 24, 37, and 43 stand rejected under 35 U.S.C. 112, second paragraph. Claim 18 is canceled above.

With regard to claims 2, 3, 20, 23, 24, 37, and 43, these claims are amended to remove a positive recitation of the "curtain" from the claims. In view of the amendments, it should now be clear that claims 1-21 are drawn to the "mounting system" alone, and that claims 22-43 are drawn to the "mount" alone.

Accordingly, entry of the amendments and removal of the rejections are respectfully requested.

- 10 -

ZW000385

All claims stand rejected under the judicially created doctrine of double patenting over the claims of U.S. Patent No. 6,508,295. A terminal disclaimer is filed herewith. Accordingly, removal of the rejections for double patenting is respectfully requested.

Claims 1-30 and 34-43 stand rejected under 35 U.S.C. 103(a) as being unpatentable over Stiffel (U.S. 2,942,829) in view of Servadio (U.S. 4,717,107). Claims 31-34 stand rejected under 35 U.S.C. 103(a) as being unpatentable over Stiffel in view of Servadio and further in view of Brown (WO 91/09556).

With regard to Stiffel, the Applicant respectfully refers to the commentary provided at page 8, paragraph 3 - page 10 of the Amendment submitted December 23, 1997, and page 3, paragraph 5 - page 4 of the Amendment submitted February 5, 1998 during prosecution of Parent Application 09/302,122, now U.S. Patent No. 5,924,469. Stiffel is directed to a self-adjustable leveling means incidentally including a few of the elements of the claimed invention.

Servadio is directed to a clothesline pole having a spring-biased clothes pin coupled to the pole for securing the pole to a line.

The combination of Stiffel and Servadio in no way teaches or suggests the present invention as claimed in independent claims 1 and 22. Specifically, neither reference teaches a mount/mounting system including a "... clamp...including an engagement arm that engages an exterior surface of the head" as claimed in claims 1 and 22. Instead, Servadio teaches spring-loaded clamping of a clothesline at an interior portion of the top of a pole, while Stiffel in no way teaches or suggests a "clamp", let alone a clamp that includes an "engagement arm that engages an exterior surface of the head", as claimed in independent claims 1 and 22..

- 11 -

ZW000386

PATENT
Attorney Docket No.: ZIP-0001CON4

### Version with Markings to Show Changes Made

<u>In the Specification</u>

The paragraph at page 1, lines 4-11 is amended as follows:

(Amended) This application is a continuation of United States Application Serial Number 09/884,337, filed June 19, 2001, <u>now United States Patent No. 6,508,295,</u> which is a continuation of United States Application Serial Number 09/613,645, filed July 11, 2000, now United States Patent No. 6,321,823, which is a continuation of United States Application Serial Number 09/302,122, filed April 29, 1999, now United States Patent Number 6,209,615, which is a continuation of United States Application Serial Number 08/740,372, filed October 29, 1996, now United States Patent Number 5,924,629, the contents of the applications being incorporated herein by reference.

<u>In the Claims</u>

Claims 2, 3, 20, 23, 24, and 43 are amended above as follows:

2.  (Amended) The mounting system of claim 1 wherein the engagement arm <u>is adapted to secure a</u> [secures the] curtain against a side portion of the head.

3.  (Amended) The mounting system of claim 1 wherein the engagement arm <u>is adapted to secure a</u> [secures the] curtain against a top portion of the head.

20. (Amended) The mounting system of claim 19 [wherein the curtain is of a thickness, such that] <u>wherein</u> when the engagement arm is in the secure position, the engagement arm

- 13 -

**ZW000387**

PATENT
Attorney Docket No.: ZIP-0001CON4

secures the curtain to the head with a force that is adapted to prevent [prevents] slippage

of [the] a curtain mounted thereto with respect to the head, and such that when the

engagement arm is in the open position, the separation between the engagement arm and

head is of a sufficient distance such that a [the] curtain can be positioned between the

engagement arm and the head.

23.    (Amended) The mount of claim 22 wherein the engagement arm is adapted to secure a

       [secures the] curtain against a side portion of the head.

24.    (Amended) The mount of claim 22 wherein the engagement arm is adapted to secure a

       [secures the] curtain against a top portion of the head.

43.    (Amended) The mount of claim 42 [wherein the curtain is of a thickness, such that]

       wherein when the engagement arm is in the secure position, the engagement arm secures

       the curtain to the head with a force that is adapted to prevent [prevents] slippage of [the]

       a curtain mounted thereto with respect to the head, and such that when the engagement

       arm is in the open position, the separation between the engagement arm and head is of a

       sufficient distance such that a [the] curtain can be positioned between the engagement

       arm and the head.

- 14 -

ZW000388

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **Office Action Summary** | 10/301,233 | Whittemore | |
| | Examiner<br>Bruce A. Lev | Art Unit<br>3634 | |

*— The MAILING DATE of this communication appears on the cover sheet with the correspondence address —*

### Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _____3_____ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

### Status

1) ☒ Responsive to communication(s) filed on _Oct 6, 2003_ .

2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

### Disposition of Claims

4) ☒ Claim(s) _1-17, 19-40, and 42-58_ is/are pending in the application.

    4a) Of the above, claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) _1-17, 19-40, and 42-58_ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

### Application Papers

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

### Priority under 35 U.S.C. §§ 119 and 120

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some*  c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

ZW000214

BRUCE A. LEV
PRIMARY EXAMINER

### Attachment(s)

1) ☒ Notice of References Cited (PTO-892) ✓

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s). _____

4) ☐ Interview Summary (PTO-413) Paper No(s). _____

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____

Application/Control Number: 10/301,233                                                                 Page 2

Art Unit: 3634

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

1.      Claim 37 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing

to particularly point out and distinctly claim the subject matter which applicant regards as the

invention.

As concerns claim 37, there is an inconsistency between the language in the preamble and

certain portions in the body of the claims, thereby making the scope of the claims unclear. For

example, the preamble clearly indicates that the subcombination of a "mount" is being claimed

with the functional recitation of the "mount" being "attachable to a pole". However, the body of

the claim positively recites the "pole", e.g., "*further comprising an...pole*", which indicates the

claims as being drawn to a combination of the "mount" and the "pole". Therefore, the applicant is

required to clarify what the claims are intended to be drawn to, i.e., either the "mount" alone or in

combination with the "pole", and to present the claims with the language which is consistent with

the invention. The applicant should note that "*adapted to be*" language may be appropriate if

claiming the "mount" alone (i.e., "adapted to be secured to").

### *Claim Rejections - 35 USC § 102*

2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

**ZW000216**

Art Unit: 3634

A person shall be entitled to a patent unless -

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

3.    Claims 54-58 are rejected under 35 U.S.C. 102(b) as being anticipated by Solo 5,379,491.

Solo sets forth a clip (best illustrated in Figures 17, 23, and 25) comprising a body having a lower engaging surface; a plurality of legs including a tab and being deformable to snap about a surface, and having a high-friction material (inc. Velcro) applied to an upper surface.

## *Claim Rejections - 35 USC § 103*

4.    Claims 1-17, 19-30, 34-40, 42-53 are rejected under 35 U.S.C. 103(a) as being unpatentable over *Stiffel 2,942,829* in view of *Servadio 4,717,107*.

As concerns claims 1-4, Stiffel sets forth a mounting system comprising a pole (inclusive of members 10-12 and 38); a foot 22; a head (inclusive of members 39, 50 60, 62, and 64); a length adjustment mechanism (inclusive of member 18); and a compression mechanism 49 between the foot and the head. **What Stiffel does not set forth** is the head having a spring-biased clamp/clip rotatably coupled to the head on an outer side portion and including an engagement arm biased by a spring. However, **Servadio teaches** the use of a spring-biased clamp/clip 4 rotatably coupled (via member 7) to a head (viewed as the distal end of member 3) and including an engagement arm 5 biased by a spring 8. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the head of Stiffel by

ZW000217

Application/Control Number: 10/301,233                                                    Page 4

Art Unit: 3634

including a spring-biased clamp/clip rotatably coupled to the an outer side portion of the head and

including an engagement arm biased by a spring, as taught by Servadio, in order to provide

releasable engagement means upon the head for attaching sheet members to the mount when in

use.

5.      Claims 31-33 are rejected under 35 U.S.C. 103(a) as being unpatentable over *Stiffel* in

view of *Servadio* further in view of *Brown WO 91/09556.*

Stiffel in view of Servadio set forth the mount, as advanced above, except for the interface

incorporating a hole and pin. However, **Brown teaches** the use of a hole 26 and pin interface

upon a pole and sheet mounting system. Therefore, it would have been obvious to one of ordinary

skill in the art at the time the invention was made to modify the mount of Stiffel in view of

Servadio by including an interface incorporating a hole and pin, as taught by Brown, in order to

more easily and conveniently couple the mount to an extension pole.

### *Response to Amendment*

4.      Applicant's remarks filed October 6, 2003 have been fully considered but they are not
deemed to be persuasive.

As concerns remarks pertaining to the combination of Stiffel in view of Servadio, the

examiner reiterates the position that since Servadio teaches the use of a spring-biased clamp/clip

rotatably coupled to a head and including an engagement arm biased by a spring, it would have

ZW000218

been obvious to modify the head of Stiffel by including a spring-biased clamp/clip rotatably

coupled to the an outer side portion of the head and including an engagement arm biased by a

spring, in order to provide releasable engagement means upon the head for releasable attachment

thereto, including sheets. The argument that Servadio only teaches a clamp within the interior of

it's pole is not true. The clamping fingers extend past the end of its pole and clips/clamps to

objects that are not within the interior of it's pole.

## *Conclusion*

The text of those sections of Title 35, U.S. Code not included in this action can be found

in a prior Office Action.

Applicant's amendment, including new claims 54-58 drawn to "a clip", necessitated the

new grounds of rejection. Accordingly, **THIS ACTION IS MADE FINAL.** See M.P.E.P.

§ 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 C.F.R.

§ 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION
IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE
EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE
OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL
AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN
THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE
ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R.

ZW000219

Application/Control Number: 10/301,233

Page 6

Art Unit: 3634

§ 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY
ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE
LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Bruce A. Lev whose telephone number is (703) 308-7470.

Any inquiry of a general nature or relating to the status of this application should be

directed to the Group receptionist whose telephone number is (703) 308-2168.

November 4, 2003

*Bruce A. Lev*

*Primary Examiner*

*Group 3600*

ZW000220

| Interview Summary | Application No. 10/301,233 | Applicant(s) WHITTEMORE, JEFFREY P. | |
|---|---|---|---|
| | Examiner Bruce A. Lev | Art Unit 3634 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Bruce A. Lev_.

(3) _____.

(2) _Mr. Anthony O'nello_.

(4) _____.

Date of Interview: _27 April 2004_.

Type:  a)☐  Telephonic   b)☐  Video Conference
c)☒ Personal [copy given to: 1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes    e)☒ No.
If Yes, brief description: _____.

Claim(s) discussed: _Of record_.

Identification of prior art discussed: _Of record_.

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Discussed adding language to independent claims 1 and 22 further defining the clamp engagement arm extending outwardly or perpendicularly from a side surface of the head or from the direction of the compression mechanism; to independent claim 44 further defining the clip's lower surface as "removably engaging" the upper surface of the head; and cancelling claims 53-58, to thereby possibly place the application into condition for allowance_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

BRUCE A. LEV
PRIMARY EXAMINER

Examiner Note:  You must sign this form unless it is an Attachment to a signed Office action.

_____
Examiner's signature, if required

ZW000206

PATENT

Attorney Docket No.: ZIP-0001CON4

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant(s): | Jeffrey P. Whittemore | Examiner: Lev, Bruce |
| Serial No.: | 10/301,233 | Group Art Unit: 3634 |
| Filing Date: | November 21, 2002 | |
| Title: | Partition Mount | |

### CERTIFICATE OF FACSIMILE TRANSMISSION

I hereby certify that this paper and any attachments hereto are being forwarded to the United States Patent and Trademark Office via facsimile at the facsimile telephone number and on the date indicated below.

6-21-04
Date

(703) 872-9306
Facsimile Number

Vanessa Marakas

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### PRELIMINARY AMENDMENT

Sir:

Please amend the application as follows.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 9 of this paper.

- 1 -

ZW000292

PATENT
Attorney Docket No.: ZIP-0001CON4

**Amendments to the Claims:**

Please amend claims 1, 3, 22, 24, 37, and 44 as follows.  Please cancel claims 54-58.

This listing of claims replaces all prior versions, and listings, of claims in the application.

**Listing of claims:**

1.      (currently amended) A mounting system for installing a curtain comprising:

            a pole having first and second ends;

            a foot at a first end of the pole;

            a head at a second end of the pole;

            a compression mechanism between the foot and head; and

            a clamp including an engagement arm that engages an exterior side surface of the head to secure for securing a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head.

2.      (previously presented) The mounting system of claim 1 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

3.      (currently amended) The mounting system of claim 1 wherein the engagement arm is further adapted to secure a curtain against the [[a]] top portion of the head.

4.      (original) The mounting system of claim 1 wherein the engagement arm operates under force to urge the curtain against the head.

5.      (original) The mounting system of claim 1 wherein the clamp is removably coupled to the head.

6.      (original) The mounting system of claim 1 wherein the clamp is rotatably coupled to the

- 2 -

**ZW000293**

PATENT
Attorney Docket No.: ZIP-0001CON4.

head.

7.    (original) The mounting system of claim 1 wherein the clamp is slidably coupled to the head.

8.    (original) The mounting system of claim 1 wherein the clamp is rotatably coupled to the pole proximal to the head.

9.    (original) The mounting system of claim 1 wherein the clamp is slidably coupled to the pole proximal to the head.

10.   (original) The mounting system of claim 1 further comprising an interface between the pole and the head.

11.   (original) The mounting system of claim 1 further comprising a universal joint between the pole and the head.

12.   (original) The mounting system of claim 1 wherein the head comprises a high-friction material.

13.   (original) The mounting system of claim 12 wherein the high-friction material comprises rubber.

14.   (original) The mounting system of claim 1 wherein the pole comprises an adjustable-length pole.

15.   (original) The mounting system of claim 1 wherein the clamp is biased by a spring to urge the engagement arm against the head.

- 3 -

ZW000294

PATENT
Attorney Docket No.: ZIP-0001CON4.

16.    (original) The mounting system of claim 15 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

17.    (original) The mounting system of claim 15 wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

18.    (canceled)

19.    (original) The mounting system of claim 1 wherein the engagement arm is urged against the head in a secure position, and wherein the engagement arm is separated from the head in an open position.

20.    (previously presented) The mounting system of claim 19 wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

21.    (original) The mounting system of claim 1 wherein the compression mechanism is configured to urge the head away from the foot.

22     (currently amended) A mount attachable to an extension pole for installing a curtain comprising:

        an interface at a proximal end of the mount adapted for coupling the mount to an extension pole;

            a compression mechanism along a longitudinal axis of the mount;

- 4 -

**ZW000295**

PATENT
Attorney Docket No.: ZIP-0001CON4

a head at a distal end of the mount, the compression mechanism operable to urge the head away from the interface; and

a clamp including an engagement arm that engages an exterior side surface of the head to secure for securing a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head.

23.    (previously presented) The mount of claim 22 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

24.    (currently amended) The mount of claim 22 wherein the engagement arm is further adapted to secure a curtain against [[a]] the top portion of the head.

25.    (original) The mount of claim 22 wherein the engagement arm operates under force to urge the curtain against the head.

26.    (original) The mount of claim 22 wherein the clamp is removably coupled to the head.

27.    (original) The mount of claim 22 wherein the clamp is rotatably coupled to the head.

28.    (original) The mount of claim 22 wherein the clamp is slidably coupled to the head.

29.    (original) The mount of claim 22 wherein the clamp is rotatably coupled to the mount proximal to the head.

30.    (original) The mount of claim 22  wherein the clamp is slidably coupled to the mount proximal to the head.

31.    (original) The mount of claim 22 wherein the interface comprises a hole having an

- 5 -

ZW000296

PATENT
Attorney Docket No.: ZIP-0001CON4-

internal thread.

32.    (original) The mount of claim 22 wherein the interface comprises a hole adapted to mate with a pin on the extension pole in a slip-fit relationship.

33.    (original) The mount of claim 22 wherein the interface comprises a pin adapted to mate with a hole on the extension pole in a slip-fit relationship.

34.    (original) The mount of claim 22 further comprising a universal joint between the interface and the head.

35.    (original) The mount of claim 22 wherein the head comprises a high-friction material.

36.    (original) The mount of claim 35 wherein the high-friction material comprises rubber.

37.    (currently amended) The mount of claim 22 in combination with ~~further comprising~~ an adjustable-length extension pole adapted to be secured to the interface.

38.    (original) The mount of claim 22 wherein the clamp is biased by a spring to urge the engagement arm against the head.

39.    (original) The mount of claim 38 wherein the engagement arm includes an engagement surface that is biased against the head by the spring.

40.    (original) The mount of claim 38 wherein the engagement arm includes a handle to which an applied force operates against the bias of the spring to separate the engagement surface from the head.

- 6 -

ZW000297

PATENT
Attorney Docket No.: ZIP-0001CON4-

41.    (canceled)

42.    (original) The mount of claim 22 wherein the engagement arm is urged against the head in a secure position, and wherein the engagement arm is separated from the head in an open position.

43.    (previously presented) The mount of claim 42 wherein when the engagement arm is in the secure position, the engagement arm secures the curtain to the head with a force that is adapted to prevent slippage of a curtain mounted thereto with respect to the head, and such that when the engagement arm is in the open position, the separation between the engagement arm and head is of a sufficient distance such that a curtain can be positioned between the engagement arm and the head.

44.    (currently amended) A mounting system for installing a sheet of material comprising:

    a pole having first and second ends;

    a foot at a first end of the pole;

    a head at a second end of the pole, the head having an upper first engaging surface;

    an adjustment mechanism between the foot and head for adjusting the length of the pole therebetween; and

    a clip having a lower second engaging surface that removably engages interfaces with the upper first engaging surface of the head for mounting a sheet of material therebetween, a plurality of legs extending transverse to the second engaging surface of the clip to removably secure for removably securing the clip to the head.

45.    (previously presented) The mounting system of claim 44 wherein the legs include tabs which removably engage a side and lower surface of the head.

- 7 -

ZW000298

Claims 1-17, 19-30, 34-40 and 42-53 stand rejected as being unpatentable over Stiffel (U.S. Patent No. 2,942,829) in view of Servadio (U.S. Patent No. 4,717,107). Claims 31-33 are rejected as being unpatentable over Stiffel in view of Servadio and further in view of Brown (International Patent No. WO 91/09556). Reconsideration of the rejections and allowance of the claims are respectfully requested.

As discussed during the telephone interview, it is submitted that the combination of Stiffel and Servadio fails to teach or suggest the present invention as claimed in amended independent claims 1 and 22. Particularly, Stiffel and Servadio fail to teach or suggest "a clamp including an engagement arm that engages an exterior side surface of the head to secure a curtain to the side of the head at an engagement location that is lower than a top portion of the head", as claimed in independent claims 1 and 22.

With regard to Stiffel, the Applicant respectfully refers to the commentary provided at page 8, paragraph 3 - page 10 of the Amendment submitted December 23, 1997, and page 3, paragraph 5 - page 4 of the Amendment submitted February 5, 1998 during prosecution of Parent Application 09/302,122, now U.S. Patent No. 5,924,469. Stiffel is directed to a self-adjustable leveling means.

Servadio is directed to a clothesline pole having a spring-biased clothes pin coupled within an interior portion of the pole. The jaws of the clothes pin extend beyond a top portion of the pole for securing the pole to a line.

As discussed during the telephone interview, it is submitted that the combination of Stiffel and Servadio fails to teach or suggest the present invention as claimed in independent claims 1 and 22. Specifically, the combination fails to teach or suggest a "mounting system" (claim 1) or "mount" (claim 22) including a "... clamp...including an engagement arm that engages an exterior side surface of the head" as claimed in claims 1 and 22. Instead, Servadio

- 10 -

PATENT
Attorney Docket No.: ZIP-0001CON4.

teaches spring-loaded clamping of a clothesline at an <u>interior</u> portion of the top of a pole, while Stiffel in no way teaches or suggests a clamp that includes an "engagement arm that engages an exterior side surface of the head", as claimed in independent claims 1 and 22.

Further, it is submitted that neither reference teaches or suggests that the clamp includes an "engagement arm" that secures "a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head", as claimed in claims 1 and 22.

In view of the above, it is respectfully submitted that the invention as claimed in independent claims 1 and 22 is not obvious over Stiffel in view of Servadio. Accordingly, removal of the rejection and allowance of claims 1 and 22 are respectfully requested. With regard to the various dependent claims 2-17, 19-21, 23-40, 42 and 43 it follows that these claims should inherit the allowability of independent claims 1 and 22 from which they depend.

With regard to independent claim 44, the status of this claim was discussed during the telephone interview, and it was agreed that pending the entry of certain amendments, the claim would be in condition for allowance. The claim is amended above in accordance with suggestions made during the interview. Entry of the amendments and removal of the rejection are therefore respectfully requested. With regard to the various dependent claims 45-53, it follows that these claims should inherit the allowability of independent claim 44 from which they depend.

Claims 54-58 are canceled above at the request of the Examiner, pending their re-submission in connection with a continuing application to be filed in due course.

- 11 -

ZW000300

PATENT
Attorney Docket No.: ZIP-0001CON4

Closing Remarks

It is submitted that the all pending claims are in condition for allowance, and such allowance is respectfully requested. If prosecution of the application can be expedited by a telephone conference, the Examiner is invited to call the undersigned at the number given below.

Respectfully submitted,

Date: _Jan 21, 2004_

MILLS & ONELLO LLP
Eleven Beacon Street, Suite 605
Boston, MA 02108
Telephone: (617) 994-4900, Ext. 4902
Facsimile: (617) 742-7774
J:\ZIP\001con4\062104 PA\prelim_amendment.wpd

Anthony P. Onello, Jr.
Registration Number 38,572
Attorney for Applicant

- 12 -

ZW000301

Attorney Docket No.:ZIP-001CON4
Application Serial No.: 10/301,233
Reply to Office Action of: July 12, 2004·

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant(s): | Jeffrey P. Whittemore | Examiner: Lev, Bruce |
| Serial No.: | 10/301,233 | Group Art Unit: 3634 |
| Filing Date: | November 21, 2002 | |
| Title: | Partition Mount | |

### CERTIFICATE OF FACSIMILE TRANSMISSION

I hereby certify that this paper and any attachments hereto are being forwarded to the United States Patent and Trademark Office via facsimile at the facsimile telephone number and on the date indicated below.

11/12/04
Date

(703) 872-9306
Facsimile Number

Chelsey Davis

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### AMENDMENT C

Sir:

The following is in response to the Office Action dated July 12, 2004. A petition for a one-month extension of the time period in which to respond is filed concurrently herewith. Please amend the application as follows.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

- 1 -

ZW000269

Attorney Docket No.:ZIP-001CON4
Application Serial No.: 10/301,233
Reply to Office Action of: July 12, 2004

**Amendments to the Claims:**

Please amend claims 1, 17, 19, 20, 22, 29, 37, 40, and 42-45 as follows. Please cancel claims 6-9, 27, 28 and 30 and please add new claims 59-75 as follows.

This listing of claims replaces all prior versions, and listings, of claims in the application.

**Listing of claims:**

1.    (currently amended) A mounting system for installing a curtain comprising:

a pole having first and second ends;

a foot at a first end of the pole;

a head at a second end of the pole;

a compression mechanism between the foot and head; and

a clamp including an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the head such that the engagement arm pivots between a secure position and an open position.

2.    (previously presented) The mounting system of claim 1 wherein the engagement arm is adapted to secure a curtain against a side portion of the head.

3.    (previously presented) The mounting system of claim 1 wherein the engagement arm is further adapted to secure a curtain against the top portion of the head.

4.    (original) The mounting system of claim 1 wherein the engagement arm operates under force to urge the curtain against the head.

5.    (original) The mounting system of claim 1 wherein the clamp is removably coupled to the head.

- 2 -

ZW000270

Attorney Docket No.:ZIP-001CON4
Application Serial No.: 10/301,233
Reply to Office Action of: July 12, 2004

42.     (currently amended) The mount of claim 22 wherein the engagement arm is urged against
        the head in [[a]] the secure position, and wherein the engagement arm is separated from
        the head in [[an]] the open position.

43.     (currently amended) The mount of claim 22 [[42]] wherein when the engagement arm is
        in the secure position, the engagement arm secures the curtain to the head with a force
        that is adapted to prevent slippage of a curtain mounted thereto with respect to the head,
        and such that when the engagement arm is in the open position, the separation between
        the engagement arm and head is of a sufficient distance such that a curtain can be
        positioned between the engagement arm and the head.

44.     (currently amended) A mounting system for installing a sheet of material comprising:

                a pole having first and second ends;

                a foot at a first end of the pole;

                a head at a second end of the pole, the head having an upper first engaging
        surface;

                an adjustment mechanism between the foot and head for adjusting the length of
        the pole therebetween; and

                a clip having a lower second engaging surface that removably engages the upper
        first engaging surface of the head for mounting a sheet of material therebetween, and a
        plurality of legs extending transverse to the second engaging surface of the clip to
        removably secure the clip to the head, the plurality of legs extending about at least one
        side surface and a portion of a lower surface of the head when the clip is engaged with the
        head.

45.     (currently amended) The mounting system of claim 44 wherein the legs include tabs
        which removably engage a side and extend about the portion of the lower surface of the
        head.

- 7 -

**ZW000275**

Attorney Docket No.:ZIP-001CON4
Application Serial No.: 10/301,233
Reply to Office Action of: July 12, 2004

mount such that the engagement arm pivots between a secure position and an open position"
(emphasis added), as claimed in amended independent claim 22. As discussed during the
interview, the combination of Brennan, Sr. and Ehrlich would not have resulted in the invention
as claimed.

In view of the above, it is respectfully submitted that the invention as claimed in amended
independent claims 1 and 22 is not anticipated by Brennan, Sr. and is not obvious in view of the
combination of Brennan, Sr. and Ehrlich. Accordingly, removal of the rejection and allowance of
claims 1 and 22 are respectfully requested. With regard to the various claims dependent thereon,
it follows that these claims should inherit the allowability of independent claims 1 and 22 from
which they depend.

With regard to independent claim 44, as discussed during the telephone interview, it is
submitted that Brennan, Sr., whether alone, or in combination with Villaveces, fails to teach or
suggest the present invention as claimed. Particularly, the combination fails to teach or suggest
"a clip having a lower second engaging surface that removably engages the upper first engaging
surface of the head for mounting a sheet of material therebetween, and a plurality of legs
extending transverse to the second engaging surface of the clip to removably secure the clip to
the head, the plurality of legs extending about at least one side surface and a portion of a lower
surface of the head when the clip is engaged with the head" (emphasis added), as claimed in
amended independent claim 44. As discussed during the interview, the combination of Brennan,
Sr. and Villaveces would not have resulted in the invention as claimed.

In view of the above, it is respectfully submitted that the combination of Brennan, Sr. and
Villaveces fails to teach or suggest the present invention as claimed in amended independent
claim 44. Accordingly, removal of the rejection and allowance of claim 44 are respectfully
requested. With regard to the various claims dependent thereon, it follows that these claims
should inherit the allowability of independent claim 44 from which they depend.

- 14 -

**ZW000282**

US006953076B2

(12) **United States Patent**
Whittemore

(10) Patent No.: **US 6,953,076 B2**
(45) Date of Patent: **Oct. 11, 2005**

(54) **PARTITION MOUNT**

(75) Inventor: **Jeffrey P. Whittemore**, Arlington, MA (US)

(73) Assignee: **Zipwall LLC**, Arlington, MA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/865,174**

(22) Filed: **Jun. 10, 2004**

(65) **Prior Publication Data**

US 2004/0200585 A1 Oct. 14, 2004

**Related U.S. Application Data**

(63) Continuation of application No. 10/301,233, filed on Nov. 21, 2002, which is a continuation of application No. 09/884,337, filed on Jun. 19, 2001, now Pat. No. 6,508,295, which is a continuation of application No. 09/613,645, filed on Jul. 11, 2000, now Pat. No. 6,321,823, which is a continuation of application No. 09/302,122, filed on Apr. 29, 1999, now Pat. No. 6,209,615, which is a continuation of application No. 08/740,372, filed on Oct. 29, 1996, now Pat. No. 5,924,469.

(51) Int. Cl.[7] .............................................. **A47H 13/00**

(52) U.S. Cl. .................... **160/368.1**; 160/351; 160/402; 248/200.1; 24/113 MP

(58) Field of Search ............................. 160/368.1, 351, 160/402, 350, 379, 330, 380, 399; 248/200.1; 24/113 MP, 113, 92; 403/326, 329

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 827,000 | A | 7/1906 | Dinsmore |
| 1,766,324 | A | 6/1930 | Berner |
| 2,219,169 | A | 10/1940 | Alter |
| 2,232,194 | A | 2/1941 | Zogby |
| 2,474,158 | A | 6/1949 | Neeley |
| 2,816,769 | A | 12/1957 | Noble |
| 2,903,227 | A | 9/1959 | De Kalb Key |
| 2,942,829 | A | * 6/1960 | Stiffel ...................... 248/188.3 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 3918516 | 12/1990 | .............. E04B/2/82 |
| DE | 04420849 | 12/1995 | .......... E04G/13/06 |
| DE | 29605222 | 7/1996 | .......... E04G/25/08 |
| FR | 2411282 | 6/1979 | .............. E04B/2/74 |
| GB | 1042086 | 9/1966 | |
| GB | 2156894 | 3/1985 | .......... F16B/21/04 |
| WO | WO86/03538 | 6/1986 | .......... E04G/1/26 |
| WO | 91/09556 | * 7/1991 | .......... 160/368.1 X |

OTHER PUBLICATIONS

"QUICKPROP", Brochure by Protects Screen LTD, Aug. 1996.

* cited by examiner

*Primary Examiner*—Bruce A. Lev
(74) *Attorney, Agent, or Firm*—Mills & Onello LLP

(57) **ABSTRACT**

In a spring-loaded curtain mount, the mount includes a pole interface at a proximal end, a compressive mechanism, and a head at a distal end. The pole interface is adapted to receive the end of a standard length adjustable pole or a painter's pole. The compression mechanism is disposed between the proximal end of the mount and the head. The mount includes a coupling device adapted to receive a portion of a curtain. During installation, the curtain mount is coupled to the end of an extension pole and the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. At ground level, a portion of the curtain is attached to the head of the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between the floor and the ceiling. This compressive force operates to urge the head toward the ceiling, securing the mount in place.

**96 Claims, 13 Drawing Sheets**



US 6,953,076 B2

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,072,784 | A | 1/1963 | Mann |
| 3,090,826 | A | 5/1963 | Cochran |
| 3,118,363 | A | 1/1964 | Burgess, Jr. |
| 3,247,558 | A | 4/1966 | Kaufman |
| 3,322,381 | A | 5/1967 | Bubb |
| 3,327,310 | A | 6/1967 | Bethune et al. |
| 3,333,808 | A | 8/1967 | Du Boff |
| 3,350,120 | A | 10/1967 | Hinrichs |
| 3,529,860 | A | 9/1970 | Jelley |
| 3,592,434 | A | 7/1971 | Murray |
| 3,604,397 | A | 9/1971 | Salerno |
| 3,608,991 | A | 9/1971 | Wade |
| 3,713,643 | A | 1/1973 | Gerstenberger |
| 3,767,253 | A | 10/1973 | Kluetsch |
| 3,792,510 | A | 2/1974 | Evett |
| 3,822,850 | A | 7/1974 | Elias |
| 3,858,988 | A | * 1/1975 | Cohen ........................ 403/18 |
| 3,861,663 | A | 1/1975 | Strickland |
| 3,952,877 | A | 4/1976 | Kindl |
| 3,956,784 | A | * 5/1976 | Vargas ........................ 135/96 |
| 3,972,272 | A | 8/1976 | Bagby |
| 3,994,463 | A | * 11/1976 | Baker ........................ 248/265 |
| 4,078,756 | A | 3/1978 | Cross |
| 4,087,006 | A | 5/1978 | Schill |
| 4,111,217 | A | 9/1978 | Victor |
| 4,127,911 | A | * 12/1978 | Cupp et al. ................ 15/210.1 |
| 4,139,101 | A | * 2/1979 | Towfigh ..................... 211/107 |
| 4,277,863 | A | 7/1981 | Faneuf |
| 4,379,654 | A | 4/1983 | Rovelli |
| 4,396,325 | A | 8/1983 | Joice-Cavanagh |
| 4,488,651 | A | 12/1984 | Bishop |
| 4,502,256 | A | 3/1985 | Hahn |
| 4,536,924 | A | 8/1985 | Willoughby |
| 4,576,354 | A | * 3/1986 | Blessing, Sr. ............ 248/354.5 |
| 4,592,797 | A | 6/1986 | Carlson |
| 4,645,473 | A | 2/1987 | Mochizuki |
| 4,662,034 | A | 5/1987 | Cunningham |
| 4,708,189 | A | 11/1987 | Ward |
| 4,715,089 | A | 12/1987 | Schema |
| 4,717,107 | A | 1/1988 | Servadio |
| 4,770,086 | A | 9/1988 | Gabster |
| 4,794,974 | A | * 1/1989 | Melino ........................ 160/330 |
| 4,824,302 | A | 4/1989 | Schultheis et al. |
| 4,852,844 | A | * 8/1989 | Villaveces ................. 248/314 |
| 4,874,028 | A | 10/1989 | Lynch et al. |
| 4,885,876 | A | 12/1989 | Henke |
| 4,907,835 | A | 3/1990 | Salters |
| 4,912,814 | A | 4/1990 | McKenzie |
| 4,928,916 | A | * 5/1990 | Molloy .................... 248/354.1 |
| 4,969,241 | A | 11/1990 | Griffin |
| 5,038,889 | A | 8/1991 | Jankowski |
| 5,040,915 | A | 8/1991 | Stuart et al. |
| 5,056,753 | A | 10/1991 | Lunau et al. |
| 5,116,012 | A | 5/1992 | Offenhauer et al. |
| 5,129,774 | A | 7/1992 | Balseiro et al. |
| 5,131,781 | A | * 7/1992 | Klein ........................ 403/254 |

| | | | |
|---|---|---|---|
| 5,170,974 | A | 12/1992 | Ruggiero |
| 5,240,058 | A | 8/1993 | Ward |
| 5,287,614 | A | * 2/1994 | Ehrlich ........................ 29/450 |
| 5,299,773 | A | 4/1994 | Bertrand |
| 5,301,915 | A | 4/1994 | Bahniuk et al. |
| 5,308,280 | A | 5/1994 | Dotson |
| 5,331,706 | A | 7/1994 | Graham |
| 5,345,989 | A | 9/1994 | Brophy |
| 5,375,303 | A | 12/1994 | Shenier |
| 5,379,491 | A | 1/1995 | Solo |
| 5,384,938 | A | 1/1995 | Frederick |
| 5,388,283 | A | 2/1995 | Garnett |
| 5,404,602 | A | 4/1995 | Kondo |
| 5,469,607 | A | 11/1995 | Henningsson et al. |
| 5,497,537 | A | 3/1996 | Robinson et al. |
| 5,524,693 | A | 6/1996 | Hamilton |
| 5,529,326 | A | 6/1996 | Hwang |
| 5,536,229 | A | 7/1996 | Albergo |
| 5,542,209 | A | 8/1996 | Sheu |
| 5,555,607 | A | 9/1996 | Parveris |
| 5,558,501 | A | 9/1996 | Wang et al. |
| 5,584,456 | A | 12/1996 | Stephens |
| 5,640,826 | A | 6/1997 | Hurilla |
| 5,645,272 | A | * 7/1997 | Brennan, Sr. ................ 269/68 |
| 5,649,780 | A | 7/1997 | Schall |
| 5,666,702 | A | 9/1997 | Ming-Chieh |
| 5,673,741 | A | 10/1997 | Cairns |
| 5,707,032 | A | 1/1998 | Ehrlich |
| 5,715,620 | A | 2/1998 | Walker |
| 5,722,691 | A | 3/1998 | Patel |
| 5,803,653 | A | 9/1998 | Zufetti |
| 5,884,424 | A | 3/1999 | Smith |
| 5,897,085 | A | 4/1999 | Cronin |
| 5,924,469 | A | 7/1999 | Whittemore |
| 5,937,488 | A | 8/1999 | Geiger |
| 5,940,942 | A | 8/1999 | Fong |
| 5,941,434 | A | 8/1999 | Green |
| 5,941,586 | A | 8/1999 | Fann |
| 5,944,464 | A | * 8/1999 | Cole, Jr. ..................... 410/153 |
| 5,979,110 | A | 11/1999 | Tai |
| 6,067,691 | A | 5/2000 | Feltman |
| 6,082,945 | A | * 7/2000 | Jeffries et al. ................ 414/11 |
| 6,152,434 | A | 11/2000 | Gluck |
| 6,164,605 | A | 12/2000 | Drake et al. |
| 6,170,112 | B1 | 1/2001 | Mayfield et al. |
| 6,209,615 | B1 | 4/2001 | Whittemore |
| 6,237,182 | B1 | * 5/2001 | Cassar ........................ 15/144.1 |
| 6,341,401 | B1 | 1/2002 | Lin |
| 6,378,175 | B1 | 4/2002 | Vanderpan |
| 6,467,741 | B1 | 10/2002 | Shih |
| 6,474,609 | B1 | 11/2002 | Pinard |
| 6,508,295 | B2 | 1/2003 | Whittemore |
| 6,523,231 | B1 | 2/2003 | Lassiter |
| 2001/0029640 | A1 | * 10/2001 | Cassar ........................ 15/144.1 |
| 2003/0028988 | A1 | * 2/2003 | Streutker et al. ............ 15/228 |
| 2003/0154588 | A1 | 8/2003 | Blacket et al. |
| 2004/0065799 | A1 | * 4/2004 | Whittemore et al. .... 248/354.1 |



FIG 1A



FIG. 1B



FIG. 1C



FIG. 2



FIG. 3A

FIG. 3B

FIG. 3C



FIG. 4B

FIG. 4C

FIG. 4A



FIG. 5A



FIG. 5B



FIG. 6



FIG. 7A

FIG. 7B



FIG. 7C



FIG. 7D



FIG. 7E



FIG. 7F





FIG. 9B

FIG. 9A    FIG. 9C

US 6,953,076 B2

<table>
<tr><td>

**1**

### PARTITION MOUNT

#### RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/301,233, filed Nov. 21, 2002, which is a continuation application of U.S. application Ser. No. 09/884,337, filed Jun. 19, 2001, now U.S. Pat. No. 6,508,295 which is a continuation of U.S. application Ser. No. 09/613,645, filed Jul. 11, 2000, now U.S. Pat. No. 6,321,823, which is a continuation of U.S. application Ser. No. 09/302,122, filed Apr. 29, 1999, now U.S. Pat. No. 6,209,615, which is a continuation of U.S. application Ser. No. 08/740,372, filed Oct. 29, 1996, now U.S. Pat. No. 5,924,469, the contents of the applications being incorporated herein by reference.

#### BACKGROUND OF THE INVENTION

Partition systems are often employed to separate portions of a building or room. Partitions serve as a barrier to dust, noise, light, odors, and the like. In construction zones, partitions are useful for protecting a clean area from a work area, for example, protecting an area where furniture and rugs are temporarily stored from an area where wood floors are being refinished.

Workers at construction sites often use rudimentary techniques for installing partitions. Some simply nail, screw, or staple the curtain or partition material to the floor, ceiling, and abutting walls, resulting in damage to their surfaces. Others tape or otherwise adhere a curtain or plastic sheet to the walls and ceilings. The tape usually fails to stick, but if it does stick, as the tape is removed, paint usually pulls off with the tape or adhesive is left behind.

Others employ more clever techniques for constructing partitions. U.S. Pat. No. 4,794,974 discloses a curtain wall having spring-loaded extendable support legs which support header elements aligned along the ceiling. A curtain is mounted to the header elements with fasteners along the length of each header element. This design suffers from several limitations. The support poles, header elements, fasteners, and curtain all comprise dedicated hardware, increasing manufacturing costs. Particularly, the curtain must be designed to accommodate the fasteners. In addition, installation appears to be awkward and time consuming due to the multitude of fasteners and the system appears to be top-heavy during installation.

U.S. Pat. No. 4,708,189 discloses a spring-loaded curtain support having a plurality of support units extending from the floor to the ceiling. Each support unit includes a stackable extension member, a telescoping section, a lower batten, and an upper batten. The lower and upper battens extend along the floor and ceiling respectively and interlock so as to provide a continuous batten along the floor and ceiling. A curtain is designed to loop around the upper batten and accommodate the extension poles. This design again requires dedicated hardware, including a curtain which is designed specifically to accept a particular upper batten size and shape and a particular extension pole. The structure is bulky and appears tedious to install.

U.S. Pat. No. 5,308,280 discloses a coal mine ventilation curtain support. An adjustable extension pole is erected between the floor and ceiling of a mine. A curtain support member compresses between the extension pole resting on the floor, and the ceiling such that the compressive force urges the support member against the ceiling, thereby securing a curtain in place against the ceiling. Although this design accommodates any type of curtain material, it again suffers from the limitation of requiring dedicated hardware

</td><td>

**2**

as the support member is designed for a particular extension pole. In addition, installation appears challenging in rooms with tall ceilings as the curtain is installed after the mount is raised and installed. Following installation of the support member, an installer must climb up to the ceiling and pull back a leg of the support member, insert a curtain and snap the support member back into the ceiling. In a home construction project, the snapping action may damage the ceiling. In addition, for ceilings higher than the reach of the installer, this design may prove to be challenging to install. This design presents the further unfortunate possibility that the installer could jam his fingers between the support member and ceiling.

#### SUMMARY OF THE INVENTION

The present invention is directed to a partition mount apparatus and method which overcome the limitations of the prior art. The inventive method and apparatus are applicable to use in construction zones in preventing contaminants such as dust and paint from entering clean areas in a home or office. The invention may also be used as a temporary visual, odor, or sound barrier, depending on the curtain material employed. The present invention offers the advantages of accommodating standard extension poles, for example, painters poles, with standard threads, and is compatible with a variety of commercially-available curtain or drape materials, for example plastic, cloth, or the like. The invention is a "clean" system designed to be installed and removed without damaging or otherwise marking the ceiling, floor or walls in the construction zone. Assembly is easy and fast and can be accomplished by a single individual. In a preferred method for assembling the partition of the present invention, the curtain mounts and curtain are first assembled on the floor and then raised to the ceiling permitting safe installation in rooms with high ceilings, for example cathedral ceilings.

One embodiment of the invention comprises a spring-loaded mount including a hole at a proximal end, a compression mechanism, and a head at a distal end. The hole is adapted to receive the end of a standard length-adjustable pole or painters pole. In a preferred embodiment, the compressive mechanism comprises a spring under compression between an inner wall of the mount and the head. The head is urged toward the ceiling by the compressive mechanism, providing longitudinal rigidity to the installed mount. The head preferably interfaces with the mount at a swivel joint so that the mount can be installed at a range of orientations relative to the ceiling.

The head preferably includes a coupling device, for example, a Velcro™ hook and loop fastener strip, a hook, or a clip, adapted to receive a portion of a curtain. In a first preferred embodiment of the invention, the face of the head includes a sheet of Velcro™ hooks which mates with a sheet of Velcro™ loops attached to the curtain. On the side of the curtain opposite the Velcro™ loops, a high-friction material provides friction between the mount and the ceiling, so that the curtain is less likely to slide relative to the ceiling thereby providing lateral rigidity.

In a second preferred embodiment of the invention, a removable clip couples the curtain to the head. The clip is adapted to receive a section of curtain material and snap on or otherwise secure to the head. High friction material attached to the back of the clip provides lateral rigidity as described above.

In alternative embodiments, the curtain mount may be adapted to receive poles without threads, or may include a

</td></tr>
</table>

US 6,953,076 B2

3

pin for interfacing with a corresponding hole in a pole. Furthermore, the elements of the curtain mount may be distributed along the pole. The extension poles do not necessarily need to be adjustable in situations where the ceiling size is standard or predetermined.

In the inventive method of the present invention, a spring-loaded curtain mount is coupled to the end of a standard adjustable pole, and the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. A portion of the curtain is attached to the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between and the floor and ceiling. This compressive force operates to urge the head toward the ceiling. The same compressive force operating through the high friction material on the head or curtain provides lateral rigidity for the system.

The mount is free-standing and therefore does not require additional "destructive" mounting means, for example nailing or taping. Instead, the mount is installed and removed without permanent damage to the ceiling or floor.

By placing several mounts between the ceiling and floor, across a room or portions thereof, the room can be partitioned to protect furniture and the like during construction of other portions of the room. The curtain can also be installed along the ceiling and/or floor for constructing a tunnel or booth. The shape of the partition is variable depending on the respective spatial positions of the mounts.

BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and other objects, features and advantages of the invention will be apparent from the following more particular description of preferred embodiments and the drawings in which like reference characters refer to the same parts throughout the different views. The drawings are not necessarily to scale, emphasis instead being placed upon illustrating the principals of the invention.

FIGS. 1A, 1B, and 1C illustrate installed partition configurations in accordance with the present invention.

FIG. 2 illustrates the primary components of two preferred embodiments of the present invention.

FIG. 3A is a cutaway side view of a curtain mount having a Velcro™-mount configuration in accordance with the present invention.

FIG. 3B is a perspective view of the head of the curtain mount of FIG. 3A interfacing with an appropriately configured curtain in accordance with the present invention.

FIG. 3C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 3A in accordance with the present invention.

FIG. 4A is a cutaway side view of a curtain mount having a clip-mount configuration in accordance with the present invention.

FIG. 4B is a perspective view of the interaction of the clip and head of the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 4C is a side view of a curtain mounted to the ceiling by the curtain mount of FIG. 4A in accordance with the present invention.

FIG. 5A is a perspective view of the head of a curtain mount including an extension loop in accordance with the present invention.

FIG. 5B is a side view of a clamped interface between the curtain mount body and an extension pole in accordance with the present invention.

4

FIG. 6 illustrates a curtain installation using various preferred and alternative embodiments of the present invention.

FIG. 7A–FIG. 7F illustrate an installation procedure in accordance with the present invention.

FIG. 8A–FIG. 8C are perspective views of alternative embodiments for coupling the curtain to the head.

FIG. 9A–FIG. 9C are perspective views of an alternative embodiment of a curtain mount in accordance with the present invention illustrating an alternative curtain coupler, an alternative pole interface, and an alternative compression mechanism.

DETAILED DESCRIPTION OF PREFERRED EMBODIMENTS

FIG. 1A illustrates an installed partition extending from the floor 34 to the ceiling 32 of a room between opposed walls 36A, 36B. Three curtain mounts 24 in accordance with the present invention are mounted on extension poles 22. A foot 26 at the bottom of each extension pole interfaces with the floor and a head 28 at the top of each curtain mount interfaces with the ceiling 32. The contact or interface points of the foot and head preferably are covered with a soft friction material such as rubber to provide lateral rigidity of the system and to prevent marking of the ceiling and floor.

Each curtain mount includes a compression mechanism, for example a spring, which operates to urge the head 28 against the ceiling 32, thereby securing the curtain 30. The extension poles 22 are preferably adjustable such that before installation of the curtain 30, the pole length in combination with the fully extended curtain mount 24 can be made slightly larger than the distance from the floor 34 to the ceiling 32 at the point at which the curtain mount is to be installed. For example, if the compression range of the spring is 2–3 inches, then the total length of the pole 22 and mount 24 can be made 2–3 inches longer than the floor-to-ceiling 32 height, causing the spring to be compressed when the system is installed. Alternatively, non-adjustable standard poles such as painters poles sized for particular predetermined ceiling heights may be employed.

FIG. 1B illustrates the present invention installed to partition a portion of a room extending between adjacent walls 36B,36C. In this illustration, the curtain 30 is installed to protect furniture 38 from dust and debris during painting or other construction in the open portion of the room.

FIG. 1C illustrates the present invention configured as a tunnel or booth. In this installation, the curtain 30 extends along the ceiling 32 between mounts 24A, 24B, 24C, and 24D, protecting the ceiling 32 from activity in the tunnel. The curtain 30 can be tucked under feet 26A–26D to secure the curtain to the floor 34. The curtain 30 may also be installed between the feet 26A–26D on the floor to provide an enclosed tunnel. The sides of the tunnel may be formed by a single continuous curtain 30 or multiple curtains 30, the edges of each held in place and raised by the mounts 24A–24D. This configuration is particularly well suited to serve as an asbestos removal tunnel or paint booth.

Note that for purposes of the present invention, the term "curtain" is defined to include any flexible material suited for partitioning, for example cloth sheets and drapes, or plastic tarps.

FIG. 2 illustrates two preferred curtain mount embodiments. In a first Velcro™-mount embodiment 21A, an extension pole 22A having a foot 26A, for example a rubber foot 26 is coupled to a first curtain mount 24A. The curtain

US 6,953,076 B2

5

6

mount 24A is spring-loaded as described above and as will be described in further detail below.

The curtain mount includes a head 28A. The head is preferably of sufficient surface area to accommodate curtain materials of a variety of strengths and weights. For example, if the head area is too small, the head may punch through a weaker curtain material when weighted by the curtain. In a preferred embodiment of the invention, a head size of approximately 5" by 2.5" was found to be sufficient to handle most curtain materials. The head 28A includes a strip of Velcro™ loops or hooks attached thereto. The Velcro™ strip 40 on the head 28A mates with a corresponding Velcro™ strip 42 attached to a portion of the curtain 30. A strip of friction material 44 is attached to the face of the curtain 30 opposite that of the Velcro™ strip 42. In this manner, an installer can first mate the Velcro™ strips 42,40 of the curtain 30 and curtain mount 24A respectively and then raise the extension pole 22A and mount 24A such that the high friction material 44 interfaces with the ceiling. As the spring in the curtain mount 24A compresses, that compressive force operates outwardly through the head 28A, Velcro™ strips 40,42, curtain 30, and high friction material 44 against the ceiling, thereby securing the curtain 30 in place against the ceiling. A universal joint 56A at the head 28A allows for installation of a variety of angles. This allows for installation of the curtain mount of the present invention in rooms having pitched ceilings, for example cathedral ceilings.

In a second curtain mount embodiment 24B hereinafter referred to as a clip-mount, a curtain clip 64 is adapted to accept a portion 30A of a curtain 30. In a first embodiment, the clip 64 includes legs 65 adapted to snap over the body of the head 28B, thereby securing the clip 64 and curtain 30 to the head 28B. In a second embodiment, the clip 64 includes pins 112 (see FIG. 9A) which slide and lock in corresponding holes 110 in the head 28B. The top portion of the clip 64 preferably includes high friction material 44 as described above. In the clip-mount embodiment, an installer at floor level clips a portion of the curtain onto the head 28B of the curtain mount 24B and raises the curtain 30 to the ceiling using extension pole 22B. The high friction material 44 at the head 28B in combination with the rubber foot 26 provide lateral rigidity to the system, and the compressed spring in the curtain mount 24B provides longitudinal rigidity to the installed system. The clip embodiment of the curtain mount 24B offers the advantage of accepting any portion of any flexible curtain 30 material, offering an advantage over the Velcro™-mount embodiment 24A which can be coupled only to those portions of a curtain 30 having Velcro™ strips 42 previously installed thereon.

FIG. 3A is a cutaway side view of a Velcro™-mount embodiment of a curtain mount 24 in accordance with the present invention. The curtain mount 24 includes a body 48, a spring 50, a plunger 46, a head 28, and a hole 60 for receiving the end of an extension pole 22. The hole 60 includes internal threads 52 for mating with corresponding external threads 54 formed on the extension pole 22. The thread may comprise ¾ Acme thread, standard in the industry for painter's poles and other standard extension poles. This permits the curtain mount 24 to be compatible with commercially-available poles. When the extension pole 22 is inserted to a predetermined distance into the hole 60, a thread stopper 58 prevents the pole 22 from being inserted further.

A spring 50 rests in the body 48 of the curtain mount 24 between the rigid thread stopper 58 and the plunger 46. The spring is preferably extendable over a range of lengths, for

example four inches, to accommodate extension poles of a range of lengths. The tension of the spring 50 must be high enough to support the weight of the installed curtain and low enough such that the head 28 of the curtain mount 24 does not push through the ceiling during installation. The plunger 46 and head 28 preferably interface at a universal joint 56 such that the curtain mount can be installed at a variety of angles relative to the ceiling. Velcro™ loops 40 are coupled to the outer face of the head 28. Preferred methods for coupling Velcro™ loops to the head 28 include self-adhesive Velcro™ strips and/or stapling.

The perspective view of FIG. 3B illustrates the head 28 and Velcro™ loops 40 coupled thereto. The Velcro™ loops 40 interface with Velcro™ hooks 42 stapled or otherwise adhered to a portion of the curtain 30. Friction material, approximately slightly larger in area than the surface area of the head 28 is disposed on the opposite face of the curtain. When the Velcro™ hooks 42 are mated to the Velcro™ loops 40, the curtain 30 is secured to the end of the curtain mount 24 and can be raised to the ceiling as shown in FIG. 3C.

In FIG. 3C, a force F generated by the compression of the spring operating on the plunger 46 urges the head 28 against the ceiling 32. The force transfers through the loops 40, the hooks 42, the curtain 30, and the high friction material 44, and operates on the ceiling 32. In this manner, the longitudinal compression of the spring acts outwardly to secure the curtain 30 against the ceiling 32.

FIG. 4A illustrates the clip-mount embodiment of the present invention. A curtain mount 24 includes a body 48 having a hole 60 for receiving an end of an extension pole 22, a plunger 62, a spring 50, and a fixed head 28. Note that the extension pole 22 of this embodiment is a standard thread-less pole and the hole 60 is adapted to receive the pole. In this embodiment, the pole 22 is slidable relative to the body 48 of the curtain mount 24, and communicates with the plunger 62 to compress the spring 50 against the spring stopper 51. The head 28 is longitudinally fixed, relative to the body 48. A universal joint 56 as shown in FIG. 3A may optionally be employed to couple the head 28 to the body 48 for reasons described above. A curtain clip 64 having legs 65 is adapted to snap onto the head 28, thereby clamping an inserted curtain therebetween. The clip legs 65 include tabs 67 which snap around the bottom face of the head 28 providing a secure fit. High friction material 44 is disposed on the top face of the clip 64 for interfacing with the ceiling, thereby providing lateral rigidity to the system as described above. Note that the clip design given above is merely illustrative of various clip designs which may be employed in accordance with the present invention.

FIG. 4B illustrates the relative positions of the head 28, curtain 30, and clip 64 during installation. An advantage of the clip-mount embodiment over the Velcro™-mount embodiment is that the clip-mount can be secured to any portion of a curtain or sheet available to the installer. This may include a center portion of the curtain 30 or a corner portion of the curtain 30 as shown in FIG. 4B. In contrast, the Velcro™-mount embodiment requires the curtain to have portions of Velcro™ attached to the curtain at predetermined locations.

FIG. 4C illustrates a curtain 30 installed against the ceiling 32 using the clip-mount. Before the curtain is raised, the clip 64 and curtain 30 are snapped and secured to the head 28. After raising the curtain against the ceiling 32, compression in the spring of the curtain mount generates a force F which operates through the head 28, curtain 30, clip 64, and high friction material 44 against the ceiling 32. The

US 6,953,076 B2

7

compressive force F of the spring and high friction material provide longitudinal and lateral rigidity to the system as described above.

FIG. 5A is a perspective view of the head 28 of a curtain mount having an extension loop 66. The extension loop 66 is attached to the head 28, universal joint 56, plunger 46 (shown in FIG. 5A), body 48, or other portion of the curtain mount. Following installation of the curtain, the extension loop 66 allows one to reposition the head 28 relative to the ceiling without moving the extension pole. This is especially helpful for fine-tuning the adjustment of the curtain mount position, for example where the curtain exhibits sag between two installed curtain mounts, without having to move the entire pole. Operation of the extension loop is explained below with reference to FIGS. 7D–7F. The extension loop 66 may comprise string, a chain, or rod for tugging on the head.

FIG. 5B illustrates an alternative interface between an extension pole 22 and body 48 of a curtain mount. In this example, the body 48 of the curtain mount includes a hole 60 for receiving the end of an extension pole 22. The rim of the hole 60 includes fingers 74 which are tapered outward slightly. The fingers 74 include an external thread 72 adapted for interfacing with an internal thread on a corresponding clamp nut 70. After a pole 22 is inserted in the hole 60, the clamp 70 is slid into position and tightened around the fingers 74. The taper in the fingers 74 produces a snug fit as the clamp 70 is tightened. In this manner, the curtain mount can accommodate extension poles 22 of a variety of widths.

FIG. 6 illustrates an installed curtain 30 using preferred and alternative embodiments of the present invention. The right mount 82 employs a curtain mount 24 as described above. The curtain mount 24A is coupled to a standard extension pole 22 having a foot 26 at its lower end for interfacing with the floor 34. The curtain mount includes a spring 50 in compression between the head 28 and the extension pole 22. The head 28 is coupled to the plunger of the curtain mount 24 at a swivel joint 56 accommodating installation at an angle other than perpendicular to the ceiling as shown in FIG. 6.

The center mount 80 of FIG. 6 includes the various components of a preferred embodiment of the invention described above. However, in this example the components are distributed along the length of the mount. This embodiment includes a head 28 as described above, a swivel joint 56, an extension loop 66 and an adjustable pole 90A, 90B. The pole is adjustable at a clamp 84 and is spring-loaded at spring 50. Operation of this mount is similar to those mounts described above.

Left mount 78 of FIG. 6 illustrates an alternative embodiment of the present invention. The left mount again includes the preferred components of the present invention including a head 28, extension loop 66, adjustable pole 76, curtain mount 24, spring 50, universal joint 56, and foot 26. However in this example, the curtain mount 24 is coupled to the lower end of the pole in position near the floor. The head 28 of the mount is attached directly to the opposite end of the pole and interfaces with the curtain 30 at the ceiling 32 as shown in FIG. 6 and as described above. The pole in this example employs a rotational adjustment mechanism. Also note that in the illustration of FIG. 6, a corner of the curtain 30 is held under the foot 26 of center mount 80 to provide additional tension and rigidity to the curtain.

FIGS. 7A–7F illustrate a method for installing a curtain in accordance with the present invention. In FIG. 7A, an installer 86 decides which portion of the room to partition.

8

The installer 86 selects a curtain 30 of appropriate size and attaches a curtain mount 24 to an extension pole 22 as shown. The combined length of the curtain mount 24 and pole 22 is sized to be slightly larger than the floor 34 to ceiling 32 distance, as described above.

In FIG. 7B, the installer 86 mounts the curtain 30 to the head of the curtain mount 24 before raising the curtain 30. The curtain is secured to the mount by either the Velcro™-mount or clip-mount style securing mechanisms as described above.

In FIG. 7C, the curtain 30 is raised to the ceiling 32 using the extension pole 22 and curtain mount 24. The pole 22 is positioned appropriately and the installer 86 pushes the pole 22 against the ceiling 32 to compress the spring in the curtain mount 24. In FIG. 7D, the first mount 92 is shown in position with the head of the curtain mount urging the curtain 30 against the ceiling 32. In this installation, the installer 86 also decided to tuck a lower portion of the curtain 30 under the foot 26 to add tension to the curtain and secure the curtain to the floor. Following this, in FIG. 7D, the installer 86 has coupled a second portion of the curtain 30 to a second mount 94 and is in the process of raising the second mount 94 into position a few feet from the first mount 92.

After positioning the second mount 94 as shown in FIG. 7E, the installer 86 noticed that a sag 88 is present in the curtain 30 between the first 92 and second 94 mounts which is undesirable for the installer's project. An extension loop 66 is coupled to the head of the curtain mount 24, thereby allowing the installer 86 to fine-tune the position of the second mount 94 relative to the first mount 92 to eliminate the sag 88 in the curtain 30.

The resulting installation is shown in FIG. 7F. It can be seen that the sag 88 exhibited in FIG. 7E has been eliminated in FIG. 7F by increasing the distance between the first mount 92 and the second mount 94, thereby tensioning the curtain 30 between the two mounts. Additional mounts may be added as described above resulting in partition configurations as shown in FIGS. 1A–1C.

FIGS. 8A–8C illustrate alternative coupler embodiments for coupling the curtain 30 to the head 28. In FIG. 8A, a hook 95 is installed on a side of the head 28. The hook 95 interfaces with a grommet 96 or other opening in the curtain 30 for supporting the curtain during and following installation. In FIG. 8B, a spring-biased clamp 97 secures the curtain 30 in its jaws. In FIG. 8C, the head 28 is formed in two sections which interface at a hinge 99. The sections join at jaws 98 to clamp the curtain 30, thereby securing it to the head 28. In the embodiments shown in FIGS. 8A–8C, the curtain 30, when installed, is not urged against the ceiling by the top face of the head 28. Instead, the curtain hangs from the side of the head 28.

A distinct advantage of the present invention over the prior art is its ability to interface with and utilize curtains, poles, and extension rods which are available off the shelf. Preferred curtain materials depend on the application and include cloth or canvas sheets, plastic sheets, and reinforced plastic tarps. Standard poles include extension poles, painter's poles, telescoping poles, and window washing poles. High friction materials include silicone, rubber, and non-skid material for carpeting. Compression mechanisms include springs, pneumatic devices and hydraulic devices.

More curtain mounts may be used for installations requiring heavier curtain materials or for installations which require the partition to be substantially air-tight, for example, asbestos removal and lead paint removal applications.

9

10

The present invention is also applicable for creating temporary private areas using standard sheets and blankets for curtains. This would be particularly useful in emergency shelters or in crowded hospitals.

While this invention has been particularly shown and described with references to preferred embodiments thereof, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention as defined by the appended claims.

An example of an alternative embodiment of the curtain mount is illustrated in FIGS. 9A, 9B and 9C. This curtain mount embodiment includes a hydraulic or pneumatic device **107** serving as a compression mechanism. A proximal end of the mount includes a pole interface comprising a pin **102** which mates with a corresponding hole **104** on the extension pole **22**. The head **106** is mounted to the plunger **46** as shown.

The head **106** includes at least one hole **110** adapted to interface with and receive at least one corresponding pin **112** located on a clip plate **108**. The pins **112** and a portion of a curtain **30** together insert into the holes **110**, and slide and lock in place in the keyhole slots **111** shown in FIG. **9B**. A knob **113** at the end of each pin **112** prevents a mounted plate **108** from releasing from the head **106**.

FIG. 9C illustrates the resulting installed configuration of the curtain mount of FIGS. 9A and 9B. A portion of the curtain **30** wraps around the pins **112** and is secured in holes **110**. The outward force of the hydraulic plunger urges the curtain **30** toward the ceiling **32** as described above.

I claim:

1. A method of installing a curtain to form a room partition between a floor and a ceiling using a partition mount having an elongated portion, a first end, and a second end, the second end having a mechanism to couple to the curtain, the method comprising:

coupling a curtain to the mechanism on the second end, the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion; and

mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the mechanism that couples the curtain at the second end of the partition mount directly engages the ceiling.

2. The method of claim **1** further comprising adjusting a length of the elongated portion of the partition mount.

3. The method of claim **1** wherein partition mount further includes a compression mechanism between the first end and the second end, and wherein mounting the partition mount further comprises compressing the first end and the second end of the partition mount between the floor and the ceiling.

4. The method of claim **1** wherein the partition mount comprises a first partition mount and further comprising:

coupling a second portion of the curtain to a mechanism on a second end of a second partition mount having an elongated portion, a first end, and a second end, and

mounting the second partition mount such that a portion of the first end of the second partition mount engages the floor and a portion of the second end of the second partition mount engages the ceiling.

5. The method of claim **4** further comprising moving the second partition mount to a position on the ceiling to increase tension in the curtain between the second end of the first partition mount and the second end of the second partition mount.

6. The method of claim **4** wherein a distance between the first partition mount and the second partition mount is variable.

7. The method of claim **4** further comprising adjusting a length of the elongated portion of the second partition mount.

8. The method of claim **1** wherein the mechanism at the second end of the partition mount includes a head that is coupled to the elongated portion and a clip that is removably coupled to the head.

9. The method of claim **8** wherein coupling the curtain to the mechanism on the second end comprises placing a portion of the curtain on the head and coupling the clip to the head such that the curtain is secured between the clip and the head.

10. The method of claim **8** wherein one of the clip and head includes at least one protrusion that mates with at least one retention aperture on the other of the clip and head to secure the curtain between the clip and head.

11. The method of claim **10** wherein the clip snaps to the head.

12. The method of claim **8** wherein the one of the clip and head includes at least one leg that extends about at least one outer surface of the other of the clip and head to secure the curtain between the clip and head.

13. The method of claim **12** wherein the legs are elastically deformable and snap about the at least one outer surface.

14. The method of claim **12** wherein the legs are slidable relative to the at least one outer portion of the head.

15. The method of claim **14** wherein an upper surface of the clip includes a pad of high friction material applied thereto to prevent slipping when engaging the ceiling.

16. The method of claim **1** wherein the second end of the partition mount includes a high friction material applied to an upper surface thereof to prevent slipping when engaging the ceiling.

17. A curtain mounting system comprising:

a pole having first and second ends; and

a coupling mechanism at the second end of the pole, the coupling mechanism including a head that is coupled to the pole and a clip that is removably coupled to the head, one of the clip and head including a body and multiple protrusions extending from the body at an interior portion thereof that mate with multiple corresponding retention apertures on the other of the clip and head at an interior portion thereof to secure a portion of a curtain between the clip and head.

18. The curtain mounting system of claim **17** further comprising a compression mechanism between the first and second ends of the pole.

19. The curtain mounting system of claim **17** wherein the pole includes a length adjustment mechanism to adjust a length of the pole.

20. The curtain mounting system of claim **17** wherein the clip and head snap together when coupled.

21. The curtain mounting system of claim **17** wherein the clip and head have opposed substantially planar surfaces between which the curtain is secured when the clip is coupled to the head.

22. The curtain mounting system of claim **17** wherein the at least one retention aperture on the other of the clip and head is at an interior portion thereof.

23. The curtain mounting system of claim **17** further comprising a hinged joint at the head of the coupling mechanism to provide a rotational relationship between the pole and head such that the head can be positioned at an acute with respect to the pole.

US 6,953,076 B2

11

12

**24**. The curtain mounting system of claim **17** further comprising a threaded interface between the pole and coupling mechanism.

**25**. The curtain mounting system of claim **17** wherein the at least one protrusion comprises a pin.

**26**. The curtain mounting system of claim **25** wherein the pin is rigid.

**27**. The curtain mounting system of claim **26** wherein the pin includes a knob at a distal end that mates with the retention aperture and prevents release of the clip from the head.

**28**. The curtain mounting system of claim **17** wherein the clip includes a pad of high friction material applied to an upper surface thereof to prevent slipping when engaging a room surface.

**29**. A curtain mounting system comprising:

a curtain;

a pole having first and second ends; and

a coupling mechanism at the second end of the pole, the coupling mechanism including a head that is coupled to the pole and a clip that is removably coupled to the head, the clip and head having opposed substantially planar surfaces between which a portion of the curtain is secured when the clip is coupled to the head, the lip including a pad of high-friction material applied to an upper surface thereof to prevent slipping when engaging a room surface.

**30**. The curtain mounting system of claim **29** wherein one of the clip and head includes at least one protrusion at an interior portion thereof that mates with at least one retention aperture on the other of the clip and head to secure the portion of the curtain between the clip and head.

**31**. The curtain mounting system of claim **30** wherein the at least one retention aperture on the other of the clip and head is at an interior portion thereof.

**32**. The curtain mounting system of claim **30** wherein the at least one protrusion comprises a pin.

**33**. The curtain mounting system of claim **32** wherein the pin is rigid.

**34**. The curtain mounting system of claim **32** wherein the pin includes a knob at a distal end that mates with the retention aperture and prevents release of the clip from the head.

**35**. The curtain mounting system of claim **29** further comprising a compression mechanism between the first and second ends of the pole.

**36**. The curtain mounting system of claim **29** wherein the pole includes a length adjustment mechanism to adjust a length of the pole.

**37**. The curtain mounting system of claim **29** wherein the clip and head snap together when coupled.

**38**. The curtain mounting system of claim **29** further comprising a hinged joint at the head of the coupling mechanism to provide a rotational relationship between the pole and head such that the head can be positioned at an acute angle with respect to the pole.

**39**. The curtain mounting system of claim **29** further comprising a threaded interface between the pole and coupling mechanism.

**40**. A curtain mounting system comprising:

a pole having first and second ends;

a coupling mechanism at the second end of the pole, the coupling mechanism including a head that is coupled to the pole and a clip that is removably coupled to the head, one of the clip and head including a body and multiple rigid protrusions extending from the body that

mate with multiple corresponding retention apertures on the other of the clip and head to secure a portion of a curtain between the clip and head, the clip including a high friction material applied to an upper surface thereof to prevent slipping when engaging a room surface.

**41**. The curtain mounting system of claim **40** further comprising a compression mechanism between the first and second ends of the pole.

**42**. The curtain mounting system of claim **40** wherein the pole includes a length adjustment mechanism to adjust a length of the pole.

**43**. The curtain mounting system of claim **40** wherein the clip and head snap together when coupled.

**44**. The curtain mounting system of claim **40** wherein the clip and head have opposed substantially planar surfaces adapted to secure a curtain between the surfaces when the clip is coupled to he head.

**45**. The curtain mounting system of claim **40** wherein the multiple retention apertures on the other of the clip and head are at an interior portion thereof.

**46**. The curtain mounting system of claim **40** further comprising a hinged joint at the head of the coupling mechanism to provide a rotational relationship between the pole and head such that the head can be positioned at an acute angle with respect to the pole.

**47**. The curtain mounting system of claim **40** further comprising a threaded interface between the pole and coupling mechanism.

**48**. The curtain mounting system of claim **40** wherein the multiple protrusions comprise pins.

**49**. The curtain mounting system of claim **48** wherein the pin includes a knob at a distal end that mates with the retention aperture and prevents release of the clip from the head.

**50**. The curtain mounting system of claim **40** wherein the multiple protrusions are located at an interior portion of the one of the clip and head.

**51**. A curtain mounting system comprising:

a pole having first and second ends;

a curtain comprising a sheet of material; and

a coupling mechanism at the second end of the pole, the coupling mechanism including a head that is coupled to the pole and a clip that is removably coupled to the head, one of the clip and head including a body and multiple protrusions extending from the body that mate with multiple retention apertures on the other of the clip and head to secure a portion of the curtain between the clip and head.

**52**. The curtain mounting system of claim **51** wherein the multiple protrusions are located at an interior portion of the one of the clip and head.

**53**. The curtain mounting system of claim **51** further comprising a compression mechanism between the first and second ends of the pole.

**54**. The curtain mounting system of claim **51** wherein the pole includes a length adjustment mechanism to adjust a length of the pole.

**55**. The curtain mounting system of claim **51** wherein the clip and head snap together when coupled.

**56**. The curtain mounting system of claim **51** wherein the clip and head have opposed substantially planar surfaces between which the curtain is secured when the clip is coupled to the head.

**57**. The curtain mounting system of claim **51** wherein the multiple retention apertures on the other of the clip and head are at an interior portion thereof.

US 6,953,076 B2

**13**

**58**. The curtain mounting system of claim **51** further comprising a hinged joint at the head of the coupling mechanism to provide a rotational relationship between the pole and head such that the head can be positioned at an acute angle with respect to the pole.

**59**. The curtain mounting system of claim **51** further comprising a threaded interface between the pole and coupling mechanism.

**60**. The curtain mounting system of claim **51** wherein the multiple protrusions comprise pins.

**61**. The curtain mounting system of claim **60** wherein the pins are rigid.

**62**. The curtain mounting system of claim **61** wherein each pin includes a knob at a distal end that mates with the retention aperture and prevents release of the clip from the head.

**63**. A curtain mounting system comprising:

a pole having first and second ends;

a sheet of curtain material; and

a coupling mechanism at the second end of the pole, the coupling mechanism including a head that is coupled to the pole and a clip that is removably coupled to the head, one of the clip and head including multiple protrusions that mate with multiple retention apertures on the other of the clip and head to secure a portion of the curtain between the clip and head, wherein the clip includes a high-friction material applied to an upper surface thereof to prevent slipping when engaging a room surface.

**64**. A method of installing a curtain to form a room partition between a floor and a ceiling using a partition mount having an elongated portion with a first end and a second end, and having a head coupled to the second end of the elongated portion, the head having a first section coupled to the second end and a second second that couples to the first section, comprising:

installing a portion of a curtain between the first section and the second section, the first and second sections having cross-sectional areas in a direction parallel to the portion of the curtain that are substantially the same; and

mounting the partition mount such that the first end engages the floor and the second section of the head engages the ceiling.

**65**. The method of claim **64**, wherein installing the portion of the curtain between the first section and the second section includes coupling the first section to the second section.

**66**. The method of claim **65**, wherein coupling the first section to the second section includes positioning a protrusion located on one of the first section and the second section through a retention aperture on the other of the first section and the second section to secure the second section to the first section.

**67**. The method of claim **64**, wherein the elongated portion is substantially cylindrical and has a circular cross-section having a first area, and wherein mounting the partition mount includes positioning the second section of the head such that a contact area of engagement of the second section with the ceiling is greater than the first area.

**68**. The method of claim **64**, wherein installing the portion of the curtain includes positioning a portion of the curtain such that a surface of the portion of the curtain is substantially parallel to a surface of the ceiling.

**69**. The method of claim **64**, wherein mounting includes compressing a compression mechanism in the partition mount.

**14**

**70**. The method of claim **64**, further comprising adjusting a length of the elongated portion of the partition mount.

**71**. The method of claim **64**, further comprising:

coupling the curtain to a head of a second partition mount and mounting the second partition mount such that a portion of a first end of the second partition mount engages the floor and a portion of a second end of the second partition mount engages the ceiling.

**72**. The method of claim **71**, further comprising moving the second partition mount away from the partition mount with the curtain coupled to the second partition mount to increase tension on the curtain.

**73**. A curtain mounting system for mounting a partition between a floor and a ceiling, the system comprising:

an elongated member having a first end and a second end, the first end being constructed and arranged to engage the floor;

a head coupled to the second end of the elongated member, the head having a first section coupled to the second end and a second section that couples to the first section, one of the first section and the second section including multiple protrusions extending therefrom that mate with multiple corresponding apertures on the other of the first section and the second section, the second section having a surface constructed and arranged to engage the ceiling; and

a curtain comprising a sheet of material, the first section and the second section of the head constructed and arranged to secure the curtain between the first section and the second section when the second section is coupled to the first section.

**74**. The curtain mounting system of claim **73**, wherein the elongated member is substantially cylindrical and has a circular cross section having a first area, and wherein the surface of the second section has an area that is greater than the first area.

**75**. The curtain mounting system of claim **73**, further comprising a compression mechanism between the first end and the second end of the elongated member.

**76**. The curtain mounting system of claim **73**, wherein each of the first section and the second section includes a planar surface that contacts the curtain, the planar surface of the first section being substantially parallel to the planar surface of the second section.

**77**. The curtain mounting system of claim **76**, wherein the head is constructed and arranged such that the planar surfaces are substantially parallel to the ceiling when the system is mounted between the floor and ceiling.

**78**. A method of installing a curtain to form a room partition between floor and a ceiling using a partition mount having an elongated portion, a first end, a second end, the second end having a mechanism to couple to the curtain, the method comprising:

coupling a curtain to the mechanism on the second end, the mechanism including a high-friction upper surface; and

mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the high-friction upper surface of the mechanism that couples the curtain at the second end of the partition mount directly engages the ceiling.

**79**. The method of claim **78** the mechanism at the second end and the elongated portion interface at a hinged joint, such that the mechanism and the elongated portion are pivotable and can be positioned at an acute angle with respect to each other.

US 6,953,076 B2

15

**80**. The method of claim **78** further comprising adjusting a length of the elongated portion of the partition mount.

**81**. The method of claim **78** wherein the partition mount further includes a compression mechanism between the first end and the second end, and wherein mounting the partition mount further comprises compressing the first end and the second end of the partition mount between the floor and the ceiling.

**82**. The method of claim **78** wherein the mechanism at the second end of the partition mount includes a head that is coupled to the elongated portion and a clip at is removably coupled to the head.

**83**. The method of claim **82** wherein coupling the curtain to the mechanism on the second end comprises placing a portion of the curtain on the head and coupling the clip to the head such that the curtain is secured between the clip and the head.

**84**. The method of claim **82** wherein one of the clip and head includes at least one protrusion that mates with at least one retention aperture on the other of the clip and head to secure the curtain between the clip and head.

**85**. The method of claim **82** wherein the one of the clip and head includes at least one leg that extends about at least one outer surface of the other of the clip and head to secure the curtain between the clip and head.

**86**. A method of installing a curtain to form a room partition between floor and a ceiling using a partition mount having an elongated portion, a first end, a second end, the second end having a mechanism to couple to the curtain, the method comprising:

coupling a curtain to the mechanism on the second end, wherein the mechanism at the second end includes a head that is coupled to the elongated portion a clip that is removably coupled to the head, one of the head and clip having a body including multiple protrusions extending from the body that mate with multiple corresponding retention apertures on the other of the clip and head to secure the curtain between the clip and head; and

mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the clip of the mechanism directly engages the ceiling.

**87**. The method of claim **86** wherein the mechanism at the second end and the elongated portion interface at a hinged joint, such that the mechanism and the elongated portion are pivotable and can be positioned at an acute angle with respect to each other.

16

**88**. The method of claim **86** wherein the clip includes a high-friction upper surface.

**89**. The method of claim **86** further comprising adjusting a length of the elongated portion of the partition mount.

**90**. The method of claim **86** wherein partition mount further includes a compression mechanism between the first end and the second end, and wherein mounting the partition mount further comprises compressing the first end and the second end of the partition mount between the floor and the ceiling.

**91**. A method of installing a curtain to form a room partition between a floor and a ceiling using a partition mount having an elongated portion, a first end, and a second end, the second end having a mechanism to couple to the curtain, the method comprising:

coupling a portion of a curtain to the mechanism on the second end , wherein the mechanism at the second end includes a head that is coupled to the elongated portion and a clip that is removably coupled to the head to secure the portion of the curtain between the clip and head, the clip and head having substantially the same cross-sectional area; and

mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the clip of the mechanism directly engages the ceiling.

**92**. The method of claim **91** wherein the mechanism at the second end and the elongated portion interface at a hinged joint, such that the mechanism and the elongated portion are pivotable and can be positioned at an acute angle with respect to each other.

**93**. The method of claim **91** further comprising adjusting a length of the elongated portion of the partition mount.

**94**. The method of claim **91** wherein partition mount further includes a compression mechanism between the first end and the second end, and wherein mounting the partition mount further comprises compressing the first end and the second end of the partition mount between the floor and the ceiling.

**95**. The method of claim **91** wherein one of the clip and head includes at least one protrusion that mates with at least one retention aperture on the other of the clip and head to secure the curtain between the clip and head.

**96**. The method of claim **91** wherein the one of the clip and head includes at least one leg that extends about at least one outer surface of the other of the clip and head to secure the curtain between the clip and head.

\*   \*   \*   \*   \*

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,953,076 B2                                    Page 1 of 1
DATED         : October 11, 2005
INVENTOR(S)   : Jeffrey P. Whittemore

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 10,
Line 67, insert -- angle -- after "acute".

Column 11,
Line 25, delete "lip" and insert -- clip --.

Column 14,
Line 63, insert -- wherein -- after "78".

Column 15,
Line 11, delete "at" and insert -- that --.
Line 27, insert -- a -- after "between".
Line 28, insert -- and -- after the first occurrence of "end,".
Line 33, insert -- and -- after "portion".

Signed and Sealed this

Twenty-first Day of March, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/865,174 | WHITEMORE, JEFFREY P. |
| | Examiner | Art Unit |
| | Bruce A. Lev | 3634 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>10 June 2004</u>.

2a) ☐ This action is **FINAL**.  2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>1-82</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1-82</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.

10) ☒ The drawing(s) filed on <u>10 June 2004</u> is/are: a) ☐ accepted or b) ☒ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All  b) ☐ Some * c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____.

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

BRUCE A. LEV
PRIMARY EXAMINER

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: _____.

ZW000468

## DETAILED ACTION

### *Drawings*

The drawings are objected to under 37 CFR 1.83(a). The drawings must show every feature of the invention specified in the claims. Therefore, the "*clip snaps to the head*", "*legs are slidable relative to the...outer surface*", AND "*a contact area or engagement of the second section with the ceiling is greater than the first area*" must be shown or the feature(s) canceled from the claim(s). No new matter should be entered.

Corrected drawing sheets in compliance with 37 CFR 1.121(d) are required in reply to the Office action to avoid abandonment of the application. Any amended replacement drawing sheet should include all of the figures appearing on the immediate prior version of the sheet, even if only one figure is being amended. The figure or figure number of an amended drawing should not be labeled as "amended." If a drawing figure is to be canceled, the appropriate figure must be removed from the replacement sheet, and where necessary, the remaining figures must be renumbered and appropriate changes made to the brief description of the several views of the drawings for consistency. Additional replacement sheets may be necessary to show the renumbering of the remaining figures. The replacement sheet(s) should be labeled "Replacement Sheet" in the page header (as per 37 CFR 1.84(c)) so as not to obstruct any portion of the drawing figures. If the changes are not accepted by the examiner, the applicant will be notified and informed of any required corrective action in the next Office action. The objection to the drawings will not be held in abeyance.

ZW000469

### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

*Claims 1-82 are provisionally rejected* under the judicially created doctrine of

*double patenting* over claims of copending Application Numbers *10/301,233* and

*10/600,300*. This is a provisional double patenting rejection since the conflicting claims

have not yet been patented.

The subject matter claimed in the instant application is fully disclosed in the

referenced copending application and would be covered by any patent granted on that

copending application since the referenced copending application and the instant

application are claiming common subject matter, as follows: A mount, a mounting

system, a curtain mounting system, and a method of mounting a curtain including a

pole, a mount, and a coupling mechanism.

Furthermore, there is no apparent reason why applicant would be prevented from

presenting claims corresponding to those of the instant application in the other

ZW000470

copending application. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

*Claims 1-82 are rejected* under the judicially created doctrine of *double patenting* over claims of U. S. Patent Numbers *5,924,469; 6,209,615; 6,321,823; and 6,508,295* since the claims, if allowed, would improperly extend the "right to exclude" already granted in the patent.

The subject matter claimed in the instant application is fully disclosed in the patent and is covered by the patent since the patent and the application are claiming common subject matter, as follows: A mount, a mounting system, a curtain mounting system, and a method of mounting a curtain including a pole, a mount, and a coupling mechanism.

Furthermore, there is no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application during prosecution of the application which matured into a patent. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

### Claim Rejections - 35 USC § 112

*Claims 1-16, 18, 21, 30-41, 43, 46, 47, 56, 59, 64-66, and 68-82 are rejected* under 35 U.S.C. *112*, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

ZW000471

As concerns claims 1 and 68, it is not clear as to whether a combination including "a curtain" is being claimed. The preamble states "a method of installing a curtain", however, the body sets forth "coupling *the* curtain". It appears that this phrase would be better suited to say "coupling *a* curtain".

As concerns claim 5, the phrase "moving the second...mount to a *lateral* position" is not quite understood. Did the applicant mean the "*longitudinal* direction"?

As concerns claims 11, 21, 39, 46, and 59, it is not understood how the clips "*snap*" to the head when the previous claims set forth the protrusions and apertures. Further, it is unclear as to whether this feature (in combination with the protrusions and apertures) is even in the *drawings*.

As concerns claims 14, it is not clear as to which *surface* the legs are slidable with respect to. Further, it is unclear as to whether this feature is even in the *drawings*.

As concerns claims 18, 30, 36, 43, 47, 68, 75 77, and 81, there is an inconsistency between the language in the preamble and certain portions in the body of the claims, thereby making the scope of the claims unclear. For example, the preamble clearly indicates that the subcombination of a "curtain mounting system" is being claimed. However, the body of the claim positively recites a "curtain", e.g., "further comprising a curtain" (claims 18, 36, 43, 47); "between which a...curtain is secured" (claim 30); "installing the curtain (claim 68); "coupling the curtain" (claim 75); "and a curtain" (claim 77); and "contact the curtain" (claim 81), which indicate the claims as being drawn to a combination of the "system" and the "curtain". Therefore, the applicant is required to clarify what the claims are intended to be drawn to, i.e., either the

ZW000472

"system" alone or in combination with the "curtain", and to present the claims with the

language which is consistent with the invention. The applicant should note that

"*adapted to be*" language may be appropriate if claiming the "system" alone (i.e.,

"adapted to be secured to").

As concerns claim 56, it is not understood as to which protrusion ("the

protrusion") is being claimed since "multiple protrusions" were set forth in previous claim

55.

As concerns claim 64, the phrase "the *at least one* protrusion" lacks antecedent

basis and is therefor vague and indefinite.


### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

**Claims 1, 2, 4-7, 16, 68-71, 74-78, 81, and 82 are rejected** under 35

U.S.C. *102(b)* as being anticipated by The **WO publication of Brown 91/09556.**

**Brown sets forth** a curtain mounting system and method of mounting

comprising movable partition mounts each having a mechanism to couple a curtain

between a floor and a ceiling; the mounts having first and second sections that can be

adjusted for varying the length thereof; wherein the ends of the mounts including a

friction surface (vie members 18).

ZW000473

*Claims 1-12, 16-24, 26, 27, 29-34, 36-40, 42-49, 51, 53-62, 64, 65, and 67-82 are rejected* under 35 U.S.C. *102(b)* as being anticipated by *Melino 4,794,974.*

*Melino sets forth* a curtain mounting system and method of mounting comprising movable partition mounts each having a mechanism to couple a curtain between a floor and a ceiling; the mounts having first and second sections that can be adjusted for varying the length thereof and including a compression mechanism 40; wherein the ends of the mounts including a friction surface; the mechanism including a head (inclusive of member 32) and a clip (viewed as members including 14) removably coupled to the head via the protrusion (of member 32) and a retention aperture 19 on the clip.

As for claims 17-24, 26, 27, 29-34, 36-40, 42-49, 51, 53-62, 64, 65, and 67-82, the *coupling mechanism* can be viewed as including a head 14 coupled to the pole, and a clip removably coupled to the head and including multiple protrusions/pins 21 and multiple corresponding retention apertures 19; the clip and head having opposing planar surfaces, wherein the curtain is secured therebetween; the pole and head is hinged and can be rotated via members 19 and 32; and the method of securing thereof.

*Claims 17, 26-28, 30-35, 40, 42, 47-49, and 51-54 are rejected* under 35 U.S.C. *102(b)* as being anticipated by *Cohen 3,858,988.*

*Cohen sets forth* a mounting system comprising a pole 24; a coupling mechanism including a pivoting head coupled to the pole, and a clip 20 removably

ZW000474

coupled to the head via protrusions/pins 28 including knobs at their ends mating with

apertures 22.

### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

*Claims 12-15 are rejected* under 35 U.S.C. *103(a)* as being unpatentable over

*Melino in view of Brown.*

*Melino sets forth* the curtain mounting system and method of mounting, as

advanced above, except for the leg extending about the clip and the head to secure the

curtain therebetween. *However Brown teaches* the use of member 16 (viewed as

having legs) for securing the curtain. Therefore, it would have been obvious to one of

ordinary skill in the art at the time the invention was made to modify the curtain

mounting system of Melino by modifying the mechanism to use a leg extending about

the clip and the head to secure the curtain therebetween, as taught by Stevens, in order

to more easily and quickly removably attach the curtain.

*Claims 25, 41, 50, 52, and 63 are rejected* under 35 U.S.C. *103(a)* as being

unpatentable over *Melino in view of Stiffel 2,942,829.*

ZW000475

*Melino sets forth* the curtain mounting system and method of mounting, as advanced above, except for the threaded interface between the pole and the coupling mechanism. *However Stiffel teaches* the use of a threaded interface 20 between a pole and a coupling mechanism 22. Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to modify the curtain mounting system of Melino by including a threaded interface between the pole and the coupling mechanism, as taught by Stevens, in order to more securely removably connect the pole and the coupling mechanism.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Bruce A. Lev whose telephone number is (703) 308-7470.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-2168.

10/13/2004

*Bruce A. Lev*
*Primary Examiner*
*Group 3600*

ZW000476



IFW

Attorney Docket No.:ZIP-0001CON5
Application Serial No.: 10/865,174
Reply to Office Action of: October 19, 2004

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant(s): | Jeffrey P. Whittemore | Examiner: Lev, Bruce Allen |
| Serial No.: | 10/865,174 | Group Art Unit: 3634 |
| Filing Date: | June 10, 2004 | |
| Title: | PARTITION MOUNT | |

### CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited with the United States Post Office as First Class Mail on the date indicated below in an envelope addressed to Mail Stop Amendment, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

3-14-05
_____
Date

_Vanessa Marakas_
_____
Vanessa Marakas

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### AMENDMENT A

Sir:

The following is in response to the Office Action dated October 19, 2004. A petition for a two-month extension of the time period in which to respond is filed concurrently herewith. Please amend the application as follows.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 18 of this paper.

03/17/2005 DENMAHU1 00000056 10865174

01 FC:2201                    400.00 OP
02 FC:2202                    350.00 OP

- 1 -

Attorney Docket No.:ZIP-0001CONS
Application Serial No.: 10/865,174
Reply to Office Action of: October 19, 2004

**Amendments to the Claims:**

This listing of claims replaces all prior versions, and listings, of claims in the application.

**Listing of claims:**

1.    (currently amended) A method of installing a curtain to form a room partition between a floor and a ceiling using a partition mount having an elongated portion, a first end, and a second end, the second end having a mechanism to couple to the curtain, the method comprising:

coupling [[the]]a curtain to the mechanism on the second end, the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion; and

mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the mechanism that couples the curtain at [[of]] the second end of the partition mount directly engages the ceiling.

2.    (original) The method of claim 1 further comprising adjusting a length of the elongated portion of the partition mount.

3.    (original) The method of claim 1 wherein partition mount further includes a compression mechanism between the first end and the second end, and wherein mounting the partition mount further comprises compressing the first end and the second end of the partition mount between the floor and the ceiling.

4.    (original) The method of claim 1 wherein the partition mount comprises a first partition mount and further comprising:

coupling a second portion of the curtain to a mechanism on a second end of a second partition mount having an elongated portion, a first end, and a second end, and

mounting the second partition mount such that a portion of the first end of the second partition mount engages the floor and a portion of the second end of the second

- 2 -

Attorney Docket No.:ZIP-0001CON5
Application Serial No.: 10/865,174
Reply to Office Action of: October 19, 2004

secure the curtain between the clip and head.

13.    (original) The method of claim 12 wherein the legs are elastically deformable and snap
about the at least one outer surface.

14.    (currently amended) The method of claim 12 wherein the legs are slidable relative to the
at least one outer surface portion of the head.

15.    (currently amended) The method of claim 14 wherein an upper surface of the clip
includes a pad of high friction material applied thereto to an upper surface thereof to
prevent slipping when engaging the ceiling.

16.    (original) The method of claim 1 wherein the second end of the partition mount includes
a high friction material applied to an upper surface thereof to prevent slipping when
engaging the ceiling.

17.    (currently amended) A curtain mounting system comprising:
a pole having first and second ends; and
a coupling mechanism at the second end of the pole, the coupling mechanism
including a head that is coupled to the pole and a clip that is removably coupled to the
head, one of the clip and head including a body and multiple protrusions extending from
the body at an interior portion thereof that mate with multiple corresponding retention
apertures on the other of the clip and head at an interior portion thereof to secure a portion
of a curtain between the clip and head.

18.    (canceled)

19.    (original) The curtain mounting system of claim 17 further comprising a compression
mechanism between the first and second ends of the pole.

- 4 -

Attorney Docket No.:ZIP-0001CON5
Application Serial No.: 10/865,174
Reply to Office Action of: October 19, 2004

head, the clip and head having opposed substantially planar surfaces between which a
portion of the curtain is secured when the clip is coupled to the head, the clip including a
pad of high-friction material applied to an upper surface thereof to prevent slipping when
engaging a room surface.

37.    (currently amended) The curtain mounting system of claim 36 [[30]] further comprising a
compression mechanism between the first and second ends of the pole.

38.    (currently amended) The curtain mounting system of claim 36 [[30]] wherein the pole
includes a length adjustment mechanism to adjust a length of the pole.

39.    (currently amended) The curtain mounting system of claim 36 [[30]] wherein the clip and
head snap together when coupled.

40.    (currently amended) The curtain mounting system of claim 36 [[30]] further comprising a
hinged joint at the head of the coupling mechanism to provide a rotational relationship
between the pole and head such that the head can be positioned at an acute angle with
respect to the pole.

41.    (currently amended) The curtain mounting system of claim 36 [[30]] further comprising a
threaded interface between the pole and coupling mechanism.

42.    (currently amended) A curtain mounting system comprising:
           a pole having first and second ends;
           a coupling mechanism at the second end of the pole, the coupling mechanism
including a head that is coupled to the pole and a clip that is removably coupled to the
head, one of the clip and head including a body and multiple rigid protrusions extending
from the body that mate with multiple corresponding retention apertures on the other of
the clip and head to secure a portion of a curtain between the clip and head, the clip

- 7 -

Attorney Docket No.:ZIP-0001CON5
Application Serial No.: 10/865,174
Reply to Office Action of: October 19, 2004

67.     (currently amended) ~~The curtain mounting system of claim 55~~  A curtain mounting
        system comprising:

                a pole having first and second ends;

                a sheet of curtain material; and

                a coupling mechanism at the second end of the pole, the coupling mechanism
        including a head that is coupled to the pole and a clip that is removably coupled to the
        head, one of the clip and head including multiple protrusions that mate with multiple
        retention apertures on the other of the clip and head to secure a portion of the curtain
        between the clip and head, wherein the clip includes a high-friction material applied to an
        upper surface thereof to prevent slipping when engaging a room surface.


68.     (currently amended) A method of installing a curtain to form a room partition between a
        floor and a ceiling using a partition mount having an elongated portion with a first end
        and a second end, and having a head coupled to the second end of the elongated portion,
        the head having a first section coupled to the second end and a second section that
        couples to the first section[[;]], comprising:

                installing [[the]] a portion of a curtain between the first section and the second
        section, the first and second sections having cross-sectional areas in a direction parallel to
        the portion of the curtain that are substantially the same; and

                mounting the partition mount such that the first end engages the floor and the
        second section of the head engages the ceiling.


69.     (currently amended) The method of claim 68, wherein installing the portion of the
        curtain between the first section and the  second section includes coupling the first section
        to the second section.


70.     (original) The method of claim 68, wherein the elongated portion is substantially
        cylindrical and has a circular cross-section having a first area, and wherein mounting the
        partition mount includes positioning the second section of the head such that a contact

- 11 -