IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZIPWALL, LLC,

                Plaintiff,

v.

FASTCAP, LLC.,

                Defendant.

Civil Action No.:  05-CV-11852-JLT

**ZIPWALL, LLC'S COMBINED OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT AND CROSS-MOTION
FOR SUMMARY JUDGMENT OF LIABILITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ......................................................................................... 2

BACKGROUND .......................................................................................... 3

    I.    THE PARTIES............................................................................ 3

    II.   PROCEEDINGS TO DATE ........................................................ 4

ARGUMENT ............................................................................................. 5

    I.    ZIPWALL IS ENTITLED TO SUMMARY JUDGMENT;
        FAST CAP IS NOT ................................................................... 6

        A.    FastCap Infringes U.S. Patent 6,209,615 ........................ 7

                1.    Infringement ........................................................ 7

                        (a)   Construction of "compression mechanism" and
                              "compressive mechanism" ..................................... 8

                        (b)   FastCap indisputably infringes ............................. 11

                2.    Validity ............................................................... 13

        B.    FastCap Infringes U.S. Patent 6,942,004........................ 14

                1.    Infringement........................................................ 15

                2.    Validity ............................................................... 17

        C.    FastCap Infringes U.S. Patent 6,953,076........................ 17

                1.    Infringement........................................................ 17

                 2.    Validity ............................................................... 19

CONCLUSION.......................................................................................... 21

# TABLE OF AUTHORITIES

Al Site Corp. v. VSI Int'l Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999) ..............................13

Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) ...........................6

Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1381 (Fed. Cir. 2001) ...........20

Honeywell International, Inc. v. International Trade Commission, 341 F.3d
    1332, 1338-1339 (Fed. Cir. 2003) ........................................................................19

Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444, 1448 (Fed. Cir. 1991) ...............6

N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335,
    1344 (Fed. Cir. 2005) .........................................................................................6

Philips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) .......................................8, 11

Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305,
    51 USPQ2d 1161, 1165 (Fed. Cir. 1999) ...............................................................20

Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002) ................17

Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 811,
    53 U.S.P.Q.2D (BNA) 1289, 1301 (Fed. Cir. 1999) ..............................................19

Wright Medical Tech. v. Osteonics Corp., 122 F.3d 1440 (Fed. Cir. 1997) ....................10

## STATUTES AND RULES

35 U.S.C. §112 ................................................................................................13, 19

35 U.S.C. § 282 ......................................................................................................13

MPEP §2106 (8th ed., 2003) ..................................................................................20

MPEP §2111.02 ....................................................................................................20

## INTRODUCTION

The defendant Fastcap, LLC, in this case has filed a motion for summary judgment, before FastCap has even purported to answer any discovery in this case, and before this Court has set a schedule after the case was reassigned from Judge Keeton.

ZipWall sought to raise this before the Court at a scheduling conference, filing a motion to extend time to respond to the summary judgment motion to permit this to happen. (See Docket No. 18). ZipWall understands, however, that the Court granted additional time but cancelled the scheduling conference and prefers to see briefing on this motion before holding a scheduling conference.

Since FastCap wishes to address liability at this stage, ZipWall is pleased to have the Court address it; based on the case's current posture, *ZipWall* is entitled to summary judgment of liability – i.e., summary judgment that each of the asserted patents is valid and infringed.

FastCap has not identified the basis for any defense other than the arguments articulated in its summary judgment motion. Those argument fail as a matter of law and raise no genuine issue of material fact, leaving FastCap with no defense to liability and making entry of summary judgment appropriate.

Attached is the expert report of Professor Alexander Slocum, a full professor of mechanical engineering at the Massachusetts Institute of Technology ("M.I.T."), addressing the noninfringement arguments of FastCap and convincingly establishing that none of FastCap's noninfringement positions can withstand scrutiny.

## BACKGROUND

### I.    THE PARTIES

**ZipWall.** ZipWall was founded by Jeff Whittemore in 1997. Before that time, Mr. Whittemore started and ran a floor finishing business and needed to use plastic partitions to wall off areas while he was sanding down a wood floor to be finished. He realized that there was a better way, he designed a new partitioning system that is better than anything that had come before. After his initial idea, Jeff hand-made a series of prototypes. Each prototype was tested and improved until the product met all of Jeff's requirements. He filed for patent protection and started ZipWall – a company focusing on sales of the poles used to hold the partitions up.

Mr. Whittemore's company has become a true American success story. For the patents, Mr. Whittemore has received seven U.S. patents with additional applications pending. For the business, ZipWall has grown to become a national supplier of dust barrier systems. ZipWall now sell thousands of dust barrier products each year. A picture of the poles in use (from www.zipwall.com ) is:



Unfortunately, in this particular industry, success leads to copycats. ZipWall has previously filed suit for patent infringement against three companies; one promised to cease its infringement and ZipWall secured judgment and an injunction against each of the other two.

3

ZipWall, LLC. v. KwikPole, Inc., Civil Action No. 03-11658, District Court of Massachusetts
(Keeton, J.); ZipWall, LLC. v. C&S Manufacturing, Civil Action No. 04-10079, District Court
of Massachusetts (Keeton, J.).

   **FastCap.** FastCap is a large company located in Washington state that sells what it calls
a "vast array of woodworking products and tools." (www.fastcap.com). Among those products
is a product called "3rd Hand." Below is a clip from FastCap's web site, showing use of this
pole for erecting plastic partitions:



## II.    PROCEEDINGS TO DATE

   This case was filed on September 13, 2005, and assigned to Judge Keeton. On February
2, 2006, Judge Keeton held a scheduling conference. Judge Keeton did not set a formal
schedule, but ordered that discovery may begin, but also ordered that neither party could file any
motion before a status conference that Judge Keeton set for October 11, 2006. (See Declaration
of Matthew Grady, ("Grady Decl."), Ex. A).

   ZipWall served a number of interrogatories on FastCap, seeking to learn FastCap's
noninfringement contentions (ZipWall has provided complete infringement claim charts) (See

4

Grady Decl., Ex. B). ZipWall also sought to learn FastCap's bases for pleading its invalidity defenses, for which FastCap has the burden of proof. FastCap provided *not one* response on the merits, refusing to articulate any contention on the merits or even a Rule 11 basis for denying infringement or for pleading invalidity. (See Grady Decl., Ex. C).

On June 19, 2006, this case was reassigned from Judge Keeton to this Court. The Court issued a discovery order on June 26, 2006, barring further discovery before a scheduling conference that the Court set for August 1, 2006. On July 17, 2006, however, FastCap filed the present motion for summary judgment.

ZipWall filed a motion with the Court requesting that its opposition be delayed so that the issue of the timeliness of the summary judgment motion could be taken up at the status conference. The Court granted the motion, but cancelled the scheduling conference to permit briefing to be completed in advance of the conference.

## ARGUMENT

FastCap's summary judgment motion was improper. In discovery before Judge Keeton, FastCap refused to articulate any position on the merits, claiming that it was not yet in a position to answer them. (Grady Decl., Ex. C.) A summary judgment motion, on the very issues that FastCap refused to even articulate a position on in discovery, puts in sharp relief the impropriety of FastCap's discovery answers.

FastCap's stone-walling in discovery also highlights the impropriety of its motion. To articulate its contentions for the first time in a summary judgment brief is plainly improper.

FastCap's approach will also lead to highly inefficient proceedings. Were the Court to entertain summary judgment now (and perform claim construction in doing so), once FastCap loses, FastCap would presumably come up with new arguments requiring new claim

constructions. This serial approach to identifying contentions followed by claim construction decisions by the Court would be unduly burdensome on both the Court and on ZipWall.

Were the Court to entertain FastCap's motion on the merits, therefore, the Court should limit FastCap's noninfringement and invalidity arguments to those it has articulated to date. As none can withstand scrutiny, *ZipWall* is entitled to summary judgment.

## I.    ZIPWALL IS ENTITLED TO SUMMARY JUDGMENT; FASTCAP IS NOT.

There are three patents in suit – U.S Patent No. 6,209,615; U.S. Patent No. 6,942,004; and U.S. Patent No. 6,953,076.

The assessment of infringement is a two step process. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998); See also N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005). *First*, the claims must be interpreted by the Court as a matter of law and without reference to the accused device. This is often done in a Markman proceeding. *Second*, the accused device is examined to see if the (properly interpreted) claims cover the device.

FastCap's brief is remarkable in that it entirely omits the first step of the process – claim construction. In doing so, FastCap invites this Court to commit plain legal error. See Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444, 1448 (Fed. Cir. 1991) ("Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim."). Indeed, while the brief cites various portion of the patent and prosecution history, it does not purport to provide any actual construction for any claim term.

### A.    FastCap Infringes U.S. Patent 6,209,615

In its interrogatory responses to date, FastCap failed to specify *any* element of *any* claim asserted in the '615 patent that it contends is not present in the accused products. Only now, in its motion for Summary Judgment, has FastCap asserted any theory of noninfringement, and it asserts just one.

That argument is that the "compressive mechanism" or "compression mechanism" of the '615 patent must be a spring. This argument is a purely legal one, as claim construction is a question for the Court.

The patent defines "compression mechanism" as including not just a spring but also pneumatic or hydraulic mechanisms. In short, "compression mechanism" is any mechanism that puts the pole in tension to hold it in place.

Once the claim is interpreted, there is no question that FastCap has a compression mechanism. FastCap even talks on its website about using its ratchet to generate a "securing pressure" on the pole.

### 1.    Infringement

For the '615 patent, ZipWall has provided detailed claim charts for claims 1 - 3, 8 - 10, 14 - 16, 18 - 21, 23, 25 - 28, and 30 identifying how each limitation of these claims is met in the 3rd Hand product. For all of these limitations, in the twelve months this case has been pending, FastCap has identified *only one* limitation in claim 1 and *one* limitation in claim 19 that it contends is not met – a "compression mechanism" in the former and a "compressive mechanism" in the latter. In doing so, however, FastCap has failed to propose any claim construction for either term, asking the Court to infer its claims constructions from its assertions that the element is not met with reference to the accused products.

**(a)    Construction of "compression mechanism"
and "compressive mechanism"**

The meaning of a claim term is determined "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Philips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).

In the context of the patent, the plain meaning of a "compression mechanism" or a "compressive mechanism" for a pole is a mechanism that can be used to generate a compressive force in the pole, when it is installed, to hold the pole in place. (See Declaration of Professor Alexander Slocum, ("Slocum Decl."), ¶ 7).

This is precisely how that term is used in the patent. The Abstract of the '615 patents explains the operation of the invention as follows: "[a]t ground level, a portion of the curtain is attached to the head of the curtain mount. The curtain and mount are raised to the ceiling and the mount and pole are compressed between the floor and the ceiling. This compressive force operates to urge the head toward the ceiling, securing the mount in place." This description of how the invention operates is repeated within the patent. (Col. 3, lines 2 – 4).

The '615 specification provides examples of how "the length of the pole is adjusted such the combined length of the pole and mount is slightly longer than the distance between the floor and the ceiling." (Col. 2, line 66 – Col. 3, line 1). "Each curtain mount includes a compression mechanism, *for example* a spring, which operates to urge the head 28 against the ceiling 32, thereby securing the curtain 30." (Col. 4, lines 17 – 19) (emphasis added). To secure the pole, a compressive force in the pole creates tension within the pole and at the floor and ceiling.

This definition of "compressive mechanism" is confirmed by other examples in the specification. Not only does the patent refer to the compressive force as explained above, the

patent goes on to state that "compression mechanisms include springs, pneumatic devices and hydraulic devices." (Co. 8, lines 49 – 50).

Examples of the latter two compression mechanisms are shown in Figure 9A:

An example of an alternative embodiment of the curtain mount is illustrated in FIGS. 9A, 9B and 9C. This curtain mount embodiment includes a hydraulic or pneumatic device 197 serving as a compression mechanism.

'615 patent, Col. 8, l. 49 – Col. 9, l. 2. FIG 9A shows the location (labeled 107):



FIG. 9A

A compression mechanism is a mechanism that creates a compressive force to hold the pole in place, whether through springs, pneumatics, hydraulics, or anything else. Indeed, the presence of these examples makes it manifest that "compression mechanism" refers to any structure that can be used to create a compressive force within the pole, in use. (See Slocum Decl., ¶ 7-12).

The gravamen of FastCap's noninfringement position, however, is that the "compressive mechanism" must be a spring. This contention is manifestly wrong. First, it requires that the Court ignore the part of the patent specification which states that "compression mechanisms" include other things. Thus, requiring that the "compression mechanism" be a spring would read

9

out *two of the three* example compression mechanisms shown in the patent.  (See Slocum Decl.,
¶ 7-12).

Such a claim construction is "rarely, if ever, correct" and would plainly constitute legal
error here.  See Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1347 (Fed. Cir. 2004)
(affirming construction that does not violate "the principle that claims should rarely, if ever, be
construed to exclude a preferred embodiment"); See also Wright Medical Tech. v. Osteonics
Corp., 122 F.3d 1440 (Fed. Cir. 1997) (reversing district court's claim construction of "plateau
planer" where specification disclosed embodiments contrary to construction, and a broader
reading supported by dependent claim).

Were this not enough (it is), the patent specification also makes plain that the description
of a spring is an example and not a limitation on the claim.  "One embodiment of the invention
comprises a spring loaded mount ... ." (Col. lines 29 – 30 (emphasis supplied)).  "In a preferred
embodiment, the compressive mechanism comprises a spring under compression between and
inner wall of the mount and the head." (Col. 2, lines 34-36 (emphasis supplied)).  The patent
specification concludes that "[w]hile this invention has been particularly shown and described
with reference to preferred embodiments thereof, it will be understood by those skilled in the art
that various changes in form and detail may be made without departing from the spirit and scope
of the invention as defined by the appended claims."  (Col. 8 lines 60 – 65).

Finally, other claims in the patent mandate that "compressive mechanism" be construed
to mean a mechanism that can generate a compressive force to hold the pole in place, and is not
limited to a "spring."  Later (narrower) claims in the '615 patent specify an additional limitation
that the "compressive mechanism" "includes a spring."  Specifically, claim 25 recites "[t]he
mount of claim 19 wherein the compression mechanism comprises a spring."

If the compressive mechanism were already limited to a spring, then claim 25 would make no sense. In performing claim construction, the Court should necessarily infer that compressive/compression mechanism in the *broader* claims must include mechanisms that do not include a spring. See Philips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) ("The presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim").

### (b)    FastCap indisputably infringes

The only limitation that FastCap has ever contended is not met in the 3rd Hand pole is "compressive mechanism" or "compression mechanism." Once these are construed, however, there can be no genuine dispute that FastCap's pole has one. (See Slocum Decl., ¶ 9, 11).

In the FastCap pole, there is plainly a mechanism to generate a compressive force within the pole to hold the pole in place when holding up a plastic partition. As can be readily observed, and is admitted by FastCap in their Statement of Undisputed Facts, the Third Hand device is operated by squeezing the ergonomic pump handle urging the head of the device towards the ceiling. Once the head contacts the ceiling, an operator squeezes the ergonomic pump handle again extending the galvanized extension rod such that the pole and mount is slightly longer than the distance between the floor and the ceiling. The force generated by extending the pole and mount of the Third Hand device slightly longer than the distance between the floor and the ceiling generates an equal an opposite force from the ceiling and floor compressing the pole and mount of the Third Hand device, holding it in place.

The process is shown below, including the ultimate result obtained by employing a number of devices to erect a dust barrier, as clearly contemplated in the '615 patent.







(Illustrations from www.fastcap.com)

Thus, similar to a spring creating tension (i.e., a compressive force) to hold the pole in place, and very much like a hydraulic or pneumatic mechanism to lengthen pole to create tension in the pole, FastCap's ratchet is indisputably a "compression mechanism," i.e., a mechanism to create a compressive force in the pole during use. (See Slocum Decl., ¶ 11).

In interrogatory answers and claim charts, ZipWall also identified the following claims as infringed: 2 - 3, 8 - 10, 14 - 16, 18, 20 - 21, 23, 25 - 28, and 30. (See Grady Decl., Ex. B). As

FastCap does not contend that any of these limitations are not met, these claims should be determined to be infringed as well.

### 2.    Validity

United States patents are presumed valid.  35 U.S.C. § 282.  FastCap pled invalidity for this patent, FastCap bears the burden of proof (by clear and convincing evidence) for this defense.  See, e.g., Al Site Corp. v. VSI Int'l Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("An accused infringer who defends on grounds of patent invalidity bears the burden of showing patent invalidity by clear and convincing evidence.").

FastCap has not, however, identified any basis for concluding that any claim of the '615 patent is invalid.  ZipWall's interrogatory requested a full explanation of its defenses:

> State the basis for the contention asserted by FastCap in its "Sixth Affirmative Defense" to ZipWall's Complaint that "the patents recited in ZipWall's Complaint are invalid," including an identification of each piece of prior art that FastCap contends is a § 102 reference and what portions of such prior art satisfy each limitation of the claims of the asserted patent, and for any prior art not contended to constitute only a § 102 anticipation, the prior art disclosing a motivation, teaching, or suggestion to modify or combine the reference in a manner making the claim obvious, each claim or limitation not meeting the requirement of § 112 and the reasons therefore, all facts, evidence, and documents that FastCap asserts support or are pertinent to any such contentions, and identify the person or persons most knowledgeable about such contentions and bases.

In response, FastCap provided not even a Rule 11 basis for pleading invalidity, let alone one that raises any genuine issue of material fact:

> FastCap objects to this contention Interrogatory No. 12 to the extent it calls for information as to which discovery is still ongoing in this case and which is within the possession, custody or control of Plaintiff or third parties. FastCap has not completed discovery or its independent factual investigation in this action and the responses contained herein are based upon such information and documents presently available to and specifically known to FastCap. It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and legal contentions. The responses contained herein are made in a good faith effort to supply such documents, factual information and specification of legal contentions as presently known. Accordingly, FastCap reserves the right to alter, supplement, amend, or otherwise

modify these responses. Any such information and/or documents later obtained will be made available to the extent they are responsive and not privileged or the subject of an appropriate objection.

(Grady Decl., Ex. C).

Having failed to provide any basis for pleading its contention that any claim of the '615 patent is invalid, let alone proffering clear and convincing proof, summary judgment for ZipWall is appropriate.

**B.      FastCap Infringes U.S. Patent 6,942,004**

The history of FastCap's noninfringement position for this patent is an interesting one. When this patent first issued, FastCap denied infringement before it had even seen the patent. (See Grady Decl., Ex. D).  Once ZipWall filed suit, FastCap stopped providing the "DB clip" that is a part of FastCap's infringing device.  In FastCap's letter of July 13, 2006 they stated ". . . FastCap, in an abundance of caution, stopped selling its accused "DB clip" when it learned of ZipWall's Complaint . . . ." (See Grady Decl., Ex. E).

In discovery, of course, FastCap also was unable to articulate any theory under which it does not infringe this patent.  ZipWall served interrogatories requesting that FastCap:

> State the basis for the contention asserted by FastCap in its "Second Affirmative Defense" to ZipWall's Complaint that FastCap "does not infringe any valid, enforceable claim of the patents recited in ZipWall's Complaint," including a specification of each limitation of each claim that FastCap contends is not met, literally or by equivalents, the reasons therefor, and an identification of all facts, evidence, and documents that FastCap asserts support or are pertinent to such contention, and identify the person or persons most knowledgeable about such contentions and bases.

> In response, FastCap identified *no* limitation that was not met.

> Notwithstanding FastCap's objections to this Interrogatory No. 8, FastCap does not infringe the Patents-In-Suit because its accused 3rd Hand product does not include every element of Plaintiffs asserted patent claims.

(Grady Decl., Ex. C - Interrogatory No. 8.)

14

This nonanswer plainly provides no Rule 11 basis for contesting validity.   Needing something for this motion, however, FastCap asserts a noninfringement argument that does not even make sense.

### 1.    Infringement

FastCap first argues noninfringement for a number of claims that ZipWall has not even identified as being asserted in this lawsuit (1, 17 and 45).   The one that is being asserted (claim 35) is plainly infringed.

The only limitation in this claim that FastCap asserts is not met is the requirement of a "clip".   In fact, the entire noninfringement argument is this:

> Regarding the "clip" of independent claim 35, FastCap previously marketed a DB Clip accessory for its support poles; however, as shown above, FastCap's former DB clip did not include a "plurality of legs extending about at least one side surface ... of the head when the clip is engaged with the head" as recited in claim 35.  Instead, FastCap's former DB clip had a single leg extending about two sides, the clip being adapted to slide onto the "Top 3" x 3" foot" of FastCap's accused support poles.

This argument goes unexplained and is difficult to follow; it certainly cannot withstand scrutiny. Apparently, FastCap argues that the two projections below are not two legs, but one:





There are plainly two legs, one on each side, and those two legs "extend about" or go

around at least one side, in fact, the two legs go around two of the sides. Indeed, the patent

specification plainly uses "leg" to refer to individual projections extending out from the clip.

In FIGS 4A and 4B, the patent refers to "legs 65," pointing to two legs on one side of the clip,

and not the legs on the other side of the clip. For FIG. 4C, just one leg is indicated. Each

projection is a "leg" as that term is used in the patent.



FIG. 4B          FIG. 4C

There is no question that there are two legs (i.e., a "plurality" of legs) in the FastCap device.

In a similar fashion to its analysis of the '615 patent, FastCap has declined to provide any

claim construction on which it basis its non-infringement positions. FastCap has refused to

provide its construction of "plurality of legs" because its plain meaning, more than one, clearly

applies to the clip shown above.[1]

---

[1] ZipWall has asserted dependant claims 36-44 against FastCap. FastCap has only asserted that the clip of claim 35 is lacking from its 3rd Hand product, therefore, ZipWall is entitled to Summary Judgment on 36-44 as well.

### 2.    Validity

Although FastCap pled invalidity for this patent, and FastCap bears the burden of proof (by clear and convincing evidence) for this defense, FastCap again has not identified any basis for it to meet Rule 11, let alone a defense that can withstand summary judgment.  (See Grady Decl., Ex. C, Response to Interrogatory No. 12).  Summary judgment for ZipWall is appropriate.

### C.    FastCap Infringes U.S. Patent 6,953,076

### 1.    Infringement

FastCap's noninfringement arguments for this patent are so abbreviated as to be incomprehensible.  For its part, ZipWall has identified in detail how FastCap has infringed claims 1 -5, 7 – 9, 12 – 16, 29, 64, 65, 67 – 72, 78 – 83, 85, 91 – 94, and 96.  (See Grady Decl., Ex. B).

In its disjointed argument (the entirety of which is set out below), FastCap alleges that it does not have:

> poles that are adjustable to fixed lengths. The accused products do not infringe the claims of the '076 patent because they do not have any of the curtain "coupling mechanism[s]" recited in the '076 patent claims.  For example, FastCap's accused products do not have a "pivotable", "hinged joint"as recited in independent claim 1 of the '076 patent.  They also do not include any "coupling mechanism" having "multiple protrusions that mate with corresponding retention apertures at an interior portion thereof" as

As a preliminary matter, claim 64 does not include *any* of this language and, therefore, FastCap has not even articulated *any* theory under which claim 64 is not infringed – notwithstanding having been provided a complete claim chart for this claim in interrogatory answers.  (See Grady Decl., Ex B).  Of course, there is liability even if only one claim is infringed, and that is sufficient to support judgment for ZipWall.  See Teleflex, Inc. v. Ficosa N.

17

<u>Am. Corp.</u>, 299 F.3d 1313, 1323 (Fed. Cir. 2002) (requiring only that "all of the limitations of at least one claim are present" in the accused device). Summary judgment is appropriate.[2]

Even so, the remaining asserted claims are also infringed. ZipWall does not assert the claims requiring "multiple protrusions" are infringed – the argument is a red-herring and it is incomprehensible why FastCap would argue limitations in claims that have not been asserted.

ZipWall *does* contend that FastCap infringes claims reciting a "pivotable" "coupling mechanism" (e.g., claim 1), but this limitation is plainly met.

A "coupling mechanism" is a mechanism or component that can be used to "couple" or attach the plastic partition to the pole. Plainly FastCap has this, as shown in its own advertising:

 

There is also no question that FastCap's pole has a hinged joint that is pivotable.

   

In fact, the patent shows this same type of pivot. (<u>See</u> Slocum Decl., ¶ 18-21).

There is no question that FastCap infringes this patent and summary judgment is appropriate.

---

[2] Dependant claims 65, 67, and 68 recite do not include any of the language asserted by FastCap as lacking in its product, and are likewise infringed.

## 2.    <u>Validity</u>

FastCap argues that the claims are invalid as indefinite on their face.  According to

FastCap, the claims are indefinite because they recite a method of erecting a partition and then

specify the placement of only one pole.  According to FastCap, the United States Patent Office

failed to notice this not once, but with respect to forty six different claims.

The Patent Office did not err.  FastCap's argument is specious.

Under 35 U.S.C. §112, a claim is definite if those skilled in the art would understand

what is claimed, when the claim is read in light of the specification.  A claim is presumptively

valid and is indefinite only if it is "insolubly ambiguous, and no narrowing construction can

properly be adopted". <u>Honeywell International, Inc. v. International Trade Commission</u>, 341

F.3d 1332, 1338-1339 (Fed. Cir. 2003).

Here, there is no argument by FastCap that the public cannot figure out what the claim

covers or that there is anything that cannot be understood.  FastCap has not even articulated a

viable indefiniteness defense.

What is more, FastCap will be unable to do so.  The premise for its argument is simply

wrong (and that is why the Patent Office properly allowed the claims).

Each of the claims in the '076 patent use the transitional phrase "comprising."

"Comprising" is a patent term of art that allows additional components or steps to be a part of the

claimed invention.  <u>See</u> e.g., <u>Vivid Tech., Inc. v. Am. Sci. & Eng'g, Inc.</u>, 200 F.3d 795, 811, 53

U.S.P.Q.2D (BNA) 1289, 1301 (Fed. Cir. 1999) ("A claim using the signal 'comprising' . . . is

generally understood to signify that the claims do not exclude the presence in the accused

apparatus or method of factors in addition to those explicitly recited").

As a necessary consequence, there is no requirement that a claim recite as limitations

everything necessary to make an operative device.  See  Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1381 (Fed. Cir. 2001) ("It is clear that the process described by claim 1 of the '255 patent is part of a larger process that may encompass preliminary or subsequent steps.")

Indeed, the Patent Office actually *discourages* the submission of claims that recite everything necessary to make a working system.

> [T]he applicant need not explicitly recite in the claims every feature of the invention. For example, if an applicant indicates that the invention is a particular computer, the claims do not have to recite every element or feature of the computer.  In fact, it is preferable for claims to be drafted in a form that emphasizes what the applicant has invented….

MPEP §2106 (8th ed., 2003).

Here, the claims are written to broadly cover the use of a particular pole.  It does not matter what is used to hold up some other part of a plastic partition –another pole, a different pole, staples, glue, someone's hand or anything else.  The claims are definite and that Patent Office did not err in granting them.

Indeed, the purported requirement that the claim recite a complete method of erecting a partition comes from the preamble of each recited claim.  As such, this phrase ("to erect a partition") is not even a limitation of any claim.  MPEP in §2111.02 ("If the body of a claim fully and intrinsically sets forth all of the limitations of the claimed invention, and the preamble merely states, for example, the purpose or intended use of the invention, rather than any distinct definition of any of the claimed invention's limitations, then the preamble is not considered a limitation and is of no significance to claim construction"); Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165 (Fed. Cir. 1999).  If the preamble is not a limitation, it can hardly impose requirements on what must appear in the claim language. The preamble cannot make the claim indefinite.

The claims are definite as the Patent Office determined when it allowed them.  FastCap

cannot cite an iota of *relevant* authority for its contention that the claims must recite *every* step of a method of erecting a partition or every component of a system for erecting a partition; FastCap only cites generic cases about the requirement of definiteness, none in a factual setting at all analogous to the present case.

FastCap's validity defense for the '076 patent fails as a matter of law.[3]

## CONCLUSION

The Court should deny FastCap's motion for summary judgment, enter summary judgment of liability (i.e., infringement and validity) *for ZipWall* and set a schedule for damages discovery.

Respectfully submitted,

ZIPWALL, LLC

Dated: August 28, 2006

by:  /s/ Matthew B. Lowrie
Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

---

[3] FastCap's assertion of invalidity is plainly wrong with respect to claims 4 -7, and 71-72.  Claims 4-7 and 71-72 recite "a second partition mount."

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true a correct copy of the foregoing was served upon the listed below by electronically filing with the court on August 28, 2006:

Sarah Cooleybeck, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone: 617.832.1000
Facsimile: 617.832.7000
E-mail: scooleybeck@foleyhoag.com

Michael James Cronen, Esq.
Law Offices of Harris Zimmerman
1330 Broadway, Suite 710
Oakland, CA 94612
Telephone: 510.465.0828
Facsimile: 510.465.2041
E-mail: mcronen@zimpatent.com

Dated: August 28, 2006                    /s/ Matthew B. Lowrie_____
                                        Matthew B. Lowrie, Esq.

22