IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZIPWALL, LLC,

               Plaintiff

v.

FASTCAP, LLC.,

               Defendant.

Civil Action No.:  05-cv-11852-JLT

## ZIPWALL'S RESPONSE TO FASTCAP'S STATEMENT
## OF UNDISPUTED MATERIAL FACT

Pursuant to Local Rule 56.1, Plaintiff ZipWall, LLC ("ZipWall") submits the following

numbered paragraphs in response to FastCap, LLC's ("FastCap") statement of undisputed

material facts in support of FastCap's Motion for Summary Judgment.

FastCap's Statement of Facts

1.  Plaintiff ZipWall, LLC ("Zipwall") alleges FastCap's infringement of three patents

that issued from continuation applications covering a spring-loaded partition mount and clip for

installing plastic sheeting to create dust or paint barriers in construction zones.  The patents-in-

suit include:  U.S. Patent No. 6,209,615 ("the '615 patent"); U.S. Patent No. 6,924,004 ("the

'004 patent"); and U.S. Patent No. 6,953,076 ("the '076 patent").  See, Declaration of Michael

Cronen filed herewith and incorporated herein, Exhibit A ('615 patent); Exhibit G ('the '004

patent"); and Exhibit N ("the '076 patent")

**Response:**  Disputed to the extent the FastCap attempts to characterize the patents-in-

suit.  Undisputed that ZipWall has alleged infringement of the '004 patent, '615, and '076

patents.  The Defendant's characterization of what the patents are "covering" is not a material

fact that needs to be disputed, it is a question of law for the Court to decide and will be addressed

in the briefing.


2.  Plaintiff ZipWall sells spring-loaded partition mounts and clips to painters, carpenters,

floor refinishers, etc.  The mounts and clips "hold common plastic sheeting between ceilings and

floors to create a barrier to control the spread of job-site dust."  See, Declaration of Paul Akers

filed herewith and incorporated herein, Exhibit A (pages from Plaintiff's website).  According to

ZipWall's website, the "spring exerts compressive pressure that holds the plastic sheeting in

place at the floor and ceiling."  Id. The spring action, which compresses approximately 2-3

inches, also serves to adjust the fit of the plastic sheeting.  Users "simply compress the spring

mechanism and tuck the plastic sheeting at the head or foot of the poles."  Id. Once in place, the

spring is "released to load pin the sheeting in place for a tight fit top to bottom."  Id.

**Response:**  Immaterial.  ZipWall sells dust barrier systems, however, the line of

ZipWall's products is irrelevant to the issues before the Court of interpreting the claims of the

asserted patents and determining whether FastCap's products infringe.  Rawlplug Co. v. Illinois

Tool Works, 11 F.3d 1036, 1044 (Fed. Cir. 1993) (noting that the court is required to compare

the alleged infringing product with the claims of the patent not with the patentee's product).

3.  Defendant FastCap manufacturers, markets and sells a line of innovative products to

professional cabinet makers and serious wood workers.  See, Akers Dec., ¶3, Exhibit B (pages

from FastCap's website).  Two of FastCap's products, The 3rd Hand HD™ ("3rd Hand") and The

Little Hand HD™ ("Little Hand") support poles, and the subject of Zipwall's infringement

allegations in this case.  Id.

**Response:** Defendant FastCap manufacturers, markets and sells a line of products to professional cabinet makers and serious wood workers, Akers Dec., ¶3, <u>Exhibit B</u> (pages from FastCap's website). Two of FastCap's products, The 3rd Hand HD™ ("3rd Hand") and The Little Hand HD™ ("Little Hand"), are the subject of Zipwall's infringement allegations in this case. Whether FastCap sells "innovative" products is not material to any issue in this case.

4. FastCap's 3rd Hand and Little Hand support poles are not spring-loaded curtain mounts. Akers Dec. ¶4 Instead, FastCap's products were designed to "provide a support, brace, or clamp" to support a load of up to seventy pounds. Id. For example, the 3rd Hand and Little Hand are used to "secure wood trim or crown molding in place for nailing" and to "apply pressure to glued flooring material while it dries." Id. They are also used "to hold drywall in place overhead or, when mounted horizontally, they may be used as a load stabilizer to prevent material from shifting in transport." Id.

**Response:** Disputed or immaterial. Whether FastCap's products have other uses is irrelevant to infringement and the amount of load that it can carry is also immaterial to infringement. <u>Radio Steel & Mfg. Co. v. MTD Products, Inc.</u>, 731 F.2d 840, 848 (Fed. Cir. 1984) (addition of function will not avoid infringement). Whether or not FastCap's products are "spring-loaded curtain mounts" depends on the meaning of "spring-loaded", and is irrelevant since no claim recites a limitation of "spring-loaded".

5. FastCap's 3rd Hand and Little Hand support poles do not have any compressive mechanism whatsoever. Akers Dec. ¶5. Instead, the length of the accused products adjusts and locks into place to maintain fixed lengths, like an adjustable tire jack commonly used to support

an automobile while changing tires.  Id.  To accomplish this, FastCap's accused products employ

two separate components as shown in the following illustration:



**Response:**  Disputed, except to the extent that the illustration shows one of FastCap's

accused products.


6.  In the above illustration, the first component comprises the "ergonomic pump handle",

"lifting tab" and "pump spring". Akers Dec., ¶6.  This component advances the galvanized

extension rod to extend the length of the support pole.  Id.  This is accomplished by squeezing

the pump handle which, in turn, pushes up on the bottom of one side of the lifting tab.  Id.  This

causes the lifting tab to lift at an angle and frictionally engage the galvanized extension rod.

Each squeeze of the pump handle extends the length of the rod approximately 3/8 of an inch.  Id.

**Response:**  Disputed, the handle is designed to allow the extension rod to be raised in any increment up to 3/8 of an inch.

7.  As illustrated above, the second component of FastCap's support poles comprises a "release tab" and "lower spring" that locks and releases the galvanized extension rod.  Akers Dec., ¶7.  As can be seen in the above, the lower spring pushes the release tab down at an angle, thereby causing the release tab to frictionally engage the extension rod and hold it in place.  Id. The lock on the extension rod is released by pushing up against the bottom of the release tab, which pushes up against the lower spring.  Id.  This levels the angle of the release tab and disengages it from the extension rod, allowing the rod to move freely.  Id.

**Response:**  Undisputed.

8.  Previously, FastCap sold an accessory for its 3rd Hand and Little Hand products called a dust barrier or "DB" clip.  Akers Dec., ¶8.  A photograph of FastCap's DB clip in relation to the "Top 3"x3" foot" of FastCap's support poles is set forth on the next page as follows:



As can be seen in this photograph, FastCap's DB clip had a single engagement member, or "leg", extending along two sides of the clip.  Id.  This leg was adapted to slide onto the "Top 3"x3" foot" portion of FastCap's support poles as shown above.  Id.  The DB clip in the above photograph includes an adhesive label with written instructions stating "remove clip for better gripping" because the upper surface of the clip was smooth.  Id.

**Response:**  Undisputed to the extent that FastCap has sold or provided a clip for a dust barrier or "DB Clip," as shown in the illustration.  ZipWall disputes the remainder of this paragraph, and specifically disputes FastCap's interpretation of the illustration.  The illustration speaks for itself and is the only proper material fact presented.


9.  The '615 patent was the first  to issue of the three patents in-suit.[1]  It issued on April 3, 2001.  See, Document 3-1 (Amended Complaint, p. 1:15).  ZipWall contacted FastCap several

---

[1] The patents-in-suit are all part of a family of continuation applications that include application No. 10/865,174, now the '076 patent, which is a continuation of application No. 10/301,233, now the '004 patent, which is a continuation of application No. 09/884,337, now U.S. Patent No. 6,508,295, which is a continuation of application

years ago alleging FastCap's infringement of the '615 patent.  Akers Dec. ¶9.  Upon examination and study, however, FastCap determined its products clearly do not infringe the '615 patent. FastCap communicated its non-infringement determination to Zipwall several years ago and Zipwall dropped its infringement allegations at that time.  Id.

**Response:**  Disputed, except to the extent that it details the continuity data of the patents-in-suit, and immaterial to whether FastCap infringes.

10.  The '004 patent issued recently, on September 13, 2005.  The same day the '004 patent issued, Zipwall filed its Complaint in this case.  The '004 patent was the only patent alleged in Zipwall's original Complaint.  See, Document 1-1 (Complaint).

**Response:**  Undisputed as to the issue date of the patent and the date the complaint was filed, but immaterial.

11.  The '076 patent issued on October 11, 2005, approximately one month after Zipwall filed its Complaint.  The same day the '076 patent issued, Zipwall filed its Amended Complaint alleging infringement of the '076 patent.  See, Document 3-1 (Amended Complaint, p.1:16). Zipwall added the '615 patent to its Amended Complaint.  Compare, Document 1-1 (Complaint) and Document 3-1 (Amended Complaint).

**Response:**  Undisputed as to the issue date of the patent and the date the complaint was filed, but immaterial.

---

No. 09/613,645, now U.S. Patent No. 6,321,823, which is a continuation of application No. 09/302,122, now the '615 patent, which is a continuation of application No. 08/740,372, now U.S. Patent No. 5,924,469.

12.  The claims of the '615 patent are directed to a curtain mount and mounting system having a spring-loaded "compressive mechanism" within the curtain mount.  The '615 patent has two independent claims, claims 1 and 19, and 28 dependent claims.  See, Cronen Dec., Exhibit A ('615 patent).

**Response:**  Disputed, except to the extent that the '615 patent has two independent claims and 28 independent claims.  FastCap is attempting to present claim constructions, guised in a statement of fact.  Claim construction, and what the invention is "directed to" is a question for the Court to determine as a matter of law and are addressed in the briefing.

13.  Independent Claim 1 of the '615 patent recites:

A mount attachable to an extension pole for installing a curtain comprising:

    an interface at a proximal end of said mount adapted for coupling the mount to an extension pole;

    **a compression mechanism** along a longitudinal axis of said mount;

    a head at a distal end of said mount having an upper first engaging surface extending transverse to said longitudinal axis, **said head and said interface coupled to opposite ends of said compression mechanism, said compression mechanism biased to urge said head away from said interface;**

    a clip having a lower second engaging surface adapted to substantially interface with said engaging surface, and an upper surface; and

    a retaining member for removable securing the first and second engaging surfaces, such that when in an engaged position, the first and second engaging surfaces substantially interface, and such that when in a disengaged position, the first and second engaging surfaces separate."

Cronen Dec. Exhibit A (615 patent) (Emphasis added).

**Response:** Claim 1 speaks for itself, is interpreted as a question of law, and its meaning will be addressed in briefing.

14. Independent claim 19 of the '615 patent recites:

A mounting system for installing a curtain comprising:
a pole having proximal and distal end, said pole
having a longitudinal axis,
a foot coupled to said proximal end of said pole;
a head having an upper first engaging surface extending
transverse to said longitudinal axis, said head coupled
to said distal end of said pole;
**a compressive mechanism between said foot
and said head;** and
a clip having a lower second engaging surface adapted to
substantially interface with said first engaging surface,
and an upper surface; and
a retaining member for removably securing the first and second
engaging surfaces, such that when in an engaged
position, the first and second engaging surfaces
substantially interface, and such that when in a
disengaged position, the first and second engaging
surfaces separate.

Id. (615 patent) (emphasis added) "

**Response:** Claim 19 speaks for itself, is interpreted as a question of law, and its meaning will be addressed in briefing.

15. The '615 patent specification, i.e. the written description and drawings, describe and show the "<u>compressive mechanism</u>" of independent claims 1 and 19 as "a spring under compression between an inner wall of the mount and the head" such that "[t]he head is urged toward the ceiling by said compressive mechanism". Cronen Dec. <u>Exhibit A</u> ('615 patent, col. 2, lines 29-30 and 34-36). The specification also states that "the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling." Id. ( col. 2, Line 64

through col. 3, line 1). This allows "the mount and pole" to be "compressed between the floor and ceiling ... [and] [t]his compressive force operates to urge the head toward the ceiling." Id. (col. 3, lines 4-6).

**Response:** Disputed. The specification speaks for itself, and contains a number of descriptions of the compression mechanism, including also pneumatic and hydraulic mechanisms. FastCap is attempting to present claim construction argument, guised in a statement of fact. Claim construction, and the meaning of claim limitations, is a question for the Court to determine as a matter of law and will be addressed in the briefing.

16.    The Detailed Description of Preferred Embodiments also supports this construction of the "compressive mechanism" element of claims 1 and 19. In the preferred embodiment , "[e]ach curtain mount includes a compression mechanism, for example a spring, which operates to urge the head 28 against the ceiling 32, thereby securing the curtain 30." Id. ('615 patent, col. 4, lines 17-19). The claimed compressive mechanism also "provides longitudinal stability" to the mount. Id. (col. 5, lines 32-33).

**Response:** Disputed. The Detailed Description speaks for itself. FastCap is attempting to present claim constructions, guised in a statement of fact. Claim construction, and the meaning of claim limitations, is a question for the Court to determine as a matter of law and will be addressed in the briefing.

17. The written description goes on to describe the claimed invention as comprising a combined "pole" and "mount" where the length of the "fully extended curtain mount 24" and pole is "longer than the distance from the floor 34 to the ceiling 32". Cronen Dec. Exhibit A

('615 patent, col. 4, lines 20-24).  As stated in the patent, "[f]or example, if the compression range of the spring is 2-3 inches, then the total length of the pole 22 and mount 24 can be made 2-3 inches longer than the floor-to-ceiling 32 height, causing the spring to be compressed when the system is installed."  Id. (col. 4, lines 25-29)(emphasis added).  Therefore, "[t]he tension of the spring 50 must be high enough to support the weight of the installed curtain", but also "low enough such that the head 28 of the curtain mount 24 does not push through the ceiling during installation."  Id. (col. 5, lines 54-61) (emphasis added).

    **Response:**  Disputed.  The '615 patent speaks for itself.  FastCap is attempting to present claim constructions, guised in a statement of fact.  Claim construction, and the meaning of claim limitations, is a question for the Court to determine as a matter of law and will be addressed in the briefing.

    18.     The compressive mechanism of the '615 patent is clearly shown in the patent drawings.  For example, Fig. 3C shows "a force F generated by the compression of the spring operating on the plunger 46" that "urges the head 28 against the ceiling 32" and this "longitudinal compression of the spring acts outwardly to secure the curtain 30 against the ceiling 32."  Cronen Dec. Exhibit A ('615 patent at col. 6, lines 10-16); See also, Fig. 4C (compressive force of the mechanism is identified by the letter "F" and an upward arrow).

    **Response:**  Undisputed that the '615 patent shows aspects of the invention in its drawings, including other figures showing other compressive mechanisms.  The patent speaks for itself.  The interpretation of the claims in light of the specification is for the Court to determine as a matter of law and will be addressed in the briefing.  The remainder of this paragraph is disputed.

19.  The Patent Examiner rejected all of the original claims of the '615 patent application. Cronen Dec. Exhibit B (Office Action Summary dated June 23, 1999).  In response to this rejection, the applicant amended independent claim 1 to narrow the definition of the recited "compression mechanism" as follows: "said compression mechanism when under compression being biased to urge said head away from said interface."  Cronen Dec., Exhibit C (Amendment After Final (Paper 13) dated 2-3-2000) (emphasis added).  The applicant explained this amendment as follows:

> [I]n the present invention as claimed in amended Claim 1, the "compression mechanism", when "under compression", is "biased to urge said head away from said interface".  In this manner, the configuration of the present invention is outwardly biased in that the head and interface are biased by the compression mechanism to be urged away from each other, … . Id (Amendment After Final dated 2-3-2000, pp. 4-5).

**Response:**  Disputed, the documents speak for themselves.  As is clear in the Amendment After Final, the amendments were drawn to sufficiently address "issues outstanding in the office action and discussed during the telephone interview."  In any event, interpretation of the prosecution history of a patent is a question of law for the Court, and will be addressed in the briefing to the extent it bears on any issue presented in this motion.

20.  Despite the above amendment and argument, the Patent Examiner refused to enter the proposed amendment.  Cronen Dec. Exhibit D (Advisory Action, Part of Paper No. 14).

**Response:**  Undisputed that the Examiner did not enter the amendment.  Interpretation of the prosecution history of a patent is a question of law for the Court, and will be addressed in the briefing to the extent it bears on any issue presented in this motion.

21. Thereafter, the applicant telephoned the Examiner and they held a telephone interview, summarized by the Examiner as follows:

> Discussed the differences between the instant invention, best shown in Fig's 3 and 4, and Cunningham, Du Boff, and Kindl [prior art patents]. <u>The examiner suggested adding the limitation to independent claim 1, of the compression mechanism being biased to urge the head away from the interface</u>, and to elaborate on the dynamics of the compression mechanism of Cunningham ... . Cronen Dec. <u>Exhibit E</u> (Interview Summary, Paper No. 15) (emphasis added).

**Response:** Disputed. Interpretation of the prosecution history of a patent is a question of law for the Court, and will be addressed in the briefing to the extent it bears on any issue presented in this motion.

22. The applicant responded with a third amendment to independent claim 1, as indicated by the following underlined portion of the amended claim:

> 1. (Three times amended) A mount attachable to an extension pole for installing a curtain comprising: ...
> a compression mechanism along a longitudinal axis of said mount;
> a head at a distal end of said mount having an upper first engaging surface extending transverse to said longitudinal axis, said head and said interface coupled to opposite ends of said compression mechanism, **said compression mechanism** [when under compression being] **biased to urge said head away from said interface;**"

See, Cronen Dec., <u>Exhibit F</u> (Supplemental Amendment After Final (In Response To Advisory Action), Paper No. 18) (Emphasis added).

**Response:**  Disputed.  Interpretation of the prosecution history of a patent is a question of law for the Court, and will be addressed in the briefing to the extent it bears on any issue presented in this motion.

23.  FastCap's 3rd Hand and Little Hand products are not spring-loaded curtain mounts as claimed in the '615 patent. They are heavy duty support poles. Their length adjusts and locks into place to support a load of up to seventy pounds. They do not include any spring or other compressive mechanism that is biased to urge the head of the support poles toward the ceiling as claimed and described in the '615 patent.  Akers Dec., ¶¶3-8.

**Response:**  Disputed.  FastCap is attempting to provide claim construction as fact.  In addition, FastCap's 3rd Hand devices are readily observed to include springs, identified as a pump spring and a lower spring in ¶ 5 of FastCap's Statement of Undisputed Facts.  The '615 patent speaks for itself.

24.  FastCap's accused support poles are not to be adjusted to be longer than the distance between the floor and ceiling without causing damage to their surfaces.  For example, if FastCap's accused support poles are adjusted to be "2-3 inches longer than the floor-to-ceiling height", as in the '615 patent,  then, unlike the claimed invention, FastCap's support poles they would likely "push through the ceiling during installation." Id. ('615 patent, Col. 4, lines 25-29 (emphasis added). Akers Dec., ¶ 10.

**Response:**  Disputed.  The operation of FastCap's 3rd Hand Devices requires them to be extended until they reach the ceiling, the operator then extends the device slightly further to lock it into place, as described in the '615 patent.  (See Grady Decl., Ex. G; and See Slocum Decl., ¶

11).  In operation, the FastCap compression mechanism works in fundamentally the same way as at least the pneumatic and hydraulic compression mechanisms disclosed in the patent.


25.  FastCap's 3rd Hand and Little Hand products do not have a "compressive mechanism" with "a force F generated by the compression of [a] spring" that is "biased to urge" the head of the poles against the ceiling.  Akers Dec., ¶11.  Indeed, FastCap's support poles would likely push through a ceiling if extended 2-3 inches longer than the distance between a floor and ceiling.  Id.

**Response:**  Disputed.  FastCap is attempting to provide claim construction as material fact, including facts not material to the Court determination of what the claims mean.  The operation of FastCap's 3rd Hand Devices requires them to be extended until they reach the ceiling, the operator then extends the device slightly further to lock it into place,  just as described in the '615 patent.  (See Grady Decl., Ex G "Action lever for secure pressure"; and See Slocum Decl., ¶ 11).   In operation, the FastCap compression mechanism works in fundamentally the same way as at least the pneumatic and hydraulic compression mechanisms disclosed in the patent.


26.  The claims of the '004 patent are directed to an attachable  mount and mounting system for installing a curtain using a specific "clamp" and "clip" and, in the case of independent claims 1, 17 and 45, the same "compressive mechanism" discussed above in connection with the '615 patent.  See, Cronen Dec., Exhibit G('004 patent).

**Response:**  Disputed.  Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall and are irrelevant to the issues presently before the Court.  The meaning of terms is an

issue for the Court to decide and is improper in a statement of fact, and will be addressed in the briefing.

27. The '004 patent has 61 claims, including independent claims 1, 17, 35, and 45.

**Response:** The patent speaks for itself and is not a question of fact.

28. Independent claims 1, 17 and 45 of the '004 patent recite a "mounting system" and an attachable "mount" for installing a curtain.

**Response:** The patent speaks for itself and is not a question of fact. Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall, and are irrelevant to the issues presently before the Court.

29. Independent claim 1, 17 and 45 of the '004 patent each recite the same spring-loaded "compression mechanism" discussed above in connection with the claims of the '615 patent.

**Response:** The patent speaks for itself and is not a question of fact. Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall, and are irrelevant to the issues presently before the Court.

30. Independent claims 1, 17 and 45 of the '004 patent recite a "claim" for coupling the curtain that includes:

> an engagement arm that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the head such that the engagement arm pivots between a secure position and an open position. Cronen Dec., Exhibit G.

**Response:** The patent speaks for itself and is not a question of fact. Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall, and are irrelevant to the issues presently before the Court.

31. Independent claim 35 of the '004 patent recites a "mounting system for installing a sheet of material" that includes a "clip" for coupling the sheet material to the head of a pole. The recited "clip" of claim 35 has "a lower second engaging surface that removably engages the upper first engaging surface of the head for mounting a sheet of material therebetween, <u>and a plurality of legs extending transverse to the second engaging surface of the clip</u> to removably secure the clip to the head, <u>the plurality of legs extending about at least one side surface</u> and a portion of a lower surface of the head when the clip is engaged with the head." Cronen Dec., <u>Exhibit G</u> ('004 patent) (emphasis added).

**Response:** The patent speaks for itself and claim construction is a legal question and not a question of fact. The limitations of this claim are addressed in the briefing.

32. The '004 patent issued on a continuation application that includes the '615 patent as a parent application.

**Response:** Undisputed.

33. The written description and drawings of the '004 patent and the '615 patent are identical.

**Response:** Disputed. The claims are part of the written description and are not identical.

34.  Independent claims 1, 17 and 45 of the '004 recite a "claim … that engages an exterior side surface of the head to secure a curtain to the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the head such that the engagement arm pivots between a secure position and an open position."  Cronen Dec. Exhibit G.

**Response:**  The patent speaks for itself and is not a question of fact.  Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall, and are irrelevant to the issues presently before the Court.

35.  Fig 8B of the '004 patent drawings shown the "clamp" of independent claims 1, 17 and 45.

**Response:**  The patent speaks for itself and is not a question of fact.  Claims 1, 17, and 45 of the '004 patent are not being asserted by ZipWall, and are irrelevant to the issues presently before the Court.

36.  Independent claim 35 of the '004 patent recites "[a] mounting system for installing a sheet of material" including an "adjustment mechanism" and a "clip" for coupling a curtain to the head of the mount.  The recited "clip" of claim 35 requires a "plurality of legs extending about at least one side surface  and a portion of a lower surface of the head when the clip is engaged with the head."

**Response:**  Disputed. Claim 35 recites : "[a] mounting system for installing a sheet of material comprising: a pole having first and second ends; foot at a first end of the pole; a head at a second end of the pole, the head having an upper first engaging surface; an adjustment mechanism between the foot and head for adjusting the length of the pole therebetween; and a

clip having a lower second engaging surface that removably engages the upper first engaging surface of the head for mounting a sheet of material therebetween, and a plurality of legs extending transverse to the second engaging surface of the clip to removably secure the clip to the head, the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head." What claim 35 "requires" is a question of law for the Court to decide, is not a fact and will be addressed in the briefing.

37. The "clip mount embodiment" of independent claim 35 is illustrated in Fig. 4B of the '004 patent drawings.

**Response:** Disputed. Figure 4B and the '004 patent speak for themselves. The interpretation of claim 35 is a question for the Court to decide as a matter of law and is not properly a statement of fact and will be addressed in the briefing.

38. As shown in Fig 4B of the '004 patent drawings, the "clip" of claim 35 has a "plurality of legs extending about at least one side surface" i.e. the drawing shows two "legs 65" on one side and what appears to be at least one leg on the other side of "curtain clip 64". Cronen Dec., <u>Exhibit G</u> ('004 patent, Col. 6, lines 36-40).

**Response:** Disputed. FastCap is attempting to present claim construction argument as material fact. Claim construction is for the Court to decide as a matter of law and will be addressed in the briefing.

39. The Description of the Preferred Embodiment states that the "curtain clip 64 having legs 65 is adapted to snap onto the head 28" and "clip legs 65 include tabs 67 which snap around

the bottom face of the head 28 providing a secure fit".  Cronen Dec., <u>Exhibit G</u> ('004 patent, Col. 6, lines 36-40).

**Response:**  The patent speaks for itself and is not a question of fact.


40.  The original '004 patent application included 43 claims.  These were all rejected by the Patent Examiner.  See, Cronen Dec., <u>Exhibit H</u> (Office Action dated February 10, 2003).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.


41.  In response, the applicant amended the original claims, added fifteen new claims, and submitted arguments to overcome the rejection. See, Cronen Dec., <u>Exhibit I</u> (Amendment A dated July 18, 2003).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.


42.  In a subsequent Office Action, the Patent Examiner rejected both the original and newly-submitted claims.  Cronen Dec., <u>Exhibit J</u> (Office Action dated November 4, 2003).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.


43.  After a telephone interview between the applicant and the Patent Examiner on April 27, 2004, the Examiner issued an Interview Summary stating:

> Discussed adding language to independent claims 1 and 22 further
> defining the clamp engagement arm extending outwardly or

perpendicularly from a side surface of the head or from the direction of the compression mechanism: to independent claim 44 further defining the clip's lower surface as "removably engaging" the upper surface of the head; and cancelling claims 53-58, to thereby possibly place the application into condition for allowance."

Cronen Dec., Exhibit K (Interview Summary dated April 27, 2004).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

44.  The applicant thereafter submitted amended claims to further define the perpendicular clamp arm and the plurality of legs of clip.  Cronen Dec., Exhibit L (Preliminary Amendment dated June 21, 2004). The applicant "amended independent claims 1 and 22" to define a "clamp ... including an engagement arm that engages an exterior side surface of the head". Id. (Preliminary Amendment, p. 10:7-8, 23-24) (Emphasis in original).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

45.  The Patent Examiner once again rejected all of the  pending claims as unpatentable over certain prior art claims.

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

46.  In response, the applicant submitted an "Amendment C" with further amendments to the claims and arguments.  Specifically, the applicant amended independent claims 1 and 22 to narrow the definition of the recited "clamp" as "being pivotally coupled to the head such that the

engagement arm pivots between a secure position and an open position." Cronen Dec., Exhibit M (Amendment C dated November 12, 2004, pp.2:13-14; 5:2-3) (emphasis in original).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

47.   The applicant also amended independent claim 44 (now claim 35) as follows: "the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head." Id.  (Amendment C, p. 7:20-22) (emphasis in original). In support of this amendment, the applicant argued that the prior art cited by the Patent Examiner "fails to teach or suggest 'a clip having ... a plurality of legs extending transverse to the second engaging surface of the clip to removably secure the clip to the head, the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head'".  Id. (Amendment C, p.14:11-19).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

48.  The '004 patent thereafter issued on September 13, 2005.

**Response:**  Undisputed.

49.  FastCap's 3rd Hand and Little Hand products do not have the "compression mechanism" recited in claims 1, 17 and 45 of the '004 patent.  Akers Dec, ¶10.

**Response:**  Disputed, but also irrelevant to the issues before the Court as these claims have not been asserted.

50. FastCap's 3rd Hand and Little Hand products also do not have the recited "clamp" of claims 1, 17 and 45, that includes "an engagement arm that engages an exterior side surface of the head to secure a curtain the side surface of the head at an engagement location that is lower than a top portion of the head, the clamp being pivotably coupled to the mount such that the engagement arm pivots between a secure position and an open position". Akers Dec, ¶6.

**Response:** Disputed, but also irrelevant to the issues before the Court as these claims have not been asserted.


51. Regarding the "clip" of independent claim 35, FastCap previously marketed a DB Clip accessory for its support poles; however, as shown above, <u>FastCap's former DB clip did not include a "plurality of legs extending about at least one side surface</u> ... of the head when the clip is engaged with the head" as recited in claim 35. Instead, FastCap's former DB clip had a single leg extending about two sides, the clip being adapted to slide onto the "Top 3" x 3" foot" of FastCap's accused support poles.

**Response:** Disputed. FastCap is again attempting to present claim construction issues as a fact. In any event, the DB Clip has two legs (one on each side) that extend about at least one side (in fact, opposing sides), as described in the '004 patent. (¶ 8 of FastCap's Statement of Undisputed Facts – Illustration of DB Clip).


52. The '076 patent claims are directed to methods and systems for installing or mounting curtains using specific coupling mechanisms for attaching curtains to curtain mounts.

The '076 patent has 96 claims, including independent claims 1, 17, 29, 40, 51, 63, 64, 73, 78, 86, and 91.  Cronen Dec., Exhibit N ('076 patent).

      **Response:**  Disputed. FastCap is attempting to present claim constructions, guised in a statement of fact.  Claim construction, and what the invention is "directed to" is a question for the Court to determine as a matter of law and will be addressed in the briefing.

      53.  Claim 1 of the '076 patent recites:

> 1.  A method of installing a curtain to form a room partition between a floor and ceiling using a partition mount having an elongated portion, a first end, and a second end, the second end having a mechanism to couple to the curtain, the method comprising:
>> coupling a curtain to the mechanism on the second end, the mechanism at the second end interfacing with the elongated portion <u>at a **hinged joint** such that the mechanism is pivotable with respect to the elongated portion;</u> and
>> mounting the partition mount such that a portion of the first end of the partition mount engages the floor and a portion of the mechanism that couples the curtain at the second end of the partition mount directly engages the ceiling.

      Cronen Dec., Exhibit N ('076 patent)

      **Response:**  The claims speak for themselves and are not questions of fact (they also do not have highlighting).

      54.  Independent claims 17, 40, 51, 63, 73 of the '076 patent recite "curtain mounting system[s]" and independent claim 86 thereof recites "[a] method of installing a curtain to form a room barrier".  Cronen Dec., Exhibit N ('076 patent).  **Each** of these claims is limited to a structure for coupling the "head" and "clip" that includes "multiple protrusions" that mate with

corresponding "multiple retention apertures" to secure the "'curtain between the clip and head".
Id.

**Response:** Disputed. FastCap is attempting to present claim constructions which are not

facts. Claim construction, and what the claims are "limited to" is a question for the Court to

determine as a matter of law and are addressed in the briefing. Also immaterial, since ZipWall

has not asserted Independent claims 17, 40, 51, 63, 73 of the '076 patent.

55. The coupling mechanism of independent claims 29, 40, and 63 of the '076 patent

includes a "clip" with "a high-friction material applied to an upper surface thereof to prevent

slipping when engaging a room surface." Id. Claim 78 recites a method in which the head, or

"first end", of the "partition mount engages the floor" and "a mechanism" on a "second end" of

the partition mount includes "a high-friction upper surface [that] ... directly engages the ceiling."

56. Independent Claims 1, 64, 78, 86 and 91 of the '076 patent claims all recite "method[s] of

installing a curtain to form a room partition between a floor and a ceiling using a partition

mount". Cronen Dec., <u>Exhibit N</u> ('076 patent).

**Response:** Disputed. The claims in question speak for themselves and are not facts.

The meaning of the claims is addressed in the briefing.

57. The '076 patent issued from a continuation application covering the same subject

matter as the '615 and '004 patents. Indeed, the written description and drawings of all three

patents-in-suit are identical.

**Response:** Disputed. The patents speak for themselves and are not identical (the claims

are different).

58. The "hinged joint" coup1ing mechanism of independent claim 1 is shown as "hinge 99" in Fig. 8C of the '076 patent.

**Response:** Disputed. FastCap is attempting to present claim constructions, as facts. Claim construction is a question for the Court to determine as a matter of law and will be addressed in the briefing. Fig. 8C, the '076 patent, and claim 1 speak for themselves and (as a legal matter) claims are not limited to the examples in the patent.

59. The "clip" of independent claims 17, 40, 51, 63,73, 86, having "multiple protrusions that mate with corresponding retention apertures", as well as the "high-friction material" of independent claims 29, 40, and 63, and the "high-friction upper surface" of claim 78, are shown in Fig 9B of the '076 patent. Cronen Dec., Exhibit N ('076 patent).

**Response:** Disputed and immaterial. FastCap is attempting to present claim constructions as a statement of fact. Claim construction is a question for the Court to determine as a matter of law. In any event, ZipWall is not asserting any claim of the '076 patent that describes "multiple protrusions that mate with corresponding retention apertures," making this paragraph irrelevant to the issues before the Court.

60. The original '076 patent application sought 82 claims. All of these were initially rejected by the Patent Examiner. See, Cronen Dec., Exhibit O (Office Action dated October 13, 2004).

**Response:** The patent and its prosecution history speaks for itself and is not a question of fact.

61.  The applicant amended independent claim 1 of the '076 patent as indicated by the following underlined text: "coupling [[the]] <u>a</u> curtain to the mechanism on the second end, <u>the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion</u>".  Cronen Dec. <u>Exhibit P</u> ("Amendment A", p.2:8-10).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

62.  The applicant also amended various "clip" claims of the '076 patent as indicated by the underlined portion of the following: "One of the clip and head including <u>a body and </u>multiple protrusions <u>extending from the body </u>at an interior portion thereof that mate with multiple corresponding retention apertures on the other of the clip and head <u>at an interior portion thereof</u> ... ." Id.  (Amendment A, pp.4:12-16).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.  Further, ZipWall is not asserting any claim of the '076 patent that recites "multiple protrusions that mate with corresponding retention apertures," making this paragraph irrelevant to the issues before the Court.

63.  Other claims were similarly amended to recite: "<u>one of the clip and head including multiple protrusions that mate with multiple retention apertures on the other of the clip and head to secure a portion of the curtain between the clip and head</u>."  Id.  (Amendment A, p. 11:1-10).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.  Further, ZipWall is not asserting any claim of the '076 patent that recites "multiple protrusions that mate with corresponding retention apertures," making this paragraph irrelevant to the issues before the Court.

64.  Various claims were also amended to include the following: "<u>The clip including a pad of high-friction material applied to an upper surface thereof to prevent slipping when engaging a room surface.</u>"  Id.  (Amendment A, pp.7:2-6:16).

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

65.  In addition to amending the claims as set forth above, the applicant added 18 new claims to the application, identified as claims 83-101.  (Amendment A, pp.14:1-17:6).  All of the newly added claims were for methods "of installing a curtain to form a room partition between a floor and a ceiling using a partition mount".  Id.

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

66.  The Examiner issued a Notice of Allowability of the '076 patent claims without any comment regarding the applicant's amendments or the newly added "room partition" claims.

**Response:**  The patent and its prosecution history speaks for itself and is not a question of fact.

67. FastCap's accused 3rd Hand and Little Hand support poles do not infringe the claims of the '076 patent because they do not have any of the curtain "coupling mechanism[s]" recited in the '076 patent claims.

**Response:** Disputed. FastCap is attempting to present claim constructions, guised in a statement of fact. Claim construction is a question for the Court to determine as a matter of law, and is not properly a fact to be admitted or disputed. Once construed, the FastCap devices with DB clip do include a "coupling mechanism."

68. FastCap's 3rd Hand and Little Hand support poles do not have a "pivotable", "hinged joint", coupling mechanism as recited in independent claim 1 of the '076 patent.

**Response:** Disputed. FastCap is attempting to present claim constructions as facts. Claim construction is a question for the Court to determine as a matter of law, and is not properly a fact to be admitted or disputed. In addition, the FastCap poles have a ball joint, in substantially the same manner as one shown in the patent. (See Slocum Decl., ¶ 18-12.

69. FastCap's 3rd Hand and Little Hand support poles do not include any "coupling mechanism" having "multiple protrusions that mate with corresponding retention apertures at an interior portion thereof" as recited in independent claims 17, 40, 51, 63, 73, 86.

**Response:** Disputed. FastCap is attempting to present claim constructions, guised in a statement of fact. Claim construction is a question for the Court to determine as a matter of law, and is not properly a fact to be admitted or disputed. These claims are immaterial to the issues before the Court as ZipWall is not asserting them.

70.  FastCap's 3rd Hand and Little Hand support poles do not have the "high-friction material" and "high friction upper surface" of the curtain coupler/clip recited in independent Claim 29, 40, 63 and 78 of the '076 patent.

**Response:**  Disputed.  FastCap is attempting to present claim constructions, guised in a statement of fact.  Claim construction is a question for the Court to determine as a matter of law, and is not properly a fact to be admitted or disputed.

71.  The DB clip previously sold by FastCap did not have any "high-friction material" or "high friction upper surface" whatsoever.  In fact, as set forth above, the DB Clip included a printed label with written instructions to "remove clip for better gripping" because the upper surface of the clip was smooth.  Akers Dec. ¶8.

**Response:**  Disputed.  ZipWall believes there is a disputed question of material fact as to whether the label placed on top of the DB Clip is a high-friction material.  In operation the label operates to provide a surface of greater frictive holding power, than would be provided by the smooth plastic clip.

72.  The pivoting clamp and the multi-legged, snap-on clip of the '076 patent claims are entirely absent from FastCap's accused products.

**Response:**  Disputed.  ZipWall is not asserting that FastCap has a "pivoting clamp" as suggested by ¶ 72, and is therefore not material to the issues before this Court.  FastCap is attempting to present claim constructions, guised in a statement of fact.  Claim construction is a question for the Court to determine as a matter of law, and is not properly a fact to be admitted or

disputed.  ZipWall has presented its detailed claim constructions identifying each of the

limitations present in the 3rd Hand Product, including a clip with a plurality of legs.


Respectfully submitted,

ZIPWALL, LLC


Dated: August 28, 2006          by:___/s/MatthewB.Lowrie_____
                                Matthew B. Lowrie, BBO No. 563,414
                                Aaron W. Moore, BBO No. 638,076
                                Lowrie, Lando & Anastasi, LLP
                                Riverfront Office Park
                                One Main Street - 11th Floor
                                Cambridge, MA 02142
                                Tel: 617-395-7000
                                Fax: 617-395-7070

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true a correct copy of the foregoing was served upon the listed below by electronically filing with the court on August 28, 2006:

Sarah Cooleybeck, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone: 617.832.1000
Facsimile: 617.832.7000
E-mail: scooleybeck@foleyhoag.com

Michael James Cronen, Esq.
Law Offices of Harris Zimmerman
1330 Broadway, Suite 710
Oakland, CA 94612
Telephone: 510.465.0828
Facsimile: 510.465.2041
E-mail: mcronen@zimpatent.com

Dated: August 28, 2006                    /s/ Matthew B. Lowrie
                                          Matthew B. Lowrie, Esq.