IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ZIPWALL, LLC | ) | |
| | ) | Civil Action No.: 05-11852 REK |
|     Plaintiff and Counterclaim Defendant, | ) | |
| | ) | **REPLY MEMORANDUM IN** |
| v. | ) | **SUPPORT OF FASTCAP'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT OF** |
| FASTCAP, LLC | ) | **NON-INFRINGEMENT AND/OR** |
| | ) | **INVALIDITY OF U.S. PATENT NOS.** |
|     Defendant and Counterclaimant. | ) | **6,209,615, 6,924,004 and 6,953,076** |
| | ) | |

**I.      INTRODUCTION**

The Court should enter summary judgment of non-infringement in favor of FastCap. FastCap has not infringed the patents-in-suit as a matter of law because elements of the asserted patent claims are entirely missing from FastCap's accused products.

**II.     DISCUSSION**

    **A.     FastCap Does Not Infringe The '615 Patent As A Matter Of Law**

Zipwall concedes FastCap does not infringe claims 4-7, 11-13, 17, 22, 24 and 29 of the '615 patent. See, Zipwall Memo., pp.7:15-17; 12:67. FastCap also does infringe any other claim of the '615 patent infringe any other claim of the '615 patent because its accused support poles do not include any "compression/compressive mechanism" as recited in the patent's independent claims 1 and 19.

In the present case, there is no reasonable dispute over the meaning of the "compression/

1

compressive mechanism" element of the '615 patent claims, or that this element is missing from FastCap's accused support poles. The compressive quality of the '615 patent's "compression/ compressive mechanism" is, in fact, quite clear from the intrinsic evidence of the patent's specification and prosecution history.

The spring-loaded (or pneumatic or hydraulic) compressive mechanism is capable of being compressed 2-3 inches after a curtain has been mounted. This allows the claimed mechanism to compress to adjust and modulate the fit of a mounted curtain. The mechanism is compressed by pulling down on the head (or pushing up on the foot) of the mount. Because the mechanism is compressive, it also allows an installer to release the compressed mechanism to pin an adjusted curtain in place. The spring action of the claimed compressive mechanism is shown in Fig 7E of the '615 patent drawings, as follows:



FIG. 7E

"[I]n Fig. 7E, the installer 86 noticed that a sag 88 is present in the curtain 30 between the first 92 and second 94 mounts ... .. An extension loop 66 is coupled to the head of the curtain mount 24, thereby allowing the installer 86 to fine tune the position of the second mount 94

2

relative to the first mount 92 to eliminate the sag 88 in curtain 30." '615 Patent, col. 8, lns. 20-27. Thus, the "compression/compressive mechanism" and "extension loop 66 allow[] one to reposition the head 28 relative to the ceiling without moving the extension pole". Id. at col. 6, ln. 60 through col. 7, ln. 6. "The extension loop 66 may comprise a string, a chain, or rod for tugging down on the head of the mount", which compresses the mechanism and allows for "adjustment of the curtain mount". Id.

This is precisely how one of ordinary skill in the art, such as an experienced home builder or contractor, would understand the curtain mount and mounting system of the '615 patent claims. For example, as set forth in the Declaration of Richard Osmundsen, submitted herewith and in opposition to Zipwall's cross-motion, Mr. Osmundsen has been a home builder and general contractor for fifty years. Mr. Osmundsen reviewed U.S. Patent No. 6,209,615, including its drawings and written description and, to him:

> [T]he curtain mount and mounting system of that patent require a compressive mechanism, like a spring (the patent also refers to pneumatic and hydraulic mechanisms), that can be compressed 2-3 inches after a curtain has been mounted. This allows the mechanism to compress to adjust the top or bottom fit of a plastic curtain that has already been mounted. The mechanism compresses by pulling down on the head, or pushing up on the foot, of the mount. As shown in the patent, pulling down on the compressive mechanism can be done by using an "extension loop 66" which the patent says is a "string, a chain, or rod" for tugging down on the head of the mount. This allows a person to pull down on a string to adjust the curtain and then let go of the string to pin the adjusted curtain in place, all while standing on the floor. *See,* Declaration of Richard Osmundsen, ¶3, filed herewith and incorporated herein.

In the present case, FastCap's 3rd Hand and Little Hand products are not spring-loaded curtain mounts, and they do not include any pneumatic or hydraulic compressive mechanism, as claimed or described in the '615 patent. Osmundsen Dec., ¶4. They do not have any mechanism

3

that can be compressed to adjust the fit of a mounted curtain and released to pin the adjusted curtain in place. On the contrary, they are heavy duty support poles. Id. Their length adjusts and locks into place to support a load of up to seventy pounds. Akers Dec., ¶¶3-8;Suppl. Akers Dec.; Osmundsen Dec., ¶4. For example, an installer could not use FastCap's products with an "extension loop 66" to adjust a curtain sag because the accused products are not compressive. Suppl. Akers Dec., ¶6 and ¶10; Osmundsen Dec., ¶4. Further, if FastCap's support poles are adjusted 2-3 inches longer than the floor-to-ceiling height, as stated in Zipwall's patents, they "would push right through most common ceiling materials." Osmundsen Dec., ¶4; Akers Dec., ¶¶3-8; Suppl. Akers Dec., ¶6 and ¶10.

Here, Zipwall improperly attempts to broaden the definition of the '615 patent's compressive mechanism by relying on improper extrinsic evidence from a hired expert. *See, Vitronics v. Concenptronic,* 90 F.3rd 1576, 1577 (Fed. Cir. 1996). According to Zipwall's hired expert, this element should be very broadly construed to mean "any structure that can be used to create a compressive force within the pole, in use", or "any mechanism that puts the pole in tension to hold it in place", or "that can be used to generate a compressive force in the pole, when it is installed, to hold the pole in place." Zipwall Memo., pp. 7:6-11; 9:10-12, *citing*, Slocum Expert Report, ¶¶ 7-12. These definitions are entirely inconsistent with the patent's specification and prosecution history. Moreover, these broad claim definitions render the '615 patent claims invalid as anticipated, or obvious, in view of a crowded art field of prior art dust barriers and curtain mounts. *See, Harris Corp. IXYS Corp.,* 114 F.3d 1149, 1153 (Fed. Cir. 1997) ("claims should be read in a way that avoids ensnaring prior art").

For example, a prior art dust barrier covered by Zipwall's proposed claim construction is illustrated in the following photograph:

4



This photograph illustrates the age-old use of wooden 2x4's as support poles for mounting plastic curtains. See, Suppl. Akers Dec., ¶ 4; Osmundsen Dec., ¶ 2. The wooden 2x4's are compressed by being wedged or jammed into place at an angle. Id. This compresses the poles, thereby creating and generating a compressive force within the wood that creates tension within the poles to mount the curtains and hold them in place. Id. Therefore, like Zipwall's broad definition of "compression/compressive mechanism", the poles of the above prior art dust barrier also: 1.) create a compressive force in use; 2.) create tension to hold curtain mount in place; and 3.) generate a compressive force when installed that holds the curtain mount in place. Id.

If any doubt remains as to the proper interpretation of Zipwall's claimed compressive mechanism, there are several rules of patent claim construction showing this claim element should be narrowly construed, in accordance with patent's specification and prosecution history, as set forth above. For example, where a claim term has no technical meaning and has various possible common definitions, as in the present case, the Court should look to the patent's written description to define the term. *Renishaw PLC v. Marposs Societa*, 158 F.3d 1243, 1245 (Fed. Cir. 1998); *SciMed Life Systems v. Advanced CardioVascular*, 242 F.3d 1337, 1347 (Fed. Cir.

5

2001). Similarly, if a narrower definition is supported by the intrinsic evidence, while a broader one raises questions of invalidity/enablement, "the Court should adopt the narrower of the two." *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344-48 (Fed. Cir. 1998). Finally, because a patentee may be its own lexicographer, and has ultimate responsibility for drafting claim language, any ambiguity in the claim language should be held against the patentee. See, *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (Notice function of patent claims best served by narrow construction).

In view of these rules of construction, and the proper interpretation of the '615 patent's intrinsic evidence, as set forth above and in FastCap's moving papers, the Court should disregard Zipwall's extrinsic definitions and enter summary judgment finding FastCap does not infringe the '615 patent.

**B.    FastCap Does Not Infringe The '004 Patent As A Matter Of Law**

Zipwall clearly concedes FastCap does not infringe claims 1-34 and 45-60 of the '004 patent. *See*, Zipwall Memo., p. 15:5-7. As set forth in FastCap's moving papers and its opposition to Zipwall's cross-motion, FastCap also does not infringe the other claims, claims 35-44, of the '004 patent because it presently does not market any clip for use in combination with its accused support poles. Suppl. Akers Dec., ¶7.

Further, while FastCap previously marketed a DB Clip accessory for its support poles, the clip did not have a "plurality of legs extending about at least one side surface ... of the head when the clip is engaged with the head" as required by claim 35 of the '004 patent. Instead, FastCap's former DB clip had only one leg extending on any side of the clip. Thus, FastCap's former clip did not literally infringe the '004 patent as a matter of law. *Elkay v. Ebco*, 192 F.3d at p. 980.

The recited "clip" of claim 35 is shown in Fig. 4B of the '004 patent as follows:



FIG. 4B

As can be seen in Fig 4B above, the "clip" of claim 35 has a two legs on one side and what appears to be at least one leg on the other side of the clip. Zipwall argues that the patent drawings show a clip with "just one leg" extending about a side surface of the clip. *See,* Zipwall Memo., p. 16:5. This is simply incorrect. All of the patent drawings show at least two legs on one side of the claimed clip. Further, claim 35 was amended and narrowed three times during prosecution of the '004 patent application until the clip was limited to the specific device shown in Fig. 4B above, i.e. a clip having a "plurality" (at least two) legs on at least one side of the clip. See, Cronen Dec., <u>Exhibit M</u> (Amendment C, p. 7:20-22). These narrowing amendments surrendered all equivalents to the recited clip, leaving this claim element restricted to its literal meaning, which was not present in FastCap's former clip accessory . *Festo Corp. v. Shoketsu Kinzoku,* 535 U.S. 722, 739-41 (2002) (narrowing amendment presumptively surrenders all equivalents). The "all elements" rule also precludes Zipwall from resorting to equivalents to establish infringement of claim 35 because this would effectively eliminate or "vitiate" the claim's requirement of a "plurality of legs"- at least two (or more) - " extending about at least one side" of the clip.   *Tronzo,* 156 F.3d at p. 1160; *Sage Products,* 126 F.3d at pp. 1432-33.

    3.    **FastCap Does Not Infringe The '076 Patent As A Matter Of Law**

Zipwall concedes FastCap does not infringe claims 6, 10-11, 17-28, 30-63, 66, 73-77, 84, 86-90, 95 of the '076 patent. See, Zipwall Memo., p. 17:9-11.

As to the remaining claims of the '076 patent, Zipwall confuses its burden of proof. The law is clear that summary judgment of non-infringement is appropriate where, as here, there is no genuine issue that certain patent claim elements are missing from an accused device. Indeed, the absence of a single patent claim element renders all other disputed facts immaterial and irrelevant. *Bai v. L & L Wings*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998) (Summary judgment of non-infringement proper "when no reasonable jury could find that every limitation" of a patent claim is "in the accused device").

In the present case, the Court should enter summary judgment that FastCap does not infringe the '076 patent claims because various recited element of the claims, i.e. curtain "coupling mechanisms", "high friction" surfaces, and "floor engaging" mounts, are entirely absent from FastCap's accused support poles.

For example, regarding Zipwall's allegation of infringement of "claims 1-5, 7-9, 12-16", of the '076 patent, these all require "a **hinged joint**", shown at 99 in Fig. 8C, as follows:



FIG. 8C

"In Fig. 8C, the head 28 is formed in two sections which interface at a hinge 99. The sections join at jaws 98 to clamp the curtain 30" which "hangs from the side of the head 28." '076 patent, col. 8. Lns. 46-52. During prosecution of the '076 patent application, the patentee amended independent claim 1 to require this "hinged joint" Cronen Dec. <u>Exhibit P</u> (Amendment A, p.2:8-10).

In the present case, the "hinged joint" element of claims 1-5, 7-9, and 12-16, is entirely missing from FastCap's accused products. Zipwall's papers incorrectly contend that "FastCap's pole has a hinged joint". The illustration of FastCap's poles in Zipwall's moving papers clearly does not include a hinged joint and jaws or a side-hanging curtain as shown and claimed in claims 1-5, 7-9, and 12-16 in the '076 patent. In fact, FastCap's support poles do not have any "hinge" or clip with "sections [that] join at jaws 98 to clamp the curtain 30" that "hangs from the side of the head 28". FastCap therefore does not infringe these claims as a matter of law.

Regarding Zipwall's allegation that FastCap infringes claims 29, 78-83, and 85, these all require a "clip" that has "a high-friction upper surface" or "a high-friction material applied to an upper surface ... to prevent slipping". Id. Again, FastCap does not presently market any clip accessory for its poles and this "high friction" surface was entirely absent from the clip accessory previously sold by FastCap. In fact, FastCap's former DB clip accessory had a smooth, non-friction upper surface and included a label notifying consumers to "remove clip for better gripping". Akers Dec., ¶8.

Regarding Zipwall's asserted claims 64, 65, 67-72, 91-94, and 96, these claims are either clearly not infringed or invalid as a matter of law. Each of these claims requires that the recited "partition mount" is mounted "such that the first end engages the floor". The alleged illustrations of FastCap's products in Zipwall's "claim charts" show FastCap's support poles engaging a

9

plastic curtain. Suppl. Akers Dec., ¶ 5.  They do not "engage[]" the "floor" as required by claims 64, 65, 67-72 91-94, and 96.  Because this element of these claims is missing from FastCap's accused product, they are not infringed as a matter of law.  Any attempt by FastCap to argue infringement of this element under the doctrine of equivalents should be summarily rejected.  This is because any attempt to do so would either vitiate the claim's "engages the floor" requirement, or render these patent claims invalid for literally reading on the prior art dust barriers shown above.  *See*, Suppl. Akers Dec., ¶4; Osmundsen Dec., ¶2 (plastic curtains engaged floors under partition mounts for many years before the date of Zipwall's alleged invention).

In the present case, claims 1-16, 64-72, 78-96, 86 and 91 of the '076 patent are clearly invalid for indefiniteness under 35 U.S.C. §112, ¶2.  Each of these claims, recites "a method of installing a curtain to form a room partition between a floor and ceiling using a partition mount", but they do not include elements necessary to construct such a "room partition".  Indeed, if a partition is defined as something that divides or separates, as it is commonly understood, then these claims fail to point and distinctly claim this subject matter.  Indeed, it would be impossible for any person skilled in the art to construct a room partition using a single "mount" as recited in these claims.  Therefore, the Court should hold these patent claims invalid for indefiniteness.  *Union Pacific Resources v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir. 2000). .

## IV.    CONCLUSION

For the foregoing reasons the Court should grant summary judgment of patent non-infringement and/or invalidity in favor of FastCap.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 22, 2006 | By: /s/ Michael James Cronen<br>　　　Michael James Cronen |

Harris Zimmerman, Cal. Bar No. 22653
Michael James Cronen, Cal. Bar No. 131087
ZIMMERMAN & CRONEN, LLP
1330 Broadway, Suite 710
Oakland CA 94612
Telephone:510.465.0828
Facsimile:510.465.2041
E-mail: mcronen@zimpatent.com


Sarah Cooleybeck (BBO#631161)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone:617.832.1000
Facsimile:617.832.7000
E-mail: scooleybeck@foleyhoag.com

Attorneys for Defendant and Counterclaimant, FastCap, LLC