IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


ZIPWALL, LLC                                             )
                                                        )          Civil Action No.: 05-11852 REK
        Plaintiff and Counterclaim Defendant,           )
                                                        )
v.                                                      )
                                                        )
FASTCAP, LLC                                            )
                                                        )
        Defendant and Counterclaimant.                  )
                                                        )


**FASTCAP'S MEMORANDUM IN OPPOSITION**

**TO ZIPWALL'S CROSS-MOTION FOR**

**SUMMARY JUDGMENT OF LIABILITY**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  The parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Legal Standard For The Grant Of Summary Judgment. . . . . . . . . . . . . . . . . . 4

    B.  Legal Standard For Determining Patent Infringement . . . . . . . . . . . . . . . . . . 5

    C.  Zipwall's Cross-Motion Should Be Denied Because It Failed To Show FastCap
       Infringes Any Claim Of The Patents-In-Suit. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.  FastCap Does Not Infringe The '615 Patent As A Matter Of Law. . . . . . 7

            a.  There Is No Reasonable Dispute Regarding The Meaning Of
               "Compression/Compressive Mechanism" In Independent Claims 1
               and 19 Of The '615 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  FastCap Does Not Infringe The '004 Patent. . . . . . . . . . . . . . . . . . . . . . 12

        3.  FastCap Does Not Infringe The '076 Patent. . . . . . . . . . . . . . . . . . . . . . 15

            a.  The '076 Patent Claims Require Various Curtain "Coupling"
               Mechanisms, "High Friction" Surfaces, and "Floor Engaging"
               Partition Mounts That Are Entirely Missing From FastCap's
               Accused Products. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    D.  Zipwall's Cross-Motion Should Be Denied Because Its Interpretation Of The
       Asserted Patent Claims Renders Them Invalid In View Of The Prior Art. . . . . . 18

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Akzo N.V. v. United States International Trade Commission*
    808 F.2nd 1471, 1479 (Fed. Cir. 1986), cert. denied, 482 U.S. 909 (1987). . . . . . . . . . . 18

*Anderson v. Liberty Lobby*
    477 U.S. 242, 248 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*
    73 F.3d 1573, 1581 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bai v. L & L Wings*
    160 F.3d 1350, 1353-54 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Celotex v. Catrett*
    477 U.S. 317, 322 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Custom Accessories v. Jeffrey-Allan*
    807 F.2d 955, 962 (Fed. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Digital Biometrics, Inc. v. Identix, Inc.*
    149 F.3d 1335, 1344-48 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Elkay Mfg. Co. v. Ebco Mfg. Co.*
    192 F.3d 973, 980 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Festo Corp. v. Shoketsu Kinzoku*
    535 U.S. 722, 739-41 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Graham v. John Deere Co.*
    383 U.S. 1, 17, 148 USPQ 459 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Harris Corp. v IXYS Corp.*
    114 F.3d 1149, 1153 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re DeBlauwe*
    736 F. 2d 699, 703, 222 USPQ 191 (Fed. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jeneric/Pentron, Inc., v. Dillon Co. Inc.*
    205 F.3d 1377, 1383 (Fed. Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Markman v. Westview*
    517 U.S. 370, 384-85 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ii

*Renishaw PLC v. Marposs Societa*
    158 F.3d 1243, 1245 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ryko Manufacturing Co., v. Nustar, Inc.*
    950 F2nd 714, 716 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sage Products, v. Devon*
    126 F.3d 1420 1432-33 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*SciMed Life Systems v. Advanced CardioVascular*
    242 F.3d 1337, 1347 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Standard Havens Products v. Gencor Industries*
    953 F.2d 1360, 1369 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tronzo v. Biomet*
    156 F.3d 1154, 1160 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Vitronics  v. Concenptronic*
    90 F.3rd 1576, 1582 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

*Warner-Jenkinson v. Hilton Davis Chemical*
    520 U.S. 17, 39-41 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## **Statutes and Rules**

35 USC § 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

35 USC §102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Fed. R. Civ. P. Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.    INTRODUCTION

The Court should deny Zipwall's cross-motion for summary judgment.  Zipwall concedes FastCap does not infringe several claims of the patents-in-suit.  As to the remaining claims, Zipwall alleges infringement, but fails to submit evidence or reasoned analysis to support its allegations.   As set forth below and in FastCap's pending Motion For Summary Judgment, FastCap does not infringe the patents-in-suit because elements of the asserted claims are entirely missing from FastCap's accused products.  Accordingly, the Court should enter summary judgment of non-infringement in favor of FastCap.

Regarding the issue of patent invalidity, Zipwall's proposed broad definitions of the asserted patent claims renders them indefinite and/or invalid in view of a crowded field of prior art curtain mounts and dust barriers.

## II.    BACKGROUND

### A.    The parties

Zipwall sells spring-loaded curtain mounts used to onstruct dust barriers in construction zones.   See, Declaration of Paul Akers in support of FastCap's Motion For Summary Judgment, Exhibit A  (pages from Plaintiff's website).  Zipwall's moving papers refer to "pneumatic or hydraulic" compression mechanisms for this application;  However,  Zipwall does not appear to make, use or sell any such pneumatic or hydraulic devices.  Id.

FastCap manufactures, markets and sells a line of innovative products to professional cabinet makers and serious wood workers.  See, Akers Dec., ¶3, Exhibit B (page from FastCap's website).  Among these products are FastCap's  The 3rd Hand HD™ ("3rd Hand") and The Little Hand HD™ ("Little Hand") heavy duty support poles, which are the subject of Zipwall's infringement claims.

1

FastCap's 3rd Hand and Little Hand support poles are not spring-loaded curtain mounts. They also do not have any pneumatic or hydraulic compressive mechanisms.   Akers Dec. ¶4; *See*, Supplemental Declaration of Paul Akers, ¶3. Filed herewith and incorporated herein.   On the contrary, FastCap's 3rd Hand and Little Hand products are metal poles that "provide a support, brace, or clamp"strong enough to support a seventy-pound load.  Id.  They do not compress at all when in operation. Id.  Instead, FastCap's support poles adjust in length and lock into place using two separate components, as shown in the following illustration:



In the above illustration, the first component comprises the "ergonomic pump handle", "lifting tab" and "pump spring". Akers Dec., ¶6. This component advances the galvanized extension rod to extend the length of the support pole. Id. This is accomplished by squeezing the pump handle which, in turn, pushes up on the bottom of one side of the lifting tab. This causes the lifting tab to lift at an angle and frictionally engage, or cinch, the galvanized extension rod. The frictional engagement of the lifting tab and galvanized extension rod extends the pole length. Each complete squeeze of the pump handle extends the rod approximately 3/8 of an inch. Id.

As illustrated above, the second component of FastCap's support poles comprises a "release tab" and "lower spring". These lock and release the galvanized extension rod. Akers Dec., ¶7. As can be seen in the above, the lower spring pushes the release tab down at an angle, thereby causing the release tab to frictionally engage, or cinch, the extension rod. This holds the rod in place. Id. The locked extension rod is not compressive. It cannot be modulated or otherwise compressed to adjust the fit of a plastic curtain. The lock can only be released by pushing up against the bottom of the release tab which, in turn, pushes up against the lower spring. This levels the angle of the release tab, disengages it from the extension rod, and allows the extention rod to move freely up and down. Id.

Previously, FastCap sold an accessory for its 3rd Hand and Little Hand products called a dust barrier or "DB" clip. Akers Dec., ¶8. A photograph of FastCap's DB clip in relation to the "Top 3"x3" foot" of FastCap's support poles is set forth below:



As can be seen in this photograph, FastCap's DB clip had a single engagement member, or "leg", extending along two sides of the clip. Id. This leg was adapted to slide onto the "Top 3"x3" foot" portion of FastCap's support poles as shown above. Id. FastCap's former DB clip, as shown in the above photograph, included and adhesive label with written instructions stating "remove clip for better gripping" because the upper surface of the clip was smooth. In an abundance of caution, and notwithstanding the fact that FastCap clearly does not infringe any claim of the patents-in-suit, FastCap stopped selling its DB clip in 2005. Id.

## III.    DISCUSSION

### A.    Legal Standard For The Grant Of Summary Judgment

Summary judgment is appropriate under Fed. R. Civ. P. Rule 56(c) where a moving party demonstrates there is no genuine issue of material fact and the evidence establishes the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986); *See, e.g., Bai v. L & L Wings*, 160 F.3d 1350, 1353-54 (Fed. Cir. 1998) (Summary judgment of noninfringement proper "when no

reasonable jury could find that every limitation" of a patent claim is "in the accused device"). [1]

## B.    Legal Standard For Determining Patent Infringement

The proper scope and meaning of patent claims is a question of law for the

Court to decide. *Markman v. Westview*, 517 U.S. 370, 384-85 (1996).    The Court's decision on

this issue requires an examination of the "intrinsic evidence" of record.    This comprises the

patent's specification (claim language, written description and drawings), its prosecution history,

and any prior art references cited during prosecution. *Vitronics v. Concenptronic,* 90 F.3rd

1576, 1582 (Fed. Cir. 1996).    The Court may also consider extrinsic evidence, such as dictionary

definitions, to resolve a dispute over the meaning patent claim language; However, where

extrinsic evidence is inconsistent with a patent's specification and file history, it should be

accorded no weight. *Vitronics*, 90 F.3d at 1577.

The patentee has the burden to prove infringement of its properly construed patent claims,

either literally or under the doctrine of equivalents.    To prove literal infringement the patentee

must show "'the accused device contains every limitation in the asserted claims'", i.e. the claim

must read exactly on the accused item. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980

(Fed. Cir. 1999) (One missing limitation avoids literal infringement).    To prove infringement by

equivalents, the patentee must show that differences between the elements of the patent claims

and the accused device are "insubstantial". *Warner-Jenkinson v. Hilton Davis Chemical*, 520

U.S. 17, 39-41 (1997) ("insubstantial differences" test applied element by element).    There are,

however, important restrictions on the doctrine of equivalents.

---

[1] Because this case involves claims of patent infringement the Court must look to the decisions of the Court of Appeals for the Federal Circuit in deciding this motion for summary judgment. 28 U.S.C. §1295.

For example, the doctrine of prosecution history estoppel forecloses infringement by equivalents where, as here, the patentee amends patent claims during prosecution of a patent application. *Festo Corp. v. Shoketsu Kinzoku*, 535 U.S. 722, 739-41 (2002). Thus, Zipwall's narrowing amendments in this case presumptively surrenders all equivalents, restricting Zipwall the literal meaning of the amended language. *Id.* Another restriction on the doctrine of equivalents is the so-called "all elements" rule. Under this rule, Zipwall cannot establish equivalency if to do so would effectively eliminate or "vitiate" an element of a patent claim. *Tronzo v. Biomet*, 156 F.3d 1154, 1160 (Fed. Cir. 1998); *Sage Products, v. Devon*, 126 F.3d 1420, 1432-33 (Fed. Cir. 1997).

### C.   Zipwall's Cross-Motion Should Be Denied Because It Failed To Show FastCap Infringes Any Claim Of The Patents-In-Suit

The Court should summarily deny Zipwall's cross-motion for summary judgment because Zipwall failed to submit admissible evidence to support its infringement allegations. For example, Zipwall submitted unsigned interrogatory responses and unauthenticated, and otherwise unsupported, "infringement claim charts" in support of its cross-motion. However, this is not evidence of infringement. *See*, ZipWall's Cross-Motion For Summary Judgment Of Liability, pp. 4:14- 5:1. Indeed, even if the interrogatory responses had been signed, they do not provide any evidence of infringement because they simply refer the reader back to Zipwall's unsupported "claim charts". Zipwall's claim charts are defective because they merely reprint the words of the claims of the patents-in-suit next to an alleged representation of FastCap's product. They do not refer to the intrinsic evidence of the patents' written descriptions, drawings, prosecution histories or cited prior art of record. They also do not point to any admissible evidence establishing that each properly construed element of the asserted patent claims is found in FastCap's products.

6

Zipwall's only other submission, the Expert Report Of Alexander Slocum, does not even purport to establish infringement. Instead, the Slocum Report is limited to the hired expert's understanding of the following four claim terms: "Compression/compressive mechanism"; "plurality of legs"; "pivotable"; and "hinged joint". See, Slocum Rpt., pp. 3:2-5:4. The Court should disregard the Slocum Report as improper extrinsic evidence. *Vitronics*, 90 F.3d at 1577. In any event, however, the hired expert's understanding of these four claim terms is insufficient to establish patent infringement.

### 1.    FastCap Does Not Infringe The '615 Patent As A Matter Of Law

Zipwall concedes FastCap does not infringe claims 4-7, 11-13, 17, 22, 24 and 29 of the '615 patent. See, Zipwall Memo., pp. 7:15-17; 12:6-7. As fully set forth below and in FastCap's pending Motion For Summary Judgment, FastCap also does not infringe any other claims of the '615 patent.

Zipwall argues that because FastCap's pending summary judgment motion is limited to a single element of the'615 patent claims, this should be construed as some sort of tacit admission that all of the other claim elements are present in FastCap's accused support poles. This is clearly incorrect. Zipwall has confused its burden of proof in this patent case. To establish infringement, Zipwall has the burden to show each and every element of an asserted patent claim, whether in independent, dependent or multi-dependant form, is present in FastCap's accused products. Zipwall failed to do this. On the other hand, as set forth in FastCap's summary judgment motion, the absence of a single claim element properly entitles FastCap to summary judgment of non-infringement.

a.  **There Is No Reasonable Dispute Regarding The Meaning Of "Compression/Compressive Mechanism" In Independent Claims 1 and 19 Of The '615 Patent**

Zipwall relies on extrinsic evidence from a hired expert to define the "compression/compressive mechanism" element of independent claims 1 and 19 of the '615 patent. According to Zipwall's hired expert, this element should be broadly construed to mean "any structure that can be used to create a compressive force within the pole, in use", or "any mechanism that puts the pole in tension to hold it in place", or "that can be used to generate a compressive force in the pole, when it is installed, to hold the pole in place." Zipwall Memo., pp. 7:6-11; 9:10-12, *citing*, Slocum Expert Report, ¶¶ 7-12. These definitions are overly-broad and entirely inconsistent with the patent's specification and prosecution history. Moreover, as set forth below, Zipwall's proposed interpretation renders the asserted claims invalid as anticipated, or obvious, in view of a crowded prior art field. The Court should therefore disregard Zipwall's proposed definitions as improper extrinsic evidence. *Vitronics*, at p.1577.

The compressive quality of the '615 patent's "compression/compressive mechanism" is quite clear from the intrinsic evidence of its specification and prosecution history. The spring-loaded (or pneumatic or hydraulic) compressive mechanism is capable of being compressed 2-3 inches after a curtain has been mounted. This allows the claimed mechanism to compress to adjust and modulate the fit of a mounted curtain. The mechanism is compressed by pulling down on the head (or pushing up on the foot) of the mount. Because the mechanism is compressive, it also allows an installer to release the compressed mechanism to pin an adjusted curtain in place. *See also*, Declaration of Richard Osmundsen, ¶3, filed herewith and incorporated herein. The spring action of the compressive mechanism is shown in Fig 7E of the '615 patent drawings, as follows:

8



FIG. 7E

"[I]n Fig. 7E, the installer 86 noticed that a sag 88 is present in the curtain 30 between the first 92 and second 94 mounts which is undesirable for the installer's project.  An extension loop 66 is coupled to the head of the curtain mount 24, thereby allowing the installer 86 to fine tune the position of the second mount 94 relative to the first mount 92 to eliminate the sag 88 in curtain 30."  '615 Patent, col. 8, lns. 20-27.   Thus, the "compression/compressive mechanism" and "extension loop 66 allow[] one to reposition the head 28 relative to the ceiling without moving the extension pole".  Id. at col. 6, ln. 60 through col. 7, ln. 6.  "The extension loop 66 may comprise a string, a chain, or rod for tugging down on the head of the mount", which compresses the mechanism and allows for "adjustment of the curtain mount". Id.

As set forth in FastCap's Motion For Summary Judgment of non-infringement, the doctrine of prosecution history precludes precludes Zipwall from arguing any range of equivalents to the "compression/compressive mechanism".  The claims were amended and narrowed three times to clarify that the claimed mechanism is compressive, i.e. biased to urge the

9

head of the mount so it can be compressed to adjust the fit of a curtain and the released and pin

the adjusted curtain in place.  See, Cronen Dec. In Supp. Of FastCap's Motion For Summary

Judgment, Exhibit F (Supplemental Amendment After Final (In Response To Advisory Action),

Paper No. 18) (Emphasis added)

In the present case, FastCap's 3rd Hand and Little Hand products are not spring-loaded

curtain mounts, and they do not include any pneumatic or hydraulic compressive mechanism, as

claimed or described in the '615 patent.  They do not have any mechanism that can be

compressed to adjust the fit of a mounted curtain and released to pin the adjusted curtain in place.

On the contrary, they are heavy duty support poles.  Id.  Their length adjusts and locks into

place to support a load of up to seventy pounds.  Akers Dec., ¶¶3-8;Suppl. Akers Dec.;

Osmundsen Dec., ¶4. For example, an installer could not use FastCap's products with an

"extension loop 66" to adjust a curtain sag because the accused products are not compressive.

Suppl. Akers Dec., ¶6 and ¶10; Osmundsen Dec., ¶4.   Further, if FastCap's support poles are

adjusted "2-3 inches longer than the floor-to-ceiling 32 height", as described in Zipwall's patents,

they would likely "push through the ceiling during installation."  Id.

As set forth above, Zipwall improperly  attempts to broaden the definition of the '615

patent's compressive mechanism by relying on the Slocum Report.   However, Zipwall's

proffered expert report is not only  inadmissible extrinsic evidence,  its overly-broad claim

definitions are improper because they ensnare well-known prior art.  *Harris Corp. v. IXYS Corp.,*

114 F.3d 1149, 1153 (Fed. Cir. 1997) (claims should be read in a way that avoids ensnaring prior

art").  For example, a prior art dust barrier covered by Zipwall's proposed claim construction is

illustrated in the following photograph:



This photograph illustrates the age-old use of wooden 2x4's as support poles for mounting plastic curtains. See, Suppl. Akers Dec., ¶ 4; Osmundsen Dec., ¶ 2. The wooden 2x4's are compressed by being wedged or jammed into place at an angle. Id. This compresses the poles, thereby creating and generating a compressive force within the wood that creates tension within the poles to mount the curtains and hold them in place. Therefore, like Zipwall's broad definition of "compression/compressive mechanism", the poles of the above prior art dust barrier also: 1.) create a compressive force in use; 2.) create tension to hold curtain mount in place; and 3.) generate a compressive force when installed that holds the curtain mount in place. Id.

If any doubt remains as to the proper interpretation of Zipwall's claimed compressive mechanism, there are several rules of patent claim construction showing this claim element should be narrowly construed, in accordance with patent's specification and prosecution history. For example, where a claim term has no technical meaning and has various possible common definitions, as in the present case, the Court should look to the patent's written description to

11

define the term. *Renishaw PLC v. Marposs Societa*, 158 F.3d 1243, 1245 (Fed. Cir. 1998);

*SciMed Life Systems v. Advanced CardioVascular*, 242 F.3d 1337, 1347 (Fed. Cir. 2001).

Similarly, if a narrower definition is supported by the intrinsic evidence, while a broader one

raises questions of invalidity and enablement, "the Court should adopt the narrower of the two."

*Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344-48 (Fed. Cir. 1998).   Finally,

because a patentee may be its own lexicographer, and has ultimate responsibility for drafting

claim language, any ambiguity in the claim language should be held against the patentee.  See,

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (Notice

function of patent claims best served by narrow construction).

### 2.    FastCap Does Not Infringe The '004 Patent

Zipwall clearly concedes FastCap does not infringe claims 1-34 and 45-60 of the '004

patent. *See*, Zipwall Memo., p. 15:5-7.  Confusingly, however, Zipwall on the one hand states

that this leaves only independent claim 35 as "the one that is being asserted" and, on the other

hand,  Zipwall states in  footnote 1 that it also "has asserted dependant claims 36-44".  Zipwall

Memo., p. 16, footnote 1.  Zipwall then incorrectly concludes that it is somehow "entitled to

Summary Judgment on 36-44"on the grounds that  FastCap's Motion For Summary Judgment

"only asserted" non-infringement of the '004 patent's independent claim 35. Id.

Zipwall's confusing position invites legal error.  As set forth above and in FastCap's

Motion For Summary Judgement, if an independent patent claim is not infringed by an accused

device, in this case claim 35 of the '004 patent, then, as a matter of law, all of the dependent

claims depending from that independent claim are also not infringed, in this case claims 36-44 of

the '004 patent.  *See, e.g., Jeneric/Pentron, Inc., v. Dillon Co. Inc.,* 205 F.3d 1377, 1383 (Fed.

Cir. 2000).  Zipwall's statement in its footnote 1 also confuses the burden of proof in patent

cases.  As patentee, Zipwall bears the burden of proving each and every element of its asserted

patent claims is present in FastCap's accused products, either literally or under the doctrine of

equivalents.  Because Zipwall failed to provide any evidence of this it is not entitled to judgment

on these claims as it contends in its memorandum.

As fully set forth in FastCap's Motion For Summary Judgment, FastCap does not infringe

claim 35 of the '004 because the claim recites a "clip" having a "<u>plurality of legs extending about</u>

<u>at least one side surface</u>" thereof.  Id. (Emphasis added).  The recited "clip" of claim 35 is shown

in Fig. 4B of the '004 patent as follows:



FIG. 4B

As can be seen in Fig 4B above, the "clip" of claim 35 has a two legs on one side and

what appears to be at least one leg on the other side of the clip.  Zipwall's statement that the

patent drawings show a clip with "just one leg" extending about a side surface of the clip is

simply incorrect.  *See,* Zipwall Memo., p. 16:5.  All of the patent drawings show at least two legs

on  one side of the claimed clip.

As fully set forth in FastCap's Motion For Summary Judgment, Zipwall amended claim

35 three times.  Each amendment narrowed the language of claim 35 until the clip was limited to

the specific device shown in Fig. 4B above, i.e. a clip having  a "plurality" (at least two) legs on

at least one side of the clip.  See, Cronen Dec., <u>Exhibit M</u> (Amendment C, p. 7:20-22) (Amended language of claim 35 requires a " <u>plurality of legs extending about at least one side surface</u>  " as shown in the patent drawings).

FastCap does not infringe claim 35 of the '004 patent because it presently does not market any clip for use in combination with its accused support poles.  Suppl. Akers Dec., ¶7.  Further, while FastCap previously marketed a DB Clip accessory for its support poles, the clip did not have a "plurality of legs extending about at least one side surface ... of the head when the clip is engaged with the head" as required by claim 35 of the '004 patent.  Instead, FastCap's former DB clip had only one leg extending on any side of the clip.   Thus, FastCap's former clip did not literally infringe the '004 patent as a matter of law.  *Elkay v. Ebco*, 192 F.3d at p. 980.

FastCap also has not infringed the '004 patent under the doctrine of equivalents.  Claim 35 was narrowed and amended three times during the prosecution of the '004 patent application.  It was allowed only after it was narrowed to cover the specific structure of the clip shown above in Fig. 4B of the '004 patent.  These narrowing amendments surrendered all equivalents to the recited clip, leaving this claim element restricted to its literal meaning, which is not present in FastCap's accused former clip accessory .  *Festo Corp. v. Shoketsu Kinzoku*,  535 U.S. 722, 739-41 (2002) (narrowing amendment presumptively surrenders all equivalents).

The "all elements" rule also precludes a finding that FastCap infringed claim 35.  Under this rule,  Zipwall cannot use equivalents to establish infringement because this would effectively eliminate or "vitiate" claim 35's requirement of a "plurality" - at least two (or more) - "of legs extending about at least one side".  *Tronzo,* 156 F.3d at p. 1160; *Sage Products,* 126 F.3d at pp. 1432-33.  Here, the recited "plurality of legs extending" on "at least one side" is entirely missing from FastCap's former clip accessory.

### 3.    FastCap Does Not Infringe The '076 Patent

Zipwall concedes FastCap does not infringe claims 6, 10-11, 17-28, 30-63, 66, 73-77, 84, 86-90, 95 of the '076 patent.  See, Zipwall Memo., p. 17:9-11.  As to the remaining claims of the '076 patent, Zipwall contends they are infringed, but it once again fails to provide evidence or analysis establishing each and every properly construed element of the asserted claims is present in FastCap's accused products, either literally or under the doctrine of equivalents.

Here again, Zipwall confuses its burden of proof.  FastCap's pending Motion For Summary Judgment shows that certain elements of the '076 patent claims are missing from FastCap's products.  The law is clear that summary judgment of non-infringement is appropriate where, as here, there is no genuine issue that certain patent claim elements are missing from an accused device.  Indeed, the absence of a single patent claim element renders all other disputed facts immaterial and irrelevant.

Zipwall's memorandum incorrectly attempts to turn FastCap's Motion For Summary Judgment into a  tacit admission that FastCap's products include  certain patent claim elements that are not even discussed in FastCap's or Zipwall's moving papers.  Contrary to Zipwall's contention, Zipwall has the burden to prove infringement and FastCap has not admitted the presence of any element of the asserted patent claims in its accused products.

For example, Zipwall incorrectly contends that "FastCap has not even articulated any theory under which claim 64 is not infringed" and, from this incorrect contention, Zipwall declares "there is liability" for infringement of this claim.  Memo., p. 17:19-22.  In footnote 2, Zipwall goes on to assert that "[d]ependant claims 65, 67, and 68 recite (sic.) do not include any of the language asserted by FastCap as lacking in its product, and are likewise infringed."  Id. at p. 18, footnote 2.  Zipwall also generally asserts FastCap's infringement of "claims 1-5, 7-9, 12-

15

16, 29, 66-72, 78-83, 85, 91-94, and 96" of the '076 patent, referring again to the unsupported and unauthenticated "claim charts" and unsigned "interrogatory answers" discussed *supra*.  Id. at pp. 17:9-11, 21-2; 18:3.  This is not evidence of infringement. Zipwall's generalized conclusions of infringement are obviously insufficient to sustain its burden on summary judgment.

> a.    **The '076 Patent Claims Require Various Curtain "Coupling" Mechanisms, "High Friction" Surfaces, and "Floor Engaging" Partition Mounts That Are Entirely Missing From FastCap's Accused Products**

Regarding Zipwall's allegation of infringement of "claims 1-5, 7-9, 12-16", of the '076 patent, these all require  "a **hinged joint**", shown at 99 in Fig. 8C, as follows:



FIG. 8C

"In Fig. 8C, the head 28 is formed in two sections which interface at a hinge 99.  The sections join at jaws 98 to clamp the curtain 30" which "hangs from the side of the head 28." '076 patent, col. 8. Lns. 46-52.  During prosecution of the '076 patent application, the patentee amended independent claim 1 as follows: "the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion".  Cronen Dec. Exhibit P (Amendment A, p.2:8-10).

16

In the present case, the "hinged joint" element of claims 1-5, 7-9, and 12-16, is entirely missing from FastCap's accused products. Zipwall's papers incorrectly contend that "FastCap's pole has a hinged joint" as claimed and shown in the '076 patent. In fact, FastCap's support poles do not have any "hinge" or clip with "sections [that] join at jaws 98 to clamp the curtain 30". Finally, FastCap's accused support poles do not have any mechanism or device from which a curtain "hangs from the side of the head 28" or that is clamped between two jaws that interface at a hinged joint. The illustration of FastCap's poles in Zipwall's moving papers clearly does not include a hinged joint and jaws or a side-hanging curtain. FastCap therefore does not infringe these claims as a matter of law.

Regarding Zipwall's allegation that FastCap infringes claims 29, 78-83, and 85, these all require a "clip" that has "a high-friction upper surface" or "a high-friction material applied to an upper surface ... to prevent slipping". Id. Again, this "high friction" surface is entirely absent from the clip accessory previously sold by FastCap. In fact, FastCap's former DB clip accessory had a smooth, non-friction upper surface and included a label notifying consumers to "remove clip for better gripping". Akers Dec., ¶8.

Regarding Zipwall's asserted claims 64, 65, 67-72, 91-94, and 96, these claims are either clearly not infringed or invalid as a matter of law. For example, each of these claims requires that the recited "partition mount" is mounted "such that the first end engages the floor". The alleged illustrations of FastCap's products in Zipwall's "claim charts" show FastCap's support poles engaging a plastic curtain. Suppl. Akers Dec., ¶ 5. They do not "engage[]" the "floor" as required by claims 64, 65, 67-72 91-94, and 96. Any attempt by FastCap to argue infringement of this element under the doctrine of equivalents should be summarily rejected. This is because any attempt to do so would either vitiate the claim's "engages the floor" requirement or render

17

these patent claims invalid for literally reading on the prior art dust barriers shown above. *See*, Suppl. Akers Dec., ¶4 (plastic curtains engaged floors under partition mounts for many years before the date of Zipwall's alleged invention); Osmundsen Dec., ¶2.

### D.    Zipwall's Cross-Motion Should Be Denied Because Its Interpretation Of The Asserted Patent Claims Renders Them Invalid In View Of The Prior Art

Patents are invalid for "anticipation" under 35 USC §102 where "each and every element of the claimed invention be disclosed a prior art reference." *Akzo N.V. v. United States International Trade Commission,* 808 F.2nd 1471, 1479 (Fed. Cir. 1986), cert. denied, 482 U.S. 909 (1987). However, an anticipatory reference "need not duplicate word for word what is in the claims ... when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference." *Standard Havens Products v. Gencor Industries*, 953 F.2d 1360, 1369 (Fed. Cir. 1991).

Patents are invalid for obviousness under 35 USC §103, "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." A "person of ordinary skill is a hypothetical person who is presumed to be aware of all pertinent prior art." *Custom Accessories v. Jeffrey-Allan*, 807 F.2d 955, 962 (Fed. Cir. 1986). Obviousness is a question of law to be determined from the facts." *In re DeBlauwe*, 736 F. 2d 699, 703, 222 USPQ 191 (Fed. Cir. 1984). Therefore under §103, the Court is "(1) to determine the scope and content of the prior art; (2) to ascertain the differences between the prior art and the claims that issue; and (3) to resolve the level of ordinary skill in the pertinent art." *Ryko Manufacturing Co., v. Nustar, Inc.*, 950 F2nd 714, 716 (Fed. Cir. 1991) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17, 148 USPQ 459 (1966)).

In the present case, Zipwall has very broadly defined various terms appearing in its

18

asserted patent claims.  For example, Zipwall broadly defines the "compression/compressive mechanism" of patents-in-suit as follows: "A mechanism [that creates] a compressive force within a pole when the pole is in use, to create tension within the pole to help hold it in place between the floor and ceiling."  Slocum Report, ¶7.  Zipwall's hired expert further states: "I do not see any reason in the patent why the claim should be limited to any particular form of compression mechanism. …  Springs, pneumatic devices and hydraulic devices are also different mechanisms, indicating to me that there was an intention for the terms "compression mechanism" to broadly describe any form of compression mechanism. Id at ¶9.

As set forth above, the term "compression/compressive mechanism", as well as the terms "Coupling Mechanisms", "High Friction" Surfaces, and "Floor Engaging" Partition Mounts , cannot be construed as broadly as Zipwall contends in its moving papers.  This is especially true given the written descriptions of the use and benefits of the curtain mount described in the specifications of the patents-in-suit.  Moreover, however, if these terms are construed as broadly as Zipwall contends they should be, then the asserted patent claims are invalid as "anticipated" for clearly reading on the device described in International Publication No. WO 91/09556, the Brown reference.  See, Supplemental Declaration Of Michael Cronen, <u>Exhibit A</u>, filed herewith.

Brown was published on July 11, 1991, and thus clearly constitutes prior art under 35 USC §§ 102(b) and 103(a).  A comparison of the '615 patent claims with Brown shows Zipwall's definitions literally read on the top "foot 18" of Brown's curtain mount. Brown describes this element as being made of rubber (page 6, line 1) and resilient (claim 8).  A resilient, rubber top foot should certainly be construed as "a mechanism [that creates] a compressive force within a pole when the pole is in use, to create tension within the pole to help hold it in place between the floor and ceiling."  Therefore, using Zipwall's proffered definitions,

Brown clearly anticipates and renders the asserted patent claims invalid.

Even assuming, *arguendo*, that Brown does not fully anticipate ZipWall's asserted claims, the combination of Brown with the prior art dust barriers shown in the Osmundsen Declaration and Supplemental Akers Declaration, submitted herewith, render Zipwall's patent claims invalid for obviousness. The scope and content of the prior art shows a crowded prior art field, e.g. hundreds of related patents were cited during the prosecution of Zipwall's patent applications. The differences between the prior art curtain mounts and the asserted patent claims as defined by Zipwall are nearly non-existent. Thus, one of ordinary skill in the pertinent art, such as a carpenter, builder or contractor, would conclude that the differences between Zipwall's asserted claims, and the combination of Brown and prior art dust barriers, are such that Zipwall's claimed subject matter as a whole would have been obvious at the time the invention.

## IV.    CONCLUSION

For the foregoing reasons the Court should deny Zipwall's cross-motion for summary judgment of liability and enter summary judgment of non-infringement in favor of FastCap.

**REQUEST FOR ORAL ARGUMENT**

FastCap hereby respectfully requests the opportunity to present oral argument in connection with the present cross-motion for summary judgment.

Respectfully submitted,

Dated: September 21, 2006          By: /s/ Michael James Cronen
                                   Michael James Cronen

                                   Harris Zimmerman, Cal. Bar No. 22653
                                   Michael James Cronen, Cal. Bar No. 131087
                                   ZIMMERMAN & CRONEN, LLP
                                   1330 Broadway, Suite 710
                                   Oakland CA 94612

20

Telephone:510.465.0828
Facsimile:510.465.2041
E-mail: mcronen@zimpatent.com


Sarah Cooleybeck (BBO#631161)
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone:617.832.1000
Facsimile:617.832.7000
E-mail: scooleybeck@foleyhoag.com

Attorneys for Defendant and Counterclaimant,
FastCap, LLC