IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZIPWALL, LLC ) | Civil Action No.: 05-11852 REK |
| ) | |
| Plaintiff and Counterclaim Defendant, ) | **FASTCAP'S RESPONSE TO** |
| ) | **ZIPWALL'S STATEMENT OF** |
| ) | **UNDISPUTED MATERIAL FACTS IN** |
| v. ) | **SUPPORT OF ZIPWALL'S CROSS-** |
| ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |
| FASTCAP, LLC ) | |
| ) | **(Local Rule 56.1)** |
| Defendant and Counterclaimant. ) | |
| ) | |

Pursuant to Local Rule 56.1, defendant and counterclaimant FastCap LLC ("FastCap") hereby submits its statement in response to Zipwall's Statement Of Undisputed Material Facts submitted in support of it cross-motion for summary judgment. The numbered paragraphs set forth in FastCap's following response correspond to the numbered paragraphs set forth in Zipwall's statement.

1. On February 2, 2006, Zipwall served its infringement contentions identifying each limitation of claims 1-3, 8-10, 14-16, 18-21, 23, 25-28, and 30 of the '615 patent it contends is met in the 3rd Hand product. (See Grady Decl., Ex B).

**Response:** Denied. Zipwall failed to identify each of its asserted claim limitations in FastCap's accused products and it has not provided any admissible evidence to support its

1

infringement allegations.  For example, Zipwall's cross-motion provides only unsigned interrogatory responses and unauthenticated, and otherwise unsupported, "infringement claim charts".  *See*, ZipWall's Cross-Motion For Summary Judgment Of Liability, pp. 4:14- 5:1.  This is not evidence identifying the asserted claim limitations in FastCap's accused products.  Indeed, even if the interrogatory responses had been signed, they do not provide any evidence of infringement because they simply refer the reader back to Zipwall's unsupported "claim charts" of Grady Decl., Ex B. Zipwall's claim charts are defective because they merely reprint the words of the claims of the patents-in-suit next to an alleged representation of FastCap's product.  They do not refer to the intrinsic evidence of the patents' written descriptions, drawings, prosecution histories or cited prior art of record.  Moreover, Zipwall has not pointed to any admissible evidence identifying each properly construed "limitation of claims 1-3, 8-10, 14-16, 18-21, 23, 25-28, and 30 of the '615 patent it contends is met in the 3rd Hand product".

Zipwall's only other submission in support of its infringement allegation is the Expert Report Of Alexander Slocum, which does not even purport to establish infringement.  Indeed, the Slocum Report is limited to the hired expert's understanding of the following four claim terms: "Compression/compressive mechanism"; "plurality of legs"; "pivotable"; and "hinged joint".  Slocum Rpt., pp. 3:2-5:4.  The Court should disregard the Slocum Report as improper extrinsic evidence.  *Vitronics*, 90 F.3d at 1577.  In any event, however, the hired expert's understanding of these four claim terms is insufficient to prove patent infringement.

Zipwall concedes FastCap does not infringe claims 4-7, 11-13, 17, 22, 24 and 29 of the '615 patent.  See, Zipwall Memo., pp. 7:15-17; 12:6-7.

2. Zipwall identified each limitation of claims 35-44 of the '004 patent it contends is met in the 3rd Hand product. (See Grady Decl., Ex B).

**Response:** Denied. See, Response to paragraph 1. As fully set forth in FastCap's Motion For Summary Judgment and in its Opposition to Zipwall's cross-motion, FastCap does not infringe claim 35 of the '004 because the claim recites a "clip" having a "<u>plurality of legs extending about at least one side surface</u>" thereof. Id. (Emphasis added). The recited "clip" of claim 35 is shown in Fig. 4B of the '004 patent as follows:



FIG. 4B

As can be seen in Fig 4B above, the "clip" of claim 35 has a two legs on one side and what appears to be at least one leg on the other side of the clip. Zipwall's statement that the patent drawings show a clip with "just one leg" extending about a side surface of the clip is simply incorrect. *See,* Zipwall Memo., p. 16:5. All of the patent drawings show at least two legs on one side of the claimed clip.

As fully set forth in FastCap's Motion For Summary Judgment, Zipwall amended claim

35 three times. Each amendment narrowed the language of claim 35 until the clip was limited to the specific device shown in Fig. 4B above, i.e. a clip having a "plurality" (at least two) legs on at least one side of the clip. See, Cronen Dec., <u>Exhibit M</u> (Amendment C, p. 7:20-22) (Amended language of claim 35 requires a " <u>plurality of legs extending about at least one side surface</u> " as shown in the patent drawings).

      FastCap does not infringe claim 35 of the '004 patent because it presently does not market any clip for use in combination with its accused support poles. Suppl. Akers Dec., ¶7. Further, while FastCap previously marketed a DB Clip accessory for its support poles, the clip did not have a "plurality of legs extending about at least one side surface ... of the head when the clip is engaged with the head" as required by claim 35 of the '004 patent. Instead, FastCap's former DB clip had only one leg extending on any side of the clip.  Thus, FastCap's former clip did not literally infringe the '004 patent as a matter of law. *Elkay v. Ebco*, 192 F.3d at p. 980.

      FastCap also has not infringed the '004 patent under the doctrine of equivalents. Claim 35 was narrowed and amended three times during the prosecution of the '004 patent application. It was allowed only after it was narrowed to cover the specific structure of the clip shown above in Fig. 4B of the '004 patent. These narrowing amendments surrendered all equivalents to the recited clip, leaving this claim element restricted to its literal meaning, which is not present in FastCap's former clip accessory . *Festo Corp. v. Shoketsu Kinzoku*, 535 U.S. 722, 739-41 (2002) (narrowing amendment presumptively surrenders all equivalents).

      The "all elements" rule also precludes a finding that FastCap infringed claim 35. Under this rule, Zipwall cannot use equivalents to establish infringement because this would effectively eliminate or "vitiate" claim 35's requirement of a "plurality" - at least two (or more) - "of legs

4

extending about at least one side".   *Tronzo,* 156 F.3d at p. 1160; *Sage Products,* 126 F.3d at pp. 1432-33.  Here, the recited "plurality of legs extending" on "at least one side" was entirely missing from FastCap's former clip accessory.

Because FastCap does not infringe independent claim 35 of the '004 patent, it also does not infringe dependent claims 36-44 as a matter of law.  *Jeneric/Pentron, Inc., v. Dillon Co. Inc.,* 205 F.3d 1377, 1383 (Fed. Cir. 2000).

Zipwall concedes FastCap does not infringe claims 1-34 and 45-60 of the '004 patent.  *See*, Zipwall Memo., p. 15:5-7.

3.  Zipwall identified each limitation of claims 1-5, 7-9, 12-16, 29, 64, 65, 67-72, 78-83, 85, 91-94, and 96 35-44 of the '076 patent it contends is met in the 3rd Hand product.  (See Grady Decl., Ex B).

**Response:** Denied.  See, Response to paragraph 1.  Zipwall's conclusions of infringement of the '076 patent are obviously insufficient to sustain its burden on summary judgment. Moreover, each of the asserted claims of the '076 patent require various curtain "coupling mechanisms", "high friction" surfaces, and "floor engaging" Partition Mounts that are entirely missing from FastCap's accused support poles.

Regarding Zipwall's allegation of infringement of "claims 1-5, 7-9, 12-16", of the '076 patent, these all require "a **hinged joint**", shown at 99 in Fig. 8C, as follows:



FIG. 8C

"In Fig. 8C, the head 28 is formed in two sections which interface at a hinge 99. The sections join at jaws 98 to clamp the curtain 30" which "hangs from the side of the head 28." '076 patent, col. 8. Lns. 46-52. During prosecution of the '076 patent application, the patentee amended independent claim 1 as follows: "<u>the mechanism at the second end interfacing with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion</u>". Cronen Dec. <u>Exhibit P</u> (Amendment A, p.2:8-10).

In the present case, the "hinged joint" element of claims 1-5, 7-9, and 12-16, is entirely missing from FastCap's accused products. Akers Dec., ¶6. Zipwall's statement therefore incorrectly contends this limitation of the accused products was identified in Grady Decl., Ex B. In fact, FastCap's support poles do not have any "hinge" or clip with "sections [that] join at jaws 98 to clamp the curtain 30". Finally, FastCap's accused support poles do not have any mechanism or device from which a curtain "hangs from the side of the head 28" or that is clamped between two jaws that interface at a hinged joint. The illustration of FastCap's poles in Grady Decl., Ex B clearly does not include a hinged joint and jaws or a side-hanging curtain.

Regarding Zipwall's allegation that FastCap infringes claims 29, 78-83, and 85, these all

require a "clip" that has "a high-friction upper surface" or "a high-friction material applied to an upper surface ... to prevent slipping". Id. Again, this "high friction" surface is entirely absent from the clip accessory previously sold by FastCap. In fact, FastCap's former DB clip accessory had a smooth, non-friction upper surface and included a label notifying consumers to "remove clip for better gripping". Akers Dec., ¶8.

Regarding Zipwall's asserted claims 64, 65, 67-72, 91-94, and 96, of the '076 patent, these claims are either clearly not infringed or invalid as a matter of law. For example, each of these claims requires that the recited "partition mount" is mounted "such that the first end engages the floor". The alleged illustrations of FastCap's products in Zipwall's "claim charts" show FastCap's support poles engaging a plastic curtain. Suppl. Akers Dec., ¶ 5. They do not "engage[]" the "floor" as required by claims 64, 65, 67-72 91-94, and 96. Id. Any attempt by FastCap to argue infringement of this element under the doctrine of equivalents should be summarily rejected. This is because any attempt to do so would either vitiate the claim's "engages the floor" requirement or render these patent claims invalid for literally reading on the prior art dust barriers shown above. *See*, Suppl. Akers Dec., ¶4 (plastic curtains engaged floors under partition mounts for many years before the date of Zipwall's alleged invention); Osmundsen Dec., ¶2.

Zipwall concedes FastCap does not infringe claims 6, 10-11, 17-28, 30-63, 66, 73-77, 84, 86-90, 95 of the '076 patent. See, Zipwall Memo., p. 17:9-11.

4. A true copy of FastCap's interrogatory answers is attached at Exhibit C to the Grady Decl. These answers do not assert any specific basis for noninfringement or invalidity of any

claim in any patent-in-suit.

**Response:** Denied. See, Responses to paragraphs 2-3 above. As fully set forth in FastCap's Motion For Summary Judgment and its Opposition to Zipwall's cross-motion, Zipwall's asserted patent claims are either not infringed because claim elements are entirely missing from FastCap's accused products, or the claims are invalid in view of a crowded field of prior art curtain mounts and mounting systems. To the extent that any other responsive information or documents have been discovered by FastCap subsequent to serving its responses in January, 2006, FastCap will provide Zipwall with appropriate supplemental interrogatory responses.

5. FastCap has never supplemented its interrogatory answers.

**Response:** Denied. To the extent Zipwall's interrogatories requested the identification of documents, FastCap has provided Zipwall with identification of supplemental documents throughout the case. Recently, FastCap supplemented all of its Fed. R. Civ. P. Rule26(a)(2) disclosures to Zipwall in accordance with the Court's Discovery Order (Document 18).

6. The 3rd Hand device has a spreading clamp with a ratchet allowing the head of the pole to be ratcheted toward the ceiling. (See Slocum Decl. ¶11).

**Response:** Denied. On the contrary, FastCap's 3rd Hand and Little Hand support poles adjust in length and lock into place using two separate components, as shown in the following illustration:



In the above illustration, the first component comprises the "ergonomic pump handle", "lifting tab" and "pump spring". Akers Dec., ¶6.   This component advances the galvanized extension rod to extend the length of the support pole.  Id. This is accomplished by squeezing the pump handle which, in turn, pushes up on the bottom of one side of the lifting tab.  This causes the lifting tab to lift at an angle and frictionally engage, or cinch, the galvanized extension rod.  The frictional engagement of the lifting tab and galvanized extension rod extends the pole length.  Each complete squeeze of the pump handle extends the rod approximately 3/8 of an inch. Id.

As illustrated above, the second component of FastCap's support poles comprises a "release tab" and "lower spring". These lock and release the galvanized extension rod. Akers Dec., ¶7. As can be seen in the above, the lower spring pushes the release tab down at an angle, thereby causing the release tab to frictionally engage, or cinch, the extension rod. This holds the rod in place. Id. The locked extension rod is not compressive. It cannot be modulated or otherwise compressed to adjust the fit of a plastic curtain. The lock can only be released by pushing up against the bottom of the release tab which, in turn, pushes up against the lower spring. This levels the angle of the release tab, disengages it from the extension rod, and allows the extension rod to move freely up and down. Id.

**7.** The 3rd Hand action lever is employed in the device to generate "secure pressure" that holds the device in place when used to form a partition. (See Grady Decl. Ex. G; Slocum Decl. ¶11).

**Response:** Denied. See, Response to paragraph 6 above.

8. When used for a dust barrier, the ratchet and clamp are used to lengthen the pole to the point where it creates a compressive force within the pole to hold the pole in place; without that force, the pole could easily be knocked over. (See Slocum Decl. ¶11).

**Response:** Denied. See, Response to paragraph 6 above. FastCap's metal support poles are not compressible. Extending the length of FastCap's support poles does not include a compressive force caused by any ratchet and clamp.

9. The 3rd Hand product is described as including a "360" articulating top & bottom feet". (See, Grady Decl., Ex. G).

**Response:** Denied on the grounds that Zipwall's paragraph 9 does not state a material fact. "Articulating feet" are not recited in any of the claims of the patents-in-suit.

10. This articulation (referred to in the preceding paragraph) is achieved using a ball and cup joint. (See Slocum Decl. ¶18-21).

**Response:** Denied on the grounds that Zipwall's paragraph 9 does not state a material fact. "Articulating feet" are not recited in any of the claims of the patents-in-suit. Similarly, the claims of the patents-in-suit do not recite any "ball and cup joint" such that Zipwall's statement of this element is also not a material fact.

11. The 3rd Hand DB clip has two legs - one on either side of the clip. (See Slocum Dec.¶16)

**Response:** Denied. See, Response to paragraph 2 above. FastCap does not currently sell any clip accessory for its 3rd Hand support poles. Previously, FastCap sold an accessory for its 3rd Hand and Little Hand products called a dust barrier or "DB" clip. Akers Dec., ¶8. A photograph of FastCap's DB clip in relation to the "Top 3"x3" foot" of FastCap's support poles is set forth below:



As can be seen in this photograph, FastCap's DB clip had a single engagement member, or "leg", extending along two of the four sides of the clip.  Id.  This leg was adapted to slide onto the "Top 3"x3" foot" portion of FastCap's support poles as shown above.  Id.  In an abundance of caution, and notwithstanding the fact that FastCap clearly does not infringe any claim of the patents-in-suit, FastCap stopped selling its DB clip in 2005.  Id.

12.  U.S. Patent No. 6,942,004 (the "'004 patent"), issued on September 13, 2005, and was assigned to Zipwall. (See Grady Decl. Ex. H).

**Response:** Denied on the grounds that FastCap has no personal knowledge, and lacks any information sufficient to form a belief, as to whether the '004 patent was formally assigned to Zipwall.  Similarly, while the face of the '004 patent indicates it issued on September 13, 2005, FastCap otherwise has no personal knowledge the patent's issue date.

13.  U.S. Patent No. 6,209,615 (the "'615 patent"), issued on April 3, 2001, and was

assigned to Zipwall. (See Grady Decl. Ex. I).

**Response:** Denied on the grounds that FastCap has no personal knowledge, and lacks any information sufficient to form a belief, as to whether the '615 patent was formally assigned to Zipwall. Similarly, while the face of the '615 patent indicates it issued on April 3, 2001, FastCap otherwise has no personal knowledge the patent's issue date.

14. U.S. Patent No. 6,953,076 (the "'076 patent"), issued on October 11, 2005, and was assigned to Zipwall. (See Grady Decl. Ex. J).

**Response:** Denied on the grounds that FastCap has no personal knowledge, and lacks any information sufficient to form a belief, as to whether the '076 patent was formally assigned to Zipwall. Similarly, while the face of the '076 patent indicates it issued on October 11, 2005, FastCap otherwise has no personal knowledge the patent's issue date.

Respectfully submitted,

Dated: September 21, 2006   By: /s/ Michael James Cronen
                                  Michael James Cronen

Harris Zimmerman, Cal. Bar No. 22653
Michael James Cronen, Cal. Bar No. 131087
ZIMMERMAN & CRONEN LLP
1330 Broadway, Suite 710
Oakland CA 94612
Telephone:510.465.0828
Facsimile:510.465.2041
E-mail: mcronen@zimpatent.com

Sarah Cooleybeck (BBO#631161)
FOLEY HOAG LLP

155 Seaport Blvd.
Boston, MA 02210
Telephone:617.832.1000
Facsimile:617.832.7000
E-mail: scooleybeck@foleyhoag.com

Attorneys for FastCap, LLC