IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZIPWALL, LLC,

    Plaintiff,

v.

FASTCAP, LLC.,

    Defendant.

Civil Action No.:  05-CV-11852-JLT

**ZIPWALL, LLC'S REPLY BRIEF IN SUPPORT OF ITS CROSS-MOTION
FOR SUMMARY JUDGMENT OF LIABILITY**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT.............................................................................................................1

I.  THE LIABILITY ISSUES ARE READY FOR JUDGMENT ....................................1

II.  THE '615 PATENT IS VALID AND INFRINGED ...................................................3

     A.  Claim Construction of "Compression/Compressive Mechanism" – "A
     Mechanism that Can Be Used to Generate a Compressive Force in the Pole,
     When It Is Installed, to Hold the Pole in Place" .......................................................4

     B.  FastCap's Accused Devices Infringe the '615 Patent .......................................9

     C.  The '615 Patent Is Valid.................................................................................10

III.  THE '004 PATENT IS VALID AND INFRINGED..................................................10

     A.  Claim Construction – "Plurality of Legs" and "At Least One Side Surface....10

     B.  FastCap's Accused Devices Infringe the '004 Patent .....................................13

     C.  The '004 Patent Is Valid.................................................................................13

IV.  THE '076 PATENT IS VALID AND INFRINGED..................................................13

     A.  FastCap's Accused Devices Infringe the '076 Patent .....................................13

          (1)  If Properly Construed, the "Hinged Joint" Element Is
          Indisputably Present in FastCap's Accused Devices .................................14

          (2)  The "High Friction" Element Is Disputed...........................................16

          (3)  If Properly Construed, the "Engages the Floor" Element Is
          Indisputably Present in FastCap's Accused Devices .................................16

     B.  The '076 Patent Is Valid.................................................................................18

V.  The Brown Reference Has No Bearing on the Various Claim Constructions ............18

CONCLUSION......................................................................................................20

**INTRODUCTION**

The briefing of these motions makes plain that the liability issues in this case are ripe for decision. They are fully briefed, FastCap offers no reason why it cannot (or has not) offered any contentions not addressed in the briefing, and FastCap surely cannot articulate any basis as to why it should be permitted any additional bites at the apple.

ZipWall has made a full showing of infringement, including exhaustive claim charts and a thorough, well-reasoned expert report from Alex Slocum – a distinguished, full professor of mechanical engineering at M.I.T. In response, FastCap articulates few noninfringement positions and abandons its original arguments (which were demonstrated to be untenable) to assert new arguments which are equally untenable. There is no reason for discovery on liability, as there is no issue of fact to be resolved. The only disputed issues are legal issues of claim construction and summary judgment for ZipWall is appropriate.

**ARGUMENT**

**I.    THE LIABILITY ISSUES ARE READY FOR JUDGMENT.**

The parties appear to agree that the liability issues are ripe for discovery, notwithstanding FastCap's plaintive assertions otherwise. *Both* parties have moved for summary judgment; *both* parties believe there is no genuine issue of fact. Indeed, the FastCap pole is what it is and the only remaining issues concern claim construction – an issue of law. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (claim construction question of law).

Indeed, even in summary judgment briefing, FastCap identifies no noninfringement contention not fully briefed and ready for decision.

FastCap's invitation to the Court, that it conduct a full infringement analysis for every limitation in the asserted patent claims whether or not FastCap asserts the limitation is not met, is

neither required nor wise.  The Court should address only *disputed* issues.  See e.g. <u>Vivid Techs.,</u> <u>Inc. v. American Sci. & Engineering Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").  Not only would any other approach be inefficient for the Court, it would result in improper advisory opinions.  That is why the parties are directed to narrow the issues in discovery and to bring only disputed issues to the Court; in this case, we have done exactly that.

ZipWall provided full claim charts identifying each infringing structure.  FastCap has chosen to stake out a noninfringement position for very few of those limitations.  By declining to address any other argument, FastCap has waived an opportunity to try to invent new arguments later.  FastCap was obligated to provide notice of any dispute concerning ZipWall's detailed assertion that FastCap's accused products infringe its patents. (<u>See</u> Grady Decl., Ex. B, attached claim chart.)  FastCap did not identify any specific issue, and merely provided non-answer disclaimers.  (<u>See</u> Grady Decl., Ex. C.)

Later, rather than supplement responses, FastCap improperly filed a motion for summary judgment.  Numerous courts appropriately restrict the parties to the arguments set forth in their contention interrogatories, refusing to allow new arguments to be raised for the first time in a summary judgment motion or at trial and on that basis, FastCap should not even be permitted to make the arguments it now raises.  <u>See, e.g.</u>, <u>Astrazeneca AB v. Mutual Pharmaceutical Co.</u>, 278 F. Supp. 2d 491, 498- 509 (E.D. Pa. 2003) (refusing to allow the defendant to raise a new invalidity argument related to a prior art patent in its motion for summary judgment, when it had not disclosed it in its response to contention interrogatories); <u>Wechsler v. Hunt Health Sys.</u>, No. 94 Civ. 8294, 1999 U.S. Dist. LEXIS 13216, at *5 (S.D.N.Y. Aug. 25, 1999) ("The answers to the [contention] interrogatories … are treated by courts in this Circuit as 'judicial admissions'

that generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses."); Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp. 2d 1045, 1061-63 (D. Minn. 1999) (where the defendant raised an argument of non-infringement and obviousness of the patent-in-suit for the first time at summary judgment, the defendant was estopped from asserting these arguments and thus summary judgment in favor of the plaintiff was granted on those issues).

FastCap cannot explain its failure to answer ZipWall's contention interrogatories or explain why it should not be deemed to have conceded arguments not raised to date, responding instead with a naked assertion that "[t]his is clearly incorrect".  (FastCap Opp., Docket No. 38 at 7.)  Infringement and validity are ripe for summary judgment, and FastCap is necessarily limited to the claim construction, non-infringement and invalidity arguments it has set forth to date.

## II.    THE '615 PATENT IS VALID AND INFRINGED

FastCap plainly has no viable defense in this case.  As discussed above, it cannot explain why it has failed to answer contention interrogatories yet deems the matter ripe for a summary adjudication, why it should not be limited to contentions raised to date, nor is it capable of indentifying what other contentions it might wish to assert.

Likewise, FastCap cannot explain why it skips over claim construction in arguing infringement and, in the end, never actually proposes *any* specific construction of *any* claim term.  If a claim construction analysis is applied, as the law requires, there is no genuine dispute of fact left and summary judgment for ZipWall should be granted.

In the end, the issue is not as complicated as the briefing below suggests.  The patent expressly states that "compression mechanism" includes not just springs but also pneumatic and hydraulic devices.  If so, Professor Slocum has firmly established that there is no meaningful difference between how FastCap's sliding ratchet serves as a compression mechanism and how a

pneumatic or hydraulic device would.  (See Slocum Decl., ¶¶ 9-11.)

In response, by briefing or by affidavit, FastCap simply cannot respond.  The limitation is plainly met and the patent is infringed.

It should be no surprise, therefore, that a detailed and careful analysis leads to the same conclusion as does the above indisputable and undisputed premise.  FastCap's "compression mechanism" is of the same class described as examples in the patent and the claims are infringed.

**A.    Claim Construction of "Compression/Compressive Mechanism" – "A Mechanism that Can Be Used to Generate a Compressive Force in the Pole, When It Is Installed, to Hold the Pole in Place"**

Having spent considerable time moving for summary judgment and opposing Zipwall's cross-motion for summary judgment, FastCap amazingly still fails to provide any proposed construction of the term "compression/compressive mechanism" – despite black letter case law from the Federal Circuit holding that such an infringement analysis is improper.  See Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444, 1448 (Fed. Cir. 1991).  Rather than offer its own construction, FastCap can only offer a moving target argument attempting to attack Zipwall's proposed construction.  In the end, startlingly, FastCap's submission actually supports ZipWall's proposed construction.

The term "compression mechanism" or "compressive mechanism" is a mechanism that can be used to generate a compressive force in the pole, when it is installed, to hold the pole in place.  This is the plain meaning of the term, and it is supported by the language, examples and figures in the '615 patent, as explained in detail in Zipwall's Cross-Motion.  (See Zipwall Cross-Motion, Docket No. 29, at 8-9 (citing '615 patent, col. 3, line 2-4, col. 2, line 66 – col. 3, line 1, col. 4, lines 17-19; col. 8, lines 49-50; Figure 9A; col. 8, line 49 – col. 9, line 2).)

In fact, FastCap's submission is in agreement.  (See Suppl. Akers Decl. ¶ 4, and

4

Osmundsen Decl. ¶ 2.)

FastCap nevertheless attempts to argue that Zipwall's proposed construction should be ignored as relying on extrinsic evidence. There are two problems with this contention.

First, it is untrue. While Zipwall included citations to the position of its expert, Professor Alexander Slocum, in support of its proposed claim construction, Zipwall devoted much of its claim construction argument to showing how the specification of the '615 patent supports its proposed construction, citing to numerous portions of the '615 patent.

Second, it is appropriate to refer to an expert report to assist in understanding the technology, which is what was done here. Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1166 (Fed Cir. 2004).

Most important, however, FastCap cannot respond to ZipWall's *or Professor Slocum's* reasoning on the merits. FastCap originally argued that the "compressive/compression mechanism" must be a spring. This argument is indisputably false as the patent expressly states that "compressive mechanism" includes pneumatic and hydraulic devices as well. Thus, FastCap was forced to change its position to claim that the "compressive/compression mechanism" must either be a spring or a pneumonic or a hydraulic device – but nothing else. In other words, without articulating any reason for it, FastCap argues that "compressive mechanism" must mean only the specific examples in the patent. Of course, no dictionary, plain usage or language in the specification could support interpreting "compression mechanism" to mean "a spring, pneumatic device, or hydraulic device but nothing else."

Thus, FastCap's entire argument invites plain legal error. See Phillips v. AWH Corp., 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments");

Northern Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1293 (Fed. Cir. 2000)

("[P]referred embodiments, without more, do not limit claim terms."); see also Phillips, 415 F.3d

at 1312 ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention

to which the patentee is entitled the right to exclude.'") (quoting Innova/Pure Water, Inc. v.

Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  There is no

requirement that the patent contain an exhaustive list of every single mechanism that could

comprise the "compressive/compression mechanism".

Significantly, FastCap has no answer to the fact that the specification of the '615 patent

makes plain that the description of a spring (or pneumatic or hydraulic device) is just an example

and not a limitation of the claim -- "[e]ach curtain mount includes a compression mechanism, for

example a spring" (Col 4, lines 17 – 18) -- demonstrating that claims and the embodiments in the

specification were not intended to be "strictly co-extensive."  Phillips, 415 F.3d at 1323.  (See

Zipwall Cross-Motion, Docket No. 29, at 10, citing '615 patent, col. 9, lines 29-30; col. 2, lines

34-36; col. 8, lines 60-65.)

The other requirement that FastCap now urges upon the definition of

"compressive/compression mechanism" is that it must be something that is capable of being

compressed 2-3 inches after a curtain is mounted.  Once examined, the argument borders on the

frivolous, most notably because FastCap's pole has a mechanism that allows it to be compressed

after the pole is mounted.

The construction is simply wrong because the other example compression mechanisms (a

pneumatic or hydraulic compression mechanism) also cannot be shortened (in a resilient way)

after the pole is mounted – extending the pole that far with a pneumatic or hydraulic device

would drive the head of the device through the ceiling.  (Slocum Decl. ¶ 13.)  Thus, FastCap's

proposal is inconsistent with the patent.

What is more, even if FastCap's argument were accepted (it should not be), FastCap still indisputably infringes.  The compression mechanism in FastCap's pole plainly permits the pole to be shortened by 2-3 inches after it is mounted; one simply pushes the release tab and shortens the pole.  (Akers Decl., ¶ 7 (operating the "release tab … disengages it from the extension rod, allowing the rod to move freely).)  Indeed, this is the only way to move the pole after installed or to remove it.

FastCap's last argument against ZipWall's proposed claim construction is that it is "improper" because it supposedly "ensare[s] well-known prior art."  (FastCap Opp., Docket No. 38, at 10.)  FastCap is wrong on a number of different levels.

First, FastCap is wrong in asserting that interpreting claims to avoid prior art is a normal component of claim construction.  After the decision cited by FastCap, the Federal Circuit considered the issue *en* banc, and stated:

> While we have acknowledged the maxim that claims should be construed to preserve their validity, we have not applied that principle broadly, and we have certainly not endorsed a regime in which validity analysis is a regular component of claim construction.  Instead, we have limited the maxim to cases in which "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous."

Phillips, 415 F.3d at 1327 (internal citations omitted) (quoting Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 911 (Fed. Cir. 2004)).  Here, there is no reason to apply this maxim because the term "compression/compressive mechanism" is not ambiguous, based on both its plain meaning and how the term is used in the patent.

Second, FastCap has failed to show that the use of wooden 2x4's as support poles for mounting plastic curtains anticipates any claim of the '615 patent, many of which require a number of components not found in a 2x4 (like a compression *mechanism* or a hinged foot).  A

7

patent is presumed to be valid, and the accused infringer has the burden to prove by clear and convincing evidence that the patent is invalid.  See, e.g., Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir. 1998).  FastCap has not overcome this presumption or met this burden.  In fact, it has not even performed a claim-by-claim analysis, let alone an element-by-element analysis to show that every element of every asserted claim is met by the use of wooden 2x4's.  See Union Oil Co. v. Atlantic Richfield Co., 208 F.3d 989, 994-95 (Fed. Cir. 2000) ("This court requires that a party seeking to invalidate a patent under § 102 show that the allegedly invalidating prior art contains 'each and every element of [the] claimed invention.'"). Instead, all FastCap is arguing is that it believes there was a prior art device[1] that had one element – the "compression/compressive mechanism" – of the asserted claims.  This is clearly insufficient to prove invalidity.

Third, FastCap is not correct that the use of wooden 2x4's as support poles includes a "compression/compressive mechanism" element.  There may be a compressive force in the 2x4, but there is no "mechanism" to create it.  FastCap points to the wooden poles themselves, not any additional mechanism that compresses them.  Independent claims 1 and 19 of the '615 patent clearly provide that the "pole" and the "compressive/compression mechanism" that acts to compress the pole are two separate elements of the claim.

What is most stunning about FastCap's otherwise irrelevant argument, however, is the use of the word "compressive" in connection with the boards.  The 2x4's are under a compressive force and this is the very same force that FastCap uses its compressive mechanism to generate, in order to hold the poles in place.  In the end, FastCap's affidavit supports

---

[1] FastCap fails to corroborate the date in which wooden 2x4's were supposedly used.  As such, the testimony is incompetent.  Finnegan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1369 (Fed. Cir. 1991) ("[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her own level of interest").

ZipWall's proposed construction – that a compressive mechanism is a device to create a compressive force in the pole. Both Professor Slocum and FastCap's general contractor appear to agree.

### B.    FastCap's Accused Devices Infringe the '615 Patent

As Zipwall has already explained, once the term "compressive/compression mechanism" has been construed, FastCap's products plainly have one. (See Zipwall Cross-Motion, Docket No. 29, at 11-13.) Since this is the only element FastCap contends is missing from the asserted claims of the '615 patent, summary judgment of infringement is appropriate.

FastCap's only response is that its products are heavy-duty support poles that adjust in length to lock into place to support a load of up to seventy pounds. (See FastCap Opp., Docket No. 38, at 10.) This is irrelevant, however. Nothing in the claims address how much weight the pole can support. Moreover, the mechanism that allows FastCap's products to lengthen and then lock into place is precisely the "compressive/compression mechanism." (Slocum Decl. ¶ 11.) The pole lengthens to a point where it creates a compressive force within the pole to hold the pole in place. (Id.) Nothing in the declarations of FastCap's witnesses, Paul Akers and Richard Osmundsen, suggests that this is not true.

FastCap's other comments are equally irrelevant. Its argument that an installer could not use FastCap's products with an "extension loop 66" to adjust a curtain sag is merely another attempt to improperly read a limitation from the specification into the claims. The asserted claims do not call for an "extension loop 66."[2]

Likewise, FastCap's argument that its support poles would likely push through a ceiling during installation if adjusted to be 2-3 inches longer than the floor-to-ceiling height improperly

---

[2] Also, an "extension loop 66" would not work with a pneumatic or hydraulic mechanism, two other compressive/compression mechanisms explicitly mentioned in the specification of the '615 patent.

attempts to read a limitation from the specification into the claims.  The asserted claims do not

call for any particular length of compression.[3]

Finally, Zipwall need not address FastCap's arguments against applying the doctrine of

equivalents since it has shown that FastCap's products literally infringe the asserted claims of the

'615 patent.[4]

### C.    The '615 Patent Is Valid

FastCap has failed to raise *any* argument to support an invalidity argument.  Summary

judgment of validity of the asserted claims of the '615 patent is therefore appropriate.

## III.    THE '004 PATENT IS VALID AND INFRINGED

### A.    Claim Construction – "Plurality of Legs" and "At Least One Side Surface"

FastCap again fails to provide a proposed construction of any terms in the '004 patent.

The only element of the asserted claims that FastCap has not admitted to be present in the

accused devices, based on FastCap's summary judgment briefing and non-responses to Zipwall's

interrogatories, is the requirement of a "clip" having a "<u>plurality of legs</u> extending about <u>at least

one side surface</u> and a portion of the lower surface of the head when the clip is engaged with the

head."  The term "plurality of legs" should receive its plain meaning – "more than one."

FastCap has not articulated any reason why the plain meaning should not apply.

Now FastCap also appears to be arguing that the term "at least one side surface" should

have some (unexplained) construction that is different than its plain meaning.  When the terms

---

[3] Also, if a pneumatic or hydraulic compression mechanism is used, two other compressive/compression mechanisms explicitly mentioned in the specification of the '615 patent, there would necessarily be no compression by 2-3 inches because doing so would drive the head of the device through the ceiling.  (Slocum Decl. ¶ 13.)

[4] While not necessary for purposes of this motion, Zipwall notes that it is not limited from asserting equivalents by the doctrine of prosecution history estoppel.  During prosecution, the claims were amended to clarify that the compression urges the head <u>away</u> from the interface, not to limit the claims to a spring.  (<u>See</u> Cronen  Decl., Ex. F, at p. 5.)  Thus, since the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question, the doctrine of prosecution history estoppel should not apply.  <u>See</u> <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushikic Co.</u>, 535 U.S. 722, 740 (2002).

are combined, the plain meaning of "plurality of legs extending about at least one side surface" is that more than one leg (i.e., 2+ legs) can extend about at least one side surface (i.e., 1+ side surfaces). Nothing in this phrase requires that there be multiple legs on any given side surface. Rather, there may be one leg on one side surface and a second leg on a second side surface; two legs on one side surface; two legs on one side surface and one leg on a second side surface; two legs on one side surface, one leg on a second side surface, and one leg on a third side surface; etc. Without any explanation as to why the plain meaning should not apply, FastCap seems to be contending that the phrase requires that one side surface have multiple legs extending about it. FastCap reads the word "at least" out of the construction. See Pickholtz v. Rainbow Techs., Inc., 284 F.3d 1365, 1373 (Fed. Cir. 2002) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored …."). To express FastCap's proposed meaning, the phrase in the claim would have to be rewritten in the reverse as: "at least one side surface having a plurality of legs extending about it". But that is not the claim language, and there is no reason to re-write the claim language in that narrower manner.

FastCap again improperly attempts to limit the claims to the preferred embodiment, citing to the fact that Figure 4B of the '004 patent shows a side with two legs on it. Phillips, 415 F.3d at 1323. However, nothing in this Figure 4B, or anywhere else in the patent, indicates that this is anything more than an example. In fact, in Figure 4C, only one leg is even indicated (as evidenced by only one line extending from "65"), which further shows the lack of importance to be attributed to the fact that two legs may appear on one side in the figure. This is merely illustrating a possible configuration and not limiting the claims. Furthermore, the portion of the specification describing Figures 4A, 4B and 4C never states that there are (or should be) two legs on one side. ('004 patent, col. 6, lines 24-65.) Thus, the specification nowhere limits the claim

11

language as suggested by FastCap.

FastCap also now argues that the prosecution history supports its construction (if one can be discerned), claiming that the language of claim 35 was narrowed to limit the device to one in which one side of the clip was required to have at least two legs on it.

This is a mischaracterization of the prosecution history.  In response to an initial rejection of claims, the applicant added fifteen new claims, including new claim 44, which eventually issued as claim 35 of the '004 patent.  (Cronen Decl., Ex. I, at p. 7.)  This claim was then rejected (id., Ex. J), but in an interview, the examiner suggested defining the clip's lower surface as "removably engaging" the upper surface of the head (id., Ex. K).  This amendment was made (id., Ex. L, at pp. 7 & 11), but the examiner then rejected claim 44 in view of the Brennan and Villaveces prior art patents, which had nothing to do with the number of legs in any particular location (Grady Supp. Decl., Ex. A, p. 5).  The applicant then amended the claim to add: "the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head." (Cronen Decl., Ex. M, at pp. 7 & 14.)  This language further described the structure of any given leg by describing where such a leg extends – i.e., about a side surface and a portion of the lower surface of the head – and thus distinguished the legs from the "C-clamp member 36" disclosed in the Villaveces prior art reference.  (Grady Supp. Decl., Ex. B, Figures 1, 2 & 7, col. 3, lines 47-54.)  Thus, the amendment, like the examiner's rejection, had nothing to do with the number of legs on any particular side surface and provides no insight into the construction of the terms "plurality of legs" or "at least one side surface", which have a plain meaning construction that is contrary to the strained interpretation being offered by FastCap.

### B.    FastCap's Accused Devices Infringe the '004 Patent

Once the above terms are construed, there is no question that FastCap's accused devices infringe the asserted claims of the '004 patent.  FastCap's argument that its DB clip "had only one leg extending on any side of the clip" (FastCap Opp., Docket No. 38, at 14) becomes irrelevant.  FastCap's DB clip clearly had two legs, one on each side of the clip, and FastCap does not now deny this point.[5]  (See Zipwall Cross-Motion, Docket No. 29, at 15-16.)  And, as discussed above, FastCap's non-responses to Zipwall's interrogatories and failure to raise any additional elements in its summary judgment motion establish that all the other elements of the asserted claims are met.  Consequently, summary judgment of infringement of claims 35-44 is appropriate.[6]

### C.    The '004 Patent Is Valid

FastCap has failed to raise *any* arguments to support an invalidity argument.  Summary judgment of validity of the asserted claims of the '004 patent is therefore appropriate.

## IV.    THE '076 PATENT IS VALID AND INFRINGED

### A.    FastCap's Accused Devices Infringe the '076 Patent

As with the other patents, FastCap continues to omit the first step of the infringement process by not proposing claim constructions.  While FastCap's brief cites various portions of the '076 patent and prosecution history, it does not purport to provide any actual construction for any claim term.  Rather, FastCap asks the Court to infer its claim constructions from its

---

[5] It had appeared from its early briefing that FastCap was arguing that the two projections in its DB clip constituted one leg, not two, but to the extent this was ever FastCap's position, it has been dropped.

[6] Again, Zipwall need not address FastCap's arguments against applying the doctrine of equivalents since it has shown that FastCap's products literally infringe the asserted claims of the '004 patent.  However, FastCap is wrong in claiming that the doctrine of prosecution history estoppel applies.  As discussed in the preceding section, the amendments made to claim 35 had nothing to do with the number of legs on any given side surface.  Since the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question, the doctrine of prosecution history estoppel should not apply.  See Festo Corp., 535 U.S. at 740.

assertions of non-infringement.  When the contested elements are properly construed, however, it is clear that they are present in FastCap's accused devices and thus summary judgment of infringement is appropriate.

### (1) If Properly Construed, the "Hinged Joint" Element Is Indisputably Present in FastCap's Accused Devices

FastCap has essentially construed the "hinged joint" of claims 1-5, 7-9, and 12-16 of the '076 patent as being element 99 of the '076 patent's specification, as shown in Fig. 8C (shown below).



Figure 8C

This proposed construction is an attempt to simply ignore the language of the claims themselves and violates a "'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips, 415 F.3d at 1312 (quoting Innova, 381 F.3d at 1115).  Element 99 of the '076 patent and its description in the specification bear no relationship to the "hinged joint" as claimed.

Claim one, for example, states in relevant part that "the mechanism at the second end interfaces with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion" (emphasis added).  In Figure 8C, the "second end" of the partition mount is the "head 28", and the "elongated portion" is the portion of the pole that is shown (but not labeled).  Under FastCap's proposed construction which interprets element 99 to

14

be the "hinged joint", the coupling mechanism: (1) would not interface with the elongated portion at the hinged joint, and (2) would not be pivotable with respect to the elongated portion.

In the context of the '076 patent, the "hinged joint" describes "joint 56", which is present in Figures 3A and 5A, for example. There, it can clearly be seen that the "head 28" (the "second end") interfaces with the "plunger 46" (the "elongated portion") at "joint 56" (the "hinged joint") such that the mechanism is pivotable with respect to the "plunger 46" (the "elongated portion"), as shown below. (See Slocum Decl., ¶ 18.)



Figure 3A                 Figure 5A

FastCap's proposed construction is thus in conflict with the plain language of the claim, as well as the specification of the '076 patent.

Once the term is properly construed, it is undisputable that FastCap's accused products have a "hinged joint". See, e.g., EMI Group North America, Inc. v. Intel Corp., 157 F.3d 887, 892 (Fed. Cir. 1998) (finding that where the structure and operation of an accused device was indisputably clear, claim construction resolved all issues). As described in Zipwall's Cross-Motion and ZipWall's claim charts, and as explained by Professor Slocum, this element is satisfied. (Zipwall Cross-Motion, Docket No. 29, at 18; Slocum Decl. ¶¶ 18-21.) This pivotable hinged joint in FastCap's products is again shown below:

  

Since FastCap only relies on an incorrect claim construction and offers no response to this clear showing of infringement, summary judgment is appropriate.

### (2) The "High Friction" Element Is Disputed

ZipWall agrees that FastCap has made out a genuine issue of material fact as to whether the sticker on the top of FastCap's DB Clip reads on the "high friction" element of claims 29, 78-83, and 85.  Zipwall thus withdraws its motion for summary judgment with respect to these claims of the '076 patent.  Since only one claim need be infringed to support judgment, however, this issue need not be addressed by the Court for ZipWall to be granted summary judgment.  See Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002) (requiring only that "all of the limitations of at least one claim are present" in the accused device).

### (3) If Properly Construed, the "Engages the Floor" Element Is Indisputably Present in FastCap's Accused Devices

Although FastCap still refuses to articulate a claim construction for "engages the floor," one can be inferred from its argument.  FastCap is requesting that Court construe "engages the floor" to require some sort of direct engagement with the floor, and FastCap contends that its accused products which engage the floor through a plastic curtain do not infringe.  (See FastCap Opp., Docket No. 38, at 17; Suppl. Akers Decl., ¶ 5.)  FastCap is wrong.

The last portion of claim 64 of the '076 patent states: "mounting the partition mount such that the first end engages the floor and the second section of the head engages the ceiling."  Contrary to FastCap's assertions, nothing in this claim language requires that either end of the

partition mount <u>directly</u> engage the floor or ceiling. The word "directly" does not appear in the claim. The plain meaning of the claim therefore does not require direct engagement.

Moreover, the language of other claims of the '076 patent demonstrates that "engages the floor" does not require direct engagement of the floor. <u>See</u> <u>Phillips</u>, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.") (internal citations omitted). For example, claim 1 of the '076 patent provides, in relevant part, that "the second end of the partition mount <u>directly</u> <u>engages</u> the ceiling," distinguishing from the first end which merely "<u>engages</u> the floor." This distinction between "engaging" and "directly engaging" is used consistently throughout the '076 patent. (<u>See. e.g.</u>, '076 patent, independent claims 1, 78, 86, and 91.)

Additionally, the figures and related descriptions in the '076 patent make clear that "engaging the floor" includes "tuck(ing) a lower portion of the curtain 30 under the foot 26 to add tension to the curtain and secure the curtain to the floor." ('076 patent, col. 8, lines 18-21; <u>see also</u> <u>id.</u>, col. 7, lines 61-64 (describing curtain held under foot); <u>id.</u>, Figs. 6, 7D-E.)



(Illustrative examples of mount engaging floor through curtain)

In short, based on the plain meaning of the term and its use in other claims and in the specification, "engages the floor" does not require <u>direct</u> engagement with the floor. Such engagement may be through a plastic curtain.

With this proper construction, it is indisputable that FastCap's accused products meet this element of claims 64, 65, 67-72, 91-94 and 96 and thus infringe these claims, as shown in FastCap's own advertising.[7]



FastCap mounts the partition mount such that a portion of the first end of the partition mount engages the floor.

Consequently, summary judgment of infringement is appropriate.

**B.    The '076 Patent Is Valid**

FastCap has failed to raise *any* arguments in support of its invalidity argument. Summary judgment of validity of the asserted claims of the '076 patent is therefore appropriate.[8]

**V.    The Brown Reference Has No Bearing on the Various Claim Constructions**

FastCap devotes the last section of its brief to a hodge-podge attack on Zipwall's construction of terms in the three patents-in-suit based on its unsupported and unexplained allegation that all the asserted claims of the patents-in-suit would be invalid as either anticipated

---

[7] Paul Akers also admits in his Supplemental Declaration that FastCap's support pole engages the floor through a plastic curtain.  (See Suppl. Akers Decl. ¶ 5.)

[8] In particular, FastCap appears to have abandoned its position that claims 1-16, 64-72, and 78-96 are invalid under 35 U.S.C. § 112(2), for failing to specifically claim more than one mount.  Even if this argument is deemed not to have been abandoned, however, ZipWall is still entitled to summary judgment of validity.  As discussed in ZipWall's Cross Motion, FastCap's position is incorrect on the law ("comprising" claims *do not* need to recite all elements), and completely fails in light of claims 4-7 and 71-72, which recite the use of "a second partition mount." (Zipwall Cross-Motion, Docket No. 29, at 19-21.)

or obvious in view of International Publication No. WO 91/09556 (the "Brown reference").

For many of the reasons already discussed above with respect to FastCap's attempt to invoke the use of wooden 2x4s to argue against the claim construction of the term "compressive/compression mechanism", this argument fails.  (<u>See</u> Section II(A), *supra*.)

First, FastCap is again wrong in asserting that interpreting claims to avoid prior art is a normal component of claim construction.  It is a doctrine that should only be invoked if the claim is still ambiguous after applying all other tools of claim construction.  <u>See</u> <u>Phillips</u>, 415 F.3d at 1327.  Here, there is no reason to apply the maxim because the terms at issue[9] are not ambiguous, based on both their plain meaning and how those terms are used in the patent.

Second, as with FastCap's earlier attempt to invoke the alleged prior art use of wooden 2x4's, FastCap has failed to show that the Brown reference anticipates or renders obvious <u>any claim</u> of <u>any asserted patent</u> using ZipWall's (or any other) proposed constructions.  FastCap has not satisfied its burden of proving by clear and convincing evidence that each patent, which is presumed to be valid, is invalid.[10]  <u>Kahn</u>, 135 F.3d at 1479.  It has not even tried.  It has not performed a claim-by-claim analysis, let alone an element-by-element analysis to show that each and every element of every asserted claim is met by the Brown reference.  <u>Union Oil Co.</u>, 208 F.3d at 994-95.  Instead, all FastCap is arguing is that it believes there was a prior art device that had <u>one</u> element – the "compression/compressive mechanism" – of the asserted claims.  This is clearly insufficient to prove invalidity.

Finally, FastCap's alternative obviousness argument based on the Brown reference is nonsensical and also fails to meet its burden of proof, as FastCap fails to make any showing.  It

---

[9] While FastCap attempts to lump all asserted claims of all the patents-in-suit into this section, the only term it actually discusses is the "compressive/compression mechanism".

[10] FastCap also fails to mention that the Brown reference was already considered by the examiner of the '076 and '004 patents.

does not even attempt to explain what elements of what claims are intended to be combined, and there is no showing of any motivation to combine such elements.  See In re Kotzab, 217 F.3d 1365, 1370 (Fed. Cir. 2000) ("Broad conclusory statements standing alone are not 'evidence' [of a motivation to combine]").

In short, the Brown reference has no bearing on the construction of any term in the '615, '004 and '076 patents.

## CONCLUSION

The Court should enter summary judgment of liability (i.e., infringement and validity) for ZipWall and set a schedule for damages discovery.

Respectfully submitted,

ZIPWALL, LLC

Dated: October 20, 2006

by:   /s/ Matthew B. Lowrie
Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true a correct copy of the foregoing was served upon the listed below by electronically filing with the court on October 20, 2006:

Sarah Cooleybeck, Esq.
Foley Hoag LLP
155 Seaport Blvd.
Boston, MA 02210
Telephone: 617.832.1000
Facsimile: 617.832.7000
E-mail: scooleybeck@foleyhoag.com

Michael James Cronen, Esq.
Law Offices of Harris Zimmerman
1330 Broadway, Suite 710
Oakland, CA 94612
Telephone: 510.465.0828
Facsimile: 510.465.2041
E-mail: mcronen@zimpatent.com

Dated: October 20, 2006                    /s/ Matthew B. Lowrie
                                           Matthew B. Lowrie, Esq.

21