IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZIPWALL, LLC,<br><br>       Plaintiff<br><br>v.<br><br>FASTCAP, LLC.,<br><br>       Defendant. | Civil Action No.:  05-cv-11852-JLT |

**SUPPLEMENTAL DECLARTION OF MATTHEW H. GRADY IN
SUPPORT OF ZIPWALL, LLC'S REPLY TO FASTCAP'S
OPPOSITION OF SUMMARY JUDGMENT**

I, Matthew H. Grady, having been duly sworn, state as follows:

1.    I am an attorney with the law firm of Lowrie, Lando & Anastasi, LLP, and counsel for plaintiff ZipWall, LLC ("ZipWall") in this action.  I make this declaration in support of ZipWall's Reply to FastCap's Opposition of ZipWall's Cross Motion for Summary Judgment.

2.    Attached hereto as Exhibit A is a true and correct copy of the July 12, 2004, Office Action from the File History of U.S. Patent No. 6,942,004.

3.    Attached hereto as Exhibit B is a true and correct copy of U.S. Patent No. 4,852,844, to Villaveces.

Subscribed to and sworn by me under the pains and penalties of perjury, this 20th day of October, 2006.

_____
Matthew H. Grady

# EXHIBIT A



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/301,233 | 11/21/2002 | Jeffrey P. Whittemore | ZIP-0001CON4 | 8682 |

| | |
|---|---|
| 7590    07/12/2004 | EXAMINER |
| Mills & Onello, LLP | LEV, BRUCE ALLEN |
| Suite 605 | |
| Eleven Beacon Street | ART UNIT    PAPER NUMBER |
| Boston, MA  02108 | 3634 |

DATE MAILED: 07/12/2004

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

ZW000188

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 10/301,233 | WHITTEMORE, JEFFREY P. |
| | Examiner | Art Unit |
| | Bruce A. Lev | 3634 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>21 June 2004</u>.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-17,19-40 and 42-53</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-17,19-40 and 42-53</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>21 November 2002</u> is/are: a)☐ accepted or b)☒ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

ZW000189

BRUCE A. LEV
PRIMARY EXAMINER

Attachment(s)
1)☒ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date <u>6/1/04 & 6/4/04</u>.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application (PTO-152)
6)☐ Other: _____.

| | | |
|---|---|---|
| *Notice of References Cited* | Application/Control No.<br>10/301,233 | Applicant(s)/Patent Under Reexamination<br>WHITTEMORE, JEFFREY P. |
| | Examiner<br>Bruce A. Lev | Art Unit<br>3634 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-3,861,663 | 01-1975 | Strickland, Robert V. | 269/26 |
| | B | US-4,852,844 | 08-1989 | Villaveces, James W. | 248/314 |
| | C | US-5,240,058 | 08-1993 | Ward, Thomas T. | 160/123 |
| | D | US-5,287,614 | 02-1994 | Ehrlich, Paul | 29/450 |
| | E | US-5,299,773 | 04-1994 | Bertrand, Ruston | 248/514 |
| | F | US-5,640,826 | 06-1997 | Hurilla, Jr., Ray | 52/749.14 |
| | G | US-5,645,272 | 07-1997 | Brennan, Sr., Richard | 269/68 |
| | H | US-5,722,691 | 03-1998 | Patel, Tejal | 281/42 |
| | I | US-6,067,691 | 05-2000 | Feltman, Jeffrey L. | 24/295 |
| | J | US-6,474,609 | 11-2002 | Pinard, Jean | 248/303 |
| | K | US-2001/0029640 | 10-2001 | Cassar, Simon R. | 15/144.1 |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| ✓ | N | 2156894 | 10-1985 | United Kingdom | Blake | 160/368.1x |
| ✓ | O | 04420849A | 06-1994 | Germany | Clemens | 160/368.1x |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U S Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 06292004

ZW000190

Application/Control Number: 10/301,233                                    Page 2
Art Unit: 3634

## DETAILED ACTION

### *Drawings*

The drawings are objected to under 37 CFR 1.83(a). The drawings must show

every feature of the invention specified in the claims. Therefore, the clamp being

"*slidably* coupled" to the head, as in claims 7, 9, 28, and 30, must be shown or the

feature(s) canceled from the claim(s). No new matter should be entered.

Corrected drawing sheets are required in reply to the Office action to avoid

abandonment of the application. Any amended replacement drawing sheet should

include all of the figures appearing on the immediate prior version of the sheet, even if

only one figure is being amended. The figure or figure number of an amended drawing

should not be labeled as "amended." If a drawing figure is to be canceled, the

appropriate figure must be removed from the replacement sheet, and where necessary,

the remaining figures must be renumbered and appropriate changes made to the brief

description of the several views of the drawings for consistency. Additional replacement

sheets may be necessary to show the renumbering of the remaining figures. The

replacement sheet(s) should be labeled "Replacement Sheet" in the page header (as

per 37 CFR 1.84(c)) so as not to obstruct any portion of the drawing figures. If the

changes are not accepted by the examiner, the applicant will be notified and informed of

any required corrective action in the next Office action. The objection to the drawings

will not be held in abeyance.

ZW000191

Application/Control Number: 10/301,233                                    Page 3
Art Unit: 3634

### Claim Objections

Claim 44 is objected to because the word "and" should be inserted before "a

plurality of legs extending transverse to the second engaging surface".


### Claim Rejections - 35 USC § 112

Claim 37 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite

for failing to particularly point out and distinctly claim the subject matter which applicant

regards as the invention.

There is an inconsistency between the language in the preamble and certain

portions in the body of the claims, thereby making the scope of the claims unclear.  For

example, the preamble clearly indicates that the subcombination of a "mount" is being

claimed with the functional recitation of the "mount" being used as "attachable to an

extension pole".  However, the body of the claim positively recites the "pole", e.g., "in

combination with an...extension pole", which indicates the claims as being drawn to a

combination of the "mount" and the "pole".  Therefore, the applicant is required to clarify

what the claims are intended to be drawn to, i.e., either the "mount" alone or in

combination with the "pole", and to present the claims with the language which is

consistent with the invention.  The applicant should note that "*adapted to be*" language

may be appropriate if claiming the "mount" alone (i.e., "adapted to be secured to").


### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

**ZW000192**

Application/Control Number: 10/301,233                                Page 4
Art Unit: 3634

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Claims 1-5, 10-14, 19-26, 31-37, 42, and 43 are rejected under 35 U.S.C. 102(b)

as being anticipated by *Brennan, Sr. 5,645,272.*

*Brennan, Sr. sets forth* a mounting system comprising a pole (inclusive of

members 30 and 50); a foot 10; a head (inclusive of member 150); a compression

mechanism (inclusive of members 70 and 85) between the foot and the head; and a

clamp 169 (best illustrated in Figure 16) including an engagement arm at a location

lower than a top portion of the head.


### Claim Rejections - 35 USC § 103

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Claims 6-9, 15-17, 27-30, and 38-40 are rejected under 35 U.S.C. 103(a) as

being unpatentable over *Brennan, Sr. 5,645,272 in view of Ehrlich 5,287,614.*

*Brennan, Sr. sets forth* a mounting system, as advanced above, except for the

clamp being biased by a spring and rotatably coupled to the head.  However, *Ehrlich*

*teaches* a clamp 12 being biased by a spring and rotatably coupled to a head 14.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the mounting system of Brennan, Sr. by mounting the

ZW000193

Application/Control Number: 10/301,233                                   Page 5
Art Unit: 3634

clamp as being biased by a spring and rotatably coupled thereto, as taught by Ehrlich,

in order to provide means to more easily and quickly releasably attach members to the

head.

Claims 44-53 are rejected under 35 U.S.C. 103(a) as being unpatentable over

*Brennan, Sr. 5,645,272 in view of Villaveces 4,852,844.*

*Brennan, Sr. sets forth* a mounting system, as advanced above, except for the

clip being engaged with the head via a plurality of flexible legs. However, *Villaveces*

*teaches* the use of legs 36 to attach a member to a head of an extension pole.

Therefore, it would have been obvious to one of ordinary skill in the art at the time the

invention was made to modify the connection between the clip and the head of

Brennan, Sr. by incorporating flexible legs, as taught by Ehrlich, in order to provide

means to more easily and quickly releasably attach the clip to the head.


### *Conclusion*

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Bruce A. Lev whose telephone number is (703) 308-

7470.

Any inquiry of a general nature or relating to the status of this application should

be directed to the Group receptionist whose telephone number is (703) 308-2168.

June 29, 2004

*Bruce A. Lev*
*Primary Examiner*
*Group 3600*

ZW000194



# ELECTRONIC INFORMATION DISCLOSURE STATEMENT

Electronic Version v18
Stylesheet Version v18.0

| Title of Invention | Partition Mount |
|---|---|

Application Number: 10/301233
Confirmation Number: 8682
First Named Applicant: Jeffrey Whittemore
Attorney Docket Number: ZIP0001Con4
Search string:
( 3604397 or 3608991 or 3956784 or 4111217
or 4576354 or 4770086 or 5040915 or 5116012
or 5379491 or 5497537 or 5558501 or 5941586
or 6467741 or 4708189 or 5308280 or 4794974
or 4139101 or 5524693 or 5345989 or 4874028
or 4396325 or 3767253 or 5038889 or 3792510
or 0827000 or 2219169 or 2474158 or 2816769
or 2903227 or 2942829 or 3072784 or 3333808
or 3327310 or 3350120 or 3529860 or 3592434
or 3822850 or 3952877 or 4645473 or 5056753
or 3247558 or 4502256 or 5884424 or 5375303
or 5940942 or 4078756 ).pn.

## US Patent Documents

Note: Applicant is not required to submit a paper copy of cited US Patent Documents

| init | Cite.No. | Patent No. | Date | Patentee | Kind | Class | Subclass |
|---|---|---|---|---|---|---|---|
| | 1 | 3604397 | 1971-09-14 | Salerno | | 119 | 29 |
| | 2 | 3608991 | 1971-09-28 | Wade | | 312 | 345 |
| | 3 | 3956784 | 1976-05-18 | Vargas | | 5 | 362 |
| | 4 | 4111217 | 1978-09-05 | Victor | | 135 | 15 |
| | 5 | 4576354 | 1986-03-18 | Blessing, Sr. | | 248 | 354.5 |
| | 6 | 4770086 | 1988-09-13 | Gabster | | 98 | 50 |
| | 7 | 5040915 | 1991-08-20 | Stuart, et al. | | 403 | 322 |
| | 8 | 5116012 | 1992-05-26 | Offenhauer, et al. | | 248 | 452 |
| | 9 | 5379491 | 1995-01-10 | Solo | | 24 | 3 |
| | 10 | 5497537 | 1996-03-12 | Robinson, et al. | | 24 | 716 |
| | 11 | 5558501 | 1996-09-24 | Wang, et al. | | 416 | 244 |

APP_ID=10301233

ZW000195

| | | | | | |
|---|---|---|---|---|---|
| 12 | 5941586 | 1999-08-24 | Fann | 294 | 19.1 |
| 13 | 6467741 | 2002-10-22 | Shih | 248 | 200.1 |
| 14 | 4708189 | 1987-11-24 | Ward | 160 | 351 |
| 15 | 5308280 | 1994-05-03 | Dotson | 454 | 170 |
| 16 | 4794974 | 1989-01-03 | Melino | 160 | 330 |
| 17 | 4139101 | 1979-02-13 | Towfigh | 211 | 86 |
| 18 | 5524693 | 1996-06-11 | Hamilton | 160 | 243 |
| 19 | 5345989 | 1994-09-13 | Brophy | 160 | 354 |
| 20 | 4874028 | 1989-10-17 | Lynch, et al. | 160 | 332 |
| 21 | 4396325 | 1983-08-02 | Joice-Cavanagh | 410 | 129 |
| 22 | 3767253 | 1973-10-23 | Kluetsch | 296 | 24 R |
| 23 | 5038889 | 1991-08-13 | Jankowski | 182 | 129 |
| 24 | 3792510 | 1974-02-19 | Evett | 24 | 243 |
| 25 | 0827000 | 1906-07-24 | Dinsmore | | |
| 26 | 2219169 | 1940-10-22 | Alter | 248 | 1 |
| 27 | 2474158 | 1949-06-21 | Neely | 155 | 180 |
| 28 | 2816769 | 1957-12-17 | Noble | 279 | 83 |
| 29 | 2903227 | 1959-09-08 | de Kalb Key | 248 | 356 |
| 30 | 2942829 | 1960-06-28 | Stiffel | 248 | 193 |
| 31 | 3072784 | 1963-01-08 | Mann | 240 | 81 |
| 32 | 3333808 | 1967-08-01 | Du Boff | 248 | 354 |
| 33 | 3327310 | 1967-06-20 | Bethune, et al. | 343 | 702 |
| 34 | 3350120 | 1967-10-31 | Hinrichs | 287 | 58 |
| 35 | 3529860 | 1970-09-22 | Jelley | 287 | 189.36 |
| 36 | 3592434 | 1971-07-13 | Murray | 248 | 480 |
| 37 | 3822850 | 1974-07-09 | Elias | 248 | 354 S |
| 38 | 3952877 | 1976-04-27 | Kindl | 211 | 105.5 |
| 39 | 4645473 | 1987-02-24 | Mochizuki | 464 | 79 |
| 40 | 5056753 | 1991-10-15 | Lanau, et al. | 248 | 542 |
| 41 | 3247558 | 1966-04-26 | Kaufman | 24 | 81 |
| 42 | 4502256 | 1985-03-05 | Hahn | 52 | 63 |
| 43 | 5884424 | 1999-03-23 | Smith | 40 | 610 |
| 44 | 5375303 | 1994-12-27 | Shenier | 24 | 163 |
| 45 | 5940942 | 1999-08-24 | Fong | 24 | 459 |
| 46 | 4078756 | 1978-03-14 | Cross | 248 | 226.4 |

Remarks

APP_ID=10301233

ZW000196

Note: Remarks are not for responding to an office action.

IDS Part 1 of 2.. References 1-46 of this Electronic IDS Submission (Part 1 of 2) are of record in related parent patent applications Serial Nos. 08/740,372; 09/302,122; 09/613,645; 09/884,337.

Signature

| Examiner Name | Date |
|---|---|
| | 6/29/07 |

ZW000197

Sheet 1 of 1

| Subst. Form PTO-1449 | Docket Number (Optional) | Application Number |
|---|---|---|
| | ZIP-0001Con4 | 10/301,233 |

INFORMATION DISCLOSURE CITATION
IN AN APPLICATION

*(Use several sheets if necessary)*

| Applicant |
|---|
| Jeffrey P. Whittemore |

| Filing Date | Group Art Unit |
|---|---|
| 11/21/02 | 3634 |

### U. S. Patent Documents

| EXAMINER INITIALS | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AA | | | | | | |
| | AB | | | | | | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | Translation YES | NO |
|---|---|---|---|---|---|---|---|---|
| | AL | | | | | | | |
| | AM | | | | | | | |
| | AN | | | | | | | |
| | AO | WO91/09556 | 07/11/91 | PCT | A47G | 5/00 | | |
| | AP | DE29605222 | 07/25/96 | Germany | E04G | 25/08 | | X |
| | AQ | FR2411282 | 06/07/79 | France | E 04 B | 2/74 | | X |

### OTHER DOCUMENTS *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | 6/29/04 |

EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy with next communication to applicant.

PTO-1449 (1-94)                                    J:\ZIP\001con4\PTO1449-SuppIDS 3.wpd

ZW000198

Attachment for PTO-948 (Rev. 03/01, or earlier)
6/18/01

The below text replaces the pre-printed text under the heading,
"Information on How to Effect Drawing Changes," on the back
of the PTO-948 (Rev. 03/01, or earlier) form.

## INFORMATION ON HOW TO EFFECT DRAWING CHANGES

### 1. Correction of Informalities -- 37 CFR 1.85

New corrected drawings must be filed with the changes incorporated therein
Identifying indicia, if provided, should include the title of the invention,
inventor's name, and application number, or docket number (if any) if an
application number has not been assigned to the application. If this information is
provided, it must be placed on the front of each sheet and centered within the top
margin. If corrected drawings are required in a Notice of Allowability (PTOL-
37), the new drawings MUST be filed within the THREE MONTH shortened
statutory period set for reply in the Notice of Allowability. Extensions of time
may NOT be obtained under the provisions of 37 CFR 1.136(a) or (b) for filing
the corrected drawings after the mailing of a Notice of Allowability.  The
drawings should be filed as a separate paper with a transmittal letter addressed to
the Official Draftsperson.

### 2. Corrections other than Informalities Noted by Draftsperson on form PTO-948.

All changes to the drawings, other than informalities noted by the Draftsperson,
MUST be made in the same manner as above except that, normally, a highlighted
(preferably red ink) sketch of the changes to be incorporated into the new
drawings MUST be approved by the examiner before the application will be
allowed. No changes will be permitted to be made, other than correction of
informalities, unless the examiner has approved the proposed changes

Timing of Corrections

Applicant is required to submit the drawing corrections within the
time period set in the attached Office communication  See 37 CFR
1.85(a)

Failure to take corrective action within the set period will result in
ABANDONMENT of the application

ZW000199

# The United States Patent and Trademark Office has changed certain mailing addresses!

### Effective May 1, 2003

Use the address provided in this flyer after May 1, 2003 for any correspondence with the United States Patent and Trademark Office (USPTO) in patent-related matters to organizations reporting to the Commissioner for Patents.

DO NOT USE the Washington DC 20231 and P.O. Box 2327 Arlington, VA 22202 addresses after May 1, 2003 for any correspondence with the USPTO even if these old addresses are indicated in the accompanying Office action or Notice or in any other action, notice, material, form, instruction or *other* information.

Correspondence in patent-related matters to organizations reporting to the Commissioner for Patents must <u>now</u> be addressed to:



**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**



### Special Mail Stop designations to replace Special Box designations

Also effective May 1, 2003, the USPTO is changing the special Box designations for Patents and Trademarks to corresponding Mail Stop designations (*e.g.*, "Box 4" will now be "Mail Stop 4").

For further information, see *Correspondence with the United States Patent and Trademark Office*, 68 *Fed. Reg.* 14332 (March 25, 2003). A copy of the *Federal Register* notice is available on the USPTO's web site at http://www.uspto.gov/web/menu/current.html#register

A listing of specific USPTO mailing addresses (See Patents – specific) will be available on the USPTO's web site on April 15, 2003 at http://www.uspto.gov/main/contacts.htm

Persons filing correspondence with the Office should check the rules of practice, the <u>Official Gazette</u>, or the Office's Internet Web site (www.uspto.gov) to determine the appropriate address and Mail Stop Designation (if applicable) for all correspondence being delivered to the USPTO via the United States Postal Service (USPS).

Questions regarding the content of this flyer should be directed to the Inventor Assistance Center at (703) 308-4357 or toll-free at 1-800-786-9199.

ZW000200

# USPTO TO PROVIDE ELECTRONIC ACCESS TO CITED U.S. PATENT REFERENCES WITH OFFICE ACTIONS AND CEASE SUPPLYING PAPER COPIES

In support of its 21st Century Strategic Plan goal of increased patent e-Government, beginning in June 2004, the United States Patent and Trademark Office (Office or USPTO) will begin the phase-in of its E-Patent Reference program and hence will: (1) **provide downloading capability of the U.S. patents and U.S. patent application publications cited in Office actions** via the E-Patent Reference feature of the Office's Patent Application Information Retrieval (PAIR) system; and (2) **cease mailing paper copies of U.S. patents and U.S. patent application publications with Office actions** (in applications and during reexamination proceedings) except for citations made during the international stage of an international application under the Patent Cooperation Treaty (PCT). In order to use the new E-Patent Reference feature applicants must: (1) obtain a digital certificate and software from the Office; (2) obtain a customer number from the Office; and (3) properly associate patent applications with the customer number. Alternatively, copies of all U.S. patents and patent application publications can be accessed without a digital certificate from the USPTO web site, from the USPTO Office of Public Records, and from commercial sources. The Office will continue the practice of supplying paper copies of foreign patent documents and non-patent literature with Office actions. Paper copies of cited references will continue to be provided by the USPTO for international applications during the international stage.

## Schedule

| | |
|---|---|
| June 2004 | TCs 1600, 1700, 2800 and 2900 |
| July 2004 | TCs 3600 and 3700 |
| August 2004 | TCs 2100 and 2600 |

All U.S. patents and U.S. patent application publications are available on the USPTO web site. However, a simple system for downloading the cited U.S. patents and patent application publications has been established for applicants, called the E-Patent Reference system. As E-Patent Reference and Private PAIR require participating applicants to have a customer number, retrieval software and a digital certificate, all applicants are strongly encouraged to contact the Patent Electronic Business Center to acquire these items. To be ready to use this system by June 1, 2004, contact the Patent EBC as soon as possible by phone at 866-217-9197 (toll-free), 703-305-3028 or 703-308-6845 or electronically via the Internet at ebc@uspto.gov.

## Other Options

The E-Patent Reference function requires the applicant to use the secure Private PAIR system, which establishes confidential communications with the applicant. Applicants using this facility must receive a digital certificate, as described above. Other options for obtaining patents which do not require the digital certificate include the USPTO's free Patents on the Web program (http://www.uspto.gov/patft/index.html). The USPTO's Office of Public Records also supplies copies of patents for a fee (http://ebiz1.uspto.gov/oems25p/index.html). Commercial sources also provide U.S. patents and patent application publications.

*For complete instructions see the Official Gazette Notice,* USPTO TO PROVIDE ELECTRONIC ACCESS TO CITED U.S. PATENT REFERENCES WITH OFFICE ACTIONS AND CEASE SUPPLYING PAPER COPIES, *on the USPTO web site.*

**ZW000201**

NOTICE OF OFFICE PLAN TO CEASE SUPPLYING COPIES OF CITED U.S. PATENT
REFERENCES WITH OFFICE ACTIONS, AND PILOT TO EVALUATE THE
ALTERNATIVE OF PROVIDING ELECTRONIC ACCESS TO SUCH U.S. PATENT
REFERENCES

### Summary

The United States Patent and Trademark Office (Office or USPTO) plans in the near future to:
(1) cease mailing copies of U.S. patents and U.S. patent application publications (US patent
references) with Office actions except for citations made during the international stage of an
international application under the Patent Cooperation Treaty and those made during
reexamination proceedings; and (2) provide electronic access to, with convenient downloading
capability of, the US patent references cited in an Office action via the Office's private Patent
Application Information Retrieval (PAIR) system which has a new feature called "E-Patent
Reference." Before ceasing to provide copies of U.S. patent references with Office actions, the
Office shall test the feasibility of the E-Patent Reference feature by conducting a two-month pilot
project starting with Office actions mailed after December 1, 2003. The Office shall evaluate the
pilot project and publish the results in a notice which will be posted on the Office's web site
(www.USPTO.gov) and in the Patent Official Gazette (O.G.). In order to use the new E-Patent
Reference feature during the pilot period, or when the Office ceases to send copies of U.S. patent
references with Office actions, the applicant must: (1) obtain a digital certificate from the Office;
(2) obtain a customer number from the Office, and (3) properly associate applications with the
customer number. The pilot project does not involve or affect the current Office practice of
supplying paper copies of foreign patent documents and non-patent literature with Office actions.
Paper copies of references will continue to be provided by the USPTO for searches and written
opinions prepared by the USPTO for international applications during the international stage and
for reexamination proceedings.

### Description of Pilot Project to Provide Electronic Access to Cited U.S. Patent References

On December 1, 2003, the Office will make available a new feature, E-Patent Reference, in the
Office's private PAIR system, to allow more convenient downloading of U.S. patents and U.S.
patent application publications. The new feature will allow an authorized user of private PAIR
to download some or all of the U.S. patents and U.S. patent application publications cited by an
examiner on form PTO-892 in Office actions, as well as U.S. patents and U.S. patent application
publications submitted by applicants on form PTO/SB08 (1449) as part of an IDS. The retrieval
of some or all of the documents may be performed in one downloading step with the documents
encoded as Adobe Portable Document format (.pdf) files, which is an improvement over the
current page-by-page retrieval capability from other USPTO systems.

ZW000202

**Steps to Use the New E-Patent Reference Feature During the Pilot Project and Thereafter**

Access to private PAIR is required to utilize E-Patent Reference. If you don't already have access to private PAIR, the Office urges practitioners, and applicants not represented by a practitioner, to take advantage of the transition period to obtain a no-cost USPTO Public Key Infrastructure (PKI) digital certificate, obtain a USPTO customer number, associate all of their pending and new application filings with their customer number, install no-cost software (supplied by the Office) required to access private PAIR and E-Patent Reference feature, and make appropriate arrangements for Internet access. The full instructions for obtaining a PKI digital certificate are available at the Office's Electronic Business Center (EBC) web page at: <http://www.uspto.gov/ebc/downloads.html>. Note that a notarized signature will be required to obtain a digital certificate.

To get a Customer Number, download and complete the Customer Number Request form, PTO-SB125, at:  http://www.uspto.gov/web/forms/sb0125.pdf.  The completed form can then be transmitted by facsimile to the Electronic Business Center at (703) 308-2840, or mailed to the address on the form.   If you are a registered attorney or patent agent, then your registration number must be associated with your customer number. This is accomplished by adding your registration number to the Customer Number Request form.  A description of associating a customer number with an application is described at the EBC web page at: http://www.uspto.gov/ebc/registration_pair.html.

The E-Patent Reference feature will be accessed using a new button on the private PAIR screen. Ordinarily all of the cited U.S. patent and U.S. patent application publication references will be available over the Internet using the Office's new E-Patent Reference feature. The size of the references to be downloaded will be displayed by E-Patent Reference so the download time can be estimated. Applicants and registered practitioners can select to download all of the references or any combination of cited references. Selected references will be downloaded as complete documents as Adobe Portable Document Format (.pdf) files. For a limited period of time, the USPTO will include a copy of this notice with Office actions to encourage applicants to use this new feature and, if needed, to take the steps outlined above in order to be able to utilize this new feature during the pilot and thereafter.

During the two-month pilot, the Office will evaluate the stability and capacity of the E-Patent Reference feature to reliably provide electronic access to cited U.S. patent and U.S. patent application publication references. While copies of U.S. patent and U.S. patent application publication references cited by examiners will continue to be mailed with Office actions during the pilot project, applicants are encouraged to use the private PAIR and the E-Patent Reference feature to electronically access and download cited U.S. patent and U.S. patent application publication references so the Office will be able to objectively evaluate its performance. The public is encouraged to submit comments to the Office on the usability and performance of the E-Patent Reference feature during the pilot. Further, during the pilot period registered practitioners, and applicants not represented by a practitioner, are encouraged to experiment with the feature, develop a proficiency in using the feature, and establish new internal processes for using the new access to the cited U.S. patents and U.S. patent application publications to prepare for the anticipated cessation of the current Office practice of supplying copies of such cited

2

ZW000203

references. The Office plans to continue to provide access to the E-Patent Reference feature during its evaluation of the pilot.

**Comments**

Comments concerning the E-Patent Reference feature should be in writing and directed to the Electronic Business Center (EBC) at the USPTO by electronic mail at eReference@uspto.gov or by facsimile to (703) 308-2840. Comments will be posted and made available for public inspection. To ensure that comments are considered in the evaluation of the pilot project, comments should be submitted in writing by January 15, 2004.

Comments with respect to specific applications should be sent to the Technology Centers' customer service centers. Comments concerning digital certificates, customer numbers, and associating customer numbers with applications should be sent to the Electronic Business Center (EBC) at the USPTO by facsimile at (703) 308-2840 or by e-mail at EBC@uspto.gov.

**Implementation after Pilot**

After the pilot, its evaluation, and publication of a subsequent notice as indicated above, the Office expects to implement its plan to cease mailing paper copies of U.S. patent references cited during examination of non provisional applications on or after February 2, 2004; although copies of cited foreign patent documents, as well as non-patent literature, will still be mailed to the applicant until such time as substantially all applications have been scanned into IFW.

**For Further Information Contact**

Technical information on the operation of the IFW system can be found on the USPTO website at http://www.uspto.gov/web/patents/ifw/index.html. Comments concerning the E-Patent Reference feature and questions concerning the operation of the PAIR system should be directed to the EBC at the USPTO at (866) 217-9197. The EBC may also be contacted by facsimile at (703) 308-2840 or by e-mail at EBC@uspto.gov.

Date: 12/1/03

Nicholas P. Godici
Commissioner for Patents

3

ZW000204

# EXHIBIT B

# United States Patent [19]

## Villaveces

[11] Patent Number: 4,852,844

[45] Date of Patent: Aug. 1, 1989

[54] **DEVICE FOR AIDING IN PREPARATION OF INTRAVENOUS THERAPY**

[76] Inventor: **James W. Villaveces,** 88 Eugenia Dr., Ventura, Calif. 93003

[21] Appl. No.: **185,963**

[22] Filed: **Apr. 25, 1988**

[51] Int. Cl.⁴ ............................................... A61M 5/32

[52] U.S. Cl. ................................. 248/314; 248/316.7; 604/192; 604/263

[58] Field of Search ............... 248/534, 537, 538, 539, 248/205.1, 205.3, 205.4, 205.2, 359 R, 108, 359 A, 360, 312, 312.1, 313, 65, 74.1, 74.2, 309.1, 314, 316.7, 316.1, 121; 604/192, 187, 263; 206/365, 366, 380

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,053,255 | 2/1913 | Ward | 248/538 |
| 3,304,039 | 2/1967 | Edelman | 248/108 |
| 3,370,818 | 2/1968 | Perr | 248/205.2 |
| 4,239,167 | 12/1980 | Lane | 248/205.3 |
| 4,375,849 | 3/1983 | Hanifl | 206/366 |
| 4,429,793 | 2/1984 | Ehmann | 206/366 |
| 4,485,918 | 12/1984 | Mayer | 206/380 |
| 4,573,576 | 3/1986 | Krol | 206/366 |
| 4,596,562 | 6/1986 | Vernon | 604/192 |
| 4,623,336 | 11/1986 | Pedicano | 604/263 |
| 4,717,386 | 1/1988 | Simmons | 604/263 |
| 4,737,149 | 4/1988 | Gillilan | 604/192 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2740335 | 9/1977 | Fed. Rep. of Germany | 206/366 |
| 3433359 | 4/1986 | Fed. Rep. of Germany | 604/263 |
| 2198644 | 6/1988 | United Kingdom | 604/192 |

*Primary Examiner*—Ramon O. Ramirez
*Assistant Examiner*—Robert A. Olson
*Attorney, Agent, or Firm*—Milton S. Gerstein

[57] **ABSTRACT**

A device for aiding a nurse in the preparation and set-up of intravenous therapy. The device has a backing plate with a backing layer of adhesive for securement to an IV pole, the backing plate being made of a flexible material so that it may be wrapped about the IV pole. A frustro-conical hollow member is supported by the front surface of the backing plate in which are provided friction-gripping ribs to firmly hold and grip a needle-cap of an intravenous needle, so that, when the needle and its cap are inserted into the hollow the cap is firmly held, after which the needle proper may be removed from the cap for subsequent IV therapy. The device allows a nurse to accomplish such needle and cap separation with only one hand, to free her other hand to hold another part of the IV set-up or to perform another task.

**13 Claims, 2 Drawing Sheets**



**U.S. Patent**    Aug. 1, 1989    Sheet 1 of 2    **4,852,844**





4,852,844

**1**

## DEVICE FOR AIDING IN PREPARATION OF INTRAVENOUS THERAPY

### BACKGROUND OF THE INVENTION

The present invention is directed to a device that aids a nurse in the preparation of setting up intravenous therapy. At least ten million of the more than forty million Americans hospitalized each year receive some form of intravenous therapy, such as blood transfusion, fluid and electrolyte replacement or total parental nutrition. Many things may go wrong with such therapy, such as, for example, sepsis. In effect, the IV is a conduit through the protective skin for an infection, which, therefore, must be guarded against. Any such tube inserted into the body, whether IV, nasogastric feeding, intra-arterial monitoring line or urinary catheter, deserves a maximum in antiseptic technique. Yet, proof is extant showing that hospital personnel are often delinquent in meeting necessary sanitary and hygenic precautions. Studies have found that 8% of nosocomial (hospital-acquired) infections are ascribed to use of intravascular lines. This translates into an estimated 50,000 device-related septiemias in the United States each year. Of 97 nosocomial epidemics in the world literature between 1965 and 1978, fully ⅓ derived from infusion therapy. Cultures done on catheter or needle used in IV therapy are positive for bacterial isolation in 33% of infusions during the first 12 hours of infusion. Studies have shown the link between thrombophlebitis in patients to the bacterial contamination which has been ascribed to non-aseptic techniques during cannula insertion. It is also a common problem to have nurses use unsanitary techniques in the handling of infiltrated IV lines and clot-blocked IV catheters, as well as catheter-bags needing emptying.

Nurses must set up IV solutions, lines, and needles, and to connect them all before attempting to insert the needle and cannula through the skin, and often have no assistants. Thus, they are forced to take short cuts because of time constraints. It is common for a nurse to remove the cap of a needle with her teeth, then reinsert the needle into the cap held between the teeth. Nurses are also wont to drop tubings, which are left to swing in the air, while the nurse clears a blocked line with a syringe, after which clearing, the tubing is reinserted in the needle or catheter. Ofttimes, the tubing is held under the armpit or draped over the IV pole while the needle or catheter is checked. The problem is, simply, that the nurse has too many tasks to perform in such a short time. She must hold the needle, syringe, tubing, caps and tape when the various IV procedures are undertaken. To replace the IV tubing everytime the line infiltrates or is blocked is not cost effective, which also leads to potential contamination at tubing-ends and cannula ends.

### SUMMARY OF THE INVENTION

It is, therefore, the primary objective of the present invention to provide a device by means of which greater care and hygiene may be achieved during the setting up and administering of an intravenous unit as well as during the maintenance thereof.

It is an objective of the present invention to provide a unit that provides a location for use by a nurse in setting up intravenous feeding, and the like, that will temporary hold portions of the IV system, in order to free one of her hands in order to perform another task

**2**

necessary for the IV installation, preparation, maintenance or removal.

It is an objective of the present invention to provide such a unit that, specifically, temporary holds the cap of the IV needle or catheter, and which may be used for removing the cap from the needle with the use of only one hand during initial IV installation.

It is an objective of the present invention to also provide such a unit that will hold the end of the IV tubing during initial set-up as well as during removal.

Toward these and other ends, the unit of the present invention, in a first embodiment, is a plate-like member having a backing of adhesive or a half of a hook-and-pile fastener, which backing or plate itself is flexible in order to wrap it around a conventional IV post or pole. The plate includes on its front surface face an angularly-mounted, conically-shaped, hollow tube into which is inserted an IV needle or catheter with its cover cap thereon. The interior surface of the hollow tube is provided with a spiral rib extending approximately the entire length of the tube, so that, upon the insertion of the needle and its cover cap into the conically-shaped hollow tube, the needle cover cap is held therein by the static friction provided via the spiral rib, so that the needle may be easily removed from the cover cap. The entire procedure of placing the needle and its cap into the tube and the removal of the needle therefrom and from its associated cap is accomplished with one hand, to thus free the the nurse's other hand for other needed tasks in setting up and preparing the IV, or the like. The front surface face of the plate is also provided with a C-clamp, or the like, for holding the end of the IV tubing with its attached cover for accomplishing the removal of that cover from the tube-end also by one hand. The C-clamp is also useful in temporarily holding any tube during set-up, maintenance, infiltration or withdrawal, such as feeding tubes, suction tubes; urine drainage tubes, and the like.

### BRIEF DESCRIPTION OF THE DRAWING

The invention will be more readily understood with reference to the accompanying drawing, wherein:

FIG. 1 an isometric view showing the device for aiding the preparation of intravenous therapy of the invention attached to a post or pole of an IV stand;

FIG. 2 is an isometric view thereof showing the device before securement to the pole;

FIG. 3 is a rear isometric view showing the peelable backing layer of the unit of the invention for exposing the adhesive for securement of the unit to an IV pole;

FIG. 4 is a longitudinal cross-sectional view of the frustro-conical holder for the removal of the needle-cap having a spiral-shaped interior rib for gripping a needle-cap;

FIG. 5 is a view taken along line 5—5 of FIG. 4;

FIG. 6 is a view taken along line 6—6 of FIG. 2;

FIG. 7 is a cross-sectional view taken along line 7—7 of FIG. 6;

FIG. 8 is an isometric view showing the adhesive backing layer exposed after removal of the protective sheet; and

FIG. 9 is a modification of the unit of the invention with the frustro-conical holding tube for the needle-cap being provided with a plurality of interior protuberances for gripping the needle-cap.

4,852,844

3

## DETAILED DESCRIPTION OF THE INVENTION

Referring now to the drawings in greater detail, the unit for aiding in the preparation of intravenous therapy is indicated generally by reference numeral 10. The unit 10 is preferably a disposable product, meant for use only one time or for one patient, after which it is discarded in a sanitary manner. The unit 10 is, therefore, made of any suitable flexible thermoplastic resin material, and is defined by a flat plate member 12 having a front planar surface 14 mounting a downwardly-extending, frustro-conically shaped, hollow, holding tubular element 16, having an end face facing downwardly for the passage therethrough of a needle-cap 20 shown in FIG. 4. The holding tubular element 16 forms an acute angle with respect to the front surface 14, as best seen in FIG. 4, so as to allow for easy insertion of the needle and its cap 20. The element 16 is formed integrally with the face plate 12 and connected to the front surface 14 via a web 18 seen in FIG. 4 that increases in width in the downward direction, in order to establish the acute angular positioning of the element 16. The interior circumferential surface of the element 16 is provided with a spiral rib 24 which provides gripping surfaces along the length of the element 16 by which the needle-cap 20 is gripped, so that after such gripping, the needle or catheter proper 26 (see FIG. 9) may be easily removed from its cap by simply pulling on the associated tubular connections 30 connected to the needle. Needle-caps are generally difficult to remove from its associated needle, manual removal being tedious, time-consuming, and difficult for an average nurse. The element 16 and its spiral rib allow such needle and cap separation to be carried out easily, quickly and with only one hand. The shape of the element 16 is preferably frustro-conical in order to conform to the frustro-conical shape of the needle-cap 20. Alternatively, the element 16 may be cylindrical, with the interior spiral rib forming an interior hollow frustro-conical volume, by having the rib 40 portions thereof project more outwardly from the interior circumferential wall of the element 16 as the spiral progresses upwardly along the interior of the element 16. An additional alternative is simply using such a spiral tubing defining an interior frustro-conical volume that is connected to the front surface 14 via the web 18 directly. The unit 10 also has a C-clamp member 36 which is used to hold the end of an IV tubing, nasogastric tubing, intra-arterial monitoring tube line, urinary catheter tubing 37, and the like, which is used with the needle proper. The C-clamp is also used for holding the cap or cover of the IV tubing, so that the tube-end may be removed from its cap in a manner similar to the needle-cap remover member 16.

The unit 10 is provided with an adhesive backing layer 40 that is exposed after a rear protective sheet 42 is removed. This adhesive layer is used for securing the unit 10 to a portion 46 of an IV pole or unit. Since a typical IV pole is relatively narrow, in the preferred embodiment, the plate 12 is made of a soft thermoplastic resin material that is conventional in order to allow the unit 10 to be wrapped around the outer circumferential surface of the IV pole, with the adhesive layer 40 consummating securement. Cardboard may also be used instead. Instead of the use of an adhesive backing, conventional hook-and-pile fasteners may be used, such having one portion 43 easily securable to the IV pole by a backing of adhesive, with the backing of the unit 10

4

having the mating portion 45 of the hook-and-pile fastener, as shown in FIG. 8. A tab 50 is also provided in order to allow for the easy peeling away of the protective sheet 42.

FIG. 9 shows a modification of the unit 10 in that the element 16' is the same as the element 16 of the preferred embodiment with the exception of the interior spiral rib having been replaced with simple radially-inwardly projecting beads 60 along the length of the frustro-conically shaped interior volume of the element 16' to provide the frictional gripping surfaces to hold the needle-cap 20. Each bead 60 may also, preferably, be circular.

An alternative version of the present invention is to provide the needle-cap 20 itself with an adhesive strip or a portion of a hook-and-pile fastener by which the needle-cap 20 itself is secured to the TV pole 46 directly via such securement. In this case, the needle-cap 20 would have a rectangular strip of such securing means fixedly attached to an outer circumferential surface portion preferably closer to the open mouth end thereof 20', the outward surface of the strip having the adhesive or portion of the hook-and-pile fastener thereof.

While a specific embodiment of the invention has been shown and described, it is to be understood that numerous changes amnd modifications may be made therein without departing the scope and spirit of the invention as set forth in the appended claims.

What I claim is:

1. A device for aiding a nurse in the preparation of intravenous therapy, and the like, comprising:

a backing plate having a substantially planar front surface and rear surface;

means for holding and gripping a needle-cap mounted on said front surface defining a frustro-conically shaped hollow interior into which a needle-cap may be inserted;

said rear surface of said backing plate having securing means thereon for attaching said backing plate to an IV pole, whereby a needle with its cap may be inserted into said means for holding and gripping to grip the needle-cap, after which the needle proper may be removed from its cap for use in intravenous therapy; and

a C-clamp means for holding a tube-end mounted to said front surface of said backing plate.

2. The device according to claim 1, wherein said securing means comprises an adhesive layer formed on said rear surface, and a protective, peelable cover sheet for said adhesive layer that is removed when securing said backing plate to an IV pole, or the like.

3. The device according to claim 1, wherein said backing plate is made of a soft, flexible material so that it may be wrapped about an IV pole during securement by said securing means.

4. The device according to claim 1, wherein said securing means comprises hook-and-pile fastening means, a first portion thereof being affixed to said rear surface of said backing plate, and a second portion thereof being affixable to a portion of an IV pole.

5. The device according to claim 1, wherein said means for holding and gripping comprises a frustro-conically shaped hollow member extending downwardly at an acute angle with respect to said front surface, and web means connecting said member to said front surface, said web means increasing in width from its upper end toward its lower end to thereby provide said acute angular mounting of said member; said mem-

4,852,844

5

ber having a lower open mouth end and an upper closed end.

6. The device according to claim 5, wherein said member further comprises a spiral rib means integrally formed in said hollow interior for increasing static friction with a needle-cap positioned therein.

7. The device according to claim 1, wherein said backing plate and said means for holding and gripping are formed integrally with each other and are made from a flexible material that allows the wrapping thereof about an IV pole.

8. The device according to claim 7, in combination with an upstanding intravenous pole means, said securing means removably attaching said backing plate to a portion of said pole means.

9. The device according to claim 8, in further combination with an intravenous needle, said needle having a protective closure cap; said cap being held in said means for holding and gripping so that said needle proper may be reinserted into said cap when said cap is held and gripped by said means for holding and gripping.

10. The device according to claim 9, in further combination with an intravenous tube means, said tube means having a tube-end held in said means for holding a tube-end, whereby said tube-end may be stationarily and temporarily positioned during IV set-up, repair, and maintenance.

11. A device for aiding a nurse in the preparation of intravenous therapy, and the like, comprising:

a backing plate having a substantially planar front surface and rear surface;

means for holding and gripping a needle-cap mounted on said front surface defining a frustro-conical shaped hollow interior into which a needle-cap may be inserted;

said rear surface of said backing plate having securing means thereon for attaching said backing plate to

6

an IV pole, whereby a needle with its cap may be inserted into said means for holding and gripping to grip the needle-cap, after which the needle proper may be removed from its cap for use in intravenous therapy;

means for holding a tube-end mounted to said front surface of said backing plate;

said backing plate being made from flexible material that allows at least partial wrapping thereof about an IV pole;

an upstanding intravenous pole means, said securing means removably attaching said backing plate to a portion of said pole means;

an intravenous needle having a protective closure cap, said cap being held in said means for holding and gripping so that said needle proper may be reinserted into said cap when said cap is held and gripped by said means for holding and gripping; and

intravenous tube means, said tube means having a tube-end held in said means for holding a tube-end, whereby said tube-end may be stationarily and temporarily positioned during IV set-up, repair and maintenance.

12. The device according to claim 11, wherein said means for holding a tube-end comprises a C-clamp.

13. The device according to claim 11, wherein said means for holding and gripping comprises a frustro-conically shaped hollow member extending downwardly at an acute angle with respect to said front surface, and web means connecting said member to said front surface, said web means increasing in width from its upper end toward its lower end to thereby provide said acute angular mounting of said member; said member having a lower open mouth end and an upper closed end.

*  *  *  *  *