UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ZIPWALL, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 05-11852-JLT |
| | * | |
| FASTCAP, LLC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

April 9, 2007

This case arises out of Plaintiff Zipwall, LLC's claim that Defendant Fastcap, LLC, is infringing three patents Plaintiff holds on its dust barrier technology. Defendant moves for summary judgment of non-infringement and invalidity. Plaintiff has cross-filed for summary judgment of liability.

**Background**

*I. Parties*

Plaintiff Zipwall, LLC, a Connecticut company, supplies dust barrier systems for interior construction. Plaintiff's patents claim various products, methods, and systems related to erecting dust barriers using poles, clips, and plastic sheets. The poles incorporate Plaintiff's patented technology that allows a single person to construct a dust barrier without ladders, by attaching the curtain to a "coupling" mechanism at the end of the pole, raising the pole to the ceiling, and then

1

repeating the process with adjacent curtain segments and other poles.

Defendant Fastcap, LLC, a Washington company, produces a product known as the "Third Hand," which is basically a pole with a ratchet and clamp mechanism that allows a user to jack up the head of the pole. This pole can be used to secure molding, hold drywall in place, and stabilize loads in transit.[1] Fastcap has also produced a "dust-barrier clip," or "DB clip," that fits over the top of the Third Hand. The DB clip allows one to secure a plastic curtain to the end of the pole, and using several Third Hands, to construct a dust barrier in a similar fashion to that described above.

### B. Patents

Three of Plaintiff's patents are at issue in this case: the 6,209,615 ("'615"), 6,942,004 ("'004"), and 6,953,076 ("'076") patents.

In Count II, Plaintiff alleges infringement of the '615 patent, which issued April 3, 2001. This patent covers a mounting system for installing a curtain including a pole with a "compression mechanism" and a clip for attaching the curtain to the head of the pole.[2] In Count I, Plaintiff alleges infringement of the '004 patent, which issued September 12, 2005. The '004 patent covers various refinements of the basic invention, including different mechanisms for attaching the curtain to the head of the pole such as clamps, spring-loaded jaws, an improved clip, and the like.[3] In Count III, Plainitff alleges infringement of the '076 patent, which issued October 11, 2005.

─────────────────────

[1] Decl. of Paul Akers in Supp. of Def.'s Mot. for Summ. J., Paper #22, Ex. B.

[2] See generally U.S. Patent No. 6,209,615 (filed Apr. 29, 1999).

[3] See generally U.S. Patent No. 6,942,004 (filed Nov. 21, 2002).

This final patent covers further mechanisms for attaching the curtain to the head of the pole, such as a protrusions/mating holes mechanism.[4]  The '076 patent also includes several method claims, covering methods of "installing a curtain to form a room partition."[5]  All three patents have the same abstract, background of the invention, and summary of the invention.

## III.  Legal Standards

### A.    Summary Judgment

"Summary judgment is as appropriate in a patent case as it is in any other matter."[6]  A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.[7]  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."[8]  In response to such a motion, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions

---

[4] See generally U.S. Patent No. 6,953,076 (filed June 10, 2004).

[5] Id.

[6] Skyline Software Sys. v. Keyhole, Inc., No. 06-10980, 2007 U.S. Dist. LEXIS 16053, at *3 (D. Mass. Mar. 7, 2007) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831, 835 (Fed. Cir. 1984)).

[7] Fed. R. Civ. P. 56(c).

[8] Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

on file, 'designate' specific facts showing that there is a genuine issue for trial."[9]  The existence of cross-motions for summary judgment does not change the calculus; the court must act on each motion in turn, drawing inferences in favor of the non-moving party, assessing the undisputed facts, and drawing conclusions as a matter of law.[10]

Because much of the dispute in this case resolves around the legal issue of claim construction, summary judgment on the first two counts is appropriate.  But the court will not dispose of the entire case on summary judgment as neither party adequately demonstrates that it is entitled to judgment as a matter of law on count three.

B.    *Claim Construction*

The purpose of claim construction is to determine the scope of a patent's claims.[11]  The Court of Appeals for the Federal Circuit recently clarified the legal standards used to evaluate various sources of evidence of claim meaning.[12]  Intrinsic evidence, including the claims, specification, and patent file history (if in evidence), extrinsic evidence, including expert testimony, dictionary definitions, learned treatises, and principles of interpretation inform a court performing claim construction.[13]

---

[9] Id. at 324 (internal citations omitted).

[10] Skyline Software, 2007 U.S. Dist. LEXIS 16053, at *5.

[11] See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

[12] See Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

[13] See Phillips, 415 F.3d at 1312-19; Vitronics, 90 F.3d at 1582-83.

Intrinsic evidence is most compelling.[14]  The claims themselves define the scope of the patented invention.  The claims "are generally given their ordinary and customary meaning," which is the meaning attached by a person of ordinary skill in the invention's art.[15]  The specification "is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."[16]  In its recent opinion, the Federal Circuit emphasized this latter point.[17]  Strong reliance on the specification follows from statute[18] and policy.[19]  At the same time, the court must be careful not to read a limitation from the specification into the claims.[20]

If the scope of the claims is ambiguous after consulting intrinsic sources, the court may look to extrinsic evidence.  Extrinsic evidence "can shed useful light on the relevant art," but is "less significant than the intrinsic record in determining the legally operative meaning of claim

---

[14]  Phillips, 415 F.3d at 1318

[15]  Id. at 1312-13.

[16]  Vitronics, 90 F.3d at 1582.

[17]  See Phillips, 415 F.3d at 1315 ("On numerous occasions . . . we have reaffirmed that point, stating that '[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history.'" (quoting Multiform Desiccants, Inc. v. Medzam Ltd., 133 F.3d 1473, 1478 (Fed. Cir. 1998))).

[18]  See id. at 1316-17 ("The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'" (quoting 35 U.S.C. § 112, para. 1)).

[19]  Id. at 1321 ("As the Supreme Court has stated, '[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent.'" (quoting Merrill v. Yeomans, 94 U.S. 568, 573-74 (1876))).

[20]  Id. at 1319-20, 1323.

5

language."[21]  In particular, "conclusory, unsupported assertions by experts as to the definition of a

claim term are not useful to a court."[22]  Particularly, "a court should discount any expert

testimony 'that is clearly at odds with the claim construction mandated by the claims themselves,

the written description, and the prosecution history, in other words, with the written record of the

patent.'"[23]

## Discussion

        *A.    Infringement of the '615 Patent*

Plaintiff asserts that Defendant's Third Hand product infringes the '615 patent.  Defendant

denies infringement.  Both parties move for summary judgment on the issue.

        1.    Claim Construction: "Compression Mechanism"

Both independent claims in the '615 patent contain a claim limitation that requires the

presence of a "compression mechanism along a longitudinal axis of said mount" or "a compressive

mechanism between said foot and said head."[24]  Plaintiff defines "compression mechanism" as

"any structure that can be used to generate a compressive force within the pole."[25]  Defendant

---

[21] Id. at 1318 (citations omitted).

[22]  Id. at 1318 (quoting Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998)).

[23] Id.

[24]  '615 patent, claims 1 and 19.  Plaintiff does not argue that there is any difference between "compression mechanism" and "compressive mechanism," and uses the terms interchangeably.  Pl.'s Opp'n re Mot. for Summ. J. for Non-Infringement and/or Invalidity and Cross-Mot. for Summ. J. of Liability, Paper # 29 [hereinafter Pl.'s Opp'n] at 7-8.

[25] Id. at 8-9.

defines "compression mechanism" as "any mechanism that can be compressed to adjust the fit of a mounted curtain and released to pin the adjusted curtain in place."[26]  As discussed in the section on infringement, below, the allegedly infringing device falls within the scope of one definition but not the other.  The court must therefore undertake claim construction to determine the proper definition of "compression mechanism."

The court adopts Defendant's definition.  The '615 patent claims, abstract, figures, summary of the invention, detailed description of preferred embodiments, and prosecution history conclusively show that a "compression mechanism" is any mechanism that produces action equivalent to a spring, by itself compressing a sufficient distance to aid in installing and adjusting the curtain while concomitantly generating an outward force when compressed to stabilize the curtain mount.

First, the plain meaning of the claims supports Defendant's construction.  A "compression mechanism" is a mechanism that compresses or causes compression.  Plaintiff reads "compression mechanism" as including ratchet and clamp devices, as well as bottle jack-type cylinders.[27]  It is problematic to label a jack or ratchet-type device as a compression mechanism, since the jack or ratchet device functions (creates a force) by expanding and not compressing.  Furthermore, Plaintiff introduces no evidence to suggest that jack or ratchet devices are commonly referred to as compression mechanisms.  Plaintiff argues that a ratchet is a compression mechanism because

---

[26] Def.'s Mem. in Opp'n to Pl. Cross-Mot. for Summ. J., Paper #38 [hereinafter Def.'s Opp'n], at 10.

[27] Pl.'s Opp'n at 12; Decl. of Expert Alexander Slocum Concerning Infringement, Paper # 33 [hereinafter Slocum Decl.], at ¶¶ 10-11.

the ratchet lengthens "the point where it creates a compressive force within the pole to hold the pole in place."[28]  But that compression of the pole at that point is imperceptible.  In contrast, a spring itself compresses.

Second, the '615 patent abstract supports Defendant's construction.  The patent Abstract describes "a spring-loaded curtain mount" including a "compression mechanism disposed between the proximal end of the mount and the head."[29]  Further, the Abstract explains, "[d]uring installation . . . the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling. . . . . The curtain and mount are raised to the ceiling and the mount and pole are compressed [generating a] compressive force [that] secure[s] the mount in place."[30]  Figure 7E of the patent shows the device operating in this fashion, and Figures 4A and 6 also depict a device capable of being compressed.  The Summary of the Invention echoes the Abstract, describing "a spring-loaded curtain mount [and] adjustable pole, [where] the length of the pole is adjusted such that the combined length of the pole and mount is slightly longer than the distance between the floor and ceiling."[31]  In this way, the Abstract describes a "compression mechanism" that itself compresses to pin the curtain in place.  In contrast, ratchet and clamp, screw, and jack-type devices do not operate in this fashion, but rather extend the pole to create a force that secure the device in place.

---

[28] Slocum Decl. at ¶ 11.

[29] '615 patent, at [57].

[30] Id.

[31] Id., col.2 l.64 - col.3 l.1.

Furthermore, the '615 patent's Detailed Description of Preferred Embodiments describes "a compression mechanism, for example a spring," that "generates a force" "as the spring in the curtain mount compresses."[32] The patent refers to a "compressed spring," "longitudinal compression," a pole that "compress[es] the spring," a "spring in compression," and a "combined length of the curtain mount and pole [that] is sized slightly larger than the floor to ceiling distance . . . ."[33] The patent states that "[c]ompression mechanisms include springs, pneumatic devices and hydraulic devices," and depicts a pneumatic or hydraulic compression mechanism in Figure 9A.[34] Significantly, pneumatic and hydraulic mechanisms are depicted as operating exactly like springs – only the internal components of the mechanism's cylinder change, while the mechanism's action remains constant.[35]

Nowhere does the '615 patent indicate that a "compression mechanism" might include a ratchet, screw, or jack-type device.[36] Nowhere does the '615 patent's prosecution history suggest

---

[32] Id., col.4 - col.6.

[33] Id., col.5 - col.8.

[34] Id., col.8 l. 61-62; col.9 l.11-14 ("An alternative embodiment of the curtain mount is illustrated in FIGS. 9A, 9B and 9C. This curtain mount embodiment includes a hydraulic or pneumatic device serving as a compression mechanism.").

[35] Id., fig. 9A (depicting a mechanism capable of being compressed, like a spring).

[36] Plaintiff's expert notes that hydraulic or pneumatic mechanisms operate like ratchet mechanisms in that "extending the pole 2-3 inches past the height of the ceiling would drive the head of the device through the ceiling" just like Defendant's ratchet and clamp mechanism. Slocum Decl. at ¶ 13. This evidence fails to support Plaintiff's case for three reasons. First, the above assertion is unsupported by analysis and appears unconvincing to the court at least in regard to the pneumatic mechanism. Second, even accepting Slocum's analysis on this point, in context it at most establishes that Plaintiff erred in assuming that a hydraulic piston could provide the same action as a spring, but it does not change the clearly indicated definition of a "compression mechanism." Third, because the patent claims are not ambiguous after consulting

9

that a "compression mechanism" encompasses devices that operate like ratchets. Instead, the prosecution history demonstrates that the terms "compression mechanism" underwent successive revisions and added limitations, including the limitation in Claim 1 that "said compression mechanism [is] biased to urge said head away from said interface."[37] Whereas a spring is predisposed to resist compression and thereby urge the head of the pole upwards, a ratchet mechanism requires ratcheting to accomplish the same result.

In sum, the '615 patent claims, abstract, figures, summary of the invention, detailed description of preferred embodiments, and prosecution history show that a "compression mechanism" is a mechanism that provides the same action as a spring; i.e., the mechanism itself is sufficiently compressible to easily allow users to adjust the placement of the curtain mount, and when compressed generates an outward force.

Plaintiff was ultimately responsible for drafting the claims, and was obligated to communicate to the public a "full, clear, concise, and exact" description of the invention.[38] The court will not extend the scope of the claims to include devices not disclosed or contemplated in Plaintiff's specification. Plaintiff's broad construction of compression mechanism is rejected.

2.    Infringement

It is undisputed that Defendant Fastcap's ratchet device is not compressible in the same

---

intrinsic evidence, it is improper to rely on extrinsic evidence. Phillips, 415 F.3d at 1318 (stating that reliance on extrinsic evidence is proper only when claims are still ambiguous after consulting intrinsic evidence). This final reason alone precludes reliance on Plaintiff's expert.

[37] See Resp. to Final Agency Action, Decl. of Michael Cronen in Supp. of Def.'s Mot. for Summ. J., Paper # 23, Ex. C., at 2.

[38] 35 U.S.C. § 112. (2007)

way a spring device is compressible.[39]  Defendant's product therefore does not contain a

"compression mechanism," and falls outside the scope of Plaintiff's '615 patent claims.[40]

Accordingly, there is no genuine issue of material fact for trial, and Defendant is entitled to a

judgment of non-infringement of the '615 patent as a matter of law.

C.    *Invalidity of '004 and '076 Patents*

Defendant asserts that Plaintiff's patents are invalid for indefiniteness, anticipation, and

obviousness.  Plaintiff maintains that its patents are valid, and moves for summary judgment of

liability.  Defendant fails to adduce clear and convincing evidence of invalidity from which a

reasonable fact-finder could declare the patents invalid.

United States patents are presumed valid.[41]  If, however, the underlying invention is not

new, useful, or non-obvious, or if the patent fails to satisfy statutory requirements for enablement,

definiteness, and other standards, the patent or individual claims thereof may be invalidated by a

federal court.[42]

In this case, Defendant's arguments and evidence in support of invalidity comprise nothing

---

[39] Though Defendant's device contains springs, these springs do not drive the head of the pole toward the ceiling, but instead are used as part of the ratchet device.  Slocum Decl. at ¶ 14.

[40] Even though Defendant defends against arguments based on the "doctrine of equivalents," Plaintiff makes no argument based on the doctrine.  The court therefore need not determine if, absent literal infringement, Defendant's product infringes under the doctrine of equivalents.  Much of the discussion of claim construction and infringement, however, would support a finding of non-infringement under a doctrine of equivalents theory as well.

[41] 35 U.S.C. § 282.

[42] See, e.g., Pfizer, Inc. v. Apotex, Inc., No. 2006-1261, 2007 U.S. App. LEXIS 6623, at *23-27 (Fed. Cir. Mar. 22, 2007) (explaining the obviousness standard, describing its interface with the presumption of validity, and then invalidating the claims at issue).

more than: (1) an assertion that "it would be impossible for any person skilled in the art to construct a room partition using a single 'mount' as recited in [the '076 patent claims]";[43] (2) a contention that under Plaintiff's definition of "compression mechanism," the '615 patent claims are anticipated by International Publication No. WO 91/09556, the Brown reference;[44] and (3) a conclusory assertion that "the combination of Brown with the prior art dust barriers [including those constructed with plastic sheet and 2 x 4 boards] render Zipwall's patent claims invalid for obviousness."[45]

First, Defendant's assertion that the '076 patent should be declared invalid for indefiniteness because "it would be impossible for any persons skilled in the art to construct a room partition using a single 'mount' as recited" in the '076 patent claims can be rejected out of hand. Invalidity for indefiniteness requires a showing that the claim is "insolubly ambiguous" and does not have a meaning discernable by one of ordinary skill in the art.[46] Defendant contends that each of the '076 claims "recites 'a method of installing a curtain to form a room partition between a floor and ceiling using a partition mount,'" but that "the claim language does not include elements necessary to construct a 'room partition.'"[47] Essentially, Defendant argues that because

---

[43] Def.'s Mem. in Supp. of Mot. for Summ. J., Paper #20 [hereinafter Def.'s Mem.], at 19-20.

[44] Def.'s Opp'n at 19. See Supp. Aff. of Michael Cronen, Paper #42, Ex. A.

[45] Def.'s Opp'n at 18-20.

[46] Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001); see also 35 U.S.C § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.").

[47] Def.'s Mem. at 20.

the claims only recite using a single "mount" instead of the several "mount**s**" needed to construct

a partition, the claims are indefinite. This argument is unpersuasive. Any person having ordinary

skill in the art of curtain mounting would be able to deduce that more than one mount may be

required. A mere glance at the patent suffices to instruct any person that a room partition may

require several curtain mounts.[48] Accordingly, Defendant has produced no evidence or

convincing arguments that the '076 patent should be declared invalid for indefiniteness.

Second, Defendant's contention that the patents are anticipated under Plaintiff's definition

of "compression mechanism" need not be analyzed. After rejecting Plaintiff's definition of

"compression mechanism" in claim construction, this definition has no further consequence in the

case.

Third, Defendant's argument that "the combination of Brown with the prior art dust

barriers . . . render Zipwall's patent claims invalid for obviousness" is rejected as conclusory and

unsupported by evidence. Invalidity for obviousness is a legal issue that depends on underlying

factual inquiries, including: (1) the scope and content of the prior art; (2) the differences between

the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4)

secondary considerations including commercial success, long felt but unsolved needs, failure of

others, and other evidence of the circumstances surrounding the invention.[49] Defendant devotes a

single paragraph to this argument, which does little more than point out that prior art exists in the

field of dust barriers. That revelation is insufficient to overcome the presumption of patent

---

[48] '615 patent, fig. 1A-C, 2, 6, and 7D-F.

[49] <u>Graham v. John Deere Co. of Kansas City</u>, 383 U.S. 1, 17-18 (1966); <u>Iron Grip Barbell
Company, Inc. v. USA Sports, Inc.</u>, 392 F.3d 1317, 1320 (Fed. Cir. 2006).

validity, where it is undisputed that the patent examiner surveyed that prior art.[50]  The examiner

specifically cited the Brown reference in a discussion of obviousness of the '076 patent, yet was

eventually convinced by Plaintiff's reply that those claims were not rendered obvious.[51]

Defendant fails to include any specific discussion of the teachings of the prior art, the differences

between the prior art and Plaintiff's specific claims, the knowledge of a person with ordinary skill

in the art, or any explanation of how Plaintiff could have obtained a patent if all that was

necessary to show obviousness was a citation to the Brown reference.  If this simple citation to

prior art could serve as clear and convincing evidence of obviousness, then summary judgment of

validity could never be granted, because all inventions have prior art.  The Brown reference is not

sufficient evidence to create a genuine dispute as to whether Defendant can show by "clear and

convincing" evidence that Plaintiff's patents are obvious.[52]

    Invalidity must be proven by clear and convincing evidence.[53]  "Because a judge tasked

with ruling upon a motion for summary judgment 'must view the evidence presented through the

prism of the substantive evidentiary burden,' a patentee is entitled to summary judgment with

---

[50] See '076 patent, at [56] and '004 patent at [56] (both listing the Brown reference, WO 91/09556, under "References Cited," and indicating that the Brown reference had been "cited by examiner.").  See also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1368 (Fed. Cir. 2004) (citing Hewlett-Packard Co. v. Bausch & Lomb Inc., 909 F.2d 1464, 1467 (Fed. Cir. 1990)) (stating that "[w]here, as here, the PTO previously considered the prior art reference, [defendant] bears an even heavier burden to prove invalidity").

[51] See Office Action Summ., Decl. of Michael Cronen in Supp. of Def.'s Mot. for Summ. J., Paper #23, Ex. O at 8.

[52] See Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1325 (Fed. Cir. 2006) (upholding jury verdict of validity where, "ConAgra makes virtually no effort to show that the asserted prior art references disclose such functions").

[53] Al Site Corp. v. VSI Int'l Inc., 174 F.3d 1308, 1323 (Fed. Cir. 1999).

14

respect to the patent's validity where a reasonable jury could not find clear and convincing evidence of the patent's invalidity."[54]  Defendant produces no evidence that approaches meeting this burden on any of its three contentions regarding invalidity.  Summary judgment of validity is appropriate.

C.    *Infringement of the '004 Patent*

Plaintiff claims Defendant's DB clip product infringes the '004 patent.  Defendant denies infringement.  Both parties move for summary judgment on the issue.

1.  Claim Construction: "A plurality of legs . . . "

The parties dispute the meaning of claim 35 in the '004 patent.  The language in dispute reads:

> a clip having . . . a plurality of legs extending transverse to the second engaging surface of the clip to removably secure the clip to the head, the plurality of legs extending about at least one side surface and a portion of a lower surface of the head when the clip is engaged with the head.[55]

Plaintiff interprets "a plurality of legs extending about at least one side surface" to mean two or more legs extending about one or more side surfaces.[56]  Plaintiff argues that nothing in the claim language requires more than one leg on a given side.[57]  Defendant disagrees and argues that the

---

[54] Diomed, Inc. v. AngioDynamics, Inc., 450 F. Supp. 2d 130, 138 (D. Mass. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)) (citations omitted).

[55] '004 patent, claim 35.

[56] Pl.'s Reply Br. in Supp. of its Cross-Mot. for Summ. J., Paper, #44 [hereinafter Pl.'s Reply], at 10-11.

[57] Id.

language requires that at least one side have more than one leg.[58]

The structure of the claim supports Plaintiff's interpretation.[59]  Claim 35 is separated into two clauses.  The first clause says that the clip has a plurality of legs.  The second clause states that those legs "extend[] about at least one side surface."  By separating the limitations that there be two legs and that the legs extend from at least one side surface, the claim language indicates a requirement that there be a plurality of legs in total, and that those legs extend from a side surface as opposed to some other surface.

Defendant argues that its interpretation must be correct, because otherwise the requirement that the legs extend from at least one side would be meaningless.  It is true that Plaintiff's interpretation simply requires a plurality of legs in total.  But this requirement does not render the second clause meaningless.  The prosecution history reveals that Plaintiff added the extra clause after the examiner objected to the original language on the basis of a prior art reference where a leg protrudes from the face of the clip.[60]  In this way, the added claim language in the '004 patent simply identifies that the legs extend from one or more sides of the clip instead of from the face of the clip.

Defendant also argues that the patent specification supports its meaning.  Figures 4A and

---

[58] Def.'s Reply Mem. in Supp. of Def. Mot. for Summ. J., Paper #37 [hereinafter Def.'s Reply], at 6-7.

[59] See Phillips, 415 F.3d at 1314 ("To begin with, the context in which a term is used in the asserted claim can be highly instructive.")

[60] Supp. Decl. of Matthew H. Grady in Supp. of Pl's Reply, Paper #45, Ex. A, at 8 (rejecting the claim without the presence of the second clause considering the Villaveces patent, U.S. Patent No. 4,852,844 (Apr. 25, 1988)).

4B depict a clip with two legs on one side and one leg on another.  But this figure is also consistent with Plaintiff's definition.   It would be improper to read from the specification a limitation that there be more than one leg on one side, where the language and structure of the claim indicate that all that is required is a plurality of legs in total.[61]

Because the structure of the claim reveals its meaning, and because the prosecution history and the specification are consistent with this meaning, the court adopts Plaintiff's construction and finds that claim 35 covers a clip with a plurality of legs in total where those legs extend from more than one side.

### 2.  Infringement

The features of Defendant's DB clip are not disputed.  Defendant's DB clip has one leg on each of two sides.  The DB clip, when used with the Third Hand mount, undisputedly reads on the remaining elements of claim 35.  These products, when put together, constitute a mounting system for installing a sheet of material which comprises a pole with a foot, a head, an adjustment mechanism in between, and a clip that attaches to the head using a plurality of legs that extend from the side of the clip.[62] Under the court's claim construction, there can be no question that Defendant's DB clip falls within the disputed limitation of claim 35 the '004 patent.  Plaintiff is

---

[61] See Phillips, 415 F.3d at 1323 ("However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

[62] See '004 patent, claim 35 (claiming a mounting system comprising the clip described above, together with a pole having a foot, a head with an upper engaging surface, and an adjustment mechanism between the foot and the head).

entitled to judgment on this claim as a matter of law.

###### E. *Infringement of the '076 Patent*

The final issue before the court is infringement of the '076 patent. The '076 patent includes 96 claims, including independent claims 1, 17, 29, 40, 51, 63, 64, 73, 78, 86, and 91. Plaintiff claims that Defendant's Third Hand product infringes, Defendant denies infringement, and both parties move for summary judgment.

###### 1. Claims 17, 40, 51, 63, 73, and 86

The above listed claims, and their dependent claims, all require "a coupling mechanism" with "multiple rigid protrusions . . . that mate with multiple corresponding retention apertures." The patent depicts this coupling mechanism in Figures 9A-C. Defendant's product clearly does not contain such a mechanism, and Plaintiff does not allege that Defendant infringes these claims.

###### 2. Claims 29 and 78

Claim 29 requires a clip with "high-friction material applied to an upper surface thereof." Claim 78 requires a "coupling mechanism" with a "high-friction upper surface of the mechanism that couples the curtain at the second end of the partition mount [which] directly engages the ceiling." The top of the DB Clip is covered by a smooth sticker with written instructions stating "remove clip for better gripping."[63] Plaintiff initially claimed this sticker could read on these claims, but now concedes that Defendant, at the least, "has made out a genuine issue of material fact as to whether the sticker on the top of FastCap's DB Clip reads on the 'high friction' element of claims 29, 78-83, and 85. Zipwall thus withdraws its motion for summary judgment with

---

[63] Decl. of Paul Akers in Supp. of Def.'s Mot. for Summ. J., Paper #22, at ¶ 8.

respect to these claims of the '076 patent."[64]  A smooth surface is not a "high friction" surface.

No reasonable jury could so find.  Defendant is entitled to summary judgment on claims 29, 78,

and corresponding dependent claims.

    3.  Claim 1

    Claim 1 recites:

> A method of installing a curtain to form a room partition . . . using a partition mount . . . the method comprising: coupling a curtain to the mechanism [which] interfac[es] with the elongated portion at a hinged joint such that the mechanism is pivotable with respect to the elongated portion.

Defendant contends that its Third Hand product does not infringe this claim because it does not

contain a "hinged joint."

    a.  Claim Construction: "Hinged Joint"

    Defendant argues that the "hinged joint" refers to the "hinge" shown in Figure 8C.  Figure

8C depicts a "coupler embodiment[] for coupling the curtain to the head" where "the head is

formed in two sections which interface at a hinge" and "the sections join at jaws to clamp the

curtain, thereby securing it to the head."[65]  This is the only reference in the patent, other than in

claim 1, to a "hinge."

    Plaintiff counters that the "hinged joint" refers to "joint 56" of Figures 3A and 5A.[66]

Figure 3A depicts a curtain mount embodiment with a "body, a spring, a plunger, [and] a head,"

where "[t]he plunger and head preferably interface at a universal joint such that the curtain mount

---

[64] Pl.'s Reply at 16.

[65] '076 patent, col.8 l.40-52.

[66] Pl.'s Reply at 15.

can be installed at a variety of angles relative to the ceiling."[67]  The patent also describes "joint 56" as "a swivel joint."[68]

In the context of this patent, Plaintiff's construction of "hinged joint" makes more sense. Although the only reference in the patent outside of claim 1 to a "hinge" is in the context of the jaws/curtain clamping mechanism of Figure 8C, the hinge in that figure clearly does not permit the curtain coupling mechanism to "interfac[e] with the elongated portion" of the curtain mount. Instead, that hinge allows one jaw of the coupling mechanism itself to interface with the other jaw.  "Joint 56" is the only depiction in the patent of a joint that allows the coupling mechanism to interface with the elongated portion of the curtain mount, as described in the claim.  Claim 1 also describes the "hinged joint" as "pivotable," a characteristic of the depicted "universal" or "swivel" "joint 56."  Although Plaintiff likely picked the wrong word in "hinged," the claim's meaning is clear after consulting the remainder of the patent.[69]  The patentee is his own lexicographer, and may define and use terms as necessary.[70]  In this case, the word "hinge" can only refer to the pivotable socket that accomplishes the task of linking the head and pole, as depicted in Figure 56. The "hinged joint" of claim 1 may encompass the "universal" or "swivel" "joint 56," depicted in Figures 3A and 5A.

---

[67]  '076 patent, col.6 l.5-8.

[68]  Id., col.7 l.38.

[69]  See Phillips, 415 F.3d at 1313 ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.").

[70]  See id. ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").

b. Infringement

Defendant's Third Hand product incontestably contains a "hinged joint," as properly construed within the meaning of claim 1 of the '076 patent. The photographs in Plaintiff's brief, taken from Defendant's website, show a pivotable joint that connects the curtain mount's head to its elongated portion.[71] Defendant presents no other argument contesting infringement of claim 1. It is clear that the Third Hand could serve as the partition mount in Claim 1 as the Third Hand has an elongated portion and two ends, with one end interfacing at a hinged joint. The court summarily finds that using the Third Hand device as a curtain partition mount would infringe this claim.

4. Claims 64 and 91

Claims 64 and 91 are broad claims covering methods of erecting room partitions using partition mounts which engage the floor and ceiling. The parties disagree about whether Defendant's product "engages the floor," and whether Plaintiff's claim charts and interrogatory answers provide sufficient evidence of infringement for summary judgment. These two arguments are the extent of Defendant's opposition to infringement. Both arguments fail.

a. Claim Construction: "Engages the Floor"

First, Defendant argues that its support poles "engage" a plastic curtain and not the floor, because the curtain is tucked under the pole end.[72] Plaintiff effectively counters this argument by

---

[71] Decl. of Matthew H. Grady in Supp. of Pl.'s Combined Opp'n to Mot. for Summ. J. and Cross-Mot. for Summ. J., Paper #30 [hereinafter Grady Decl.], Ex. B, Part II, at 5.

[72] Def.'s Opp'n at 17; Def.'s Reply at 9-10.

21

noting that claims 64 and 91 do not require the pole end to "directly engage" the floor.  The

patent claims distinguish between "direct" engagement and mere engagement.[73]  Because the

patentee distinguishes between engagement and direct engagement, it would be unreasonable to

conclude that a product does not "engage" the floor if one tucks a newspaper, curtain, block, or

other object between the pole end and the floor.[74]  Consequently, the court adopts Plaintiff's

construction of "the second end of the partition mount engages the floor" to encompass a method

where a sheet of paper or curtain is tucked between the partition mount and the floor.

b.  Infringement

Second, Defendant argues that "Zipwall's generalized conclusions of infringement,"

including its "unsupported and unauthenticated 'claim charts' and unsigned 'interrogatory

answers'" "are obviously insufficient to sustain its burden on summary judgment."[75]  Here,

Plaintiff has informed the court of the basis of its claim of infringement, with its claim charts,

briefs, and evidence from Defendant's own website depicting Defendant's Third Hand product.[76]

Other than the disputes regarding claim construction which the court has resolved against

Defendant as a matter of law, Defendant has failed to point to any facts or arguments, which

would support a finding the '076 patent is not infringed by the use of its Third Hand product to

---

[73] See '076 patent, col.16 l. 23-24.

[74] See Phillips, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.").

[75] Def.'s Opp'n at 16.

[76] The claim charts are supported with pictures from Defendant's own website.  Grady Decl., Ex. B, Part I-II.  Defendant does not contest the authenticity of these images.

erect dust barriers.

At the same time, Plaintiff's own motion also focused on these questions of disputed claim construction, and not on evidence that would support a finding that the Third Hand product itself infringes Plaintiff's method claims.    While the court therefore summarily concludes that using the Third Hand product as a tool in a "method of installing a curtain to form a room partition" would infringe claims 1, 64, and 91 of the '076 patent, there is insufficient evidence before the court to determine that Defendant would be liable for making the product itself under a theory of induced or contributory infringement.[77]  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."[78]  Contributory infringement requires, among other showings, evidence that the product has no substantial non-infringing uses.[79]  Plaintiff must carry the burden for proving facts that support either of these theories.[80]  Because the record is devoid of sufficient evidence to support conclusions of either theory, and because Parties have not addressed these issues in their

---

[77] See Aquatex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1379-80 (Fed. Cir. 2005) ("Although not directly infringing, a party may still be liable for inducement or contributory infringement of a method claim if it sells infringing devices to customers who use them in a way that directly infringes the method claim."); RF Delaware, Inc. v. Pacific Keystone Technologies, Inc., 326 F.3d 1255, 1267 (Fed. Cir. 2003).  See also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."); 35 U.S.C. § 271(c) ("Whoever . . . sells . . . a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.").

[78] DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006).

[79] Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1363 (Fed. Cir. 2006).

[80] Id.

23

filings, both cross-motions are DENIED WITHOUT PREJUDICE to consideration of further filings that specifically address these issues.

**Conclusion**

Upon construing the claims and finding no dispute of material fact, the cross motions for summary judgment are ALLOWED IN PART, DENIED IN PART.  Finding that Defendant's DB clip, when used with the Third Hand, infringes claim 35 of the '004 patent, summary judgment shall enter for the Plaintiff on Count I of its Amended Complaint.  As the Third Hand does not contain a compression mechanism, as construed by the court, summary judgment shall enter for the Defendant on Count II.  Using Defendant's Third Hand to erect curtain room partitions could infringe certain method claims of the '076 patent.  But considering the dearth of evidence and argument currently before the court that would support a theory of liability under which the Third Hand product could be found to infringe these method claims, both cross-motions for summary judgment are DENIED with respect to count III.  This ruling is made without prejudice to either party raising the issue in subsequent filings.

AN ORDER HAS ISSUED.

_____/s/ Joseph L. Tauro_____
United States District Judge

24